# EXHIBIT A



## State of New Jersey
### Department of Banking and Insurance
### Office of the Commissioner

PO Box 325
Trenton, NJ 08625-0325

Chris Christie
*Governor*

Kim Guadagno
*Lt. Governor*

Richard J. Badolato
*Commissioner*

Tel (609) 292-7272

*CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

12/29/2017

Attention:

CORPORATION TRUST COMPANY
HARTFORD FIRE INSURANCE COMPANY
820 BEAR TAVERN ROAD
WEST TRENTON, NJ 08628

RE: Valeant Pharmaceuticals International, Inc., et al. v. Hartford Fire
      Insurance Company, et al.
      Superior Court of New Jersey, Somerset County Law Division
      Docket No. : SOM-L-1483-17

Dear Sir/Madam:

You are hereby notified that on this date the Commissioner of the New Jersey Department of Banking and Insurance has accepted original service of process on your behalf in the above-captioned matter. The documents served are enclosed herein.

By copy of this letter I am advising the Attorney for the Plaintiff(s) in this matter and certifying with the Clerk of the Court that these documents have been transmitted to you, and confirming that the Commissioner of Banking and Insurance is not authorized to receive service of any further documents in this action.

Very Truly Yours,

*Debra A. Mullen*
Administrative Assistant

C:  McCarter & English
     ATTN:  Sherilyn Pastor, Esq.
     100 Mulberry Street
     Newark, NJ 07102-4056

     Clerk of the Superior Court, Somerset County

---



MCCARTER & ENGLISH, LLP
FOUR GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NEW JERSEY  07102
(973) 622-4444

and

PROSKAUER ROSE LLP
11 TIMES SQUARE
NEW YORK, NEW YORK 10036
(212) 969-3000

*Attorneys for Plaintiffs*

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC.; VALEANT PHARMACEUTICALS INTERNATIONAL; and AGMS, INC., | SUPERIOR COURT OF NEW JERSEY SOMERSET COUNTY LAW DIVISION DOCKET NO. SOM-L-1483-17 |

                              Plaintiffs,

vs.

AIG INSURANCE COMPANY OF CANADA; ACE
INA INSURANCE COMPANY; ALLIANZ
GLOBAL RISKS US INSURANCE COMPANY;
ARCH INSURANCE CANADA LTD; EVEREST
INSURANCE COMPANY OF CANADA;
HARTFORD FIRE INSURANCE COMPANY;
IRONSHORE CANADA LTD.; LIBERTY
INTERNATIONAL UNDERWRITERS, a division
of LIBERTY MUTUAL INSURANCE COMPANY;
and LIBERTY MUTUAL INSURANCE
COMPANY; LLOYD'S UNDERWRITERS;
LLOYD'S CONSORTIUM 9885 (a/k/a STARR
FINANCIAL LINES CONSORTIUM 9885);
LLOYD'S SYNDICATE ANV 1861; LLOYD'S
SYNDICATE AMA 1200; LLOYD'S SYNDICATE
ARGO 1200; LLOYD'S SYNDICATE AWH 2232;
LLOYD'S SYNDICATE BRT 2987; LLOYD'S
SYNDICATE CVS 1919; LLOYD'S SYNDICATE
HCC 4141; LLOYD'S SYNDICATE MITSUI 3210;
LLOYD'S SYNDICATE MIT 3210; LLOYD'S
SYNDICATE NAV 1221; LLOYD'S SYNDICATE
QBE 1886; LLOYD'S SYNDICATE SJC 2003;
ROYAL & SUN ALLIANCE INSURANCE
COMPANY OF CANADA; TEMPLE INSURANCE
COMPANY; and XL INSURANCE COMPANY
SE.,

                              Defendants.

CIVIL ACTION

**SUMMONS**

RECEIVED

2017 DEC 29  A 11: 39

From The State of New Jersey To The Following Defendant:

HARTFORD FIRE INSURANCE COMPANY

The plaintiffs, named above, have filed a lawsuit against you in the Superior Court of New Jersey. The Complaint attached to this Summons states the basis for this lawsuit. If you dispute this Complaint, you or your attorney must file a written answer or motion and proof of service with the Deputy Clerk of the Superior Court in the county listed above within 35 days from the date you received this Summons, not counting the date you received it. (The address of each Deputy Clerk of the Superior Court is provided.) If the Complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, PO Box 971, Trenton, New Jersey 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the Deputy Clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiffs' attorney whose name and address appear above, or to plaintiffs, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the Court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Plaintiffs hereby demand a trial by jury on all issues so triable.

/s/ Michelle M. Smith, Esq.

Michelle M. Smith, Esq.
Clerk of the Superior Court

DATED:  December 29, 2017

Name of Defendant to be Served:        HARTFORD FIRE INSURANCE COMPANY

Address of Defendant to be Served:     One Hartford Plaza
                                       Hartford, CT 06155-000

# DIRECTORY OF SUPERIOR COURT DEPUTY CLERK'S OFFICES
## COUNTY LAWYER REFERRAL AND LEGAL SERVICES OFFICES

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609)-261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908)-236-6109
LEGAL SERVICES
(908)-782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street
Room 121
P.O. Box 2191
Toms River, NJ 08754-2191
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn: Civil Case Management
Office
92 Market Street
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere , NJ 07823-1500
LAWYER REFERRAL
(908)-859-4300
LEGAL SERVICES
(908) 475-2010

RITA F. ROTHSCHILD, ESQ. (Bar I.D. # 019281977)
SHERILYN PASTOR, ESQ. (Bar I.D. # 026031988)
**McCARTER & ENGLISH, LLP**
FOUR GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NJ 07102
(973) 622-4444

and

JOHN E. FAILLA, ESQ.
NATHAN LANDER, ESQ.
SETH B. SCHAFLER, ESQ.
**PROSKAUER ROSE LLP**
11 TIMES SQUARE
NEW YORK, NY 10036
(212) 969-3000

*Attorneys for Plaintiffs*

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC.; VALEANT PHARMACEUTICALS INTERNATIONAL; and AGMS, INC., | SUPERIOR COURT OF NEW JERSEY SOMERSET COUNTY LAW DIVISION |
| Plaintiffs, | DOCKET NO. SOM-L- 1483-17 |
| v. | |
| ACE INSURANCE COMPANY OF CANADA; ACE INA INSURANCE COMPANY; ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; ARCH INSURANCE CANADA LTD; EVEREST INSURANCE COMPANY OF CANADA; HARTFORD FIRE INSURANCE COMPANY; IRONSHORE CANADA LTD.; LIBERTY INTERNATIONAL UNDERWRITERS, a division of LIBERTY MUTUAL INSURANCE COMPANY; and LIBERTY MUTUAL INSURANCE COMPANY; LLOYD'S UNDERWRITERS; LLOYD'S CONSORTIUM 9885 (a/k/a STARR FINANCIAL LINES CONSORTIUM 9885); LLOYD'S SYNDICATE ANV 1861; LLOYD'S SYNDICATE AMA 1200; LLOYD'S SYNDICATE ARGO 1200; LLOYD'S SYNDICATE AWH 2232; LLOYD'S SYNDICATE BRT 2987; LLOYD'S SYNDICATE CVS 1919; LLOYD'S SYNDICATE HCC 4141; | **COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

LLOYD'S SYNDICATE MITSUI 3210; LLOYD'S    :
SYNDICATE MIT 3210; LLOYD'S SYNDICATE    :
NAV 1221; LLOYD'S SYNDICATE QBE 1886;    :
LLOYD'S SYNDICATE SJC 2003; ROYAL &    :
SUN ALLIANCE INSURANCE COMPANY OF    :
CANADA; TEMPLE INSURANCE COMPANY;    :
and XL INSURANCE COMPANY SE.,    :

                        Defendants.    :

---

Plaintiffs   Valeant   Pharmaceuticals   International,   Inc.   ("Valeant"),   Valeant

Pharmaceuticals International ("Valeant USA"), and AGMS, Inc. ("AGMS") (collectively,

"Plaintiffs") by way of Complaint against Defendants AIG Insurance Company of Canada, ACE

INA Insurance Company, Allianz Global Risks US Insurance Company, Arch Insurance Canada

Ltd., Everest Insurance Company of Canada, Hartford Fire Insurance Company, Ironshore

Canada Ltd., Liberty International Underwriters, a division of Liberty Mutual Insurance

Company, and Liberty Mutual Insurance Company, Lloyd's Underwriters, Lloyd's Consortium

9885 (a/ka/ Starr Financial Lines Consortium 9885), Lloyd's Syndicate ANV 1861, Lloyd's

Syndicate AMA 1200, Lloyd's Syndicate Argo 1200, Lloyd's Syndicate AWH 2232, Lloyd's

Syndicate BRT 2987, Lloyd's Syndicate CVS 1919, Lloyd's Syndicate HCC 4141, Lloyd's

Syndicate Mitsui 3210, Lloyd's Syndicate MIT 3210, Lloyd's Syndicate NAV 1221, Lloyd's

Syndicate QBE 1886, Lloyd's Syndicate SJC 2003, Royal & Sun Alliance Insurance Company

of Canada, Temple Insurance Company, and XL Insurance Company SE (collectively,

"Defendants" or the "Insurers") allege as follows:

## INTRODUCTION

1.    This is an action for breach of contract and declaratory judgment arising from the

Insurers' failure and refusal to provide insurance coverage to Plaintiffs in accordance with the

terms of the insurance policies the Insurers issued to Valeant and the mandatory provisions of

Quebec law under which those insurance policies were issued. The Insurers have breached their statutory duty to defend Valeant in numerous, significant litigations – the majority and most substantial of which are pending in New Jersey – and wrongfully denied coverage entirely to Plaintiffs for several matters.

2.    Valeant is a pharmaceutical company whose corporate headquarters and principal executive offices are located at 2150 St. Elzéar Boulevard, West Laval, Quebec H7L 4A8. Valeant's Administration offices and U.S. headquarters is located at 400 Somerset Corporate Blvd., Bridgewater, NJ 08807.

3.    Each year Valeant pays substantial premiums to purchase an insurance program that provides broad "claims-made" protection to the company, its subsidiaries, and its directors and officers. Because Valeant is headquartered in Quebec and has worldwide operations, including here in New Jersey, it purchases insurance policies that are issued in Quebec and governed by Quebec law but that provide protection for alleged wrongful acts, and resulting claims, that occur or are brought anywhere in the world.

4.    Valeant purchased $150 million of such insurance from the defendant Insurers for the period of September 28, 2013 to September 28, 2014 (the "2013-14 Program") and $175 million of such insurance for the period of September 28, 2015 to September 28, 2016 (the "2015-2016 Program") (collectively, the "Programs"). The Programs provide coverage for all "Securities Claims" against Valeant and its subsidiaries and all "Claims" against directors and officers of Valeant and its subsidiaries. The insurance policies that the defendant Insurers issued to Valeant as part of the Programs were all issued to Valeant in Quebec and subject to Quebec law.

5.    Quebec's legislature has enacted a number of mandatory provisions that insurance companies must comply with when issuing insurance in Quebec. For example, Article 2500 of

3

Quebec's Civil Code requires: "The proceeds of the insurance are applied exclusively to the payment of injured third persons" and Article 2503, accordingly, requires: "Legal costs and expenses resulting from actions against the insured, including those of the defence, and interest on the proceeds of the insurance are borne by the insurer over and above the proceeds of the insurance." Thus, the coverage limits of a Quebec-issued insurance policy are statutorily required to be used only to pay settlements and judgments for covered claims, with the insurer required to pay the costs of defending its insureds outside of and in addition to the limits of the policy.

6.     Accordingly, the respective $150 million and $175 million limits of Valeant's two Programs can only be depleted by the defendant Insurers' payment of settlements or judgments for covered claims, and the Insurers must pay the costs of defending Valeant, its subsidiaries, and its directors and officers against covered claims outside of and in addition to the Programs' limits. Valeant's purchase of the Programs turned out to be a prudent decision, as the risks that the Insurers promised to protect Valeant against, and for which they collected substantial premiums, ultimately materialized. Valeant, its subsidiaries, and its directors and officers have been sued in substantial litigations falling within the coverage periods of both the 2013-14 Program and the 2015-16 Program.

7.     As to the 2013-14 Program, Plaintiffs and Michael Pearson, Valeant's former Chairman and CEO and Valeant USA's former President, have been sued in a class action by former shareholders of a company called Allergan, Inc. ("Allergan") and a class action by former Allergan debtholders who allege that Valeant violated the securities laws regulating tender offers in connection with an offer Valeant made to exchange its securities for securities of Allergan (the "2013-14 Claims"). The 2013-14 Claims constitute covered Securities Claims against Plaintiffs and covered Claims against Mr. Pearson.

4

8.     As to the 2015-16 Program, Valeant and many of its current or former directors and officers have been sued in a number of securities class actions and other lawsuits that followed on the heels of a dramatic drop in the price of Valeant's stock (the "2015-16 Claims"). The 2015-16 Claims constitute covered Securities Claims against Valeant and covered Claims against the individual directors and officers. The 2013-14 Claims and 2015-16 Claims seek damages in excess of the respective $150 million and $175 million limits of the two Programs. The vast majority and largest of these Claims are pending in New Jersey.

9.     After the 2013-14 Claims and 2015-16 Claims were asserted, Valeant turned to the Insurers to provide the coverage it had purchased, and demanded that the Insurers pay the costs of defending the 2013-14 Claims and 2015-16 Claims without reducing the Programs' respective limits, so that those limits would remain available to help resolve the 2013-14 Claims and 2015-16 Claims.

10.     Despite having collected millions of dollars in premiums for the Programs, and having significantly increased Valeant's premiums as a result of Valeant's claims history (including an approximately 20% increase from the 2013-14 Program to the 2015-16 Program), when called upon to provide coverage, the Insurers wrongfully denied their obligations under the Programs and under Quebec law.

11.     Repudiating their obligations under Quebec law, and breaching their insurance policies, the Insurers have refused to pay the costs of defending the 2013-14 Claims and 2015-16 Claims without reducing the Programs' limits. The Insurers chose to participate in the Quebec insurance market and to reap the substantial premiums from selling insurance to Quebec companies such as Valeant. They cannot on one hand accept the benefits of participation in the Quebec insurance market while on the other shirk their obligations under Quebec law. Under mandatory and controlling Quebec law, the Insurers must pay the costs of defending the 2013-14

5

Claims and 2015-16 Claims outside of, and without reducing, the limits of liability of the respective Programs. Those full limits must instead be used to cover potential settlements of or judgments in the 2013-14 Claims and 2015-16 Claims.

12.    With respect to the 2013-14 Program, the relevant Insurers have not only refused to comply with Quebec law regarding paying costs of defense outside of policy limits, they have wrongfully denied coverage entirely to Plaintiffs for the 2013-14 Claims. The purported basis for this coverage denial is that the 2013-14 Claims do not, according to the Insurers, meet the definition of "Securities Claims" contained in the insurance policies. However, the 2013-14 Claims fall squarely within the policies' definition of "Securities Claim."

13.    The Insurers have no basis for denying coverage for the 2013-14 Claims and no basis for refusing to pay the full costs of defending the 2013-14 Claims and the 2015-16 Claims without reducing the limits available under the Programs.   Accordingly, Plaintiffs seek declarations that the 2013-14 Claims and 2015-16 Claims are covered under the Programs and that the Insurers must pay the costs of defending the 2013-14 Claims and 2015-16 Claims without reducing the coverage limits available under the Programs. Plaintiffs also seek damages for the Insurers' breaches of contract in denying coverage for the 2013-14 Claims and refusing to pay the costs of defending the 2013-14 Claims and 2015-16 Claims outside of and without reducing the Programs' respective limits. Additionally, Plaintiffs seek the attorneys' fees they are being forced to incur in pursuing this coverage action.

14.    As discussed in further detail below, the insurance policies in the Programs contain a pre-suit mediation requirement with a 60 day waiting period after the mediation before litigation can be commenced. The parties mediated their dispute on November 30 and December 1, 2017 but reached an impasse. Although the 60 day waiting period has not yet elapsed, Plaintiffs have filed this lawsuit in an abundance of caution so as to avoid a potential expiration

of Quebec's prescription period (Quebec's equivalent to a statute of limitations) as to certain costs incurred by Plaintiffs in defending the 2013-14 Claims. Plaintiffs agree to extend the time for the Insurers to respond to this Complaint by 60 days so as to comply with the contractual waiting period and avoid any prejudice to the Insurers.

## PARTIES

### Plaintiffs

15.    Plaintiff Valeant is a Canadian corporation with its principal place of business in Laval, Quebec.

16.    Plaintiff Valeant USA is a Delaware corporation with its principal place of business in Bridgewater, New Jersey. Valeant USA is a subsidiary of Valeant.

17.    Plaintiff AGMS is a Delaware corporation and a wholly-owned subsidiary of Valeant that was formed for the purpose of Valeant making a tender offer to Allergan's shareholders through AGMS.

### Defendants

18.    Upon information and belief, Defendant AIG Insurance Company of Canada is a Canadian corporation with its principal place of business in Canada.  Upon information and belief, Defendant AIG Insurance Company of Canada issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

19.    Upon information and belief, Defendant ACE INA Insurance Company is a Canadian corporation with its principal place of business in Canada.  Upon information and belief, Defendant ACE INA Insurance Company issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

20.    Upon information and belief, Defendant Allianz Global Risks US Insurance Company is a California corporation with its principal place of business in Illinois.  Upon information and belief, Defendant Allianz Global Risks US Insurance Company issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

21.    Upon information and belief, Defendant Arch Canada Ltd is a Canadian corporation with its principal place of business in Canada.  Upon information and belief, Defendant Arch Canada Ltd issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

22.    Upon information and belief, Defendant Everest Insurance Company of Canada is a Canadian corporation with its principal place of business in Canada.  Upon information and belief, Defendant Everest Insurance Company of Canada issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

23.    Upon information and belief, Defendant Hartford Fire Insurance Company is a Connecticut corporation with its principal place of business in Connecticut.  Upon information and belief, Defendant Hartford Fire Insurance Company issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

24.    Upon information and belief, Defendant Ironshore Canada Ltd. is a Canadian Corporation with its principal place of business in Canada.  Upon information and belief, Defendant Ironshore Canada Ltd. issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

25.     Upon information and belief, Defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business in Massachusetts, and Defendant Liberty International Underwriters, A Division of Liberty Mutual Insurance Company, operates as a Canadian Division of Liberty Mutual Insurance Company. Upon information and belief, Defendant Liberty Mutual Insurance Company and Defendant Liberty International Underwriters, A Division of Liberty Mutual Insurance Company issue insurance policies providing coverage for worldwide risks and liabilities, just as they did with Valeant, in the regular course of their business.

26.     Upon information and belief, Defendant Royal & Sun Alliance Insurance Company of Canada is a Canadian corporation with its principal place of business in Canada. Upon information and belief, Defendant Royal & Sun Alliance Insurance Company of Canada issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

27.     Upon information and belief, Defendant Temple Insurance Company is a Canadian corporation with its principal place of business in Canada. Upon information and belief, Defendant Temple Insurance Company issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

28.     Upon information and belief, Defendant XL Insurance Company SE is a United Kingdom corporation with its principal place of business in the United Kingdom. Upon information and belief, Defendant XL Insurance Company SE issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

29.     A number of the insurance policies in the Programs were issued by Lloyd's underwriting syndicates or consortiums that are organized and registered under the laws of the

9

United Kingdom. Those insurance policies provide: "In any action to enforce the obligations of the Underwriters liable hereunder they can be designated or named as 'Lloyd's Underwriters' and such designation shall be binding on the Underwriters liable hereunder as if they had each been individually named as a defendant." Accordingly, Defendant "Lloyd's Underwriters," encompasses all Lloyd's syndicates and consortiums that issued insurance coverage to Valeant as part of the Programs. Nevertheless, Plaintiffs have also endeavored to name as defendants the specific Lloyd's syndicates or consortiums that participated in the Programs as set forth below:

a. Upon information and belief, Defendant Lloyd's Consortium 9885 (a/k/a Starr Financial Lines Consortium 9885) is a an underwriting consortium organized and registered under the laws of the United Kingdom and that is managed by Starr Managing Agents Limited, which is incorporated in and has its principal place of business in the United Kingdom.

b. Upon information and belief, Defendant Lloyd's Syndicate ANV 1861 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by AmTrust Syndicates Limited, which is incorporated in and has its principal place of business in the United Kingdom.

c. Upon information and belief, Defendant Lloyd's Syndicate AMA 1200 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Argo Managing Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

d. Upon information and belief, Defendant Lloyd's Syndicate Argo 1200 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Argo Managing Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

10

e. Upon information and belief, Defendant Lloyd's Syndicate AWH 2232 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Allied World Managing Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

f. Upon information and belief, Defendant Lloyd's Syndicate BRT 2987 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Brit Syndicates Limited, which is incorporated in and has its principal place of business in the United Kingdom.

g. Upon information and belief, Defendant Lloyd's Syndicate CVS 1919 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Starr Managing Agents Limited, which is incorporated in and has its principal place of business in the United Kingdom.

h. Upon information and belief, Defendant Lloyd's Syndicate HCC 4141 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by HCC Underwriting Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

i. Upon information and belief, Defendant Lloyd's Syndicate MIT 3210 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by MS Amlin Underwriting Limited, which is incorporated in and has its principal place of business in the United Kingdom.

j. Upon information and belief, Defendant Lloyd's Syndicate Mitsui 3210 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by MS Amlin Underwriting Limited, which is incorporated in and has its principal place of business in the United Kingdom.

k.  Upon information and belief, Defendant Lloyd's Syndicate NAV 1221 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Navigators Underwriting Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

l.  Upon information and belief, Defendant Lloyd's Syndicate QBE 1886 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by QBE Underwriting Limited, which is incorporated in and has its principal place of business in the United Kingdom.

n  Upon information and belief, Defendant Lloyd's Syndicate SJC 2003 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Catlin Underwriting Agencies Limited, which is incorporated in and has its principal place of business in the United Kingdom.

n.  Upon information and belief, Defendant "Lloyd's Underwriters" and all of the Lloyd's syndicates and consortiums listed above issue insurance policies providing coverage for worldwide risks and liabilities, just as they did with Valeant, in the regular course of their business.

## JURISDICTION AND VENUE

30.  This Court has jurisdiction over the Insurers because the insurance policies, although issued in Quebec under Quebec law, provide worldwide coverage to Valeant which protect it, its subsidiaries, and its directors and officers (including those who reside in New Jersey) for alleged wrongful acts occurring anywhere, including in New Jersey.  Under this worldwide coverage, the Insurers agreed to defend Valeant, at the Insurers' expense, against claims brought anywhere, including in New Jersey, and the vast majority of and largest claims at issue in this lawsuit were filed in New Jersey.

31.    Venue in this county is proper because at least one of the parties in this action –
Valeant USA – resides in the county.

## FACTUAL BACKGROUND

### Valeant Is A Quebec Policyholder

32.    Valeant is a Canadian corporation with its headquarters and principal place of
business in Laval, Quebec.  Valeant has been headquartered in Quebec since 2012.  Valeant
moved its headquarters to Quebec at the urging and with the support of Quebec's government,
which helped offset the cost of the move with contributions and loans.  Valeant was the first and
only multinational pharmaceutical company to establish its headquarters in Quebec, and its
decision to establish its headquarters in Quebec was praised by Quebec government officials,
including Quebec's then Premier Jean Charest, as helping to solidify Quebec's presence in the
pharmaceuticals industry.

33.    Each year, Valeant purchases an insurance program that provides broad "claims-
made" protection to the company, its subsidiaries, and its directors and officers.

34.    Because Valeant is headquartered in Quebec and has worldwide operations, it
purchases insurance policies that are issued in Quebec and governed by Quebec law and that
provide protection for alleged wrongful acts, and resulting claims, that occur or are brought
anywhere in the world.

35.    The two insurance programs under which Plaintiffs are seeking coverage in this
action are the 2013-14 Program and 2015-16 Program.  As detailed below, many of the
defendant Insurers issued coverage to Valeant under both Programs, while certain Insurers issued
coverage under one Program or the other.

13

## The Insurers Issued The 2013-14 Program to Valeant in Quebec and Under Quebec Law

36.     Valeant purchased $150 million in coverage as part of the 2013-14 Program.[1]

37.     AIG Insurance Company of Canada ("AIG") issued the primary policy for the 2013-14 Program (the "2013-14 Primary Policy") which provided a coverage limit of $10 million in excess of a $5 million deductible.

38.     Various of the defendant Insurers (together, with AIG, the "2013-14 Insurers") provided the remaining $140 million in coverage limits pursuant to a series of excess insurance policies (the "2013-14 Excess Policies") as follows:

| Layer | Insurance Company | Policy No. | Coverage Limits |
|---|---|---|---|
| Primary | AIG Insurance Company of Canada | 01-421-57-69 | $10 Million |
| 1st Excess | Lloyd's Syndicate AWH 2232 | QB078513 | $10 Million x/s $10 Million |
| 2nd Excess | Allianz Global Risks US Insurance Company | FPL 7223891 | $10 Million x/s $20 Million |
| 3rd Excess | Lloyd's Syndicate CVS 1919 | QB078613 | $10 Million x/s $30 Million |
| 4th Excess | Hartford Fire Insurance Company | DA 0271573-13 | $10 Million x/s $40 Million |
| 5th Excess | Everest Insurance Company of Canada | XD&O0000061 | $10 Million x/s $50 Million |
| 6th Excess | Liberty International Underwriters, a division of Liberty Mutual Insurance Company | DOTOAAGHNZ003 | $10 Million x/s $60 Million |
| 7th Excess | Arch Insurance Canada Ltd | DOX0046341-02 | $10 Million x/s $70 Million |
| 8th Excess | Lloyd's Syndicate QBE 1886 (75% share) Lloyd's Syndicate ANV | QB078913 | $20 Million x/s $80 Million |

[1] Valeant also purchased an additional $50 million of "Side A DIC" coverage that applies solely to non-indemnifiable loss of its directors and officers and that is not at issue in this action at this time.

14

| Layer | Insurance Company | Policy No. | Coverage Limits |
|---|---|---|---|
| | 1861 (25% share) | | |
| 9th Excess | Royal & Sun Alliance Insurance Company of Canada | 9501117 | $10 Million x/s $100 Million |
| 10th Excess | AIG Insurance Company of Canada | 2454458 | $15 Million x/s $110 Million |
| 11th Excess | Temple Insurance Company | LIA105678 | $15 Million x/s $125 Million |
| 12th Excess | Lloyd's Syndicate Mitsui 3210 | QB146013 | $10 Million w/s $140 Million |

39.    Each of the 2013-14 Excess Policies "follow-form" to the coverage provided by the 2013-14 Primary Policy, except where the 2013-14 Excess Policies provide otherwise. Specifically, each of the 2013-14 Excess Policies provides: "Except as otherwise provided in the Declarations or by any endorsement attached hereto, this policy is subject to the same insuring clauses, definitions, terms and conditions, exclusions, cancellation provisions and all other provisions of the underlying insurance."

40.    During the application process for the 2013-14 Program, Valeant informed the 2013-14 Insurers that its headquarters is in Quebec. That information was also publically available to the 2013-14 Insurers, as Valeant's public filings make clear that its headquarters and principal place of business are in Quebec.

41.    The 2013-14 Primary Policy and the 2013-14 Excess Policies (collectively, the "2013-14 Policies") were issued in Quebec and subject to Quebec law.

42.    The first page of the 2013-14 Primary Policy states that the policy was being issued to Valeant at its Quebec headquarters – 2150 Boul Saint-Elzear 0 Laval, QC H7L – 4A8. Recognizing that the policy was being issued in Quebec and subject to Quebec law, the policy also provides in the "Conformance to Law" section that: "Where this policy is legally required to be interpreted in accordance with the laws of the Province of Quebec…The policy provisions

15

shall be deemed amended to comply with the applicable mandatory provisions of the Quebec Civil Code, but only to the extent necessary to comply with such mandatory provisions of the Quebec Civil Code and only to the extent that such mandatory provisions are contrary to the existing terms of this policy."

43.     The 2013-14 Excess Policies each contain a choice of law clause providing that Quebec law governs. Specifically, each of the 2013-14 Excess Policies recognizes that the policy is being issued in Quebec by listing Valeant's Quebec address and explicitly provides: "It is understood and agreed by both the Insured and Underwriter(s) that the governing law and any dispute concerning the interpretation of this policy shall be governed by the law of the province in Canada in which this policy is issued."

44.     Each of the 2013-14 Excess Policies issued by a Lloyd's Syndicate or Lloyd's Consortium – including the first layer excess policy issued by Lloyd's Syndicate AWH 2232 – provides that the relevant Insurer has mandated that the Lloyd's Attorney-In-Fact ("AIF") for Canada will bind coverage on their behalf. These policies each state: "The AIF shall confirm Lloyd's Underwriters' coverage by signing in Canada a policy that will contain the terms and conditions set out in this contract (the "Canadian Policy"), and by communicating from Canada the issuance of that policy to the policyholder or his broker…." These policies specify that the address for the Lloyd's AIF in Canada is "1155, rue Metcalfe, Suite 220, Montreal, Quebec, H3B 2V6." This further confirms that each of the 2013-14 Excess Policies issued by a Lloyd's Syndicate or Lloyd's Consortium was issued in Quebec pursuant to Quebec law.

45.     One of the 2013-14 Insurers – Royal & Sun Alliance Insurance Company of Canada – has admitted in coverage correspondence that the 2013-14 Policies are governed by Quebec law.

16

46.    The premiums paid for the 2013-14 Policies were allocated to the Valeant Quebec parent company and were subject to Quebec tax.

**The Insurers Issued The 2015-16 Program to Valeant in Quebec and Under Quebec Law**

47.    Valeant purchased $175 million in coverage as part of the 2015-16 Program.[2]

48.    AIG issued the primary policy for the 2015-16 Program (the "2015-16 Primary Policy") which provided a coverage limit of $10 million in excess of a $10 million deductible.

49.    Various of the defendant Insurers (together, with AIG, the "2015-16 Insurers") provided the remaining $165 million in coverage limits pursuant to a series of excess insurance policies (the "2015-16 Excess Policies") as follows:

| Layer | Insurance Company | Policy No. | Coverage Limits |
|-------|-------------------|------------|-----------------|
| Primary | AIG Insurance Company of Canada | 01-714-68-05 | $10 Million |
| 1st Excess | Lloyd's Syndicate AWH 2232 | B0509FINMW1500609 | $10 Million x/s $10 Million |
| 2nd Excess | Allianz Global Risks US Insurance Company | FPL 7228579 | $10 Million x/s $20 Million |
| 3rd Excess | Lloyd's Consortium 9885 (50% share) | B0509FINMW1500612 | $10 Million x/s $30 Million |
|  | Lloyd's Syndicate QBE 1886 (50% share) |  |  |
| 4th Excess | Lloyd's Syndicate Argo 1200 (50% share) | B0509FINMW1500642 | $10 Million x/s $40 Million |
|  | Royal & Sun Alliance Insurance Company of Canada (50% share) | 9501712 |  |
| 5th Excess | Everest Insurance | E3DO000101 | $10 Million x/s $50 |

[2] Valeant also purchased an additional $75 million of "Side A DIC" coverage that applies solely to non-indemnifiable loss of its directors and officers and that is not at issue in this action at this time.

| Layer | Insurance Company | Policy No. | Coverage Limits |
|---|---|---|---|
| | Company of Canada | | Million |
| 6th Excess | Liberty International Underwriters, a division of Liberty Mutual Insurance Company (50% share) | DOTOAAGHNZ005 | $10 Million x/s $60 Million |
| | Lloyd's Syndicate MIT 3210 (50% share) | B0509FINMW1500626 | |
| 7th Excess | Lloyd's Syndicate SJC 2003 | B0509FINMW1500938 | $10 Million x/s $70 Million |
| 8th Excess | Allianz Global Risks US Insurance Company (12.5% share) | FPL 7228580 | $20 Million x/s $80 Million |
| | Lloyd's Syndicate QBE 1886 (50% share) | B0509FINMW1500618 | |
| | Lloyd's Syndicate ANV 1861 (25% share) | B0509FINMW1500618 | |
| | Lloyd's Syndicate NAV 1221 (12.5% share) | B0509FINMW1500618 | |
| 9th Excess | XL Insurance Company SE | B0509FINMW1501095 | $10 Million x/s $100 Million |
| 10th Excess | AIG Insurance Company of Canada | FINMW1501096/0033025183 | $15 Million x/s $110 Million |
| 11th Excess | Temple Insurance Company | B0509FINMW1500627 | $15 Million x/s $125 Million |
| 12th Excess | Lloyd's Syndicate MIT 3210 (50% share) | B0509FINMW1500629 | $10 Million x/s $140 Million |
| | Lloyd's Syndicate AMA 1200 (50% share) | | |
| 13th Excess | ACE INA Insurance Company (20% share) | DOX027335 | $25 Million x/s $150 Million |
| | Lloyd's Syndicate | | |

| Layer | Insurance Company | Policy No. | Coverage Limits |
|-------|-------------------|-----------|-----------------|
| | HCC 4141 (20% share) | 15G142820113 | |
| | Ironshore Canada Ltd. (20% share) | C444803015 | |
| | Royal & Sun Alliance Insurance Company of Canada (20% share) | 9501713 | |
| | Lloyd's Syndicate BRT 2987 (10% share) | B0509FINMW1500630 | |
| | Lloyd's Syndicate NAV 1221 (10% share) | B0509FINMW1500630 | |

50.    Each of the 2015-16 Excess Policies "follow-form" to the coverage provided by the 2015-16 Primary Policy, except where the 2015-16 Excess Policies provide otherwise. Specifically, each of the 2015-16 Excess Policies provides: "Except as otherwise provided in the Declarations or by any endorsement attached hereto, this policy is subject to the same insuring clauses, definitions, terms and conditions, exclusions, cancellation provisions and all other provisions of the underlying insurance."

51.    During the application process for the 2015-16 Program, Valeant informed the 2015-16 Insurers that its headquarters was in Quebec. That information was also publically available to the 2015-16 Insurers, as Valeant's public filings make clear that its headquarters and principal place of business are in Quebec.

52.    The 2015-16 Primary Policy and the 2015-16 Excess Policies (collectively, the "2015-16 Policies") were issued in Quebec and subject to Quebec law.

53.    The first page of the 2015-16 Primary Policy states that the policy was being issued to Valeant at its Quebec headquarters – 2150 Boul Saint-Elzear 0 Laval, QC H7L – 4A8. Recognizing that the policy was being issued in Quebec and subject to Quebec law, the policy

19

also provides in the "Conformance to Law" section that: "Where this policy is legally required to be interpreted in accordance with the laws of the Province of Quebec...The policy provisions shall be deemed amended to comply with the applicable mandatory provisions of the Quebec Civil Code, but only to the extent necessary to comply with such mandatory provisions of the Quebec Civil Code and only to the extent that such mandatory provisions are contrary to the existing terms of this policy." The 2015-16 Primary Policy also contains a "Privacy Principles" section in French from AIG's Quebec office.

54.    The 2015-16 Excess Policies each contain a choice of law clause providing that Quebec law governs. Specifically, each of the 2015-16 Excess Policies recognizes that the policy is being issued in Quebec by listing Valeant's Quebec address and explicitly provides: "It is understood and agreed by both the Insured and Underwriter(s) that the governing law and any dispute concerning the interpretation of this policy shall be governed by the law of the province in Canada in which this policy is issued."

55.    Each of the 2015-16 Excess Policies issued by a Lloyd's Syndicate or Lloyd's Consortium – including the first layer excess policy issued by Lloyd's Syndicate AWH 2232 – provides that the relevant Insurer has mandated that the Lloyd's Attorney-In-Fact ("AIF") for Canada will bind coverage on their behalf. These policies each state: "The AIF shall confirm Lloyd's Underwriters' coverage by signing in Canada a policy that will contain the terms and conditions set out in this contract (the "Canadian Policy"), and by communicating from Canada the issuance of that policy to the policyholder or his broker... ." These policies specify that the address for the Lloyd's AIF in Canada is "1155, rue Metcalfe, Suite 220, Montreal, Quebec, H3B 2V6." This further confirms that each of the 2015-16 Excess Policies issued by a Lloyd's Syndicate or Lloyd's Consortium was issued in Quebec pursuant to Quebec law.

56.     One of the 2015-16 Insurers – Royal & Sun Alliance Insurance Company of Canada -- has admitted in coverage correspondence that the 2015-16 Policies are governed by Quebec law.

57.     The premiums paid for the 2015-16 Policies were allocated to the Valeant Quebec parent company and were subject to Quebec tax.

**The Coverage Promised Under the Programs, and the Coverage Mandated By Quebec Law**

58.     The relevant coverage provisions of the 2013-14 Policies and 2015-16 Policies (collectively, the "Policies") are identical. Thus, although the 2013-14 Program and 2015-16 Program provide coverage for different time periods and in different amounts, the scope of coverage provided to Valeant by the Insurers under the two Programs is the same.

59.     The Policies contain three coverage parts:  Coverage Parts A, B, and C.  The Policies provide in a section labelled "Worldwide Territory" that this coverage applies "anywhere in the world."

60.     Coverage Part A – "Insured Person Coverage" – provides, in part, that the Insurers "shall pay the Loss of any Insured Person that no Organization has indemnified or paid, and that arises from any:  (1) Claim…made against such Insured Person…"

61.     Coverage Part B – "Indemnification Of Insured Person Coverage" – provides, in part, that the Insurers "shall pay the Loss of an Organization that arises from any:  (1) Claim…made against any Insured Person…to the extent that such Organization has indemnified such Loss…"

62.     Coverage Part C – "Organization Coverage" – provides in part that the Insurers "shall pay the Loss of any Organization:  (1) arising from any Securities Claim made against such Organization…"

63.     The Policies define "Organization" to include Valeant and its subsidiaries.  The Policies define "Insured Persons" to include, among others, Valeant's "Executives" which includes all past or current directors and officers.

64.     Thus, under Coverage Parts B and C of the Policies, the Insurers agreed to pay all "Loss" arising from either (1) a "Claim" against Valeant's officers or directors or (2) a "Securities Claim" against Valeant or its subsidiaries.

65.     "Loss" is defined in the Policies to include, among other things, "damages, settlements, judgments…Defence Costs…"  "Defence Costs" is defined to include, among other things, the "fees, costs and expenses" resulting from "the investigation, adjustment, defense and/or appeal of a Claim."

66.     The Policies define a "Claim" to include, among other things, any civil proceeding commenced by service of a complaint and also any "Insured Person Investigation." The Policies define an "Insured Person Investigation" to include, in part, any civil, criminal, administrative or regulatory investigation of an Insured Person once the Insured Person has received a subpoena from certain investigative bodies (such as the Securities and Exchange Commission) or been identified as a target of an investigation.

67.     The Policies define a "Securities Claim," in part, as any Claim:

(1)  [A]lleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:

(a)  brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer to purchase or sell any securities of an **Organization**; or

(b)  brought by a security holder or purchaser or seller of securities of an **Organization** with respect to such security holder's, purchaser's or seller's interest in securities of such **Organization**…

22

(emphasis in original).

68.    As discussed below, the 2013-14 Claims and 2015-16 Claims constitute "Securities Claims" against Valeant and its subsidiaries and "Claims" against Valeant's former or current directors and officers (that Valeant has been indemnifying), thus requiring the Insurers to pay all "Loss" – including "Defence Costs," settlements, and judgments – arising from such Claims and Securities Claims.

69.    Additionally, Quebec law imposes a duty upon the Insurers to pay the costs of defending covered claims (i.e., the "Defence Costs") without reducing the $150 million and $175 million limits of the respective Programs.

70.    Article 2500 of Quebec's Civil Code requires: "The proceeds of the insurance are applied exclusively to the payment of injured third persons" and Article 2503 requires: "Legal costs and expenses resulting from actions against the insured, including those of the defence, and interest on the proceeds of the insurance are borne by the insurer over and above the proceeds of the insurance." This is a mandatory provision of Quebec law, and because the Policies were issued in Quebec under Quebec law, they are deemed to be amended to provide this mandatory coverage to Valeant.

71.    The purchase of the Programs ended up being a prudent decision by Valeant. Valeant, its subsidiaries, and its former and current directors and officers have been named as defendants in substantial lawsuits that fall within the coverage provided under the 2013-14 Program and 2015-16 Program respectively. These lawsuits seek many billions of dollars in damages, and Valeant has already incurred substantial costs, far in excess of its deductibles under the Programs, defending against both the 2013-14 Claims and 2015-16 Claims.

23

**The 2013-14 Claims**

72.     On December 16, 2014, Plaintiffs and Valeant's former CEO Michael Pearson
were named as defendants in a class action lawsuit brought by former shareholders of Allergan.
This class action was originally titled *Anthony Basile, et al. v. Valeant Pharmaceuticals
International, Inc. et al.*, Case No. 2:14-cv-02004 (C.D. Ca.).    After lead plaintiffs were
appointed, they filed a consolidated class action complaint styled as *In re Allergan, Inc. Proxy
Violation Securities Litigation*, Case No. 8:14-cv-2004 (C.D. Ca.) (the "Allergan Class Action").
A related case to the Allergan Class Action– titled *Timber Hill LLC, individually and on behalf
of all others similarly situated v. Pershing Square Capital Management, L.P., et al.* – was also
filed against Plaintiffs and Mr. Pearson on June 28, 2017.  Together, these actions are referred to
herein as the "2013-14 Claims."

73.     As the 2013-14 Insurers have acknowledged, the 2013-14 Claims fall within the
time period covered by the 2013-14 Program because, prior to the end of the policy period,
Valeant reported an earlier lawsuit, filed against Valeant by Allergan (*Allergan, Inc. et al. v.
Valeant Pharmaceuticals International, Inc. et al.*, Case No. 8:14-cv-0124 (C.D. Ca.)), for which
the 2013-14 Insurers denied coverage but treated as a "notice of circumstances" such that later
covered claims involving Allergan would be deemed to have been made during the 2013-14
policy period.

74.     The 2013-14 Claims allege that Valeant, Valeant USA, AGMS, and Mr. Pearson
(the "Valeant Defendants") violated the federal securities laws governing tender offers –
specifically, Section 14(e) of the Exchange Act, and Rule 14e-3 thereunder, and Section 20A of
the Exchange Act - in connection with a tender offer Valeant made to Allergan's shareholders
in which Valeant offered to exchange its shares, or a mixture of its shares and cash, for Allergan
shares).  In short, the 2013-14 Claims allege that the Valeant Defendants, together with a hedge

24

fund called Pershing Square Capital Management, L.P., certain of its affiliates, and its founder (the "Pershing Defendants"), violated the regulations governing tender offers by agreeing that the Pershing Defendants would acquire shares of Allergan based on non-public information (i.e., an impending tender offer by Valeant) as part of a scheme for Valeant to obtain control of Allergan through the tender offer. The 2013-14 Claims seek damages in excess of the limits of the 2013-14 Program.

75.    The 2013-14 Claims constitute covered "Claims" against Mr. Pearson and covered "Securities Claims" against Valeant, Valeant USA, and AGMS. Thus, the 2013-14 Insurers are contractually obligated to pay all "Loss" arising from the 2013-14 Claims, including all "Defence Costs" incurred in connection with the 2013-14 Claims. Further, because the 2013-14 policies are governed by Quebec law, the 2013-14 Insurers are statutorily required to pay those Defence Costs without reducing the $150 million limits of the 2013-14 Program available to pay potential settlements of or judgments in the 2013-14 Claims.

**The 2015-16 Claims**

76.    Between September 28, 2015 and June 7, 2016, Valeant suffered a significant decline in the price of its stock. Following that stock drop, Valeant and many of its current and former officers and directors have been sued in numerous litigations alleging that they violated U.S. and Canadian securities laws and committed other alleged wrongful acts. These litigations, which were reported to the 2015-16 Insurers under the 2015-16 Program, and which the 2015-16 Insurers have acknowledged fall within that policy period, are referred to herein as the "2015-16 Claims." The 2015-16 Claims include:

a.    Securities class action lawsuits brought by Valeant's U.S. security holders which have now been consolidated in *In re Valeant Pharmaceuticals International, Inc. Securities Litigation* (D.N.J., Master No. 3:15-cv-07658-MAS-LHG); *Potter v.*

25

*Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 3:15-cv-7658); *Chen v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 3:15-cv-7679); *Yang v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 2:33-av-00001); *Fein v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 3:15-cv-7809).

b.   Securities class action lawsuits brought by Valeant's Canadian and other non-U.S. security holders in Canada, including but not limited to: *Catucci v. Valeant Pharmaceuticals International, Inc., et al.* (Quebec, Case No. 540-17-11743-159); *Rosseau-Godbout v. Valeant Pharmaceuticals International, Inc., et al.* (Quebec, Case No. 500-06-770-152); *Kowalyshyn v. Valeant Pharmaceuticals International, Inc., et al.* (Ontario, Case No. CV-15-540593-00CP); *Kowalyshyn v. Valeant Pharmaceuticals International, Inc., et al.* (Ontario, Case No. CV-15-5410823-00CP); *Alladina v. Valeant Pharmaceuticals International, Inc., et al.* (British Columbia, Case No. S-159486); *O'Brien v. Valeant Pharmaceuticals International, Inc., et al.* (Ontario, Case No. CV-15-543678-00CP); *Okeley v. Valeant Pharmaceuticals International, Inc., et al.* (British Columbia, Case No. S-159991).

c.   Lawsuits filed by Valeant security holders who are not proceeding as part of the class actions, including but not limited to: *T. Rowe Price Growth Stock Fund, Inc., et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-05034-MAS-LHG); *Equity Trustees Limited as Responsible Entity for T. Rowe Price Global Equity Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-06127-MAS-LHG); *Principal Funds, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-06128-MAS-LHG); *Bloombergsen Partners Fund, LP. et al. v. Valeant Pharmaceuticals*

26

*International, Inc., et al.* (D.N.J., Case No. 16-cv-07212-MAS-LHG); *Pentwater Equity Opportunities Master Fund Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 17-cv-07552-MAS-LHG); *The Boeing Company Employee Retirement Plans Master Trust and The Boeing Company Employee Savings Plans Master Trust v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 17-cv-07636-MAS-LHG); *Public Employees Retirement System of Mississippi v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 17-cv-07625-MAS-LHG); *Valic Company I, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07496-MAS-LHG); *Janus Aspen Series, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07497-MAS-LHG); *MSD Torchlight Partners, L.P. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07324-MAS-LHG); *BlueMountain Foinaven Master Fund L.P. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07328-MAS-LHG); *Incline Global Master LP, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07494-MAS-LHG); *Lord Abbett Investment Trust – Lord Abbett Short Duration Income Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 17-cv-06365-MAS-LHG); *Discovery Global Citizens Master Fund, Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07321-MAS-LHG); *Okumus Opportunistic Value Fund, Ltd. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 17-cv-06513-MAS-LHG); *Forsta Ap-Fonden, et al. v. Valeant Pharmaceuticals International, Inc., et al.,*

d.  A lawsuit filed by third party payors to Valeant titled *In re Valeant Pharmaceuticals International. Inc. Third Party Payor Litigation* (D.N.J., Case No. 16-civ-03087-MAS-LHG).

e.  Various regulatory investigations of various former or current officers, directors and employees of Valeant, including but not limited to investigations by the Securities and Exchange Commission, United States Justice Department and United States Congress.

77.   The 2015-16 Claims constitute covered "Securities Claims" against Valeant and "Claims" against the former and current Valeant directors and officers named as defendants. Thus, the 2015-16 Insurers are contractually obligated to pay all "Loss" arising from the 2015-16 Claims, including all "Defence Costs" incurred in connection with the 2015-16 Claims. Further, because the 2015-16 Policies are governed by Quebec law, the 2015-16 Insurers are statutorily required to pay these Defence Costs without reducing the $175 million limits of the 2015-16 Program available to pay potential settlements of or judgments in the 2015-16 Claims.

**The Insurers Have Breached Their Obligations Under the Policies and Quebec Law**

78.   Valeant provided timely notice of the 2013-14 Claims to the 2013-14 Insurers and timely notice of the 2015-16 Claims to the 2015-16 Insurers.

79.   Valeant has incurred substantial "Defence Costs" with respect to the 2013-14 Claims and has incurred substantial "Defence Costs" with respect to the 2015-16 Claims.

80.   Despite having collected millions of dollars in premiums for the Policies from Valeant, however, when called upon to provide the coverage required by the terms of the Policies and mandatory provisions of Quebec law, the Insurers have failed and refused to comply with their obligations.

28

81.    The 2013-14 Insurers have denied coverage to Plaintiffs for the 2013-14 Claims. The 2013-14 Insurers contend that the 2013-14 Claims are not "Securities Claims" and that they therefore have no obligation to provide coverage to Plaintiffs for the 2013-14 Claims.

82.    The 2013-14 Insurers' denial of coverage to Plaintiffs for the 2013-14 Claims is meritless, as the 2013-14 Claims fall squarely within the Policies' definition of "Securities Claims." The 2013-14 Insurers have therefore breached their contractual obligations to Plaintiffs under the 2013-14 Policies by wrongfully denying coverage for the 2013-14 Claims.

83.    Although the 2013-14 Insurers have pretended to acknowledge that the 2013-14 Claims constitute covered "Claims" against Michael Pearson, they have in effect denied coverage for those Claims by erroneously contending that Mr. Pearson's exposure is de minimis in comparison to Valeant's exposure.  Accordingly, they have not paid a single penny of "Defense Costs" incurred by Valeant with respect to the 2013-14 Claims (whether on its own behalf or on behalf of Mr. Pearson).

84.    Further, the 2013-14 Insurers have also taken the position that even if they paid "Defence Costs" (and they have paid none), any such payment of "Defence Costs" would erode the limits of the 2013-14 Program. Thus, the 2013-14 Insurers have not only breached the terms of the 2013-14 Policies by wrongfully denying coverage for the 2013-14 Claims, they have also breached the 2013-14 Policies by repudiating their mandatory obligation under Quebec law to pay their insureds' costs of defense without depleting the coverage limits of the 2013-14 Program.

85.    The 2015-16 Insurers have likewise repudiated the obligations imposed upon them by Quebec law and thus breached the 2015-16 Policies.  Although the 2015-16 Insurers have purported to acknowledge coverage for some of the 2015-16 Claims, subject to reservations of rights, they have not paid a single penny to Valeant for the substantial "Defence Costs"

Valeant has incurred on its own behalf and on behalf of its current and former directors and officers in defending against the 2015-16 Claims. Further, the 2015-16 Insurers have taken the position that even if they paid "Defence Costs" for the 2015-16 Claims (and they have paid none), any such payment of "Defence Costs" would erode the limits of the 2015-16 Program. Thus, the 2015-16 Insurers, like the 2013-14 Insurers, have repudiated their mandatory obligation under Quebec law to pay their insureds' costs of defense without depleting the coverage limits of the 2015-16 Policies and breached their contractual obligations under the 2015-16 Policies.

## Agreement to Stay Claims Pending Expiration of the Policies' "Waiting Period"

86.    The Policies provide that the parties must mediate any dispute under the Policies before commencing judicial proceedings. The Policies further provide that the parties will not commence judicial proceedings until 60 days after the mediation has terminated.

87.    A mediation between Plaintiffs and the Insurers was held on November 30 and December 1, 2017 and ended in an impasse.

88.    Although 60 days have not elapsed since the mediation, Plaintiffs have filed this litigation in an abundance of caution so as to avoid any argument by the Insurers that Quebec's prescription period (its equivalent to a statute of limitations) will have expired during the "waiting period" as to any of the costs Plaintiffs seek to recover in this action.

89.    Plaintiffs agree to extend the time for the Insurers to respond to this Complaint by 60 days so as to comply with the contractual waiting period and avoid any prejudice to the Insurers.

## FIRST COUNT
**(Declaratory Judgment on Defense Duties: By All Plaintiffs Against the 2013-14 Insurers)**

90.    Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

91.    Under the 2013-14 Policies, the 2013-14 Insurers are required to pay "Loss," including "Defence Costs," arising from "Securities Claims" against the Plaintiffs and "Claims" against Plaintiffs' directors and officers.  Under Quebec law, the 2013-14 Insurers must pay such Defence Costs without reducing the limits available under the 2013-14 Policies.

92.    The 2013-14 Claims constitute covered Securities Claims against the Plaintiffs and covered Claims against Michael Pearson.

93.    Plaintiffs have incurred, and are continuing to incur, substantial Defence Costs with respect to the 2013-14 Claims on behalf of themselves and Mr. Pearson.

94.    The 2013-14 Insurers have wrongfully denied coverage to Plaintiffs for the 2013-14 Claims, failed to pay any of the Defence Costs incurred by Plaintiffs to date, and have refused to pay Defence Costs without reducing the limits of the 2013-14 Policies as required by Quebec law.

95.    Accordingly, an actual case or controversy exists between Plaintiffs and the 2013-14 Insurers regarding the obligations owed to Plaintiffs under the 2013-14 Policies.

**WHEREFORE**, Plaintiffs demand a judgment declaring and adjudicating that (1) the 2013-14 Insurers are required to pay the costs Plaintiffs have incurred, and continue to incur, in defending against the 2013-14 Claims and (2) either AIG as the primary insurer or all of the 2013-14 Insurers on a several basis are required to pay the costs Plaintiffs have incurred, and continue to incur, in defending against the 2013-14 Claims without reducing the limits available

31

under the 2013-14 Policies, together with whatever further relief the Court deems just and proper.

In the alternative, and only in the event that the primary policy issued by AIG is found not to be governed by Quebec law, Plaintiffs demand a judgment declaring and adjudicating that (1) the 2013-14 Insurers are required to pay the costs Plaintiffs have incurred, and continue to incur, in defending against the 2013-14 Claims; (2) AIG must pay its $10 million limits to Plaintiffs for costs already incurred in defending against the 2013-14 Claims, (3) the limits of the primary AIG policy have been exhausted by the costs incurred by Plaintiffs in defending against the 2013-14 Claims, and (4) either Lloyd's Syndicate AWH 2232 as the first layer excess insurer or some or all of the 2013-14 Excess Insurers on a several basis must pay all costs incurred by Plaintiffs in excess of AIG's primary limit of liability in defending against the 2013-14 Claims without reducing the limits available under those Insurers' 2013-14 Policies, together with whatever further relief the Court deems just and proper.

## SECOND COUNT
### (Declaratory Judgment on Defense Duties:  By Valeant Against the 2015-16 Insurers)

96.     Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

97.     Under the 2015-16 Policies, the 2015-16 Insurers are required to pay "Loss," including "Defence Costs," arising from "Securities Claims" against Valeant and "Claims" against Valeant's directors and officers.  Under Quebec law, the 2015-16 Insurers must pay such Defence Costs without reducing the limits available under the 2015-16 Policies.

98.     The 2015-16 Claims constitute covered Securities Claims against Valeant and covered Claims against Valeant's current and former directors and officers.

32

99.    Valeant has incurred, and is continuing to incur, substantial Defence Costs with respect to the 2015-16 Claims on behalf of itself and its current and former directors and officers.

100.    The 2015-16 Insurers have failed to pay any of the Defence Costs incurred by Valeant to date and have refused to pay Defence Costs without reducing the limits of the 2015-16 Policies as required by Quebec law.

101.    Accordingly, an actual case or controversy exists between Valeant and the 2015-16 Insurers regarding the obligations owed to Valeant under the 2015-16 Policies.

WHEREFORE, Plaintiff Valeant demands a judgment declaring and adjudicating that (1) the 2015-16 Insurers are required to pay the costs Valeant has incurred, and continues to incur, in defending against the 2015-16 Claims and (2) either AIG as the primary insurer or all of the 2015-16 Insurers on a several basis are required to pay the costs Valeant has incurred, and continues to incur, in defending against the 2015-16 Claims without reducing the limits available under the 2015-16 Policies, together with whatever further relief the Court deems just and proper.

In the alternative, and only in the event that the primary policy issued by AIG is found not to be governed by Quebec law, Plaintiffs demand a judgment declaring and adjudicating that (1) the 2015-16 Insurers are required to pay the costs Plaintiffs have incurred, and continue to incur, in defending against the 2015-16 Claims; (2) AIG must pay its $10 million limits to Valeant for costs already incurred in defending against the 2015-16 Claims, (3) the limits of the primary AIG policy have been exhausted by the costs incurred by Plaintiffs in defending against the 2015-16 Claims, and (4) either Lloyd's Syndicate AWH 2232 as the first layer excess insurer or some or all of the 2015-16 Excess Insurers on a several basis must pay all costs incurred by Plaintiffs in excess of AIG's primary limit of liability in defending against the 2015-16 Claims

33

without reducing the limits available under those Insurers' 2015-16 Policies, together with whatever further relief the Court deems just and proper.

## THIRD COUNT
### (Declaratory Judgment on Defense Duties:  By All Plaintiffs Against Lloyd's Syndicate AWH 2232 with respect to Lloyd's Syndicate AWH 2232's 2013-14 Policy)

102.    Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

103.    AIG has denied that it is obligated to pay for Defence Costs that exceed the limits provided in the 2013-14 Primary Policy in accordance with Articles 2500 and 2503 of Quebec's Civil Code.

104.    Due to AIG's denial of coverage for Defence Costs and breach of its duty to defend Plaintiffs and other Insureds as required by Articles 2500 and 2503 of Quebec's Civil Code, Lloyd's Syndicate AWH 2232 is obligated to pay for all of Plaintiffs' Defence Costs without application of any deductible or self-insured retention and without eroding the limits provided in its 2013-14 Policy as required by Quebec law.

105.    Plaintiffs have incurred Defence Costs in excess of the limits of the 2013-14 Primary Policy.

106.    Due to AIG's denial of coverage for Defence Costs that exceed the limits set forth in the 2013 Primary Policy, Lloyd's Syndicate AWH 2232 is obligated to pay for all of Plaintiffs' Defence Costs without eroding the limits provided in its 2013-14 Policy as required by Quebec law.

107.    Lloyd's Syndicate AWH 2232 has failed to pay any of the Defence Costs incurred by Plaintiffs to date and has refused to pay Defence Costs without eroding the limits of its 2013-14 Policy as required by Quebec law.

34

08.     Accordingly, an actual case or controversy exists between Plaintiffs and the Lloyd's Syndicate AWH 2232 regarding the obligations owed to Plaintiffs under the Lloyd's Syndicate AWH 2232 2013-14 Policy.

**WHEREFORE**, Plaintiffs demand a judgment declaring and adjudicating that Lloyd's Syndicate AWH 2232's duty to pay for Defence Costs under its 2013-14 Policy without eroding the Policy's limits has been triggered by AIG's wrongful denial of coverage, together with whatever further relief the Court deems just and proper.

**FOURTH COUNT**
**(Declaratory Judgment on Defense Duties: By Valeant Against Lloyd's Syndicate AWH 2232 with respect to Lloyd's Syndicate AWH 2232's 2015-16 Policy)**

109.     Valeant repeats the relevant allegations set forth above as if set forth herein at length.

1.     AIG has denied that it is obligated to pay for Defence Costs that exceed the limits provided in the 2015-16 Primary Policy in accordance with Articles 2500 and 2503 of Quebec's Civil Code.

111.     Due to AIG's denial of coverage for Defence Costs and breach of its duty to defend Valeant and other Insureds as required by Articles 2500 and 2503 of Quebec's Civil Code, Lloyd's Syndicate AWH 2232 is obligated to pay for all of Valeant's Defence Costs without application of any deductible or self-insured retention and without eroding the limits provided in its 2015-16 Policy as required by Quebec law.

12.     Valeant has incurred Defence Costs in excess of the limits of the 2013-14 Primary Policy.

13.     Due to AIG's denial of coverage for Defence Costs that exceed the limits set forth in the 2015-16 Primary Policy, Lloyd's Syndicate AWH 2232 is obligated to pay for all of

35

Valeant's Defence Costs without eroding the limits provided in its 2015-16 Policy as required by Quebec law.

114.    Lloyd's Syndicate AWH 2232 has failed to pay any of the Defence Costs incurred by Valeant to date and has refused to pay Defence Costs without eroding the limits of its 2015-16 Policy as required by Quebec law.

15.    Accordingly, an actual case or controversy exists between Valeant and Lloyd's Syndicate AWH 2232 regarding the obligations owed to Valeant under the Lloyd's Syndicate AWH 2232 2015-16 Policy.

**WHEREFORE,** Plaintiff Valeant demands a judgment declaring and adjudicating that Lloyd's Syndicate AWH 2232's duty to pay for Defence Costs under its 2015-16 Policy without eroding the Policy's limits has been triggered by AIG's wrongful denial of coverage, together with whatever further relief the Court deems just and proper.

## FIFTH COUNT
## (Declaratory Judgment on Coverage:  By All Plaintiffs Against the 2013-14 Insurers)

116.    Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

117.    Under the 2013-14 Policies, the 2013-14 Insurers are required to pay all "Loss" arising from "Securities Claims" against the Plaintiffs and "Claims" against Plaintiffs' directors and officers.

118.    The 2013-14 Claims constitute covered Securities Claims against the Plaintiffs and covered Claims against Valeant's former CEO Michael Pearson.

119.    The 2013-14 Insurers have wrongfully denied coverage to Plaintiffs for the 2013-14 Claims.

120.    Accordingly, an actual case or controversy exists between Plaintiffs and the 2013-14 Insurers regarding the obligations owed to Plaintiffs under the 2013-14 Policies.

**WHEREFORE**, Plaintiffs demand a judgment declaring and adjudicating that the 2013-14 Claims are covered under the 2013-14 Policies, together with whatever further relief the Court deems just and proper.

## SIXTH COUNT
### (Declaratory Judgment on Coverage:  By Valeant Against the 2015-16 Insurers)

121.    Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

122.    Under the 2015-16 Policies, the 2015-16 Insurers are required to pay all "Loss" arising from "Securities Claims" against Valeant and "Claims" against Valeant's directors and officers.

123.    The 2015-16 Claims constitute covered Securities Claims against Valeant and covered Claims against Valeant's current and former directors and officers.

124.    The 2015-16 Insurers have reserved their rights to deny coverage for the 2015-16 Claims rather than acknowledge coverage.

125.    Accordingly, an actual case or controversy exists between Valeant and the 2015-16 Insurers regarding the obligations owed to Valeant under the 2015-16 Policies.

**WHEREFORE**, Plaintiff Valeant demands a judgment declaring and adjudicating that the 2015-16 Claims are covered under the 2015-16 Policies, together with whatever further relief the Court deems just and proper.

## SEVENTH COUNT
### (Breach of Contract:  By All Plaintiffs Against the 2013-14 Insurers)

126.    Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

127.    Valeant and each of the 2013-14 Insurers entered into binding, valid and enforceable insurance contracts in connection with the 2013-14 Program providing insurance coverage to Plaintiffs.

128.    Valeant has complied with any applicable conditions for coverage, including paying the required premiums for the 2013-14 Policies.

129.    The 2013-14 Insurers have breached their contractual obligations to Plaintiffs under the 2013-14 Policies by wrongfully denying coverage for the 2013-14 Claims, failing to pay Defence Costs for the 2013-14 Claims, and refusing to pay Defence Costs outside of the limits of the 2013-14 Policies.

**WHEREFORE**, Plaintiffs demand a judgment against either AIG as the primary insurer or all of the 2013-14 Insurers on a several basis for all costs incurred in defending the 2013-14 Claims, without reducing the limits of the 2013-14 Policies, together with whatever further relief the Court deems just and proper.

## EIGHTH COUNT
### (Breach of Contract: By Valeant Against the 2015-16 Insurers)

130.    Valeant repeats the relevant allegations set forth above as if set forth herein at length.

131.    Valeant and each of the 2015-16 Insurers entered into binding, valid and enforceable insurance contracts in connection with the 2015-16 Program providing insurance coverage to Valeant.

38

132.     Valeant has complied with any applicable conditions for coverage, including paying the required premiums for the 2015-16 Policies.

133.     The 2015-16 Insurers have breached their contractual obligations to Valeant under the 2015-16 Policies by refusing to pay Defence Costs incurred by Valeant outside of the limits of the 2015-16 Policies.

**WHEREFORE**, Valeant demands a judgment against either AIG as the primary insurer or all of the 2015-16 Insurers on a several basis for its costs incurred in defending the 2015-16 Claims, without reducing the limits of the 2015-16 Policies, together with whatever further relief the Court deems just and proper.

## NINTH COUNT
### (Attorneys' Fees:  By All Plaintiffs Against All Insurers)

134.     Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

135.     New Jersey Court Rule 4:42-9(a)(6) permits a party to recover fees for legal services "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant."

136.     This litigation involves claims on indemnity or liability insurance policies.

137.     Plaintiffs are entitled to all attorneys' fees, costs and expenses incurred in the successful prosecution of this action.

**WHEREFORE**, Plaintiffs demand a judgment for their costs, disbursements and attorneys' fees incurred in connection with this action, together with such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues so triable.

39

## DESIGNATION OF TRIAL COUNSEL

Pursuant to New Jersey Court Rule 4:25-4, Plaintiffs hereby designate Sherilyn Pastor and Gita Rothschild as trial counsel.

## CERTIFICATION PURSUANT TO RULE 4:5-1

WE HEREBY CERTIFY:  (a) we know of no pending or contemplated action, in any court or arbitration, involving the matter in controversy here; (b) Plaintiffs presently contemplate no other action or arbitration involving the matter in controversy here; and (c) we know of no other parties who should appear in this action at this time.  The foregoing statements made by us are true, and we know that if the foregoing is willfully false, we are subject to punishment.

Respectfully submitted,

McCARTER & ENGLISH, LLP

By: _____
Sherilyn Pastor (Bar I.D. # 026031988)
Gita F. Rothschild (Bar I.D. # 019281977)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

-and-

John E. Failla (applying for *pro hac vice admission*)
Nathan Lander (applying for *pro hac vice admission*)
Seth B. Schafler (applying for *pro hac vice admission*)
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
(212) 969-3000

*Attorneys for Plaintiffs,*
*Valeant Pharmaceuticals International, Inc.,*
*Valeant Pharmaceuticals International, and*
*AGMS, Inc.*

Dated:  December 7, 2017

40