MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.
Sean X. Kelly
Melissa J. Brown
Sean Robins
Cherry Tree Corporate Center
Suite 501
535 Route 38 East
Cherry Hill, New Jersey 08002
Tel: (856) 663-4300

WILFORD CONRAD LLP
David A. Wilford
Christopher T. Conrad
Sabina B. Danek
18 East Dundee Road
Building 6, Suite 150
Barrington, Illinois 60010
Tel: (224) 848-4723

*Attorneys for Defendants Liberty International Underwriters, a division of Liberty Mutual Insurance Company, Liberty Mutual Insurance Company, Royal & Sun Alliance Insurance Company of Canada, Certain Underwriters at Lloyd's, London subscribing to Policy No. QB078613, Certain Underwriters at Lloyd's, London subscribing to Policy No. QB078913, Certain Underwriters at Lloyd's, London subscribing to Policy No. QB146013, Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500612, Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500642, Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500626, Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500618 via Syndicates 1886 and 1861; Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500629, and Chubb Insurance Company of Canada*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

--------------------------------------------------------------x

| | | |
|---|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC.; VALEANT PHARMACEUTICALS INTERNATIONAL; and AGMS, INC., | : : : : | Civil Action No.: 3:18-cv-00493 |
| Plaintiffs, | : : : | Hon. Michael Shipp |
| v. | : : | COUNTERCLAIM OF CERTAIN COUNTER-PLAINTIFFS |
| AIG INSURANCE COMPANY OF CANADA; ACE INA INSURANCE COMPANY; ALLIANZ | : : | |

GLOBAL RISKS US INSURANCE COMPANY; :
ARCH INSURANCE CANADA LTD; EVEREST :
INSURANCE COMPANY OF CANADA; :
HARTFORD FIRE INSURANCE COMPANY; :
IRONSHORE CANADA LTD.; LIBERTY :
INTERNATONAL UNDERWRITERS, a division :
of LIBERTY MUTUAL INSURANCE :
COMPANY; and LIBERTY MUTUAL :
INSURANCE COMPANY; LLOYD'S :
UNDERWRITERS; LLOYD'S CONSORTIUM :
9885 (a/k/a STARR FINANCIAL LINES :
CONSORTIUM 9885); LLOYD'S SYNDICATE :
ANV 1861; LLOYD'S SYNDICATE AMA 1200; :
LLOYD'S SYNDICATE ARGO 1200; LLOYD'S :
SYNDICATE AWH 2232; LLOYD'S :
SYNDICATE BRT 2987; LLOYD'S SYNDICATE :
CVS 1919; LLOYD'S SYNDICATE HCC 4141; :
LLOYD'S SYNDICATE MITSUI 3210; :
LLOYD'S SYDNICATE MIT 3210; LLOYD'S :
SYNDICATE NAV 1221; LLOYD'S :
SYNDICATE QBE 1886; LLOYD'S :
SYNDICATE SJC 2003; ROYAL & SUN :
ALLIANCE INSURANCE COMPANY OF :
CANADA; TEMPLE INSURANCE COMPANY; :
and XL INSURANCE COMPANY SE, :
 :
     Defendants. :
------------------------------------------------------------x

## <u>COUNTERCLAIM</u>

Counter-Plaintiffs Liberty International Underwriters, a division of Liberty Mutual Insurance Company ("LIU"), Liberty Mutual Insurance Company ("Liberty"), Royal & Sun Alliance Insurance Company of Canada ("RSA"), Certain Underwriters at Lloyd's, London subscribing to Policy No. QB078613, incorrectly named as "Lloyd's Syndicate CVS 1919" ("Policy No. QB078613 Underwriters"), Certain Underwriters at Lloyd's, London subscribing to Policy No. QB078913, incorrectly named as "Lloyd's Syndicate QBE 1886" and "Lloyd's Syndicate ANV 1861" ("Policy No. QB078913 Underwriters"), Certain Underwriters at Lloyd's, London subscribing to Policy No. QB146013, incorrectly named as "Lloyd's Syndicate Mitsui

3210" ("Policy No. QB146013 Underwriters"), Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500612, incorrectly named as "Lloyd's Consortium 9885 (a/k/a Starr Financial Lines Consortium 9885)" and "Lloyd's Syndicate QBE 1886" ("Policy No. B0509FINMW1500612 Underwriters"), Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500642, incorrectly named as "Lloyd's Syndicate Argo 1200" ("Policy No. B0509FINMW1500642 Underwriters"), Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500626, incorrectly named as "Lloyd's Syndicate MIT 3210" ("Policy No. B0509FINMW1500626 Underwriters"), Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500618 via Syndicates 1886 and 1861, incorrectly named as "Lloyd's Syndicate QBE 1886" and "Lloyd's Syndicate ANV 1861" ("Certain Policy No. B0509FINMW1500618 Underwriters"), Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500629, incorrectly named as "Lloyd's Syndicate MIT 3210" and "Lloyd's Syndicate AMA 1200" ("Policy No. B0509FINMW1500629 Underwriters"), and Chubb Insurance Company of Canada, formerly known as ACE INA Insurance Company ("Chubb") (collectively, the "Counter-Plaintiffs"), by and through their attorneys, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C. and WILFORD CONRAD LLP, hereby bring their Counterclaim against Valeant Pharmaceuticals International, Inc. ("Valeant CA"), Valeant Pharmaceuticals International ("Valeant USA"), and AGMS, Inc. ("AGMS") (collectively, the "Valeant Parties"), and state as follows:

1.    Upon personal knowledge of their own acts and status, and upon information and belief, the Counter-Plaintiffs allege as follows:

## NATURE OF THE ACTION

2.    This counterclaim concerns an actual case and controversy between the Counter-

Plaintiffs, on one hand, and Valeant CA, Valeant USA, and AGMS, on the other hand, regarding insurance policies issued by each Counter-Plaintiff to Valeant CA.

## PARTIES, JURISDICTION, AND VENUE

3.      Liberty is a Massachusetts corporation with its principal place of business in Massachusetts and operates a branch in Canada. LIU is a division of Liberty. Liberty, under the business name Liberty International Underwriters, issued insurance policies to Valeant CA.

4.      RSA is a Canadian corporation with its principal place of business in Canada that issued insurance policies to Valeant CA.

5.      Policy No. QB078613 Underwriters issued an insurance policy to Valeant CA, to which Lloyd's Syndicate CVS 1919 subscribed. Lloyd's Syndicate CVS 1919 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by Starr Managing Agents Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England.

6.      Policy No. QB078913 Underwriters issued an insurance policy to Valeant CA, to which Lloyd's Syndicates QBE 1886 and ANV 1861 subscribed. Lloyd's Syndicate QBE 1886 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by QBE Underwriting Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England. Lloyd's Syndicate ANV 1861 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by AmTrust Syndicates Limited, which is incorporated and registered under the laws of England

and Wales and maintains a principal place of business in London, England.

7. Policy No. QB146013 Underwriters issued an insurance policy to Valeant CA, to which Lloyd's Syndicate Mitsui 3210 subscribed. Lloyd's Syndicate Mitsui 3210 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by MS Amlin Underwriting Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England.

8. Policy No. B0509FINMW1500612 Underwriters issued an insurance policy to Valeant CA, to which Lloyd's Consortium 9885 and Lloyd's Syndicate QBE 1886 subscribed. Lloyd's Consortium 9885 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by Starr Managing Agents Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England. Lloyd's Syndicate QBE 1886 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by QBE Underwriting Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England.

9. Policy No. B0509FINMW1500642 Underwriters issued an insurance policy to Valeant CA, to which Lloyd's Syndicate Argo 1200 subscribed. Lloyd's Syndicate Argo 1200 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by Argo Managing Agency Limited, which is incorporated and registered under the laws of England and Wales and

maintains a principal place of business in London, England.

10.     Policy No. B0509FINMW1500626 Underwriters issued an insurance policy to Valeant CA, to which Lloyd's Syndicate MIT 3210 subscribed. Lloyd's Syndicate MIT 3210 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by MS Amlin Underwriting Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England.

11.     Certain Policy No. B0509FINMW1500618 Underwriters issued an insurance policy to Valeant CA, to which Lloyd's Syndicates QBE 1886, ANV 1861, and NAV 1221 subscribed.[1] Lloyd's Syndicate QBE 1886 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by QBE Underwriting Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England. Lloyd's Syndicate ANV 1861 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by AmTrust Syndicates Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England.

12.     Policy No. B0509FINMW1500629 Underwriters issued an insurance policy to Valeant CA, to which Lloyd's Syndicates MIT 3210 and AMA 1200 subscribed. Lloyd's Syndicate MIT 3210 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by MS Amlin Underwriting Limited, which is incorporated and registered under the

---

[1] Lloyd's Syndicate NAV 1221 is not a party to this Counterclaim.

laws of England and Wales and maintains a principal place of business in London, England. Lloyd's Syndicate AMA 1200 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from the Valeant Parties, and is managed by Argo Managing Agency Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England.

13.      ACE INA Insurance Company, which previously was a Canadian corporation with its principal place of business in Canada, issued an insurance policy to Valeant CA. As of October 1, 2016, the Canadian Minister of Finance amalgamated ACE INA Insurance Company and Chubb as one company under the name Chubb Insurance Company of Canada. Chubb is a Canadian corporation with its principal place of business in Canada.

14.      Valeant CA is a Canadian corporation with its principal place of business in Canada.

15.      Valeant USA is a Delaware corporation with its principal place of business in Bridgewater, New Jersey. Valeant USA is a subsidiary of Valeant CA.

16.      AGMS is a Delaware corporation and a wholly owned subsidiary of Valeant CA.

17.      This Court has personal jurisdiction over the Valeant Parties because the Valeant Parties initiated legal action against the Counter-Plaintiffs in New Jersey and have sufficient minimum contacts with New Jersey.

18.      Venue is proper in this District, because Valeant USA resides in this venue.

## 2013-14 PROGRAM INSURANCE POLICIES

19.      Policy No. QB078613 Underwriters issued policy number QB078613 to Valeant CA reflecting a claims made policy period of September 28, 2013 to September 28, 2014. Policy

number QB078613 is an excess policy, and reflects a $10 million aggregate limit of liability, in excess of $30 million in underlying insurance and a $5 million self-insured retention.

20.      Liberty, though its division LIU, issued policy number DOTOAAGHNZ003 to Valeant CA, reflecting a claims made policy period of September 28, 2013 to September 28, 2014. Policy number DOTOAAGHNZ003 is an excess policy, and reflects a $10 million aggregate limit of liability, in excess of $60 million in underlying insurance and a $5 million self-insured retention.

21.      Policy No. QB078913 Underwriters issued policy number QB078913 to Valeant CA reflecting a claims made policy period of September 28, 2013 to September 28, 2014. Policy number QB078913 is an excess policy, and reflects a $20 million aggregate limit of liability, in excess of $80 million in underlying insurance and a $5 million self-insured retention.

22.      RSA issued policy number 9501117 to Valeant CA reflecting a claims made policy period of September 28, 2013 to September 28, 2014. Policy number 9501117 is an excess policy, and reflects a $10 million aggregate limit of liability, in excess of $100 million in underlying insurance and a $5 million self-insured retention.

23.      Policy No. QB146013 Underwriters issued policy number QB146013 to Valeant CA reflecting a claims made policy period of September 28, 2013 to September 28, 2014. Policy number QB146013 is an excess policy, and reflects a $10 million aggregate limit of liability, in excess of $140 million in underlying insurance and a $5 million self-insured retention.

24.      Policy numbers QB078613, DOTOAAGHNZ003, QB078913, 9501117, and QB146013 are collectively referred to as the "2013-14 Excess Policies," and Policy No. QB078613 Underwriters, Liberty, LIU, Policy No. QB078913 Underwriters, RSA, and Policy No. QB146013 Underwriters are collectively the "2013-14 Counter-Plaintiffs."

25.     As excess insurance, the 2013-14 Policies state as follows:

This policy provides excess coverage only. It is a condition of this policy that the Underlying Insurance shall be maintained in full effect during the term of this policy, except for any reduction or exhaustion of the aggregate limits contained therein by reason of payment of loss …

[The excess insurer] shall be liable hereunder only after the Insurers of the Underlying Insurance . . . shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance. …

26.     Upon information and belief, Valeant CA's insurance tower for the 2013-14 policy year includes the following policies (the "2013-14 Program"):

| Layer | Insurer | Policy No. | Coverage Limits |
|-------|---------|-----------|-----------------|
| Primary | AIG Insurance Company of Canada | 01-421-57-69 | $10 Million |
| 1st Excess | Lloyd's Syndicate AWH 2232 | QB078513 | $10 Million x/s $10 Million |
| 2nd Excess | Allianz Global Risks US Insurance Company | FPL 7223891 | $10 Million x/s $20 Million |
| 3rd Excess | Policy No. QB078613 Underwriters | QB078613 | $10 Million x/s $30 Million |
| 4th Excess | Hartford Fire Insurance Company | DA 0271573-13 | $10 Million x/s $40 Million |
| 5th Excess | Everest Insurance Company of Canada | XD&O0000061 | $10 Million x/s $50 Million |
| 6th Excess | Liberty | DOTOAAGHNZ003 | $10 Million x/s $60 Million |
| 7th Excess | Arch Insurance Canada Ltd | DOX0046341-02 | $10 Million x/s $70 Million |
| 8th Excess | Policy No. QB078913 Underwriters | QB078913 | $20 Million x/s $80 Million |
| 9th Excess | RSA | 9501117 | $10 Million x/s $100 Million |
| 10th Excess | AIG Insurance Company of Canada | 2454458 | $15 Million x/s $110 Million |
| 11th Excess | Temple Insurance Company | LIA105678 | $15 Million x/s $125 Million |
| 12th Excess | Policy No. QB146013 Underwriters | QB146013 | $10 Million x/s $140 Million |

27.     Each of the 2013-14 Excess Policies "follow-form" to the coverage provided by

policy number 01-421-57-69, issued to Valeant CA by AIG Insurance Company of Canada for the claims made policy period of September 28, 2013 to September 28, 2014 (the "2013-14 Primary Policy"), except where the 2013-14 Excess Policies provide otherwise. In particular, each of the 2013-14 Excess Policies provide:

> Except as otherwise provided in the Declarations or by any endorsement attached hereto, this policy is subject to the same insuring clauses, definitions, terms and conditions, exclusions, cancellation provisions and all other provisions of the Underlying Insurance. This policy shall not provide coverage broader than that provided by any Underlying Insurance. . .

28.     The threshold for coverage pursuant to Insuring Agreement 1.C. of the 2013-14 Primary Policy is "**Loss** of any **Organization** . . . arising from any **Securities Claim** . . . made against such **Organization** for any **Wrongful Act** of such **Organization**."[2]

29.     The 2013-14 Primary Policy defines **Organization** to include Valeant CA and any **Subsidiary**, as separately defined.

30.     **Securities Claim** is defined at Endorsement 21 of the 2013-14 Primary Policy as:

a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:

>    (1) alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:
>
>       (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or
>
>       (b) brought by a security holder or purchaser or seller of securities of an **Organization** with respect to such security holder's, purchaser's or seller's interest in securities of an **Organization**; or
>
>    (2) which is a derivative suit.

Notwithstanding the foregoing, the term "**Securities Claim**" shall:

---

[2] Bold capitalized terms, not otherwise defined herein, are intended to retain the definitions found in the 2013-14 Primary Policy.

(1) include in an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**; and

(2) not include any **Claim** brought by any **Executive** or **Employee** of an **Organization** alleging, arising out of, based upon or attributable to the loss of, or failure to receive or obtain, the benefit of stock, stock warrants, stock options or other securities of an **Organization**.

31.     **Loss** is defined in the 2013-14 Primary Policy to expressly exclude:

(3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; . . . (6) any amount for which an Insured is not financially liable or which are without legal recourse to an Insured; and (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

32.     The 2013-14 Primary Policy provides, at Clause 9.D., in relevant portion:

the **Insurer** has no obligation under this policy for defence or other costs incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** except as respects coverage for a **Securities Claim** . . . or any obligation to pay loss arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim**.

33.     Clause 9.D. of the 2013-14 Primary Policy further provides that:

With respect to: (i) **Defence Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured Person** in connection with any **Claim** other than a **Securities Claim**. . ., such **Organization** and such **Insured Person** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between such **Organization**, such **Insured Person** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by such Insured person and such Organization.

## 2013-14 UNDERLYING CLAIMS

34.     On or about August 1, 2014, certain of the Valeant Parties were named as defendants in an action captioned *Allergan, Inc. et al v. Valeant Pharmaceuticals International, Inc. et al.*, Case No. 8:14-cv-01214 (C.D. Cal.) (the "First Allergan Action").

35.     On or about December 16, 2014, certain of the Valeant Parties were named as defendants in an action originally captioned *Anthony Basile, et al. v. Valeant Pharmaceuticals, Inc. et al.*, Case No. 2:14-cv-02004 (C.D. Cal.), and later modified to *In re Allergan, Inc. Proxy Violation Securities Litigation*, Case No. 8:14-cv-2004 (C.D. Cal.) (the "Allergan Action").

36.     On or about June 28, 2017, certain of the Valeant Parties were named as defendants in a case related to the Allergan Action, captioned *Timber Hill LLC v. Pershing Square Capital Management, LP, et al.*, Case No. 2:17-cv-04776 (C.D. Cal.) (the "Timber Hill Action").

37.     The First Allergan Action, the Allergan Action and the Timber Hill Action (collectively, the "2013-14 Underlying Claims") each arise out of a proposed transaction involving Allergan, Inc., the Valeant Parties, and Pershing Square Capital Management, LP.

38.     The Valeant Parties tendered the 2013-14 Underlying Claims for coverage under the 2013-14 Excess Policies.

39.     The 2013-14 Counter-Plaintiffs have denied coverage to the Valeant Parties for certain of the 2013-14 Underlying Claims under the 2013-14 Excess Policies.

40.     The 2013-14 Counter-Plaintiffs have not denied coverage, and have reserved their rights, for the 2013-14 Underlying Claims under the 2013-14 Excess Policies with respect to the separate request for coverage by Mr. Pearson, who is a defendant in certain of the 2013-14 Underlying Claims.

## 2015-16 PROGRAM INSURANCE POLICIES

41.     Policy No. B0509FINMW1500612 Underwriters issued policy number B0509FINMW1500612 to Valeant CA reflecting a claims made policy period of September 28, 2015 to September 28, 2016. Policy number B0509FINMW1500612 is an excess policy, and

reflects a $10 million aggregate limit of liability, in excess of $30 million in underlying insurance and a $5 million self-insured retention.

42.     Policy No. B0509FINMW1500642 Underwriters issued policy number B0509FINMW1500642 to Valeant CA reflecting a claims made policy period of September 28, 2015 to September 28, 2016. Policy number B0509FINMW1500642 is an excess policy, and reflects a 50% participation in a $10 million aggregate limit of liability, in excess of $40 million in underlying insurance and a $5 million self-insured retention.

43.     RSA issued policy number 9501712 to Valeant CA reflecting a claims made policy period of September 28, 2015 to September 28, 2016. Policy number 9501712 is an excess policy, and reflects a 50% participation in a $10 million aggregate limit of liability, in excess of $40 million in underlying insurance and a $5 million self-insured retention.

44.     Liberty, through its division LIU, issued policy number DOTOAAGHNZ005 to Valeant CA reflecting a claims made policy period of September 28, 2015 to September 28, 2016. Policy number DOTOAAGHNZ005 is an excess policy, and reflects a 50% participation in a $10 million aggregate limit of liability, in excess of $60 million in underlying insurance and a $5 million self-insured retention.

45.     Policy No. B0509FINMW1500626 Underwriters issued policy number B0509FINMW1500626 to Valeant CA reflecting a claims made policy period of September 28, 2015 to September 28, 2016. Policy number B0509FINMW1500626 is an excess policy, and reflects a 50% participation in a $10 million aggregate limit of liability, in excess of $60 million in underlying insurance and a $5 million self-insured retention.

46.     Certain Policy No. B0509FINMW1500618 Underwriters issued policy number B0509FINMW1500618 to Valeant CA reflecting a claims made policy period of September 28,

2015 to September 28, 2016. Policy number B0509FINMW1500618 is an excess policy, and reflects 87.5% participation in a $20 million aggregate limit of liability, in excess of $80 million in underlying insurance and a $5 million self-insured retention. Certain Policy No. B0509FINMW1500618 Underwriters subscribed to 75% of the $20 million aggregate limit of liability.

47.    Policy No. B0509FINMW1500629 Underwriters issued policy number B0509FINMW1500629 to Valeant CA reflecting a claims made policy period of September 28, 2015 to September 28, 2016. Policy number B0509FINMW1500629 is an excess policy, and reflects a $10 million aggregate limit of liability, in excess of $140 million in underlying insurance and a $5 million self-insured retention.

48.    Chubb issued policy number DOX027335 to Valeant CA reflecting a claims made policy period of September 28, 2015 to September 28, 2016. Policy number DOX027335 is an excess policy, and reflects a 20% participation in a $25 million aggregate limit of liability, in excess of $150 million in underlying insurance and a $5 million self-insured retention.

49.    RSA issued policy number 9501713 to Valeant CA reflecting a claims made policy period of September 28, 2015 to September 28, 2016. Policy number 9501713 is an excess policy, and reflects a 20% risk in a $25 million aggregate limit of liability, in excess of $150 million in underlying insurance and a $5 million self-insured retention.

50.    Policy numbers B0509FINMW1500612, B0509FINMW1500642, 9501712, DOTOAAGHNZ005, B0509FINMW1500626, B0509FINMW1500618, B0509FINMW1500629, and DOX027335 are collectively referred to as the "2015-16 Excess Policies," and Policy No. B0509FINMW1500612 Underwriters, Policy No. B0509FINMW1500642 Underwriters, RSA, Liberty, LIU, Policy No. B0509FINMW1500626

Underwriters, Certain Policy No. B0509FINMW1500618 Underwriters, Policy No. B0509FINMW1500629 Underwriters, and Chubb are the "2015-16 Counter-Plaintiffs."

51.     As excess insurance, the 2015-16 Policies state as follows:

This policy provides excess coverage only. It is a condition of this policy that the Underlying Insurance shall be maintained in full effect during the term of this policy, except for any reduction or exhaustion of the aggregate limits contained therein by reason of payment of loss …

[The excess insurer] shall be liable hereunder only after the Insurers of the Underlying Insurance . . . shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance. …

52.     Upon information and belief, Valeant CA's insurance tower for the 2015-16 policy year includes the following policies (the "2015-16 Program"):

| Layer | Insurer | Policy No. | Coverage Limits |
|-------|---------|------------|-----------------|
| Primary | AIG Insurance Company of Canada | 01-714-68-05 | $10 Million |
| 1st Excess | Lloyd's Syndicate AWH 2232 | B0509FINMW1500609 | $10 Million x/s $10 Million |
| 2nd Excess | Allianz Global Risks US Insurance Company | FPL 7228579 | $10 Million x/s $20 Million |
| 3rd Excess | Policy No. B0509FINMW 1500612 Underwriters | B0509FINMW1500612 | $10 Million x/s $30 Million |
| 4th Excess | Policy No. B0509FINMW1500642 Underwriters (50% share)<br><br>RSA (50% share) | B0509FINMW1500642<br><br>9501712 | $10 Million x/s $40 Million |
| 5th Excess | Everest Insurance Company of Canada | E3DO000I0I | $10 Million x/s $50 Million |
| 6th Excess | Liberty (50% share)<br><br>Policy No. B0509FINMW1500626 Underwriters (50% share) | DOTOAAGHNZ005<br><br>B0509FINMW1500626 | $10 Million x/s $60 Million |
| 7th Excess | Lloyd's Syndicate SJC 2003 | B0509FINMW1500938 | $10 Million x/s $70 Million |
| 8th Excess | Allianz Global Risks US Insurance Company | FPL 7228580 | $20 Million x/s $80 Million |

|  |  |  |  |
|---|---|---|---|
|  | (12.5% share) |  |  |
|  | Certain Policy No. B0509FINMW1500618 Underwriters (75% share) | B0509FINMW1500618 |  |
|  | Lloyd's Syndicate NAV 1221 (12.5% share) | B0509FINMW1500618 |  |
| 9th Excess | XL Insurance Company SE | B0509FINMW1501095 | $10 Million x/s $100 Million |
| 10th Excess | AIG Insurance Company of Canada | FINMW1501096/ 0033025183 | $15 Million x/s $110 Million |
| 11th Excess | Temple Insurance Company | B0509FINMW1500627 | $15 Million x/s $125 Million |
| 12th Excess | Policy No. B0509FINMW1500629 Underwriters | B0509FINMW1500629 | $10 Million x/s $140 Million |
| 13th Excess | Chubb (20% share) | DOX027335 | $25 Million x/s $150 Million |
|  | Lloyd's Syndicate HCC 4141 (20% share) | 150142820113 |  |
|  | Ironshore Canada Ltd. (20% share) | C444803015 |  |
|  | RSA (20% share) | 9501713 |  |
|  | Lloyd's Syndicate BRT 2987 (10% share) | B0509FINMW1500630 |  |
|  | Lloyd's Syndicate NAV 1221 (10% share) | B0509FINMW 1500630 |  |

53.     Each of the 2015-16 Excess Policies "follow-form" to the coverage provided by policy number 01-714-68-05, issued to Valeant CA by AIG Insurance Company of Canada for the claims made policy period of September 28, 2015 to September 28, 2016 (the "2015-16 Primary Policy"), except where the 2015-16 Excess Policies provide otherwise. In particular, each of the 2015-16 Excess Policies provide:

Except as otherwise provided in the Declarations or by any endorsement attached hereto, this policy is subject to the same insuring clauses, definitions, terms and

conditions, exclusions, cancellation provisions and all other provisions of the Underlying Insurance. This policy shall not provide coverage broader than that provided by any Underlying Insurance. . .

54.     The threshold for coverage pursuant to Insuring Agreement 1.C. of the 2015-16 Primary Policy is "**Loss** of any **Organization** . . . arising from any **Securities Claim** . . . made against such **Organization** for any **Wrongful Act** of such **Organization**."[3]

55.     The 2015-16 Primary Policy defines **Organization** to include Valeant CA and any **Subsidiary**, as separately defined.

56.     Clause 9.D. of the 2015-16 Primary Policy further provides, in relevant part, that:

With respect to: (i) **Defence Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured Person** in connection with any **Claim** other than a **Securities Claim**. . ., such **Organization** and such **Insured Person** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between such **Organization**, such **Insured Person** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by such Insured person and such Organization.

## 2015-16 UNDERLYING CLAIMS

57.     Between September 28, 2015 and June 7, 2016, Valeant CA and Valeant USA suffered a significant decline in the price of its stock. Following that stock drop, Valeant CA, Valeant USA, and officers and directors thereof, were sued in numerous lawsuits in the United States and Canada. These lawsuits, which were reported to the 2015-16 Counter-Plaintiffs under the 2015-16 Excess Policies, are referred to herein as the "2015-16 Underlying Claims." Upon information and belief, the 2015-16 Underlying Claims include:

a.     Securities class action lawsuits brought by Valeant CA's U.S. security holders which have now been consolidated in *In re Valeant Pharmaceuticals International, Inc. Securities Litigation*, Master No. 15-cv-07658-MAS-LHG

---

[3] Bold capitalized terms, not otherwise defined herein, are intended to retain the definitions found in the 2015-16 Primary Policy.

(D.N.J.); *Potter v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 3:15-cv-7658 (D.N.J.); *Chen v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 3:15-cv- 7679 (D.N.J.); *Yang v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 2:33-Cv-00001 (D.N.J.); *Fein v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 3:15-cv-7809 (D.N.J.).

b. Securities class action lawsuits brought by Valeant CA's Canadian and other non-U.S. security holders in Canada, including but not limited to: *Catucci v. Valeant Pharmaceuticals International, Inc., et al.,* Case No. 540-17-11743-159 (Quebec); *Rosseau-Godbout v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 500-06-770-152 (Quebec); *Kowalyshyn v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. CV-15-540593-00CP (Ontario); *Kowalyshyn v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. CV-15-5410823-00CP (Ontario); *Alladina v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. S-159486 (British Columbia); *O'Brien v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. CV-15-543678-00CP (Ontario); *Okeley v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. S-159991 (British Columbia).

c. Lawsuits filed by Valeant CA security holders who are not proceeding as part of the class actions, including but not limited to: *T Rowe Price Growth Stock Fund, Inc., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-05034-MAS-LHG (D.N.J.); *Equity Trustees Limited as Responsible Entity for T Rowe Price Global Equity Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-06127-MAS-LHG (D.N.J.); *Principal Funds, et al. v.*

*Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-06128-MAS-LHG (D.N.J.); *Bloombergsen Partners Fund, LP, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-07212-MAS-LHG (D.N.J.); *Pentwater Equity Opportunities Master Fund Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 17-cv-07552-MAS-LHG (D.N.J.); *The Boeing Company Employee Retirement Plans Master Trust and The Boeing Company Employee Savings Plans Master Trust v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 17-cv-07636-MAS-LHG (D.N.J.); *Public Employees Retirement System of Mississippi v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 17-cv-07625-MAS-LHG (D.N.J.); *Valic Company I, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-07496-MAS- LHG (D.N.J.); *Janus Aspen Series, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-07497-MAS-LHG (D.N.J.); *MSD Torchlight Partners, L.P. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-07324-MAS-LHG (D.N.J.); *BlueMountain Foinaven Master Fund L.P. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-07328-MAS-LHG (D.N.J.); *Incline Global Master LP, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-07494-MAS-LHG (D.N.J.); *Lord Abbett Investment Trust – Lord Abbett Short Duration Income Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 17-cv-06365-MAS-LHG (D.N.J.); *Discovery Global Citizens Master Fund, Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 16-cv-07321-MAS-LHG (D.N.J.); *Okumus*

*Opportunistic Value Fund, Ltd. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 17-cv-06513-MAS-LHG (D.N.J.); *Forsta Ap-Fonden, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, Case No. 3:17-cv-12088 (D.N.J.);

d. A lawsuit filed by third party payors to Valeant CA titled *In re Valeant Pharmaceuticals International, Inc. Third Party Payor Litigation*, Case No. 16-cv-03087-MAS-LHG (D.N.J.).

e. Various regulatory investigations of various former or current officers, directors and employees of Valeant CA, including but not limited to investigations by the Securities and Exchange Commission, United States Justice Department and United States Congress.

58.    Valeant CA and Valeant USA tendered the 2015-16 Underlying Claims for coverage under the 2015-16 Excess Policies.

59.    The 2015-16 Counter-Plaintiffs have reserved their rights under the 2015-16 Excess Policies in regards to the 2015-16 Underlying Claims.

## FIRST CAUSE OF ACTION

### Declaration that the 2013-14 Underlying Claims Fail to Satisfy the Insuring Agreement of the 2013-14 Primary Policy

60.    The 2013-14 Counter-Plaintiffs reallege and restate the relevant preceding paragraphs as if fully set forth herein.

61.    A condition precedent to any possibility of coverage under the 2013-14 Primary Policy or the 2013-14 Excess Policies is satisfaction of the Insuring Agreement of the 2013-14 Primary Policy.

62.    Excepting potential indemnification obligations with respect to Mr. Pearson, the

relevant Insuring Agreement of the 2013-14 Primary Policy with respect to the request for coverage by the Valeant Parties for the 2013-14 Underlying Claims is solely Insuring Agreement 1.C.(1) of the 2013-14 Primary Policy.

63.     Insuring Agreement 1.C.(1) of the 2013-14 Primary Policy requires a **Securities Claim** against the Valeant Parties.

64.     The 2013-14 Underlying Claims do not meet the definition of **Securities Claim**, as defined in the 2013-14 Primary Policy.

65.     Accordingly, the 2013-14 Counter-Plaintiffs seek a declaration that the 2013-14 Counter-Plaintiffs do not owe any obligations under the 2013-14 Excess Policies for the 2013-14 Underlying Claims, because the 2013-14 Underlying Claims do not meet the definition of **Securities Claim**, and therefore do not satisfy Insuring Agreement 1.C.(1) of the 2013-14 Primary Policy.

### SECOND CAUSE OF ACTION

**Declaration that the 2013-14 Underlying Claims Do Not Seek the Payment of Loss**

66.     The 2013-14 Counter-Plaintiffs reallege and restate each of the relevant preceding paragraphs as if fully set forth herein.

67.     Insuring Agreements 1.B. (Indemnification of Insured Persons) and 1.C. (Organization Coverage) of the 2013-14 Primary Policy are limited to the obligation to pay **Loss**, a defined term.

68.     **Loss** is defined in the 2013-14 Primary Policy to expressly exclude:

(3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; . . . (6) any amount for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

69.    Plaintiffs in the 2013-14 Underlying Claims seek to recover damages because the Valeant Parties allegedly withheld information and improperly traded on that information. Plaintiffs in the 2013-14 Underlying Claims seek disgorgement of amounts wrongfully realized by the Valeant Parties and restitution of losses realized by those Plaintiffs as a result of the Valeant Parties withholding information.

70.    The amounts sought by Plaintiffs in the 2013-14 Underlying Claims constitute disgorgement and/or restitution, and are uninsurable.

71.    Accordingly, the 2013-14 Counter-Plaintiffs seek a declaration that amounts sought as damages in the 2013-14 Underlying Claims do not constitute **Loss**, as defined in the 2013-14 Primary Policy.

## THIRD CAUSE OF ACTION

**In the Alternative, Allocation Between the Valeant Parties and Pershing Square Capital Management, LP (and Their Related Non-Insured Parties) of Uncovered Loss and Covered Loss Arising from the 2013-14 Underlying Claims**

72.    The 2013-14 Counter-Plaintiffs reallege and restate each of the relevant preceding paragraphs as if fully set forth herein.

73.    Certain of the 2013-14 Underlying Claims (in particular, the Allergan Action and the Timber Hill Action) are brought against **Insureds**, such as the Valeant Parties, and non-insureds, such as Pershing Square Capital Management, LP.

74.    The 2013-14 Primary Policy, at Clause 9.D. requires an allocation of any amounts jointly incurred between covered **Loss** and non-covered loss, "taking into account the relative legal and financial exposures, and the relative benefits obtained."

75.    To the extent it is determined that coverage under the 2013-14 Excess Policies is available to the Valeant Parties for the 2013-14 Underlying Claims, a proper allocation must be

determined between **Loss** incurred by **Insureds**, and loss incurred by non-insureds.

76.     Accordingly, the 2013-14 Counter-Plaintiffs seek, in the alternative event there is a determination of coverage, an allocation of amounts jointly incurred by **Insureds** and non-insureds.

### FOURTH CAUSE OF ACTION

**In the Alternative, Allocation Between the Valeant Parties and Mr. Pearson of Uncovered Loss and Covered Loss Arising from the 2013-14 Underlying Claims**

77.     The 2013-14 Counter-Plaintiffs reallege and restate each of the relevant preceding paragraphs as if fully set forth herein.

78.     Certain of the 2013-14 Underlying Claims (in particular, the Allergan Action and the Timber Hill Action) are brought against the Valeant Parties and Mr. Pearson.

79.     To the extent the Valeant Parties are indemnifying Mr. Pearson, coverage for **Loss** solely associated the Valeant Parties' indemnification of Mr. Pearson would exist, if at all, pursuant to Insuring Agreement 1.B. of the 2013-14 Primary Policy.

80.     Insuring Agreement 1.B. of the 2013-14 Primary Policy, unlike Insuring Agreement 1.C., extends to other **Claims**, not only a **Securities Claim**.

81.     The 2013-14 Primary Policy, at Clause 9.D., requires an allocation of any amounts jointly incurred between covered **Loss** and non-covered loss, "taking into account the relative legal and financial exposures, and the relative benefits obtained."

82.     To the extent it is determined that coverage under the 2013-14 Excess Policies is available to the Valeant Parties pursuant to Insuring Agreement 1.B., by virtue of indemnification of Mr. Pearson, and to the extent such amounts are in excess of the underlying insurance, a proper allocation must be determined between **Loss** incurred by virtue of the Valeant Parties' indemnification of Mr. Pearson, and loss not attributable to such

indemnification.

83.     Accordingly, the 2013-14 Counter-Plaintiffs seek, in the alternative event there is a determination of coverage, an allocation of amounts directly incurred by the Valeant Parties and indirectly through the Valeant Parties' indemnification of Mr. Pearson.

## FIFTH CAUSE OF ACTION

**In the Alternative, Declaration that the 2013-14 Counter-Plaintiffs Have No Obligation to Pay the Valeant Parties' Loss as the Underlying Insurance has Not Been Exhausted**

84.     The 2013-14 Counter-Plaintiffs reallege and restate the relevant preceding paragraphs as if fully set forth herein.

85.     Pursuant to the 2013-14 Excess Policies, the 2013-14 Counter-Plaintiffs have no payment obligations unless and until the Insurers of the Underlying Insurance, the Insured, or any other insurer providing coverage for loss on a difference in conditions basis, if applicable, "shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance."

86.     To date, there have been no payments, nor any finding of liability, in any amount in response to the 2013-14 Underlying Claims or, upon information and belief, in response to any claim under the 2013-14 Program. Thus, the full amount of the limits of liability of the Underlying Insurance remain in force and have not been exhausted.

87.     To the extent it is determined that coverage under the 2013-14 Excess Policies is available to the Valeant Parties, which the 2013-14 Counter-Plaintiffs deny, none of the 2013-14 Counter-Plaintiffs owe any current obligation to make any payments under the 2013-14 Excess Policies, and will have no such obligation in the future unless and until each policy of Underlying Insurance below each of the 2013-14 Excess Policies has been exhausted through payment of **Loss**.

88.     Accordingly, the 2013-14 Counter-Plaintiffs seek, in the alternative event there is a determination of coverage, a declaration that each of the 2013-14 Counter-Plaintiffs owe no payment obligations under their respective 2013-14 Excess Policies because the Underlying Insurance has not been exhausted.

## SIXTH CAUSE OF ACTION

### In the Alternative, Declaration that the 2013-14 Counter-Plaintiffs Have No Obligation to Pay the Valeant Parties' Defence Costs Outside Policy Limits.

89.     The 2013-14 Counter-Plaintiffs reallege and restate the relevant preceding paragraphs as if fully set forth herein.

90.     The Valeant Parties have demanded that their **Defence Costs** associated with the defense of the 2013-14 Underlying Claims be paid outside of the limits of the 2013-14 Program.

91.     However, because there is no coverage for the 2013-14 Underlying Claims, the 2013-14 Counter-Plaintiffs have no obligation to pay the Valeant Parties' **Defence Costs** in connection with the defense of the 2013-14 Underlying Claims.

92.     To the extent it is determined that coverage under the 2013-14 Excess Policies is available to the Valeant Parties, which the 2013-14 Counter-Plaintiffs deny, the 2013-14 Counter-Plaintiffs' payment obligations would be subject to, and not in addition to or outside, the respective limits of liability for each 2013-14 Excess Policy. Each of the 2013-14 Excess Policies specifically states that the "Limit of Liability, as set forth in Item 3 of the Declarations, shall be the maximum Limit of Liability of Underwriters under this policy."

93.     Accordingly, the 2013-14 Counter-Plaintiffs seek, in the alternative event there is a determination of coverage, a declaration that any obligation each of them may have to pay any of the Valeant Parties' **Defence Costs** shall be subject to, and not in addition to or outside, the limits of liability of each respective 2013-14 Excess Policy.

## SEVENTH CAUSE OF ACTION

**Declaration that the 2015-16 Counter-Plaintiffs Have No Obligation to Pay Loss on the 2015-16 Underlying Claims as the Underlying Insurance has Not Been Exhausted**

94.     The 2015-16 Counter-Plaintiffs reallege and restate the relevant preceding paragraphs as if fully set forth herein.

95.     Pursuant to the 2015-16 Excess Policies, the 2015-16 Counter-Plaintiffs have no payment obligations unless and until the Insurers of the Underlying Insurance, the Insured, or any other insurer providing coverage for loss on a difference in conditions basis, if applicable, "shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance."

96.     To date, there have been no payments, nor any finding of liability, in any amount in response to the 2015-16 Underlying Claims or, upon information and belief, in response to any claim under the 2015-16 Program. Thus, the full amount of the limits of liability of the Underlying Insurance remain in force and have not been exhausted.

97.     Therefore, none of the 2015-16 Counter-Plaintiffs owe any current obligation to make any payments under the 2015-16 Excess Policies, and will have no such obligation in the future unless and until each policy of Underlying Insurance below each of the 2015-16 Excess Policies have been exhausted through payment of **Loss**.

98.     Accordingly, the 2015-16 Counter-Plaintiffs seek a declaration that each of the 2015-16 Counter-Plaintiffs owe no payment obligations under their respective 2015-16 Excess Policies because the Underlying Insurance has not been exhausted.

## EIGHTH CAUSE OF ACTION

**In the Alternative, Declaration that the 2015-16 Counter-Plaintiffs Have No Obligation to Pay the Insured's Defence Costs Outside Policy Limits**

99.     The 2015-16 Counter-Plaintiffs reallege and restate the relevant preceding paragraphs as if fully set forth herein.

100.    The Valeant Parties have demanded that their **Defence Costs** associated with the defense of the 2015-16 Underlying Claims be paid outside of the limits of the 2015-16 Program.

101.    However, because the any potential for coverage under the 2015-16 Excess Policics has not been triggered for the 2015-16 Underlying Claims, the 2015-16 Counter-Plaintiffs have no obligation to pay the Valeant Parties' **Defence Costs** in connection with the defense of the 2015-16 Underlying Claims.

102.    To the extent it is determined that coverage under the 2015-16 Excess Policies is available to the Valeant Parties, which the 2015-16 Counter-Plaintiffs deny, the 2015-16 Counter-Plaintiffs' payment obligations would be subject to, and not in addition to or outside, the respective limits of liability for each 2015-16 Excess Policy. Each of the 2015-16 Excess Policies specifically states that the "Limit of Liability, as set forth in Item 3 of the Declarations, shall be the maximum Limit of Liability of Underwriters under this policy."

103.    Accordingly, the 2015-16 Counter-Plaintiffs seek, in the alternative event there is a determination of coverage, a declaration that any obligation each of them may have to pay any of the Valeant Parties' **Defence Costs** shall be subject to, and not in addition to or outside, the limits of liability of each respective 2015-16 Excess Policy.

## **PRAYER FOR RELIEF**

WHEREFORE, the Counter-Plaintiffs request that this Court enter a declaration and final judgment in their favor:

A.      Declaring that, for the reasons set forth in the First Cause of Action, the 2013-14 Excess Policies do not provide coverage for the 2013-14 Underlying Claims;

B.      Declaring that, for the reasons set forth in the Second Cause of Action, the 2013-14 Excess Policies do not provide coverage for the 2013-14 Underlying Claims;

C.      In the Alternative, for the reasons set forth in the Third Cause of Action, determining an allocation of **Loss** between the Valeant Parties and non-insured parties under the 2013-14 Excess Policies;

D.      In the Alternative, for the reasons set forth in the Fourth Cause of Action, determining an allocation of amounts directly incurred by the Valeant Parties and indirectly incurred by the Valeant Parties through indemnification of Mr. Pearson under the 2013-14 Excess Policies;

E.      In the Alternative, declaring that, for the reasons set forth in the Fifth Cause of Action, each of the 2013-14 Counter-Plaintiffs owe no payment obligations under their respective 2013-14 Excess Policies because the Underlying Insurance has not been exhausted;

F.      In the Alternative, declaring that, for the reasons set forth in the Sixth Cause of Action, that any obligation each of the 2013-14 Counter-Plaintiffs may have to pay any of the Valeant Parties' **Defence Costs** shall be subject to, and not in addition to or outside, the limits of liability of each respective 2013-14 Excess Policy;

G.      Declaring that, for the reasons set forth in the Seventh Cause of Action, each of the 2015-16 Counter-Plaintiffs owe no payment obligations under their respective 2015-16 Excess Policies because the Underlying Insurance has not been exhausted;

H.      In the Alternative, declaring that, for the reasons set forth in the Eighth Cause of Action, that any obligation each of the 2015-16 Counter-Plaintiffs may have to pay any of the Valeant Parties' **Defence Costs** shall be subject to, and not in addition to or outside, the limits of liability of each respective 2015-16 Excess Policy;

I.      Awarding the Counter-Plaintiffs such other and additional relief as shall be found to be reasonable; and

J.      Awarding the Counter-Plaintiffs their fees and costs incurred in prosecuting this action.

Dated: January 19, 2018

Respectfully submitted,

By: s/ Sean X. Kelly
Sean X. Kelly
Melissa J. Brown
Sean Robins
MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.
Cherry Tree Corporate Center
Suite 501
535 Route 38 East
Cherry Hill, New Jersey 08002
Tel: (856) 663-4300
skelly@moodklaw.com
mbrown@moodklaw.com
srobins@moodklaw.com

and

Christopher T. Conrad (pending admission *pro hac vice*)
David A. Wilford (pending admission *pro hac vice*)
Sabina B. Danek (pending admission *pro hac vice*)
WILFORD CONRAD LLP
18 East Dundee Road
Building 6, Suite 150
Barrington, Illinois 60010
Tel: (224) 848-4723
cconrad@wilfordconrad.com
dwilford@wilfordconrad.com
sdanek@wilfordconrad.com

*Attorneys for Counter-Plaintiffs*
*Attorneys for Defendants Liberty International*
*Underwriters, a division of Liberty Mutual Insurance*
*Company, Liberty Mutual Insurance Company, Royal &*
*Sun Alliance Insurance Company of Canada, Certain*

*Underwriters at Lloyd's, London subscribing to Policy No. QB078613, Certain Underwriters at Lloyd's, London subscribing to Policy No. QB078913, Certain Underwriters at Lloyd's, London subscribing to Policy No. QB146013, Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500612, Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500642, Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500626, Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500618 via Syndicates 1886 and 1861; Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500629, and Chubb Insurance Company of Canada*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on January 19, 2018, the foregoing document was filed with the Clerk of the U.S. District Court, District of New Jersey, via CM/ECF, which will cause copies to be served upon all counsel of record. In addition, copies have been served upon counsel for Plaintiffs via electronic mail.

By:  */s/ Sean X. Kelly*
Sean X. Kelly, Esquire