MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.
Sean X. Kelly
Melissa J. Brown
Sean Robins
Cherry Tree Corporate Center
Suite 501
535 Route 38 East
Cherry Hill, New Jersey 08002
Tel: (856) 663-4300

WILFORD CONRAD LLP
David A. Wilford
Christopher T. Conrad
Sabina B. Danek
18 East Dundee Road
Building 6, Suite 150
Barrington, Illinois 60010
Tel: (224) 848-4723

*Attorneys for Defendants Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500618, Certain Underwriters at Lloyd's, London subscribing to Policy No. 15G142820113, and Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500630*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC.; VALEANT PHARMACEUTICALS INTERNATIONAL; and AGMS, INC., | Civil Action No.: 3:18-cv-00493 |
| Plaintiffs, | Hon. Michael Shipp |
| v. | |
| AIG INSURANCE COMPANY OF CANADA; ACE INA INSURANCE COMPANY; ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; ARCH INSURANCE CANADA LTD; EVEREST INSURANCE COMPANY OF CANADA; HARTFORD FIRE INSURANCE COMPANY; IRONSHORE CANADA LTD.; LIBERTY INTERNATONAL UNDERWRITERS, a division of LIBERTY MUTUAL INSURANCE | **CERTAIN DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND DEMAND FOR JURY TRIAL** |

1

COMPANY; LIBERTY MUTUAL
INSURANCE COMPANY; LLOYD'S
UNDERWRITERS; LLOYD'S CONSORTIUM
9885 (a/k/a STARR FINANCIAL LINES
CONSORTIUM 9885); LLOYD'S SYNDICATE
ANV 1861; LLOYD'S SYNDICATE AMA 1200;
LLOYD'S SYNDICATE ARGO 1200; LLOYD'S
SYNDICATE AWH 2232; LLOYD'S
SYNDICATE BRT 2987; LLOYD'S SYNDICATE
CVS 1919; LLOYD'S SYNDICATE HCC 4141;
LLOYD'S SYNDICATE MITSUI 3210;
LLOYD'S SYDNICATE MIT 3210; LLOYD'S
SYNDICATE NAV 1221; LLOYD'S
SYNDICATE QBE 1886; LLOYD'S
SYNDICATE SJC 2003; ROYAL & SUN
ALLIANCE INSURANCE COMPANY OF
CANADA; TEMPLE INSURANCE COMPANY;
and XL INSURANCE COMPANY SE,

                    Defendants.

Defendants Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500618, incorrectly named as "Lloyd's Syndicate NAV 1221" ("Policy No. B0509FINMW1500618 Underwriters"), Certain Underwriters at Lloyd's, London subscribing to Policy No. 15G142820113, incorrectly named as "Lloyd's Syndicate HCC 4141" ("Policy No. 15G142820113 Underwriters"), and Certain Underwriters at Lloyd's, London subscribing to Policy No. B0509FINMW1500630, incorrectly named as "Lloyd's Syndicate BRT 2987" and "Lloyd's Syndicate NAV 1221" ("Policy No. B0509FINMW1500630 Underwriters"), (collectively, the "Answering Defendants"), by and through their attorneys, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C. and WILFORD CONRAD LLP, hereby respond to the Complaint (the "Complaint") filed by Plaintiffs Valeant Pharmaceuticals International, Inc. ("Valeant"), Valeant Pharmaceuticals International ("Valeant USA"), and AGMS, Inc. ("AGMS") (collectively, "Plaintiffs"), and state as follows:

2

## INTRODUCTION

1.      This is an action for breach of contract and declaratory judgment arising from the Insurers' failure and refusal to provide insurance coverage to Plaintiffs in accordance with the terms of the insurance policies the Insurers issued to Valeant and the mandatory provisions of Quebec law under which those insurance policies were issued. The Insurers have breached their statutory duty to defend Valeant in numerous, significant litigations – the majority and most substantial of which are pending in New Jersey – and wrongfully denied coverage entirely to Plaintiffs for several matters.

**ANSWER:** Paragraph 1 consists of legal conclusions to which no response is required. To the extent that a response is required, the Answering Defendants only admit that they issued insurance policies to Valeant pursuant to the express terms and conditions of such policies, which speak for themselves, and that Plaintiffs purport to seek relief for breach of contract and declaratory judgment in the Complaint, which similarly speaks for itself. The Answering Defendants deny that they breached any duty owed to Plaintiffs, that they wrongfully denied coverage, or that Plaintiffs are entitled to any of the relief sought in the Complaint. The Answering Defendants deny the remaining allegations of Paragraph 1 to the extent they are asserted against the Answering Defendants.

2.      Valeant is a pharmaceutical company whose corporate headquarters and principal executive offices are located at 2150 St. Elzear Boulevard, West Laval, Quebec H7L 4A8. Valeant's Administration offices and U.S. headquarters is located at 400 Somerset Corporate Blvd., Bridgewater, NJ 08807.

**ANSWER:** The Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 2 and, as such, deny the same.

3.      Each year Valeant pays substantial premiums to purchase an insurance program that provides broad "claims-made" protection to the company, its subsidiaries, and its directors and officers. Because Valeant is headquartered in Quebec and has worldwide operations, including here in New Jersey, it purchases insurance policies that are issued in Quebec and governed by Quebec law but that provide protection for alleged wrongful acts, and resulting claims, that occur or are brought anywhere in the world.

**ANSWER**: Paragraph 3 consists of legal conclusions to which no response is required. To the extent that a response is required, the Answering Defendants only admit that they issued insurance policies to Plaintiffs pursuant to the express terms and conditions of such policies, which speak for themselves, and deny the remaining allegations to the extent they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 3 and, as such, deny the same.

4.      Valeant purchased $150 million of such insurance from the defendant Insurers for the period of September 28, 2013 to September 28, 2014 (the "2013-14 Program") and $175 million of such insurance for the period of September 28, 2015 to September 28, 2016 (the "2015-2016 Program") (collectively, the "Programs"). The Programs provide coverage for all "Securities Claims" against Valeant and its subsidiaries and all "Claims" against directors and officers of Valeant and its subsidiaries. The insurance policies that the defendant Insurers issued to Valeant as part of the Programs were all issued to Valeant in Quebec and subject to Quebec law.

**ANSWER**: Paragraph 4 consists of legal conclusions to which no response is required. To the extent that a response is required, the Answering Defendants admit that Valeant purchased $175 million in insurance for the September 28, 2015 to September 28, 2016 Policy Period under the 2015-16 Program, pursuant to the terms, conditions and exclusions of the insurance policies

4

comprising the 2015-16 Program, which all speak for themselves. The Answering Defendants deny the remaining allegations of Paragraph 4 to the extent they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 4 and, as such, deny the same.

5.      Quebec's legislature has enacted a number of mandatory provisions that insurance companies must comply with when issuing insurance in Quebec. For example, Article 2500 of Quebec's Civil Code requires: "The proceeds of the insurance are applied exclusively to the payment of injured third persons" and Article 2503, accordingly, requires: "Legal costs and expenses resulting from actions against the insured, including those of the defence, and interest on the proceeds of the insurance are borne by the insurer over and above the proceeds of the insurance." Thus, the coverage limits of a Quebec-issued insurance policy are statutorily required to be used only to pay settlements and judgments for covered claims, with the insurer required to pay the costs of defending its insureds outside of and in addition to the limits of the policy.

**ANSWER:** Paragraph 5 consists of legal conclusions to which no response is required. To the extent that a response is required, the Answering Defendants only admit that Plaintiffs purport to quote Articles 2500 and 2503 of the Quebec Civil Code, which speaks for itself. The Answering Defendants deny the allegations of Paragraph 5 to the extent that they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 5 and, as such, deny the same.

6.      Accordingly, the respective $150 million and $175 million limits of Valeant's two Programs can only be depleted by the defendant Insurers' payment of settlements or judgments for covered claims, and the Insurers must pay the costs of defending Valeant, its subsidiaries, and its directors and officers against covered claims outside of and in addition to the Programs' limits.

Valeant's purchase of the Programs turned out to be a prudent decision, as the risks that the Insurers promised to protect Valeant against, and for which they collected substantial premiums, ultimately materialized. Valeant, its subsidiaries, and its directors and officers have been sued in substantial litigations falling within the coverage periods of both the 2013-14 Program and the 2015-16 Program.

**ANSWER:** Paragraph 6 consists of legal conclusions to which no response is required. To the extent that a response is required, the Answering Defendants only admit that Valeant, its subsidiaries, and its directors and officers have been sued in lawsuits for which Plaintiffs seek insurance coverage. The Answering Defendants deny the allegations of Paragraph 6 to the extent they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 6 and, as such, deny the same.

7.      As to the 2013-14 Program, Plaintiffs and Michael Pearson, Valeant's former Chairman and CEO and Valeant USA's former President, have been sued in a class action by former shareholders of a company called Allergan, Inc. ("Allergan") and a class action by former Allergan debtholders who allege that Valeant violated the securities laws regulating tender offers in connection with an offer Valeant made to exchange its securities for securities of Allergan (the "2013-14 Claims"). The 2013-14 Claims constitute covered Securities Claims against Plaintiffs and covered Claims against Mr. Pearson.

**ANSWER:** Paragraph 7 consists of legal conclusions to which no response is required. Further, the allegations of Paragraph 7 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 7. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit

6

or deny the allegations of Paragraph 7 and, as such, deny the same.

8.      As to the 2015-16 Program, Valeant and many of its current or former directors and officers have been sued in a number of securities class actions and other lawsuits that followed on the heels of a dramatic drop in the price of Valeant's stock (the "2015-16 Claims"). The 2015-16 Claims constitute covered Securities Claims against Valeant and covered Claims against the individual directors and officers. The 2013-14 Claims and 2015-16 Claims seek damages in excess of the respective $150 million and $175 million limits of the two Programs. The vast majority and largest of these Claims are pending in New Jersey.

**ANSWER:** Paragraph 8 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants only admit that Plaintiffs purport to seek coverage under the insurance policies comprising the 2015-16 Program for certain lawsuits, the allegations of which set forth in the operative complaints filed in those actions, which speak for themselves. The Answering Defendants deny the remaining allegations of Paragraph 8 to the extent they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 8 and, as such, deny the same.

9.      After the 2013-14 Claims and 2015-16 Claims were asserted, Valeant turned to the Insurers to provide the coverage it had purchased, and demanded that the Insurers pay the costs of defending the 2013-14 Claims and 2015-16 Claims without reducing the Programs' respective limits, so that those limits would remain available to help resolve the 2013-14 Claims and 2015-16 Claims.

**ANSWER:** Paragraph 9 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that Valeant sought coverage

under insurance policies issued by the Answering Defendants for certain claims and lawsuits. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 9 and, as such, deny the same.

10.     Despite having collected millions of dollars in premiums for the Programs, and having significantly increased Valeant's premiums as a result of Valeant's claims history (including an approximately 20% increase from the 2013-14 Program to the 2015-16 Program), when called upon to provide coverage, the Insurers wrongfully denied their obligations under the Programs and under Quebec law.

**ANSWER:** Paragraph 10 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations contained in Paragraph 10 to the extent that they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 10 and, as such, deny the same.

11.     Repudiating their obligations under Quebec law, and breaching their insurance policies, the Insurers have refused to pay the costs of defending the 2013-14 Claims and 2015-16 Claims without reducing the Programs' limits. The Insurers chose to participate in the Quebec insurance market and to reap the substantial premiums from selling insurance to Quebec companies such as Valeant. They cannot on one hand accept the benefits of participation in the Quebec insurance market while on the other shirk their obligations under Quebec law. Under mandatory and controlling Quebec law, the Insurers must pay the costs of defending the 2013-14 Claims and 2015-16 Claims outside of, and without reducing, the limits of liability of the respective Programs. Those full limits must instead be used to cover potential settlements of or judgments in the 2013-14 Claims and 2015-16 Claims.

**ANSWER:** Paragraph 11 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations contained in Paragraph 11 to the extent that they are asserted against the Answer Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 11, and, as such, deny the same

12.     With respect to the 2013-14 Program, the relevant Insurers have not only refused to comply with Quebec law regarding paying costs of defense outside of policy limits, they have wrongfully denied coverage entirely to Plaintiffs for the 2013-14 Claims. The purported basis for this coverage denial is that the 2013-14 Claims do not, according to the Insurers, meet the definition of "Securities Claims" contained in the insurance policies. However, the 2013-14 Claims fall squarely within the policies' definition of "Securities Claim."

**ANSWER:** Paragraph 12 consists of legal conclusions to which no response is required. Further, the allegations of Paragraph 12 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 12. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 12 and, as such, deny the same.

13.     The Insurers have no basis for denying coverage for the 2013-14 Claims and no basis for refusing to pay the full costs of defending the 2013-14 Claims and the 2015-16 Claims without reducing the limits available under the Programs. Accordingly, Plaintiffs seek declarations that the 2013-14 Claims and 2015-16 Claims are covered under the Programs and that the Insurers must pay the costs of defending the 2013-14 Claims and 2015-16 Claims without reducing the coverage limits available under the Programs. Plaintiffs also seek damages for the Insurers' breaches of contract in denying coverage for the 2013-14 Claims and refusing to pay the costs of

defending the 2013-14 Claims and 2015-16 Claims outside of and without reducing the Programs' respective limits. Additionally, Plaintiffs seek the attorneys' fees they are being forced to incur in pursuing this coverage action.

**ANSWER:** Paragraph 13 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants only admit that Plaintiffs purport to seek relief for breach of contract and declaratory judgment, as well as attorneys' fees against the defendants. The Answering Defendants deny that they wrongfully denied coverage, breached any insurance contract, or that Plaintiffs are entitled to any of the relief sought in the Complaint. The Answering Defendants deny the remaining allegations of Paragraph 13 to the extent they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 13, and, as such, deny the same.

14.     As a discussed in further detail below, the insurance policies in the Programs contain a pre-suit mediation requirement with a 60 day waiting period after the mediation before litigation can be commenced. The parties mediated their dispute on November 30 and December 1, 2017 but reached an impasse. Although the 60 day waiting period has not yet elapsed, Plaintiffs have filed this lawsuit in an abundance of caution so as to avoid a potential expiration of Quebec's prescription period (Quebec's equivalent to a statute of limitations) as to certain costs incurred by Plaintiffs in defending the 2013-14 Claims. Plaintiffs agree to extend the time for the Insurers to respond to this Complaint by 60 days so as to comply with the contractual waiting period and avoid any prejudice to the Insurers.

**ANSWER:** Paragraph 14 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that their policies contain a

pre-suit mediation requirement with a 120-day waiting period after the mediation before litigation can be commenced. The Answering Defendants further admit that the parties attended mediation on November 30 and December 1, 2017, which did not achieve a resolution. The Answering Defendants deny the remaining allegations of Paragraph 14 to the extent they are directed against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 14 and, as such, deny the same.

**PARTIES**

**Plaintiffs**

15.     Plaintiff Valeant is a Canadian corporation with its principal place of business in Laval, Quebec.

**ANSWER:** The Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 15 and, as such, deny the same.

16.     Plaintiff Valeant USA is a Delaware corporation with its principal place of business in Bridgewater, New Jersey. Valeant USA is a subsidiary of Valeant.

**ANSWER:** Upon information and belief, the Answering Defendants admit the allegations of Paragraph 16.

17.     Plaintiff AGMS is a Delaware corporation and a wholly-owned subsidiary of Valeant that was formed for the purpose of Valeant making a tender offer to Allergan's shareholders through AGMS.

**ANSWER:** Upon information and belief, the Answering Defendants admit that AGMS is a Delaware corporation. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 17 and, as such, deny the same.

**Defendants**

18.     Upon information and belief, Defendant AIG Insurance Company of Canada is a Canadian corporation with its principal place of business in Canada. Upon information and belief, Defendant AIG Insurance Company of Canada issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

**ANSWER:** The allegations of Paragraph 18 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 18. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 18 and, as such, deny the same.

19.     Upon information and belief, Defendant ACE INA Insurance Company is a Canadian corporation with its principal place of business in Canada. Upon information and belief, Defendant ACE INA Insurance Company issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

**ANSWER:** The allegations of Paragraph 19 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 19. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 19 and, as such, deny the same.

20.     Upon information and belief, Defendant Allianz Global Risks US Insurance Company is a California corporation with its principal place of business in Illinois. Upon information and belief, Defendant Allianz Global Risks US Insurance Company issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

**ANSWER:** The allegations of Paragraph 20 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in

Paragraph 20. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 20 and, as such, deny the same.

21.     Upon information and belief, Defendant Arch Canada Ltd is a Canadian corporation with its principal place of business in Canada. Upon information and belief, Defendant Arch Canada Ltd issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

**ANSWER:** The allegations of Paragraph 21 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 21. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 21 and, as such, deny the same.

22.     Upon information and belief, Defendant Everest Insurance Company of Canada is a Canadian corporation with its principal place of business in Canada. Upon information and belief, Defendant Everest Insurance Company of Canada issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

**ANSWER:** The allegations of Paragraph 22 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 22. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 22 and, as such, deny the same.

23.     Upon information and belief, Defendant Hartford Fire Insurance Company is a Connecticut corporation with its principal place of business in Connecticut. Upon information and belief, Defendant Hartford Fire Insurance Company issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of it business.

**ANSWER:** The allegations of Paragraph 23 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 23. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 23 and, as such, deny the same.

24.     Upon information and belief, Defendant Ironshore Canada Ltd. is a Canadian Corporation with its principal place of business in Canada. Upon information and belief, Defendant Ironshore Canada Ltd. issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

**ANSWER:** The allegations of Paragraph 24 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 24. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 24 and, as such, deny the same.

25.     Upon information and belief, Defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business in Massachusetts, and Defendant Liberty International Underwriters, A Division of Liberty Mutual Insurance Company, operates as a Canadian Division of Liberty Mutual Insurance Company. Upon information and belief, Defendant Liberty Mutual Insurance Company and Defendant Liberty International Underwriters, A Division of Liberty Mutual Insurance Company issue insurance policies providing coverage for worldwide risks and liabilities, just as they did with Valeant, in the regular course of their business.

**ANSWER:** The allegations of Paragraph 25 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 25. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 25 and, as such, deny the same.

26.     Upon information and belief, Defendant Royal & Sun Alliance Insurance Company of Canada is a Canadian corporation with its principal place of business in Canada. Upon information and belief, Defendant Royal & Sun Alliance Insurance Company of Canada issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

**ANSWER:** The allegations of Paragraph 26 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 26. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 26 and, as such, deny the same.

27.     Upon information and belief, Defendant Temple Insurance Company is a Canadian corporation with its principal place of business in Canada. Upon information and belief, Defendant Temple Insurance Company issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

**ANSWER:** The allegations of Paragraph 27 are not directed to the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 27. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 27 and, as such, deny the same.

28.     Upon information and belief, Defendant XL Insurance Company SE is a United Kingdom corporation with its principal place of business in the United Kingdom. Upon information and belief, Defendant XL Insurance Company SE issues insurance policies providing coverage for worldwide risks and liabilities, just as it did with Valeant, in the regular course of its business.

**ANSWER:** The allegations of Paragraph 28 are not directed to the Answering Defendants

and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 28. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 28 and, as such, deny the same.

29.     A number of the insurance policies in the Programs were issued by Lloyd's underwriting syndicates or consortiums that are organized and registered under the laws of the United Kingdom. Those insurance policies provide: "In any action to enforce the obligations of the Underwriters liable hereunder they can be designated or named as 'Lloyd's Underwriters' and such designation shall be binding on the Underwriters liable hereunder as if they had each been individually named as a defendant." Accordingly, Defendant "Lloyd's Underwriters," encompasses all Lloyd's syndicates and consortiums that issued insurance coverage to Valeant as part of the Programs. Nevertheless, Plaintiffs have also endeavored to name as defendants the specific Lloyd's syndicates or consortiums that participated in the Programs as set forth below:

     a.  Upon information and belief, Defendant Lloyd's Consortium 9885 (a/k/a Starr Financial Lines Consortium 9885) is a an [*sic*] underwriting consortium organized and registered under the laws of the United Kingdom and that is managed by Starr Managing Agents Limited, which is incorporated in and has its principal place of business in the United Kingdom.

     b.  Upon information and belief, Defendant Lloyd's Syndicate ANV 1861 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by AmTrust Syndicates Limited, which is incorporated in and has its principal place of business in the United Kingdom.

     c.  Upon information and belief, Defendant Lloyd's Syndicate AMA 1200 is an underwriting syndicate organized and registered under the laws of the United

Kingdom and that is managed by Argo Managing Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

d.  Upon information and belief, Defendant Lloyd's Syndicate Argo 1200 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Argo Managing Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

e.  Upon information and belief, Defendant Lloyd's Syndicate AWH 2232 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Allied World Managing Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

f.  Upon information and belief, Defendant Lloyd's Syndicate BRT 2987 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Brit Syndicates Limited, which is incorporated in and has its principal place of business in the United Kingdom.

g.  Upon information and belief, Defendant Lloyd's Syndicate CVS 1919 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Starr Managing Agents Limited, which is incorporated in and has its principal place of business in the United Kingdom.

h.  Upon information and belief, Defendant Lloyd's Syndicate HCC 4141 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by HCC Underwriting Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

i.  Upon information and belief, Defendant Lloyd's Syndicate MIT 3210 is an

underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by MS Amlin Underwriting Limited, which is incorporated in and has its principal place of business in the United Kingdom.

j.  Upon information and belief, Defendant Lloyd's Syndicate Mitsui 3210 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by MS Amlin Underwriting Limited, which is incorporated in and has its principal place of business in the United Kingdom.

k.  Upon information and belief, Defendant Lloyd's Syndicate NAV 1221 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Navigators Underwriting Agency Limited, which is incorporated in and has its principal place of business in the United Kingdom.

l.  Upon information and belief, Defendant Lloyd's Syndicate QBE 1886 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by QBE Underwriting Limited, which is incorporated in and has its principal place of business in the United Kingdom.

m.  Upon information and belief, Defendant Lloyd's Syndicate SJC 2003 is an underwriting syndicate organized and registered under the laws of the United Kingdom and that is managed by Catlin Underwriting Agencies Limited, which is incorporated in and has its principal place of business in the United Kingdom.

n.  Upon information and belief, Defendant "Lloyd's Underwriters" and all of the Lloyd's syndicates and consortiums listed above issue insurance policies providing coverage for worldwide risks and liabilities, just as they did with Valeant, in the regular course of their business.

**ANSWER:** Defendants Policy No. B0509FINMW1500618 Underwriters admit that they issued insurance policy no. B0509FINMW1500618 to Valeant, that speaks for itself, to which Lloyd's Syndicates QBE 1886, ANV 1861, and NAV 1221 subscribed, and that they issue insurance policies in the regular course of business. Lloyd's Syndicate NAV 1221 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from Plaintiffs, and is managed by Navigators Underwriting Agency Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England. Policy No. B0509FINMW1500618 Underwriters are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 29 and, as such, deny the same.

Defendants Policy No. 15G142820113 Underwriters admit that they issued insurance policy no. 15G142820113 to Valeant, that speaks for itself, to which Lloyd's Syndicate HCC 4141 subscribed, and that they issue insurance policies in the regular course of business. Lloyd's Syndicate HCC 4141 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from Plaintiffs, and is managed by HCC Underwriting Agency Ltd, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England. Policy No. 15G142820113 Underwriters are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 29 and, as such, deny the same.

Defendants Policy No. B0509FINMW1500630 Underwriters admit that they issued insurance policy no. B0509FINMW1500630 to Valeant, that speaks for itself, to which Lloyd's Syndicates BRT 2987 and NAV 1221 subscribed, and that they issue insurance policies in the regular course of business. Lloyd's Syndicate BRT 2987 is a syndicate that operates through the

Lloyd's of London marketplace in London, England, whose members have citizenship diverse from Plaintiffs, and is managed by Brit Syndicates Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England. Lloyd's Syndicate NAV 1221 is a syndicate that operates through the Lloyd's of London marketplace in London, England, whose members have citizenship diverse from Plaintiffs, and is managed by Navigators Underwriting Agency Limited, which is incorporated and registered under the laws of England and Wales and maintains a principal place of business in London, England. Policy No. B0509FINMW1500630 Underwriters are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 29 and, as such, deny the same.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction over the Insurers because the insurance policies, although issued in Quebec under Quebec law, provide worldwide coverage to Valeant which protect it, its subsidiaries, and its directors and officers (including those who reside in New Jersey) for alleged wrongful acts occurring anywhere, including in New Jersey. Under this worldwide coverage, the Insurers agreed to defend Valeant, at the Insurers' expense, against claims brought anywhere, including in New Jersey, and the vast majority of and largest claims at issue in this lawsuit were filed in New Jersey.

**ANSWER:** Paragraph 30 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that the United States District Court for the District of New Jersey has jurisdiction over the Answering Defendants. The Answering Defendants deny the remaining allegations contained in Paragraph 30 to the extent that they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 30 and, as such,

deny the same.

31.     Venue in this county is proper because at least one of the parties in this action –

Valeant USA – resides in the county.

**ANSWER:** Paragraph 31 consists of legal conclusions to which no response is required.

To the extent a response is required, the Answering Defendants admit that venue in the United

States District Court for the District of New Jersey in Trenton, New Jersey, is proper.

## FACTUAL BACKGROUND

**Valeant Is A Quebec Policyholder**

32.     Valeant is a Canadian corporation with its headquarters and principal place of

business in Laval, Quebec. Valeant has been headquartered in Quebec since 2012. Valeant moved

its headquarters to Quebec at the urging and with the support of Quebec's government, which

helped offset the cost of the move with contributions and loans. Valeant was the first and only

multinational pharmaceutical company to establish its headquarters in Quebec, and its decision to

establish its headquarters in Quebec was praised by Quebec government officials, including

Quebec's then Premier Jean Charest, as helping to solidify Quebec's presence in the

pharmaceuticals industry.

**ANSWER:** Paragraph 32 consists of legal conclusions to which no response is required.

To the extent a response is required, the Answering Defendants are without sufficient knowledge

to admit or deny the allegations of Paragraph 32 and, as such, deny the same.

33.     Each year, Valeant purchases an insurance program that provides broad "claims-

made" protection to the company, its subsidiaries, and its directors and officers.

**ANSWER:** Paragraph 33 consists of legal conclusions to which no response is required.

To the extent a response is required, the Answering Defendants are without sufficient knowledge

to admit or deny the allegations of Paragraph 33 and, as such, deny the same.

34.     Because Valeant is headquartered in Quebec and has worldwide operations, it purchases insurance policies that are issued in Quebec and governed by Quebec law and that provide protection for alleged wrongful acts, and resulting claims, that occur or are brought anywhere in the world.

**ANSWER:** Paragraph 34 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants only admit that they issued certain insurance policies, which speak for themselves, and deny the remaining allegations as alleged against the Answering Defendants to the extent they are inconsistent with their policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 34 and, as such, deny the same.

35.     The two insurance programs under which Plaintiffs are seeking coverage in this action are the 2013-14 Program and 2015-16 Program. As detailed below, many of the defendant Insurers issued coverage to Valeant under both Programs, while certain Insurers issued coverage under one Program or the other.

**ANSWER:** The Answering Defendants admit that they issued insurance policies to Valeant under the 2015-16 Program. The Answering Defendants deny the remaining allegations of Paragraph 35 to the extent that they are directed against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 35 and, as such, deny the same.

**The Insurers Issued The 2013-14 Program to Valeant in Quebec and Under Quebec Law**

36.     Valeant purchased $150 million in coverage as part of the 2013-14 Program.[1]

---

[1] Valeant also purchased an additional $50 million of "Side A DIC" coverage that applies solely to non-indemnifiable loss of its directors and officers and that is not at issue in this action at this time.

**ANSWER:** The allegations of Paragraph 36 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 36. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 36 and, as such, deny the same.

37.     AIG Insurance Company of Canada ("AIG") issued the primary policy for the 2013-14 Program (the "2013-14 Primary Policy") which provided a coverage limit of $10 million in excess of a $5 million deductible.

**ANSWER:** The allegations of Paragraph 37 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 37. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 37 and, as such, deny the same.

38.     Various of the defendant Insurers (together, with AIG, the "2013-14 Insurers") provided the remaining $140 million in coverage limits pursuant to a series of excess insurance policies (the "2013-14 Excess Policies") as follows:

| Layer | Insurance Company | Policy No. | Coverage Limits |
|-------|-------------------|------------|-----------------|
| Primary | AIG Insurance Company of Canada | 01-421-57-69 | $10 Million |
| 1st Excess | Lloyd's Syndicate AWH 2232 | QB078513 | $10 Million x/s $10 Million |
| 2nd Excess | Allianz Global Risks US Insurance Company | FPL 7223891 | $10 Million x/s $20 Million |
| 3rd Excess | Lloyd's Syndicate CVS 1919 | QB078613 | $10 Million x/s $30 Million |
| 4th Excess | Hartford Fire Insurance Company | DA 0271573-13 | $10 Million x/s $40 Million |
| 5th Excess | Everest Insurance Company of Canada | XD&O0000061 | $10 Million x/s $50 Million |
| 6th Excess | Liberty International Underwriters, a division of Liberty Mutual Insurance Company | DOTOAAGHNZ003 | $10 Million x/s $60 Million |

23

| 7th Excess | Arch Insurance Canada Ltd | DOX0046341-02 | $10 Million x/s $70 Million |
| 8th Excess | Lloyd's Syndicate QBE 1886 (75% share) Lloyd's Syndicate ANV 1861 (25% share) | QB078913 | $10 Million x/s $80 Million |
| 9th Excess | Royal & Sun Alliance Insurance Company of Canada | 9501117 | $10 Million x/s $100 Million |
| 10th Excess | AIG Insurance Company of Canada | 2454458 | $15 Million x/s $110 Million |
| 11th Excess | Temple Insurance Company | LIA105678 | $15 Million x/s $125 Million |
| 12th Excess | Lloyd's Syndicate Mitsui 3210 | QB146013 | $10 Million x/s $140 Million |

**ANSWER:** The allegations of Paragraph 38 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 38. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 38 and, as such, deny the same.

39.     Each of the 2013-14 Excess Policies "follow-form" to the coverage provided by the 2013-14 Primary Policy, except where the 2013-14 Excess Policies provide otherwise. Specifically, each of the 2013-14 Excess Policies provides: "Except as otherwise provided in the Declarations or by any endorsement attached hereto, this policy is subject to the same insuring clauses, definitions, terms and conditions, exclusions, cancellation provisions and all other provisions of the underlying insurance."

**ANSWER:** The allegations of Paragraph 39 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 39. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 39 and, as such, deny the same.

40.     During the application process for the 2013-14 Program, Valeant informed the

2013-14 Insurers that its headquarters is in Quebec. That information was also publically [*sic*] available to the 2013-14 Insurers, as Valeant's public filings make clear that its headquarters and principal place of business are in Quebec.

**ANSWER:** The allegations of Paragraph 40 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 40. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 40 and, as such, deny the same.

41.     The 2013-14 Primary Policy and the 2013-14 Excess Policies (collectively, the "2013-14 Policies") were issued in Quebec and subject to Quebec law.

**ANSWER:** The allegations of Paragraph 41 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 41. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 41 and, as such, deny the same.

42.     The first page of the 2013-14 Primary Policy states that the policy was being issued to Valeant at its Quebec headquarters – 2150 Boul Saint-Elzear 0 Laval, QC H7L – 4A8. Recognizing that the policy was being issued in Quebec and subject to Quebec law, the policy also provides in the "Conformance to Law" section that: "Where this policy is legally required to be interpreted in accordance with the laws of the Province of Quebec … The policy provisions shall be deemed amended to comply with the applicable mandatory provisions of the Quebec Civil Code, but only to the extent necessary to comply with such mandatory provisions of the Quebec Civil Code and only to the extent that such mandatory provisions are contrary to the existing terms of this policy."

**ANSWER:** The allegations of Paragraph 42 are not directed at the Answering Defendants

and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 42. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 42 and, as such, deny the same.

43.     The 2013-14 Excess Policies each contain a choice of law clause providing that Quebec law governs. Specifically, each of the 2013-14 Excess Policies recognizes that the policy is being issued in Quebec by listing Valeant's Quebec address and explicitly provides: "It is understood and agreed by both the Insured and Underwriter(s) that the governing law and any dispute concerning the interpretation of this policy shall be governed by the law of the province in Canada in which this policy is issued."

**ANSWER:** The allegations of Paragraph 43 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 43. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 43 and, as such, deny the same.

44.     Each of the 2013-14 Excess Policies issued by a Lloyd's Syndicate or Lloyd's Consortium – including the first layer excess policy issued by Lloyd's Syndicate AWH 2232 – provides that the relevant Insurer has mandated that the Lloyd's Attorney-In-Fact ("AIF") for Canada will bind coverage on their behalf. These policies each state: "The AIF shall confirm Lloyd's Underwriters' coverage by signing in Canada a policy that will contain the terms and conditions set out in this contract (the "Canadian Policy"), and by communicating from Canada the issuance of that policy to the policyholder or his broker. …" These policies specify that the address for the Lloyd's AIF in Canada is "1155, rue Metcalfe, Suite 220, Montreal, Quebec, H3B 2V6." This further confirms that each of the 2013-14 Excess Policies issued by a Lloyd's Syndicate or Lloyd's Consortium was issued in Quebec pursuant to Quebec law.

**ANSWER:** The allegations of Paragraph 44 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 44. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 44 and, as such, deny the same.

45.     One of the 2013-14 Insurers – Royal & Sun Alliance Insurance Company of Canada – has admitted in coverage correspondence that the 2013-14 Policies are governed by Quebec law.

**ANSWER:** The allegations of Paragraph 45 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 45. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 45 and, as such, deny the same.

46.     The premiums paid for the 2013-14 Policies were allocated to the Valeant Quebec parent company and were subject to Quebec tax.

**ANSWER:** The allegations of Paragraph 46 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 46. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 46 and, as such, deny the same.

**The Insurers Issued The 2015-16 Program to Valeant in Quebec and Under Quebec Law**

47.     Valeant purchased $175 million in coverage as part of the 2015-16 Program.[2]

**ANSWER:** Paragraph 47 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that they issued certain insurance policies within the so-called 2015-16 Program, which speak for themselves. The Answering Defendants are without sufficient knowledge to admit or deny the remaining

---

[2] Valeant also purchased an additional $75 million of "Side A DIC" coverage that applies solely to non-indemnifiable loss of its directors and officers and that is not at issue in this action at this time.

27

allegations of Paragraph 47 and, as such, deny the same.

48.    AIG issued the primary policy for the 2015-16 Program (the "2015-16 Primary Policy") which provided a coverage limit of $10 million in excess of a $10 million deductible.

**ANSWER:** Paragraph 48 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that AIG issued the 2015-16 Primary Policy, which speaks for itself, and deny the allegations of Paragraph 48 to the extent they are inconsistent with the terms of the 2015-16 Primary Policy.

49.    Various of the defendant Insurers (together, with AIG, the "2015-16 Insurers") provided the remaining $165 million in coverage limits pursuant to a series of excess insurance policies (the "2015-16 Excess Policies") as follows:

| Layer | Insurance Company | Policy No. | Coverage Limits |
|---|---|---|---|
| Primary | AIG Insurance Company of Canada | 01-714-68-05 | $10 Million |
| 1st Excess | Lloyd's Syndicate AWH 2232 | B0509FINMW1500609 | $10 Million x/s $10 Million |
| 2nd Excess | Allianz Global Risks US Insurance Company | FPL 7228579 | $10 Million x/s $20 Million |
| 3rd Excess | Lloyd's Consortium 9885 (50% share)<br><br>Lloyd's Syndicate QBE 1886 (50% share) | B0509FINMW 1500612 | $10 Million x/s $30 Million |
| 4th Excess | Lloyd's Syndicate Argo 1200 (50% share)<br><br>Royal & Sun Alliance Insurance Company of Canada (50% share) | B0509FINMW1500642<br><br>9501712 | $10 Million x/s $40 Million |
| 5th Excess | Everest Insurance Company of Canada | E3DO000I0I | $10 Million x/s $50 Million |
| 6th Excess | Liberty International Underwriters, a division of Liberty Mutual Insurance Company (50% share) | DOTOAAGHNZ005 | $10 Million x/s $60 Million |

| | Lloyd's Syndicate MIT 3210 (50% share) | B0509FINMW1500626 | |
|---|---|---|---|
| 7th Excess | Lloyd's Syndicate SJC 2003 | B0509FINMW 1500938 | $10 Million x/s $70 Million |
| 8th Excess | Allianz Global Risks US Insurance Company (12.5% share) | FPL 7228580 | $10 Million x/s $80 Million |
| | Lloyd's Syndicate QBE 1886 (50% share) | B0509FINMW 1500618 | |
| | Lloyd's Syndicate ANV 1861 (25% share) | B0509FINMW1500618 | |
| | Lloyd's Syndicate NAV 1221 (12.5% share) | B0509FINMW1500618 | |
| 9th Excess | XL Insurance Company SE | B0509FINMW1501095 | $10 Million x/s $100 Million |
| 10th Excess | AIG Insurance Company of Canada | FINMW1501096/ 0033025183 | $15 Million x/s $110 Million |
| 11th Excess | Temple Insurance Company | B0509FINMW1500627 | $15 Million x/s $125 Million |
| 12th Excess | Lloyd's Syndicate MIT 3210 (50% share) | B0509FINMW1500629 | $10 Million x/s $140 Million |
| | Lloyd's Syndicate AMA 1200 (50% share) | | |
| 13th Excess | ACE INA Insurance Company (20% share) | DOX027335 | $25 Million x/s $150 Million |
| | Lloyd's Syndicate HCC 4141 (20% share) | 150142820113 | |
| | Ironshore Canada Ltd. (20% share) | C444803015 | |
| | Royal & Sun Alliance Insurance Company of Canada (20% share) | 9501713 | |
| | Lloyd's Syndicate BRT 2987 (10% share) | B0509FINMWl500630 | |
| | Lloyd's Syndicate NAV 1221 (10% share) | B0509FINMW 1500630 | |

**ANSWER:** Paragraph 49 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that they issued certain insurance policies as part of the 2015-16 Program, which speak for themselves, and which are excess of other insurance policies, including but not limited to the 2015-16 Primary Policy. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 49 and, as such, deny the same.

50.     Each of the 2015-16 Excess Policies "follow-form" to the coverage provided by the 2015-16 Primary Policy, except where the 2015-16 Excess Policies provide otherwise. Specifically, each of the 2015-16 Excess Policies provides: "Except as otherwise provided in the Declarations or by any endorsement attached hereto, this policy is subject to the same insuring clauses, definitions, terms and conditions, exclusions, cancellation provisions and all other provisions of the underlying insurance."

**ANSWER:** Paragraph 50 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that they issued certain insurance policies, which speak for themselves, and deny the allegations of Paragraph 50 to the extent they are inconsistent with the terms and conditions of any of their insurance policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 50 and, as such, deny the same.

51.     During the application process for the 2015-16 Program, Valeant informed the 2015-16 Insurers that its headquarters was in Quebec. That information was also publically [*sic*] available to the 2015-16 Insurers, as Valeant's public filings make clear that its headquarters and principal place of business are in Quebec.

**ANSWER:** The Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 51 and, as such, deny the same.

52.     The 2015-16 Primary Policy and the 2015-16 Excess Policies (collectively, the "2015-16 Policies") were issued in Quebec and subject to Quebec law.

**ANSWER:** Paragraph 52 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that they issued certain insurance policies, which speak for themselves, and deny the allegations of Paragraph 52 to the extent they are inconsistent with the terms and conditions of any of their insurance policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 52 and, as such, deny the same.

53.     The first page of the 2015-16 Primary Policy states that the policy was being issued to Valeant at its Quebec headquarters – 2150 Boul Saint-Elzear 0 Laval, QC H7L – 4A8. Recognizing that the policy was being issued in Quebec and subject to Quebec law, the policy also provides in the "Conformance to Law" section that: "Where this policy is legally required to be interpreted in accordance with the laws of the Province of Quebec … The policy provisions shall be deemed amended to comply with the applicable mandatory provisions of the Quebec Civil Code, but only to the extent necessary to comply with such mandatory provisions of the Quebec Civil Code and only to the extent that such mandatory provisions are contrary to the existing terms of this policy." The 2015-16 Primary Policy also contains a "Privacy Principles" section in French from AIG's Quebec office.

**ANSWER:** Paragraph 53 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that Plaintiffs purport to quote sections of the 2015-16 Primary Policy, which speaks for itself, and deny the remaining

allegations of Paragraph 53 to the extent they are inconsistent with the terms of the 2015-16 Primary Policy. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 53 and, as such, deny the same.

54.     The 2015-16 Excess Policies each contain a choice of law clause providing that Quebec law governs. Specifically, each of the 2015-16 Excess Policies recognizes that the policy is being issued in Quebec by listing Valeant's Quebec address and explicitly provides: "It is understood and agreed by both the Insured and Underwriter(s) that the governing law and any dispute concerning the interpretation of this policy shall be governed by the law of the province in Canada in which this policy is issued."

**ANSWER:** Paragraph 54 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that Paragraph 54 purports to quote from the 2015-16 Excess Policies, which speak for themselves, and deny the remaining allegations of Paragraph 54 to the extent they are directed at the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 54 and, as such, deny the same.

55.     Each of the 2015-16 Excess Policies issued by a Lloyd's Syndicate or Lloyd's Consortium – including the first layer excess policy issued by Lloyd's Syndicate AWH 2232 – provides that the relevant Insurer has mandated that the Lloyd's Attorney-In-Fact ("AIF") for Canada will bind coverage on their behalf. These policies each state: "The AIF shall confirm Lloyd's Underwriters' coverage by signing in Canada a policy that will contain the terms and conditions set out in this contract (the "Canadian Policy"), and by communicating from Canada the issuance of that policy to the policyholder or his broker. ..." These policies specify that the address for the Lloyd's AIF in Canada is "1155, rue Metcalfe, Suite 220, Montreal, Quebec, H3B

2V6." This further confirms that each of the 2015-16 Excess Policies issued by a Lloyd's syndicate or Lloyd's Consortium was issued in Quebec pursuant to Quebec law.

**ANSWER:** Paragraph 55 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that Paragraph 55 purports to quote from the 2015-16 Excess Policies, which speak for themselves, and deny the remaining allegations of Paragraph 55 to the extent they are directed at the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 55 and, as such, deny the same.

56.    One of the 2015-16 Insurers – Royal & Sun Alliance Insurance Company of Canada – has admitted in coverage correspondence that the 2015-16 Policies are governed by Quebec law.

**ANSWER:** The allegations of Paragraph 56 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 56. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 56 and, as such, deny the same.

57.    The premiums paid for the 2015-16 Policies were allocated to the Valeant Quebec parent company and were subject to Quebec tax.

**ANSWER:** Paragraph 57 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 57 and, as such, deny the same.

**The Coverage Promised Under the Programs, and the Coverage Mandated By Quebec Law**

58.    The relevant coverage provisions of the 2013-14 Policies and 2015-16 Policies (collectively, the "Policies") are identical. Thus, although the 2013-14 Program and 2015-16 Program provide coverage for different time periods and in different amounts, the scope of

coverage provided to Valeant by the Insurers under the two Programs is the same.

**ANSWER:** Paragraph 58 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 58 and, as such, deny the same.

59.     The Policies contain three coverage parts: Coverage Parts A, B, and C. The Policies provide in a section labelled [*sic*] "Worldwide Territory" that this coverage applies "anywhere in the world."

**ANSWER:** The Answering Defendants only admit that they issued certain insurance policies to Valeant, which speak for themselves. The Answering Defendants deny the allegations of Paragraph 59 to the extent they are directed at the Answering Defendants and are inconsistent with the terms and conditions of their respective policies and/or AIG's Primary Policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 59 and, as such, deny the same.

60.     Coverage Part A – "Insured Person Coverage" – provides, in part, that the Insurers "shall pay the Loss of any Insured Person that no Organization has indemnified or paid, and that arises from any: (1) Claim ... made against such Insured Person…"

**ANSWER:** The Answering Defendants only admit that they issued certain insurance policies to Valeant, which speak for themselves. The Answering Defendants deny the allegations of Paragraph 60 to the extent they are directed at the Answering Defendants and are inconsistent with the terms and conditions of their respective policies and/or AIG's Primary Policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 60 and, as such, deny the same.

61.     Coverage Part B – "Indemnification Of Insured Person Coverage" – provides, in

part, that the Insurers "shall pay the Loss of an Organization that arises from any: (1) Claim … made against any Insured Person … to the extent that such Organization has indemnified such Loss…"

**ANSWER:** The Answering Defendants only admit that they issued certain insurance policies to Valeant, which speak for themselves. The Answering Defendants deny the allegations of Paragraph 61 to the extent they are directed at the Answering Defendants and are inconsistent with the terms and conditions of their respective policies and/or AIG's Primary Policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 61 and, as such, deny the same.

62.     Coverage Part C – "Organization Coverage" – provides in part that the Insurers "shall pay the Loss of any Organization: (1) arising from any Securities Claim made against such Organization …"

**ANSWER:** The Answering Defendants only admit that they issued certain insurance policies to Valeant, which speak for themselves. The Answering Defendants deny the allegations of Paragraph 62 to the extent they are directed at the Answering Defendants and are inconsistent with the terms and conditions of their respective policies and/or AIG's Primary Policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 62 and, as such, deny the same.

63.     The Policies define "Organization" to include Valeant and its subsidiaries. The Policies define "Insured Persons" to include, among others, Valeant's "Executives" which includes all past or current directors and officers.

**ANSWER:** The Answering Defendants only admit that they issued certain insurance policies to Valeant, which speak for themselves. The Answering Defendants deny the allegations

of Paragraph 63 to the extent they are directed at the Answering Defendants and are inconsistent with the terms and conditions of their respective policies and/or AIG's Primary Policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 63 and, as such, deny the same.

64.    Thus, under Coverage Parts B and C of the Policies, the Insurers agreed to pay all "Loss" arising from either (1) a "Claim" against Valeant's officers or directors or (2) a "Securities Claim" against Valeant or its subsidiaries.

**ANSWER:** The Answering Defendants only admit that they issued certain insurance policies to Valeant, which speak for themselves. The Answering Defendants deny the allegations of Paragraph 64 to the extent they are directed at the Answering Defendants and are inconsistent with the terms and conditions of their respective policies and/or AIG's Primary Policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 64 and, as such, deny the same.

65.    "Loss" is defined in the Policies to include, among other things, "damages, settlements, judgments … Defence Costs …" "Defence Costs" is defined to include, among other things, the "fees, costs and expenses" resulting from "the investigation, adjustment, defense and/or appeal of a Claim."

**ANSWER:** The Answering Defendants only admit that they issued certain insurance policies to Valeant, which speak for themselves. The Answering Defendants deny the allegations of Paragraph 65 to the extent they are directed at the Answering Defendants and are inconsistent with the terms and conditions of their respective policies and/or AIG's Primary Policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 65 and, as such, deny the same.

66.     The Policies define a "Claim" to include, among other things, any civil proceeding commenced by service of a complaint and also any "Insured Person Investigation." The Policies define an "Insured Person Investigation" to include, in part, any civil, criminal, administrative or regulatory investigation of an Insured Person once the Insured Person has received a subpoena from certain investigative bodies (such as the Securities and Exchange Commission) or been identified as a target of an investigation.

**ANSWER:** The Answering Defendants only admit that they issued certain insurance policies to Valeant, which speak for themselves. The Answering Defendants deny the allegations of Paragraph 66 to the extent they are directed at the Answering Defendants and are inconsistent with the terms and conditions of their respective policies and/or AIG's Primary Policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 66 and, as such, deny the same.

67.     The Policies define a "Securities Claim," in part, as any Claim:

(1) [A]lleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:

(a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer to purchase or sell any securities of an **Organization;** or

(b) brought by a security holder or purchaser or seller of securities of an **Organization** with respect to such security holder's, purchaser's or seller's interest in securities of such **Organization…**

(emphasis in original)

**ANSWER:** The Answering Defendants only admit that they issued certain insurance policies to Valeant, which speak for themselves. The Answering Defendants deny the allegations

37

of Paragraph 67 to the extent they are directed at the Answering Defendants and are inconsistent with the terms and conditions of their respective policies and/or AIG's Primary Policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 67 and, as such, deny the same.

68.     As discussed below, the 2013-14 Claims and 2015-16 Claims constitute "Securities Claims" against Valeant and its subsidiaries and "Claims" against Valeant's former or current directors and officers (that Valeant has been indemnifying), thus requiring the Insurers to pay all "Loss" – including "Defence Costs," settlements, and judgments – arising from such Claims and Securities Claims.

**ANSWER:** Paragraph 68 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 68 to the extent that they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 68 and, as such, deny the same.

69.     Additionally, Quebec law imposes a duty upon the Insurers to pay the costs of defending covered claims (i.e., the "Defence Costs") without reducing the $150 million and $175 million limits of the respective Programs.

**ANSWER:** Paragraph 69 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 69 to the extent that they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 69 and, as such, deny the same.

70.     Article 2500 of Quebec's Civil Code requires: "The proceeds of the insurance are

applied exclusively to the payment of injured third persons" and Article 2503 requires: "Legal costs and expenses resulting from actions against the insured, including those of the defence, and interest on the proceeds of the insurance are borne by the insurer over and above the proceeds of the insurance." This is a mandatory provision of Quebec law, and because the Policies were issued in Quebec under Quebec law, they are deemed to be amended to provide this mandatory coverage to Valeant.

**ANSWER:** Paragraph 70 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants only admit that Plaintiffs purport to quote Articles 2500 and 2503 of the Quebec Civil Code, which speaks for itself. The Answering Defendants deny the remaining allegations contained in Paragraph 70 to the extent that they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 70 and, as such, deny the same.

71.     The purchase of the Programs ended up being a prudent decision by Valeant. Valeant, its subsidiaries, and its former and current directors and officers have been named as defendants in substantial lawsuits that fall within the coverage provided under the 2013-14 Program and 2015-16 Program respectively. These lawsuits seek many billions of dollars in damages, and Valeant has already incurred substantial costs, far in excess of its deductibles under the Programs, defending against both the 2013-14 Claims and 2015-16 Claims.

**ANSWER:** Paragraph 71 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that Valeant, its subsidiaries, and its directors and officers have been named defendants in certain lawsuits, and deny that these lawsuits fall within the coverages of the Answering Defendants' policies.   The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of

Paragraph 71 and, as such, deny the same.

**The 2013-14 Claims**

72.     On December 16, 2014, Plaintiffs and Valeant's former CEO Michael Pearson were named as defendants in a class action lawsuit brought by former shareholders of Allergan. This class action was originally titled *Anthony Basile, et al. v. Valeant Pharmaceuticals International, Inc. et al.,* Case No. 2:14-cv-02004 (C.D. Ca.). After lead plaintiffs were appointed, they filed a consolidated class action complaint styled as *In re Allergan, Inc. Proxy Violation Securities Litigation,* Case No. 8:14-cv-2004 (C.D. Ca.) (the "Allergan Class Action"). A related case to the Allergan Class Action – titled *Timber Hill LLC, individually and on behalf of all others similarly situated v. Pershing Square Capital Management, L.P., et al.* – was also filed against Plaintiffs and Mr. Pearson on June 28, 2017. Together, these actions are referred to herein as the "2013-14 Claims."

**ANSWER:** The allegations of Paragraph 72 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 72. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 72 and, as such, deny the same.

73.     As the 2013-14 Insurers have acknowledged, the 2013-14 Claims fall within the time period covered by the 2013-14 Program because, prior to the end of the policy period, Valeant reported an earlier lawsuit, filed against Valeant by Allergan *(Allergan, Inc. et al. v. Valeant Pharmaceuticals International, Inc. et al.,* Case No. 8:14-cv-0124 (C.D. Ca.)), for which the 2013-14 Insurers denied coverage but treated as a "notice of circumstances" such that later covered claims involving Allergan would be deemed to have been made during the 2013-l 4 policy period.

**ANSWER:** The allegations of Paragraph 73 are not directed at the Answering Defendants

and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 73. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 73 and, as such, deny the same.

74.     The 2013-14 Claims allege that Valeant, Valeant USA, AGMS, and Mr. Pearson (the "Valeant Defendants") violated the federal securities laws governing tender offers – specifically, Section 14(e) of the Exchange Act, and Rule 14e-3 thereunder, and Section 20A of the Exchange Act – in connection with a tender offer Valeant made to Allergan's shareholders (in which Valeant offered to exchange its shares, or a mixture of its shares and cash, for Allergan shares). In short, the 2013-14 Claims allege that the Valeant Defendants, together with a hedge fund called Pershing Square Capital Management, L.P., certain of its affiliates, and its founder (the "Pershing Defendants"), violated the regulations governing tender offers by agreeing that the Pershing Defendants would acquire shares of Allergan based on non-public information (i.e., an impending tender offer by Valeant) as part of a scheme for Valeant to obtain control of Allergan through the tender offer. The 2013-14 Claims seek damages in excess of the limits of the 2013-14 Program.

**ANSWER**: The allegations of Paragraph 74 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 74. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 74 and, as such, deny the same.

75.     The 2013-14 Claims constitute covered "Claims" against Mr. Pearson and covered "Securities Claims" against Valeant, Valeant USA, and AGMS. Thus, the 2013-14 Insurers are contractually obligated to pay all "Loss" arising from the 2013-14 Claims, including all "Defence Costs" incurred in connection with the 2013-14 Claims. Further, because the 2013-14

Policies are governed by Quebec law, the 2013-14 Insurers are statutorily required to pay these Defence Costs without reducing the $150 million limits of the 2013-14 Program available to pay potential settlements of or judgments in the 2013-14 Claims.

**ANSWER:** The allegations of Paragraph 75 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 75. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 75 and, as such, deny the same.

**The 2015-16 Claims**

76.     Between September 28, 2015 and June 7, 2016, Valeant suffered a significant decline in the price of its stock. Following that stock drop, Valeant and many of its current and former officers and directors have been sued in numerous litigations alleging that they violated U.S. and Canadian securities laws and committed other alleged wrongful acts. These litigations, which were reported to the 2015-16 Insurers under the 2015-16 Program, and which the 2015-16 Insurers have acknowledged fall within that policy period, are referred to herein as the "2015-16 Claims." The 2015-16 Claims include:

a.  Securities class action lawsuits brought by Valeant's U.S. security holders which have now been consolidated in *In re Valeant Pharmaceuticals International, Inc. Securities Litigation* (D.N.J., Master No. 3:15-cv-07658-MAS-LHG); *Potter v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 3:15-cv-7658); *Chen v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 3:15-cv-7679); *Yang v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 2:33-av-00001); *Fein v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 3:15-cv-7809).

b.  Securities class action lawsuits brought by Valeant's Canadian and other non-U.S. security holders in Canada, including but not limited to: *Catucci v. Valeant Pharmaceuticals International, Inc., el al.* (Quebec, Case No. 540-17-11743-159); *Rosseau-Godbout v. Valeant Pharmaceuticals International, Inc., et al.* (Quebec, Case No. 500-06-770-152); *Kowalyshyn v. Valeant Pharmaceuticals International, Inc., et al.* (Ontario, Case No. CV-15-540593-00CP); *Kowalyshyn v. Valeant Pharmaceuticals International, Inc., et al.* (Ontario, Case No. CV-15-5410823-00CP); *Alladina v. Valeant Pharmaceuticals International, Inc., et al.* (British Columbia, Case No. S-159486); *O'Brien v. Valeant Pharmaceuticals International, Inc., et al.* (Ontario, Case No. CV-15-543678-00CP); *Okeley v. Valeant Pharmaceuticals International, Inc., et al.* (British Columbia, Case No. S-159991).

c.  Lawsuits filed by Valeant security holders who are not proceeding as part of the class actions, including but not limited to: *T Rowe Price Growth Stock Fund, Inc., et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv- 05034-MAS-LHG); *Equity Trustees Limited as Responsible Entity for T Rowe Price Global Equity Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-06127-MAS-LHG); *Principal Funds, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 1 6-cv-06128-MAS-LHG); *Bloombergsen Partners Fund, LP. et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07212-MAS-LHG); *Pentwater Equity Opportunities Master Fund Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 17-cv-07552-MAS-LHG); *The Boeing Company Employee Retirement Plans Master Trust and The Boeing Company*

*Employee Savings Plans Master Trust v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 17-cv-07636-MAS-LHG); *Public Employees Retirement System of Mississippi v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 1 7-cv-07625-MAS-LHG); *Valic Company I, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 1 6-cv-07496-MAS-LHG); *Janus Aspen Series, et.al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07497-M AS-LHG); *MSD Torchlight Partners, L.P. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07324-MAS-LHG); *BlueMountain Foinaven Master Fund L.P. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07328-MAS-LHG); *Incline Global Master LP, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07494-MAS-LHG); *Lord Abbett Investment Trust – Lord Abbett Short Duration Income Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 17-cv-06365-MAS-LHG); *Discovery Global Citizens Master Fund, Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 16-cv-07321-MAS-LHG); *Okumus Opportunistic Value Fund, Ltd. v. Valeant Pharmaceuticals International, Inc., et al.* (D.N.J., Case No. 17-cv-06513-MAS-LHG); *Forsta Ap-Fonden, et al. v. Valeant Pharmaceuticals International, Inc., et al.* [*sic*].

d. A lawsuit filed by third party payors to Valeant titled *In re Valeant Pharmaceuticals International, Inc. Third Party Payor Litigation* (D.N.J., Case No. 1 6-cv-03087-MAS-LHG).

e. Various regulatory investigations of various former or current officers, directors

44

and employees of Valeant, including but not limited to investigations by the Securities and Exchange Commission, United States Justice Department and United States Congress.

**ANSWER:** Paragraph 76 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that Plaintiffs seek coverage for various lawsuits under the 2015-16 Program, and that the allegations of those lawsuits are asserted in the operative complaints, which speak for themselves. The Answering Defendants deny the allegations of Paragraph 76 to the extent they are inconsistent with, or unfairly characterize, those underlying complaints. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations in Paragraph 76 and, as such, deny the same.

77.    The 2015-16 Claims constitute covered "Securities Claims" against Valeant and "Claims" against the former and current Valeant directors and officers named as defendants. Thus, the 2015-16 Insurers are contractually obligated to pay all "Loss" arising from the 2015-16 Claims, including all "Defence Costs" incurred in connection with the 2015-16 Claims. Further, because the 2015-16 Policies are governed by Quebec law, the 2015-16 Insurers are statutorily required to pay these Defence Costs without reducing the $175 million limits of the 2015-16 Program available to pay potential settlements of or judgments in the 2015-16 Claims.

**ANSWER:** Paragraph 77 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 77 to the extent they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 77 and, as such, deny the same.

**The Insurers Have Breached Their Obligations Under the Policies and Quebec Law**

78.     Valeant provided timely notice of the 2013-14 Claims to the 2013-14 Insurers and timely notice of the 2015-16 Claims to the 2015-16 Insurers.

**ANSWER:** Paragraph 78 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that they received notice of the 2015-16 Claims. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 78 and, as such, deny the same.

79.     Valeant has incurred substantial "Defence Costs" with respect to the 2013-14 Claims and has incurred substantial "Defence Costs" with respect to the 2015-16 Claims.

**ANSWER:** Paragraph 79 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 79 and, as such, deny the same.

80.     Despite having collected millions of dollars in premiums for the Policies from Valeant, however, when called upon to provide the coverage required by the terms of the Policies and mandatory provisions of Quebec law, the Insurers have failed and refused to comply with their obligations.

**ANSWER:** Paragraph 80 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 80 to the extent they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 80 and, as such, deny the same.

81.     The 2013-14 Insurers have denied coverage to Plaintiffs for the 2013-14 Claims. The 2013-14 Insurers contend that the 2013-14 Claims are not "Securities Claims" and that they therefore have no obligation to provide coverage to Plaintiffs for the 2013-14 Claims.

**ANSWER:** The allegations of Paragraph 81 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 81. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 81 and, as such, deny the same.

82.     The 2013-14 Insurers' denial of coverage to Plaintiffs for the 2013-14 Claims is meritless, as the 2013-14 Claims fall squarely within the Policies' definition of "Securities Claims." The 2013-14 Insurers have therefore breached their contractual obligations to Plaintiffs under the 2013-14 Policies by wrongfully denying coverage for the 2013-14 Claims.

**ANSWER:** The allegations of Paragraph 82 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 82. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 82 and, as such, deny the same.

83.     Although the 2013-14 Insurers have pretended to acknowledge that the 2013-14 Claims constitute covered "Claims" against Michael Pearson, they have in effect denied coverage for those Claims by erroneously contending that Mr. Pearson's exposure is de minimis in comparison to Valeant's exposure. Accordingly, they have not paid a single penny of "Defence Costs" incurred by Valeant with respect to the 2013-14 Claims (whether on its own behalf or on behalf of Mr. Pearson).

**ANSWER:** The allegations of Paragraph 83 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 83. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 83 and, as such, deny the same.

84.     Further, the 2013-14 Insurers have also taken the position that even if they paid

"Defence Costs" (and they have paid none), any such payment of "Defence Costs" would erode the limits of the 2013-14 Program. Thus, the 2013-14 Insurers have not only breached the terms of the 2013-14 Policies by wrongfully denying coverage for the 2013-14 Claims, they have also breached the 2013-14 Policies by repudiating their mandatory obligation under Quebec law to pay their insureds' costs of defense without depleting the coverage limits of the 2013-14 Program.

**ANSWER:** The allegations of Paragraph 84 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 84. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 84 and, as such, deny the same.

85.    The 2015-16 Insurers have likewise repudiated the obligations imposed upon them by Quebec law and thus breached the 2015-16 Policies. Although the 2015-16 Insurers have purported to acknowledge coverage for some of the 2015-16 Claims, subject to reservations of rights, they have not paid a single penny to Valeant for the substantial "Defence Costs" Valeant has incurred on its own behalf and on behalf of its current and former directors and officers in defending against the 2015-16 Claims. Further, the 2015-16 Insurers have taken the position that even if they paid "Defence Costs" for the 2015-16 Claims (and they have paid none), any such payment of "Defence Costs" would erode the limits of the 2015-16 Program. Thus, the 2015-16 Insurers, like the 2013-14 Insurers, have repudiated their mandatory obligation under Quebec law to pay their insureds' costs of defense without depleting the coverage limits of the 2015-16 Policies and breached their contractual obligations under the 2015- 16 Policies.

**ANSWER:** Paragraph 85 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that they have issued various correspondence reserving their rights, which speak for themselves, and that they have no current

obligation to pay, and have not paid, "Defence Costs" with respect to the 2015-16 Claims, and deny the remaining allegations of Paragraph 85 to the extent they are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 85 and, as such, deny the same.

**Agreement to Stay Claims Pending Expiration of the Policies' "Waiting Period"**

86.     The Policies provide that the parties must mediate any dispute under the Policies before commencing judicial proceedings. The Policies further provide that the parties will not commence judicial proceedings until 60 days after the mediation has terminated.

**ANSWER:** Paragraph 86 consists of legal conclusions to which no response is required. To the extent a response is required, upon information and belief, the Answering Defendants admit that their policies contain a pre-suit mediation requirement with a 120-day waiting period after the mediation before judicial proceedings may be commenced. The Answering Defendants deny the remaining allegations of Paragraph 86 to the extent they are directed against the Answering Defendants.

87.     A mediation between Plaintiffs and the Insurers was held on November 30 and December 1, 2017 and ended in an impasse.

**ANSWER:** Upon information and belief, the Answering Defendants admit the allegations of Paragraph 87.

88.     Although 60 days have not elapsed since the mediation, Plaintiffs have filed this litigation in an abundance of caution so as to avoid any argument by the Insurers that Quebec's prescription period (its equivalent to a statute of limitations) will have expired during the "waiting period" as to any of the costs Plaintiffs seek to recover in this action.

**ANSWER:** Paragraph 88 consists of legal conclusions to which no response is required.

To the extent a response is required, the Answering Defendants admit that Plaintiffs' Complaint was filed within 60 days of the mediation and within the 120-day "waiting period" of their policies. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 88 and, as such, deny the same.

89.     Plaintiffs agree to extend the time for the Insurers to respond to this Complaint by 60 days so as to comply with the contractual waiting period and avoid any prejudice to the Insurers.

**ANSWER:** Paragraph 89 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny that they are not prejudiced by Plaintiffs' filing of the Complaint before the 120-day period has elapsed and that Plaintiffs have the authority to extend the time for the Insurers to respond to the Complaint. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 89 and, as such, deny the same.

## FIRST COUNT

### (Declaratory Judgment on Defense Duties: By All Plaintiffs Against the 2013-14 Insurers)

90.     Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

**ANSWER:** The Answering Defendants restate their responses to the relevant allegations set forth above as if fully set forth herein.

91.     Under the 2013-14 Policies, the 2013-14 Insurers are required to pay "Loss," including "Defence Costs," arising from "Securities Claims" against the Plaintiffs and "Claims" against Plaintiffs' directors and officers. Under Quebec law, the 2013-14 Insurers must pay such Defence Costs without reducing the limits available under the 2013-14 Policies.

**ANSWER:** The allegations of Paragraph 91 are not directed at the Answering Defendants

and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 91. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 91 and, as such, deny the same.

92.     The 2013-14 Claims constitute covered Securities Claims against the Plaintiffs and covered Claims against Michael Pearson.

**ANSWER:** The allegations of Paragraph 92 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 92. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 92 and, as such, deny the same.

93.     Plaintiffs have incurred, and are continuing to incur, substantial Defence Costs with respect to the 2013-14 Claims on behalf of themselves and Mr. Pearson.

**ANSWER:** The allegations of Paragraph 93 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 93. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 93 and, as such, deny the same.

94.     The 2013-14 Insurers have wrongfully denied coverage to Plaintiffs for the 2013-14 Claims, failed to pay any of the Defence Costs incurred by Plaintiffs to date, and have refused to pay Defence Costs without reducing the limits of the 2013-14 Policies as required by Quebec law.

**ANSWER:** The allegations of Paragraph 94 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 94. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 94 and, as such, deny the same.

95.     Accordingly, an actual case or controversy exists between Plaintiffs and the 2013-14 Insurers regarding the obligations owed to Plaintiffs under the 2013-14 Policies.

**ANSWER:** The allegations of Paragraph 95 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 95. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 95 and, as such, deny the same.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

## SECOND COUNT

### (Declaratory Judgment on Defense Duties: By Valeant Against the 2015-16 Insurers)

96.     Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

**ANSWER:** The Answering Defendants restate their responses to the relevant allegations set forth above as if fully set forth herein.

97.     Under the 2015-16 Policies, the 2015-16 Insurers are required to pay "Loss," including "Defence Costs," arising from "Securities Claims" against Valeant and "Claims" against Valeant's directors and officers. Under Quebec law, the 2015-16 Insurers must pay such Defence Costs without reducing the limits available under the 2015-16 Policies.

**ANSWER:** Paragraph 97 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 97 to the extent they are alleged against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 97 and,

as such, deny the same.

98.     The 2015-16 Claims constitute covered Securities Claims against Valeant and covered Claims against Valeant's current and former directors and officers.

**ANSWER:** Paragraph 98 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 98.

99.     Valeant has incurred, and it continuing to incur, substantial Defence Costs with respect to the 2015-16 Claims on behalf of itself and its current and former directors and officers.

**ANSWER:** Paragraph 99 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 99 and, as such, deny the same.

100.     The 2015-16 Insurers have failed to pay any of the Defence Costs incurred by Valeant to date and have refused to pay Defence Costs without reducing the limits of the 2015-16 Policies as required by Quebec law.

**ANSWER:** Paragraph 100 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny that they have any current obligation to pay Defence Costs. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 100 and, as such, deny the same.

101.     Accordingly, an actual case or controversy exists between Valeant and the 2015-16 Insurers regarding the obligations owed to Valeant under the 2015-16 Policies.

**ANSWER:** Paragraph 101 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 101 and, as such, deny the same.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

## THIRD COUNT

### (Declaratory Judgment on Defense Duties: By All Plaintiffs Against Lloyd's Syndicate AWH 2232 with respect to Lloyd's Syndicate AWH 2232's 2013-14 Policy)

102.    Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

**ANSWER:** The Answering Defendants restate their responses to the relevant allegations set forth above as if fully set forth herein.

103.    AIG has denied that it is obligated to pay for Defence Costs that exceed the limits provided in the 2013-14 Primary Policy in accordance with Articles 2500 and 2503 of Quebec's Civil Code.

**ANSWER:** The allegations of Paragraph 103 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 103. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 103 and, as such, deny the same.

104.    Due to AIG's denial of coverage for Defence Costs and breach of its duty to defend Plaintiffs and other Insureds as required by Articles 2500 and 2503 of Quebec's Civil Code, Lloyd's Syndicate AWH 2232 is obligated to pay for all of Plaintiffs' Defence Costs without application of any deductible or self-insured retention and without eroding the limits provided in its 2013-14 Policy as required by Quebec law.

**ANSWER:** The allegations of Paragraph 104 are not directed at the Answering Defendants

54

and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 104. Furthermore, Paragraph 104 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 104 and, as such, deny the same.

105.   Plaintiffs have incurred Defence Costs in excess of the limits of the 2013-14 Primary Policy.

**ANSWER:** The allegations of Paragraph 105 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 105. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 105 and, as such, deny the same.

106.   Due to AIG's denial of coverage for Defence Costs that exceed the limits set forth in the 2013[*sic*] Primary Policy, Lloyd's Syndicate AWH 2232 is obligated to pay for all of Plaintiffs' Defence Costs without eroding the limits provided in its 2013-14 Policy as required by Quebec law.

**ANSWER:** The allegations of Paragraph 106 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 106. Furthermore, Paragraph 106 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 106 and, as such, deny the same.

107.   Lloyd's Syndicate AWH 2232 has failed to pay any of the Defence Costs incurred by Plaintiffs to date and has refused to pay Defence Costs without eroding the limits of its 2013-14 Policy as required by Quebec law.

**ANSWER:** The allegations of Paragraph 107 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 107. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 107 and, as such, deny the same.

108.    Accordingly, an actual case or controversy exists between Plaintiffs and the Lloyd's Syndicate AWH 2232 regarding the obligations owed to Plaintiffs under the Lloyd's Syndicate AWH 2232 2013-14 Policy.

**ANSWER:** The allegations of Paragraph 108 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 108. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 108 and, as such, deny the same.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

## FOURTH COUNT

### (Declaratory Judgment on Defense Duties: By Valeant Against Lloyd's Syndicate AWH 2232 with respect to Lloyd's Syndicate AWH 2232's 2015-16 Policy)

109.    Valeant repeats the relevant allegations set forth above as if set forth herein at length.

**ANSWER:** The Answering Defendants restate their responses to the relevant allegations set forth above as if fully set forth herein.

110.    AIG has denied that it is obligated to pay for Defence Costs that exceed the limits

provided in the 2015-16 Primary Policy in accordance with Articles 2500 and 2503 of Quebec's Civil Code.

**ANSWER:** The allegations of Paragraph 110 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 110. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 110 and, as such, deny the same.

111.    Due to AIG's denial of coverage for Defence Costs and breach of its duty to defend Valeant and other Insureds as required by Articles 2500 and 2503 of Quebec's Civil Code, Lloyd's Syndicate AWH 2232 is obligated to pay for all of Valeant's Defence Costs without application of any deductible or self-insured retention and without eroding the limits provided in its 2015-16 Policy as required by Quebec law.

**ANSWER:** The allegations of Paragraph 111 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 111. Furthermore, Paragraph 111 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 111 and, as such, deny the same.

112.    Valeant has incurred Defence Costs in excess of the limits of the 2013-14 [*sic*] Primary Policy.

**ANSWER:** The allegations of Paragraph 112 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 112. Furthermore, Paragraph 112 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient

knowledge to admit or deny the allegations of Paragraph 112 and, as such, deny the same.

113.    Due to AIG's denial of coverage for Defence Costs that exceed the limits set forth in the 2015-16 Primary Policy, Lloyd's Syndicate AWH 2232 is obligated to pay for all of Valeant's Defence Costs without eroding the limits provided in its 2015-16 Policy as required by Quebec law.

**ANSWER:** The allegations of Paragraph 113 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 113. Furthermore, Paragraph 113 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 113 and, as such, deny the same.

114.    Lloyd's Syndicate AWH 2232 has failed to pay any of the Defence Costs incurred by Valeant to date and has refused to pay Defence Costs without eroding the limits of its 2015-16 Policy as required by Quebec law.

**ANSWER:** The allegations of Paragraph 114 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 114. Furthermore, Paragraph 114 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 114 and, as such, deny the same.

115.    Accordingly, an actual case or controversy exists between Valeant and Lloyd's Syndicate AWH 2232 regarding the obligations owed to Valeant under the Lloyd's Syndicate AWH 2232 2015-16 Policy.

**ANSWER:** The allegations of Paragraph 115 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in

Paragraph 115. Furthermore, Paragraph 115 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 115 and, as such, deny the same.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

## FIFTH COUNT

### (Declaratory Judgment on Coverage: By All Plaintiffs Against the 2013-14 Insurers)

116.   Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

**ANSWER:** The Answering Defendants restate their responses to the relevant allegations set forth above as if fully set forth herein.

117.   Under the 2013-14 Policies, the 2013-14 Insurers are required to pay all "Loss" arising from "Securities Claims" against the Plaintiffs and "Claims" against Plaintiffs' directors and officers.

**ANSWER:** The allegations of Paragraph 117 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 117. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 117 and, as such, deny the same.

118.   The 2013-14 Claims constitute covered Securities Claims against the Plaintiffs and covered Claims against Valeant's former CEO Michael Pearson.

**ANSWER:** The allegations of Paragraph 118 are not directed at the Answering Defendants

and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 118. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 118 and, as such, deny the same.

119.    The 2013-14 Insurers have wrongfully denied coverage to Plaintiffs for the 2013-14 Claims.

**ANSWER:** The allegations of Paragraph 119 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 119.  To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 119 and, as such, deny the same.

120.    Accordingly, an actual case or controversy exists between Plaintiffs and the 2013-14 Insurers regarding the obligations owed to Plaintiffs under the 2013-14 Policies.

**ANSWER:** The allegations of Paragraph 120 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 120.  To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 120 and, as such, deny the same.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

## SIXTH COUNT

### (Declaratory Judgment on Coverage:  By Valeant Against the 2015-16 Insurers)

121.    Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

**ANSWER:** The Answering Defendants restate their responses to the relevant allegations set forth above as if fully set forth herein.

122.    Under the 2015-16 Policies, the 2015-16 Insurers are required to pay all "Loss" arising from "Securities Claims" against Valeant and "Claims" against Valeant's directors and officers.

**ANSWER:** Paragraph 122 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 122 to the extent they are alleged against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 122 and, as such, deny the same.

123.    The 2015-16 Claims constitute covered Securities Claims against Valeant and covered Claims against Valeant's current and former directors and officers.

**ANSWER:** Paragraph 123 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 123.

124.    The 2015-16 Insurers have reserved their rights to deny coverage for the 2015-16 Claims rather than acknowledge coverage.

**ANSWER:** Paragraph 124 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants only admit that they have reserved their rights pursuant to various coverage correspondence, which speak for themselves, and deny the remaining allegations of Paragraph 124 to the extent they are asserted against the Answering

Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 124 and, as such, deny the same.

125.    Accordingly, an actual case or controversy exists between Valeant and the 2015-16 Insurers regarding the obligations owed to Valeant under the 2015-16 Policies.

**ANSWER:** Paragraph 125 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 125 and, as such, deny the same.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

**SEVENTH COUNT**

**(Breach of Contract: By All Plaintiffs Against the 2013-14 Insurers)**

126.    Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

**ANSWER:** The Answering Defendants restate their responses to the relevant allegations set forth above as if fully set forth herein.

127.    Valeant and each of the 2013-14 Insurers entered into binding, valid and enforceable insurance contracts in connection with the 2013-14 Program providing insurance coverage to Plaintiffs.

**ANSWER:** The allegations of Paragraph 127 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 127. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 127 and, as such, deny the

same.

128.   Valeant has complied with any applicable conditions for coverage, including paying the required premiums for the 2013-14 Policies.

**ANSWER:** The allegations of Paragraph 128 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 128.  To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 128 and, as such, deny the same.

129.   The 2013-14 Insurers have breached their contractual obligations to Plaintiffs under the 2013-14 Policies by wrongfully denying coverage for the 2013-14 Claims, failing to pay Defence Costs for the 2013-14 Claims, and refusing to pay Defence Costs outside of the limits of the 2013-14 Policies.

**ANSWER:** The allegations of Paragraph 129 are not directed at the Answering Defendants and, therefore, the Answering Defendants are not required to respond to the allegations in Paragraph 129. To the extent a response is required, the Answering Defendants are without sufficient knowledge to admit or deny the allegations of Paragraph 129 and, as such, deny the same.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

## EIGHTH COUNT

### (Breach of Contract: By Valeant Against the 2015-16 Insurers)

130.   Valeant repeats the relevant allegations set forth above as if set forth herein at

length.

**ANSWER:** The Answering Defendants restate their responses to the relevant allegations set forth above as if fully set forth herein.

131.    Valeant and each of the 2015-16 Insurers entered into binding, valid and enforceable insurance contracts in connection with the 2015-16 Program providing insurance coverage to Valeant

**ANSWER:** Paragraph 131 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that they issued valid insurance policies to Valeant, which speak for themselves. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 131 and, as such, deny the same.

132.    Valeant has complied with any applicable conditions for coverage, including paying the required premiums for the 2015-16 Policies.

**ANSWER:** Paragraph 132 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations contained in Paragraph 132 to the extent those allegations are asserted against the Answering Defendants. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 132 and, as such, deny the same.

133.    The 2015-16 Insurers have breached their contractual obligations to Valeant under the 2015-16 Policies by refusing to pay Defence Costs incurred by Valeant outside of the limits of the 2015-16 Policies.

**ANSWER:** Paragraph 133 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph

133 to the extent those allegations are asserted against the Answering Defendants, and deny that they breached any contractual obligations. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 133 and, as such, deny the same.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

## NINTH COUNT

### (Attorneys' Fees: By All Plaintiffs Against All Insurers)

134.    Plaintiffs repeat the relevant allegations set forth above as if set forth herein at length.

**ANSWER:** The Answering Defendants restate their responses to the relevant allegations set forth above as if fully set forth herein.

135.    New Jersey Court Rule 4:42-9(a)(6) permits a party to recover fees for legal services "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant."

**ANSWER:** Paragraph 135 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants admit that Plaintiffs purport to quote New Jersey Court Rule 4:42-9(a)(6), which speaks for itself. However, the Answering Defendants deny that the quoted Rule applies or that Plaintiffs are entitled to recover attorney's fees.

136.    This litigation involves claims on indemnity or liability insurance policies.

**ANSWER:** Paragraph 136 consists of legal conclusions to which no response is required.

To the extent a response is required, the Answering Defendants only admit that they issued certain insurance policies, which speak for themselves. The Answering Defendants are without sufficient knowledge to admit or deny the remaining allegations of Paragraph 136 and, as such, deny the same.

137.   Plaintiffs are entitled to all attorneys' fees, costs and expenses incurred in the successful prosecution of this action.

**ANSWER:** Paragraph 137 consists of legal conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 137.

**WHEREFORE**, the Answering Defendants demand judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

The Answering Defendants assert the affirmative defenses set forth below. By pleading these defenses, the Answering Defendants do not intend to alter the burden of proof and/or burden of persuasion that otherwise exists with respect to any issue in this action. All defenses are pled in the alternative, do not constitute an admission of liability or an admission that Plaintiffs are entitled to any relief whatsoever, and are without prejudice to the allegations and denials in the Answering Defendants' Answer. The Answering Defendants specifically reserve the right to list additional Affirmative Defenses based upon additional facts that may be uncovered in discovery in this matter.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against the Answering Defendants for which relief can

be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the terms, conditions, endorsements, and exclusions of the Answering Defendants' policies, the 2015-16 Primary Policy, and by application of law and principles of equity. The Answering Defendants hereby expressly give notice of, and reserve the right, to rely upon all terms, conditions, endorsements and exclusions of the 2015-16 Primary Policy and/or their respective policies to deny or limit coverage on additional or different grounds as discovery reveals.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' breach of its duty of cooperation pursuant to Section 9.A.3 of the 2015-16 Primary Policy.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs seek coverage for matters that are excluded from coverage pursuant to Exclusion 4.B.1 of the 2015-15 Primary Policy, as amended by Endorsement No. 7.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to comply with Section 12.F.1 of the 2015-16 Primary Policy, as amended by Endorsement No. 20.

## SIXTH AFFIRMATIVE DEFENSE

The above-captioned action should be dismissed, in whole or in part, by virtue of Plaintiffs' improper joinder of insurers potentially exposed to **Defence Costs**, and insurers whose excess attachment point exceeds any actual or potential **Defence Costs**.

## SEVENTH AFFIRMATIVE DEFENSE

The above-captioned action should be dismissed, in whole or in part, because, in the event there is coverage under the Answering Defendants' policies, which the Answering Defendants' deny, the Answering Defendants, separately and on their own behalf only, assert that their individual payment obligations for **Defence Costs** would be subject to, and not in addition to or outside, the respective limits of liability of any insurance policy that they issued or to which they subscribed.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by virtue of the statute of limitations.

## NINTH AFFIRMATIVE DEFENSE

The Answering Defendants are not liable for monetary obligations assumed or voluntarily paid by Plaintiffs.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate any damages that they may have sustained as a result of the matters alleged in the Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, under the known loss, moral hazard, loss in progress and/or fortuity doctrines.

## TWELFTH AFFIRMATIVE DEFENSE

The Superior Court of New Jersey is not the appropriate forum for this action.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs cannot establish damages flowing from the Answering Defendants' conduct.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, laches, release, waiver and/or unclean hands.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to satisfy conditions precedent to coverage under the 2015-16 Primary Policy and/or the Answering Defendants' respective policies.

## SIXTEENTH AFFIRMATIVE DEFENSE

The Answering Defendants did not breach any duties allegedly owed to Plaintiffs and/or any other party, including but not limited to any duties under common law, statute, contract, regulation, or otherwise.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the Insurers of the Underlying Insurance have not paid or been held liable to pay the full amount of the Limits of Liability of the Underlying Insurance.

**WHEREFORE,** the Answering Defendants respectfully request that Plaintiffs' Complaint be dismissed with prejudice; that the Court enter judgment in favor of the Answering Defendants; that the Answering Defendants be awarded costs and attorneys' fees; and that the Answering Defendants be granted such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Answering Defendants hereby demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## CERTIFCATION PURSUANT TO L.R. 11.2

The matter in controversy in the present action is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. The undersigned, as

counsel for the Answering Defendants, hereby certifies under penalty of perjury that the foregoing

is true and correct.

Dated: February 15, 2018

Respectfully submitted,

By: s/ Melissa J. Brown
Sean X. Kelly
Melissa J. Brown
Sean Robins
MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.
Cherry Tree Corporate Center
Suite 501
535 Route 38 East
Cherry Hill, New Jersey 08002
Tel: (856) 663-4300
skelly@moodklaw.com
mbrown@moodklaw.com
srobins@moodklaw.com

and

Christopher T. Conrad (pending admission *pro hac vice*)
David A. Wilford (pending admission *pro hac vice*)
Sabina B. Danek (pending admission *pro hac vice*)
WILFORD CONRAD LLP
18 East Dundee Road
Building 6, Suite 150
Barrington, Illinois 60010
Tel: (224) 848-4723
cconrad@wilfordconrad.com
dwilford@wilfordconrad.com
sdanek@wilfordconrad.com

*Attorneys for Defendants Certain Underwriters at Lloyd's,
London subscribing to Policy No. B0509FINMW1500618,
Certain Underwriters at Lloyd's, London subscribing to
Policy No. 15G142820113, and Certain Underwriters at
Lloyd's, London subscribing to Policy No.
B0509FINMW1500630*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on February 15, 2018, the foregoing document was filed with the Clerk of the U.S. District Court, District of New Jersey, via CM/ECF, which will cause copies to be served upon all counsel of record.

By: s/ Melissa J. Brown