## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.,<br><br>                        Plaintiffs,<br><br>           v.<br><br>AIG INSURANCE COMPANY OF CANADA, et al.,<br><br>                        Defendants. | Civil Action No. 3:18-cv-00493-MAS-LHG<br><br>**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM** |

Defendant Temple Insurance Company ("Temple"), by its undersigned attorneys, answers the Complaint (the "Complaint") of Plaintiffs Valeant Pharmaceuticals International, Inc. ("Valeant"), Valeant Pharmaceuticals International ("Valeant USA"), and AGMS, Inc. (collectively, "Plaintiffs"), as follows:

## INTRODUCTION

1.      In response to the allegations in paragraph 1 of the Complaint, Temple admits that Plaintiffs seek a judgment granting certain relief and to enforce in this action certain purported obligations under certain insurance policies issued by various defendants in this action and denies that Plaintiffs are entitled to any such relief. Temple further denies all other allegations in paragraph 1 of the Complaint.

2.      Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint.

3.      The allegations in paragraph 3 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary. Temple further denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 of the Complaint.

4.      In response to the allegations in paragraph 4 of the  Complaint, Temple admits that it issued to Valeant: (i) an excess D&O insurance policy for the policy period September 28, 2013, to September 28, 2014, bearing policy number LIA105678 (the "2013-2014 Temple Excess Policy"); and (ii) an excess D&O insurance policy to Valeant for the policy period September 28, 2015, to September 28, 2016, bearing policy number B0509FINMW1500627 (the "2015-2016 Temple Excess Policy," and together with the 2013-2014 Temple Excess Policy, the "Temple Excess Policies").  The Temple Excess Policies speak for themselves and each is the best evidence of its contents and, therefore, no further response is necessary.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.  Temple further denies the remaining allegations of paragraph 4 of the Complaint that are asserted against it.

5.      The allegations in paragraph 5 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6.      The allegations in paragraph 6 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that paragraph 6 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

7.      In response to the allegations in paragraph 7 of the Complaint, Temple admits that certain lawsuits were commenced against the Plaintiffs in connection with a company called Allergan, Inc. (the "Allergan Litigation"), and respectfully refers the Court to the pleadings and other documents filed in such actions for a true and complete description of their content. Temple denies the remaining allegations in paragraph 7 that are asserted against it.

8.      In response to the allegations in paragraph 8 of the Complaint, Temple a admits that certain lawsuits were commenced against the Plaintiffs in connection with a drop in Valeant's stock price (the "Stock Drop Litigation"), and respectfully refers the Court to the pleadings and other documents filed in such actions for a true and complete description of their content.  Temple denies the remaining allegations in paragraph 8 that are asserted against it.

9.      In response to the allegations in paragraph 9 of the Complaint, Temple admits that Valeant demanded coverage in connection with the Allergan Litigation and the Stock Drop Litigation.  With respect to the remaining allegations of paragraph 9 of the Complaint that pertain to the other defendants, Temple lacks information or knowledge sufficient to form a belief as to the truth of such allegations and, accordingly, those allegations are denied.  With respect to any other factual allegations asserted against Temple in paragraph 9 of the Complaint, those allegations are denied.

10.     The allegations in paragraph 10 of the Complaint are denied.

11.     The allegations in paragraph 11 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that paragraph 11 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

12.     In response to the allegations in paragraph 12 of the Complaint, Temple admits that one of the multiple reasons that there is no coverage for Plaintiffs' claims in connection with the Allergan Litigation is because the Allergan Litigation does not include allegations that constitute "Securities Claims" as that term is defined under the 2013-2014 Temple Excess Policy.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.  The remaining allegations in paragraph 12 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 12 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

13.     In response to the allegations in paragraph 13 of the  Complaint, Temple admits that Plaintiffs seek a judgment granting certain relief and to enforce in this action certain purported obligations under the Temple Excess Policies and other insurance policies issued by the other defendants in this action.  Temple denies that Plaintiffs are entitled to any such relief.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.  The remaining allegations in paragraph 13 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 13 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

14.     In response to the allegations in paragraph 14 of the  Complaint, Temple states that the Temple Excess Policies required Plaintiffs to wait at least 120 days, and the AIG Primary Policies required Plaintiffs to wait at least 60 days, after completion of a mediation to

commence any litigation, that Temple and certain Plaintiffs and Defendants attended a mediation on November 30 and December 1, 2017, and that Plaintiffs purported to commence this litigation less than 60 days after the mediation concluded.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.  The remaining allegations in paragraph 14 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 14 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

## PARTIES

### Plaintiffs

15.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint.

### Defendants

18.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint.

20.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint.

22.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

23.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint.

24.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint.

25.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint.

26.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint.

27.     In response to the allegations in paragraph 27 of the Complaint, Temple admits that it is a Canadian corporation with its principal place of business in Canada.  The remaining allegations in paragraph 27 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.

28.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

29.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint.

## JURISDICTION AND VENUE

30.     In response to the allegations in paragraph 30 of the Complaint, Temple admits that the Court has jurisdiction over it for purposes of this litigation and denies the remaining factual allegations that are asserted against Temple.  The remaining allegations in paragraph 30 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary. Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

31.     In response to the allegations in paragraph 31 of the Complaint, Temple admits that venue is proper for purposes of this litigation.  The remaining allegations in paragraph 31 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.

## FACTUAL BACKGROUND

### Valeant Is a Quebec Policyholder[1]

32.     The allegations in paragraph 32 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32 of the Complaint.

33.     The allegations in paragraph 33 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33 of the Complaint.

---

[1]   For consistency and the convenience of the Court, Temple's Answer replicates the various section headings that Plaintiffs used in the Complaint.  No response is necessary to Plaintiffs' section headings.  To the extent Plaintiffs' section headings contain factual or legal assertions pertaining to its claims against Temple, those assertions are denied.

34.     The allegations in paragraph 34 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 34 of the Complaint.

35.     In response to the allegations in paragraph 35 of the Complaint, Temple admits that it issued the Temple Excess Policies.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the other allegations in paragraph 35 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.  The remaining allegations in paragraph 35 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 35 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

**The Insurers Issued The 2013-2014 Program to Valeant in Quebec and Under Quebec Law**

36.     In response to the allegations in paragraph 36 of the Complaint, Temple admits that it issued the Temple Excess Policies.  Temple lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

37.     In response to the allegations in paragraph 37 of the Complaint, Temple admits that it is aware that AIG issued a policy to Valeant Pharmaceuticals, Inc., for the policy period September 28, 2013, to September 28, 2014 (the "2013-2014 AIG Primary Policy").  The 2013-2014 AIG Primary Policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.

38.     In response to the allegations in paragraph 38 of the Complaint, Temple admits that it issued the 2013-2014 Temple Excess Policy and that it is aware that AIG issued the 2013-2014 AIG Primary Policy; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 38 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.   The remaining allegations in paragraph 38 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.   To the extent that the remaining allegations in paragraph 38 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

39.     In response to the allegations in paragraph 39 of the Complaint, Temple admits that it issued the 2013-2014 Temple Excess Policy, which speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.  The remaining allegations in paragraph 39 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 39 of the Complaint are intended to assert any factual allegations against Temple, those allegations against Temple, those allegations are denied.

40.     The allegations in paragraph 40 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Complaint and, accordingly, those allegations are denied.  To the extent that the allegations in

paragraph 40 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

41.     In response to the allegations in paragraph 41 of the Complaint, Temple admits that it issued the 2013-2014 Temple Excess Policy, which speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.   The remaining allegations in paragraph 41 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 41 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 41 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

42.     In response to the allegations in paragraph 42 of the Complaint, Temple admits that it is aware that AIG issued the 2013-2014 AIG Primary Policy, which speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  The remaining allegations in paragraph 42 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 42 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

43.     In response to the allegations in paragraph 43 of the Complaint, Temple admits that it issued the 2013-2014 Temple Excess Policy, which speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.   The remaining allegations in paragraph 43 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 43

of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

44.    Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Complaint.

45.    Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Complaint

46.    Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Complaint.

**The Insurers Issued the 2015-2016 Program to Valeant in Quebec and Under Quebec Law**

47.    In response to the allegations in paragraph 47 of the Complaint, Temple admits that it issued the Temple Excess Policies.  Temple lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 47 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

48.    In response to the allegations in paragraph 48 of the Complaint, Temple admits that it was made aware that AIG issued a policy to Valeant Pharmaceuticals, Inc., for the policy period September 28, 2015, to September 28, 2016 (the "2015-2016 AIG Primary Policy," and together with the 2013-2014 AIG Primary Policy, the "AIG Primary Policies").  The 2015-2016 AIG Primary Policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.

49.    In response to the allegations in paragraph 49 of the Complaint, Temple admits that it issued the 2015-2016 Temple Excess Policy and that it is aware that AIG issued the 2015-

2016 AIG Primary Policy; each policy speaks for itself and is the best evidence of its contents and therefore no further response is necessary. Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 49 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary. To the extent that the remaining allegations in paragraph 49 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

50.     In response to the allegations in paragraph 50 of the Complaint, Temple admits that it issued the 2015-2016 Temple Excess Policy, which speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary. Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 50 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary. To the extent that the remaining allegations in paragraph 50 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

51.     The allegations in paragraph 51 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 of the Complaint and, accordingly, those allegations are denied. To the extent that the allegations in paragraph 51 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

52.      In response to the allegations in paragraph 52 of the Complaint, Temple admits that it issued the 2015-2016 Temple Excess Policy and that it is aware that AIG issued the 2015-2016 AIG Primary Policy; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.   The remaining allegations in paragraph 52 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.   To the extent that the remaining allegations in paragraph 52 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

53.      In response to the allegations in paragraph 53 of the Complaint, Temple admits that it is aware that AIG issued the 2015-2016 AIG Primary Policy.   The 2015-2016 AIG Primary Policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.   The remaining allegations in paragraph 53 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.   To the extent that paragraph 53 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

54.      In response to the allegations in paragraph 54 of the Complaint, Temple admits that it issued the 2015-2016 Temple Excess Policy, which speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.  The remaining allegations in paragraph 54 of the Complaint set forth

legal theories or conclusions and, therefore, no response is necessary. To the extent that the remaining allegations in paragraph 54 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

55.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint.

56.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the Complaint.

57.     Temple denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 of the Complaint.

**The Coverage Promised Under the Programs, and the Coverage Mandated by Quebec Law**

58.     In response to the allegations in paragraph 58 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 58 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary. To the extent that paragraph 58 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

59.     In response to the allegations in paragraph 59 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the

Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 59 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary. To the extent that the remaining allegations in paragraph 59 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

60.     In response to the allegations in paragraph 60 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 60 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary. To the extent that the remaining allegations in paragraph 60 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

61.     In response to the allegations in paragraph 61 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 61 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary. To the extent that the remaining allegations in paragraph 61 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

62.     In response to the allegations in paragraph 62 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 62 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 62 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

63.     In response to the allegations in paragraph 63 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 63 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 63 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

64.     In response to the allegations in paragraph 64 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

The remaining allegations in paragraph 64 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 64 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

65.     In response to the allegations in paragraph 65 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 65 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 65 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

66.     In response to the allegations in paragraph 66 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 66 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 66 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

67.     In response to the allegations in paragraph 67 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. The remaining allegations in paragraph 67 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 67 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

68.     Temple denies the allegations in paragraph 68 that are asserted against it.

69.     The allegations in paragraph 69 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that paragraph 69 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

70.     The allegations in paragraph 70 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that paragraph 70  of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

71.     The allegations in paragraph 71 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of certain allegations in paragraph 71 of the Complaint.  To the extent that paragraph 71  of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

**The 2013-14 Claims**

72.     In response to the allegations in paragraph 72 of the Complaint, Temple admits that the Allergan Litigation was commenced against the Plaintiffs and respectfully refers the Court to the pleadings and other documents filed in connection with the Allergan Litigation for a true and complete description of their content.   Temple denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 72 of the Complaint.

73.     The allegations in paragraph 73 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.   To the extent that paragraph 73 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.   Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 of the Complaint.

74.     The allegations in paragraph 74 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.   To the extent that paragraph 74 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.   Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74 of the Complaint and respectfully refers the Court to the pleadings and other documents filed in connection with the Allergan Litigation for a true and complete description of their content.

75.     The allegations in paragraph 75 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.   To the extent that paragraph 75 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

**The 2015-16 Claims**

76.     In response to the allegations in paragraph 76 of the Complaint, Temple admits that certain lawsuits comprising the Stock Drop Litigation were commenced against the Plaintiffs and respectfully refers the Court to the pleadings and other documents filed in connection with the Stock Drop Litigation for true and complete descriptions of their contents.  Temple further admits that the Stock Drop Litigation was reported to Temple.  The remaining allegations in paragraph 76 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the remaining allegations in paragraph 76 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.  Temple further denies knowledge or information sufficient to form a belief as to the truth of certain allegations in paragraph 76 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

77.     The allegations in paragraph 77 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple denies the allegations in paragraph 77 of the Complaint that are asserted against it.

**The Insurers Have Breached Their Obligations Under the Policies and Quebec Law**

78.     The allegations in paragraph 78 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.   Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 78 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. To the extent that paragraph 78 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

79.     The allegations in paragraph 79 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 79 of the Complaint.

80.     The allegations in paragraph 80 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that the allegations in paragraph 80 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.  Temple also lacks information or knowledge sufficient to form a belief as to the truth of certain allegations in paragraph 80 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

81.     In response to the allegations in paragraph 81 of the Complaint, Temple admits that one of the multiple reasons that there is no coverage for Plaintiffs' claims in connection with the Allergan Litigation under the 2013-2014 Temple Excess Policy is because the Allergan Litigation does not include allegations that constitute "Securities Claims" as that term is defined under the 2013-2014 Temple Excess Policy.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 81 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

82.     The allegations in paragraph 82 of the Complaint are denied.

83.     The allegations in paragraph 83 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 83 of the Complaint.

84.     The allegations in paragraph 84 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 84 of the Complaint and, accordingly, those allegations are denied.

85.     The allegations in paragraph 85 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 85 of the Complaint.

**Agreement to Stay Claims Pending Expiration of the Policies' "Waiting Period"**

86.     In response to the allegations in paragraph 86 of the Complaint, Temple admits that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied. To the extent that the remaining allegations in paragraph 86 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

87.     In response to the allegations in paragraph 87 of the  Complaint, Temple admits that Temple and certain Plaintiffs and Defendants attended a mediation on November 30 and December 1, 2017.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 87 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.  To the extent that the remaining allegations in paragraph 87 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

88.     The allegations in paragraph 88 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 88 of the Complaint.

89.     The allegations in paragraph 89 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 89 of the Complaint.

## **FIRST COUNT**

**(Declaratory Judgment on Defense Duties: By All Parties Against the 2013-14 Insurers)**

90.     In response to the allegations in paragraph 90 of the Complaint, Temple repeats its answers to paragraphs 1 through 89 to the Complaint, as if fully set forth herein.

91.     The allegations in paragraph 91 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  In addition, the allegations in paragraph 91 purport to reference certain insurance policies, which speak for themselves and are the best evidence of their contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 91 of the Complaint.  To the extent that the remaining allegations in paragraph 91 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

92.     Temple denies the allegations in paragraph 92 of the Complaint that are asserted against it.

93.     The allegations in paragraph 93 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93 of the Complaint.

94.     Temple denies the allegations in paragraph 94 of the Complaint that are asserted against it.

95.     The allegations in paragraph 95 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 95 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

## SECOND COUNT

### (Declaratory Judgment on Defense Duties: By Valeant Against the 2015-16 Insurers)

96.     In response to the allegations in paragraph 96 of the Complaint, Temple repeats its answers to paragraphs 1 through 95 to the Complaint, as if fully set forth herein.

97.     The allegations in paragraph 97 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  In addition, the allegations in paragraph 97 purport to reference certain insurance policies, which speak for themselves and are the best evidence of their contents and, therefore, no further response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 97 of the Complaint.

98.     Temple denies the allegations in paragraph 98 of the Complaint that are asserted against it.

99.     The allegations in paragraph 99 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 of the Complaint.

100.    The allegations in paragraph 100 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100 of the Complaint.

101.    The allegations in paragraph 101 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 101 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

## THIRD COUNT

**(Declaratory Judgment on Defense Duties: By All Plaintiffs Against Lloyd's Syndicate AWH 2232 with respect to Lloyd's Syndicate AWH 2232'S 2013-14 Policy)**

102.    In response to the allegations in paragraph 102 of the Complaint, Temple repeats its answers to paragraphs 1 through 101 to the Complaint, as if fully set forth herein.

103.    The allegations in paragraph 103 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required.  The allegations in paragraph 103 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103 of the Complaint.

104.    The allegations in paragraph 104 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required.  The allegations in paragraph 104

of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 of the Complaint.

105.    The allegations in paragraph 105 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required. The allegations in paragraph 105 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105 of the Complaint.

106.    The allegations in paragraph 106 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required. The allegations in paragraph 106 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106 of the Complaint.

107.    The allegations in paragraph 107 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required. The allegations in paragraph 107 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107 of the Complaint.

108.    The allegations in paragraph 108 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required. The allegations in paragraph 108 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary. Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 of the Complaint.

## FOURTH COUNT

**(Declaratory Judgment on Defense Duties: By Valeant Against Lloyd's Syndicate AWH 2232 with respect to Lloyd's Syndicate AWH 2232's 2015-16 Policy)**

109.     In response to the allegations in paragraph 109 of the Complaint, Temple repeats its answers to paragraphs 1 through 108 to the Complaint, as if fully set forth herein.

110.     The allegations in paragraph 110 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required.  The allegations in paragraph 110 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 of the Complaint.

111.     The allegations in paragraph 111 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required.  The allegations in paragraph 111 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111 of the Complaint.

112.     The allegations in paragraph 112 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required.  The allegations in paragraph 112 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 112 of the Complaint.

113.     The allegations in paragraph 113 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required.  The allegations in paragraph 113 of the Complaint further set forth legal theories or conclusions and, therefore, no response is

necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113 of the Complaint.

114.    The allegations in paragraph 114 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required.  The allegations in paragraph 114 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114 of the Complaint.

115.    The allegations in paragraph 115 of the Complaint relate to a cause of action not alleged against Temple and, therefore, no response is required.  The allegations in paragraph 115 of the Complaint further set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115 of the Complaint.

## FIFTH COUNT

**(Declaratory Judgment on Coverage: By All Plaintiffs Against the 2013-14 Insurers)**

116.    In response to the allegations in paragraph 116 of the Complaint, Temple repeats its answers to paragraphs 1 through 115 to the Complaint, as if fully set forth herein.

117.    The allegations in paragraph 117 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that paragraph 117 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

118.    Temple denies the allegations in paragraph 118 of the Complaint that are asserted against it.

119.    Temple denies the allegations in paragraph 119 of the Complaint that are asserted against it.

120.    The allegations in paragraph 120 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.   Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 120 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

## SIXTH COUNT

**(Declaratory Judgment on Coverage: Valeant Against the 2015-16 Insurers)**

121.    In response to the allegations in paragraph 121 of the Complaint, Temple repeats its answers to paragraphs 1 through 120 to the Complaint, as if fully set forth herein.

122.    The allegations in paragraph 122 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that paragraph 122  of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

123.    The allegations in paragraph 123 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that paragraph 123 of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

124.    The allegations in paragraph 124 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent that paragraph 124  of the Complaint is intended to assert any factual allegations against Temple, those allegations are denied.

125.    The allegations in paragraph 125 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 125 of the Complaint as they pertain to the other defendants and, accordingly, those allegations are denied.

## SEVENTH COUNT

### (Breach of Contract: By All Plaintiffs Against the 2013-14 Insurers)

126.    In response to the allegations in paragraph 126 of the Complaint, Temple repeats its answers to paragraphs 1 through 125 to the Complaint, as if fully set forth herein.

127.    The allegations in paragraph 127 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple admits only that it issued the 2013-2014 Temple Excess Policy, which speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 127 of the Complaint and, accordingly, those allegations are denied.

128.    The allegations in paragraph 128 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 128 of the Complaint.

129.    Temple denies the allegations in paragraph 129 of the Complaint that are asserted against it.

## EIGHTH COUNT

### (Breach of Contract: By Valeant Against the 2015-16 Insurers)

130.    In response to the allegations in paragraph 130 of the Complaint, Temple repeats its answers to paragraphs 1 through 129 to the Complaint, as if fully set forth herein.

131.    The allegations in paragraph 131 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple admits only that it issued the 2015-2016 Temple Excess Policy, which speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.  Temple lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 131 of the Complaint and, accordingly, those allegations are denied.

132.    The allegations in paragraph 132 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 132 of the Complaint.

133.    The allegations in paragraph 133 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple further denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 133 of the Complaint.  To the extent that the remaining allegations in paragraph 133 of the Complaint are intended to assert any factual allegations against Temple, those allegations are denied.

## NINTH COUNT

### (Attorneys' Fees: By All Plaintiffs Against All Insurers)

134.    In response to the allegations in paragraph 134 of the Complaint, Temple repeats its answers to paragraphs 1 through 133 to the Complaint, as if fully set forth herein.

135.    The allegations in paragraph 135 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  To the extent a response is required, Temple admits that Plaintiffs purport to quote a portion of New Jersey Court Rule 4:42-9(a)(6), which speaks for itself.

136.    The allegations in paragraph 136 of the Complaint set forth legal theories or conclusions and, therefore, no response is necessary.  Temple admits only that it issued the Temple Excess Policies; each policy speaks for itself and is the best evidence of its contents and, therefore, no further response is necessary.

137.    Temple denies the allegations in paragraph 137 of the Complaint that are asserted against it.

**WHEREFORE,** Temple demands judgment dismissing the Complaint with prejudice, and granting of attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Temple asserts the affirmative defenses set forth below.  By pleading these defenses, Temple does not intend to alter the burden of proof and/or burden of persuasion that otherwise exists with respect to any issue in this action.  All defenses are pled in the alternative, do not constitute an admission of liability or an admission that Plaintiffs are entitled to any relief whatsoever, and are without prejudice to the allegations and denials in Temple's Answer.

Temple reserves its right to provide additional affirmative defenses upon the discovery of additional facts in this matter.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against Temple for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims for coverage is limited or barred, in whole or in part, by the terms, conditions and exclusions of  the Temple Excess Policies, the AIG Primary Policies, and by application of law and principles of equity.  Temple hereby expressly gives notice of, and reserves the right, to rely upon all terms, conditions, endorsements, and exclusions of the AIG Primary Policies and the Temple Excess Policies to deny or limit coverage on additional or different grounds as discovery reveals.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the Allergan Litigation and the Stock Drop Litigation for which Plaintiffs seek coverage do not meet the definition of Securities Claim, as defined in the AIG Primary Policies and, therefore, do not trigger Insuring Agreement 1.C.1 of the AIG Primary Policies.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the amounts sought as damages in the Allergan Litigation and the Stock Drop Litigation do not constitute Loss, as defined in the AIG Primary Policies.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the amounts sought as damages in the Allergan Litigation and the Stock Drop Litigation constitute disgorgement and/or restitution and are uninsurable as a matter of law.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs seek coverage for the return of amounts to which Plaintiffs were not legally entitled or for which insurance coverage would violate public policy.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent it is determined that coverage for the Allergan Litigation and/or the Stock Drop Litigation is available under the Temple Excess Policies, a proper allocation must be determined between Loss incurred by the Insureds, and loss incurred by non-insureds.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent it is determined that coverage for the Allergan Litigation and/or the Stock Drop Litigation under the Temple Excess Policies is available pursuant to Insuring Agreement I.B., by virtue of indemnification of any individual insured, and to the extent such amounts are in excess of the insurance underlying the Temple Excess Policies, a proper allocation must be determined between Loss incurred by virtue of Plaintiffs' indemnification of such individual, and loss not attributable to such indemnification.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' breach of its duty of cooperation pursuant to Section 9.A.3 of the AIG Primary Policies.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs seek coverage for matters that are excluded from coverage pursuant to Exclusion 4.B.1 of the 2013-2014 AIG Primary Policy, as amended by Endorsement No. 42, and/or Exclusion 4.B.1 of the 2015-2016 AIG Primary Policy, as amended by Endorsement No. 7.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to comply with Section 12.F.1 of the 2013-2014 AIG Primary Policy, as amended by Endorsement No. 38, and/or Section I2.F.1 of the 2015-2016 AIG Primary Policy, as amended by Endorsement No. 20.

## TWELFTH AFFIRMATIVE DEFENSE

The above-captioned action should be dismissed, in whole or in part, by virtue of Plaintiffs' improper joinder of insurers potentially exposed to obligations to pay Defense Costs, and insurers whose excess attachment point exceeds any actual or potential obligation to pay Defense Costs.

## THIRTEENTH AFFIRMATIVE DEFENSE

The above-captioned action should be dismissed, in whole or in part, because, in the event there is coverage under the Temple Excess Policies, which Temple denies, Temple, separately and on their own behalf only, assert that their individual payment obligations for Defense Costs would be subject to, and not in addition to or outside, the respective limits of liability of any insurance policy that they issued or to which they subscribed.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by virtue of the statute of limitations.

## FIFTEENTH AFFIRMATIVE DEFENSE

Temple is not liable for monetary obligations assumed or voluntarily paid by Plaintiffs.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate any damages that they may have sustained as a result of the matters alleged in the Complaint.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, under the known loss, moral hazard, loss in progress, and/or fortuity doctrines.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Superior Court of New Jersey is not the appropriate forum for this action.

## NINTEENTH AFFIRMATIVE DEFENSE

Plaintiffs cannot establish damages flowing from Temple's conduct.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, laches, release, waiver, and/or unclean hands.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to satisfy conditions precedent to coverage under the AIG Primary Policies and/or the Temple Excess Policies.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Temple did not breach any duties allegedly owed to Plaintiffs and/or any other party, including but not limited to any duties under common law, statute, contract, regulation, or otherwise.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the insurance underlying the Temple Excess Policies has not paid or been held liable to pay the full amount of the Limits of Liability that apply to such policies.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because amounts the Plaintiffs have voluntarily agreed to pay (including the putative settlement of the Allergan Litigation) are unreasonable.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part based on any other applicable affirmative defense asserted by any other party at any time in this litigation.

## COUNTERCLAIM

Counterclaim-Plaintiff Temple Insurance Company ("Temple"), by its undersigned attorneys, DLA PIPER LLP (US), hereby bring their Counterclaim against Valeant Pharmaceuticals International, Inc. ("Valeant"), Valeant Pharmaceuticals International ("Valeant USA"), and AGMS, Inc. ("AGMS") (collectively, the "Valeant Parties"), and state as follows:

## NATURE OF THE ACTION

1.     This counterclaim concerns an actual case and controversy between Temple, on one hand, and the Valeant Parties on the other hand, regarding insurance policies issued by Temple.

## PARTIES, JURISDICTION, AND VENUE

2.     Temple is a corporation with its principle place of business in Canada that issued certain insurance policies to Valeant.

3.     Upon information and belief, Valeant is a Canadian corporation with its principal place of business in Canada.

4.     Upon information and belief, Valeant USA is a Delaware corporation with its principal place of business in Bridgewater, New Jersey.

5.     Upon information and belief, AGMS is a Delaware corporation and a wholly-owned subsidiary of Valeant.

6.     This Court has personal jurisdiction over the Valeant Parties because they initiated legal action against Temple before this Court, and the Valeant Parties have minimum contacts with New Jersey.

7.     Venue is proper in this District because Valeant USA resides in this venue.

**2013-2014 PROGRAM INSURANCE POLICIES**

8.     Temple issued Policy No. LIA105678 to Valeant for the policy period September

28, 2013, to September 28, 2014, providing a $15 million aggregate limit of liability in excess of

$125 million in underlying insurance and a $5 million self-insured retention (the "2013-2014

Temple Excess Policy").

9.     As excess insurance, the 2013-2014 Temple Excess Policy states as follows:

> This policy provides excess coverage only.  It is a condition of this
> policy that the Underlying Insurance shall be maintained in full
> effect during the term of this policy, except for any reduction or
> exhaustion of the aggregate limits contained therein by reason of
> payment of loss . . .

> Temple shall be liable hereunder only after the Insurers of the
> Underlying Insurance . . . shall have paid or have been held liable
> to pay the full amount of the limits of liability of the Underlying
> Insurance . . . .

10.    Upon information and belief, Valeant's insurance tower for the 2013-2014 policy

year includes the following policies (the "2013-2014 Program"):

| Layer | Insurer | Policy No. | Coverage Limits |
|---|---|---|---|
| Primary | AIG Insurance Company of Canada | 01-421-57-69 | $10 Million |
| 1st Excess | Lloyd's Syndicate AWH 2232 | QB078513 | $10 Million x/s $10 Million |
| 2nd Excess | Allianz Global Risks US Insurance Company | FPL 7223891 | $10 Million x/s $20 Million |
| 3rd Excess | Policy No. QB078613 Underwriters | QB078613 | $10 Million x/s $30 Million |
| 4th Excess | Hartford Fire Insurance Company | DA 0271573-13 | $10 Million x/s $40 Million |
| 5th Excess | Everest Insurance Company of Canada | XD&O0000061 | $10 Million x/s $50 Million |
| 6th Excess | Liberty | DOTOAAGHNZ003 | $10 Million x/s $60 Million |
| 7th Excess | Arch Insurance Canada Ltd | DOX0046341-02 | $10 Million x/s $70 Million |
| 8th Excess | Policy No. QB078913 Underwriters | QB078913 | $20 Million x/s $80 Million |
| 9th Excess | RSA | 9501117 | $10 Million x/s $100 Million |
| 10th Excess | AIG Insurance Company of Canada | 2454458 | $15 Million x/s $110 Million |
| 11th Excess | Temple Insurance Company | LIA105678 | $15 Million x/s $125 Million |
| 12th Excess | Policy No. QB146013 Underwriters | QB146013 | $10 Million x/s $140 Million |

11.    The 2013-2014 Temple Excess Policy "follows-form" to policy number 01-421-57-69, issued by AIG Insurance Company of Canada to Valeant for the claims made policy period of September 28, 2013, to September 28, 2014 (the "2013-2014 AIG Primary Policy"), except where the 2013-2014 Temple Excess Policy provides otherwise.  In particular, the 2013-2014 Temple Excess Policy provides:

> Except as otherwise provided in the Declarations or by any endorsement attached hereto, this policy is subject to the same insuring clauses, definitions, terms and conditions, exclusions, cancellation provisions and all other provisions of the Underlying Insurance.  This policy shall not provide coverage broader than that provided by any Underlying Insurance . . . .

12.     The threshold for coverage pursuant to Insuring Agreement 1.C. of the 2013-2014 AIG Primary Policy is "**Loss** of any **Organization** . . . arising from any **Securities Claim** . . . made against such **Organization** for any **Wrongful Act** of such **Organization**."[2]

13.     The 2013-2014 AIG Primary Policy defines **Organization** to include Valeant and any **Subsidiary**, as separately defined.

14.     **Securities Claim** is defined at Endorsement 21 of the 2013-2014 AIG Primary Policy as:

> a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:
>
> > (1)     alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:
> >
> > > (a)     brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or
> > >
> > > (b)     brought by a security holder or purchaser or seller of securities of an **Organization** with respect to such security holder's, purchaser's or seller's interest in securities of an **Organization**; or
> >
> > (2) which is a **Derivative Suit**.
>
> Notwithstanding the foregoing, the term "**Securities Claim**" shall:
>
> > (1)     include in an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**; and
> >
> > (2)     not include any **Claim** brought by any **Executive** or **Employee** of an **Organization** alleging, arising out of, based upon or attributable to the loss of, or failure to receive or obtain, the benefit of stock, stock warrants, stock options or other securities of an **Organization**.

---

[2]   Bold capitalize terms referenced in connection with the 2013-2014 AIG Primary Policy and not otherwise defined herein are intended to retain the definitions found in the 2013-2014 AIG Primary Policy.

15.     **Loss** is defined in the 2013-2014 AIG Primary Policy to expressly exclude:

> (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; . . . (6) any amount for which an Insured is not financially liable or which are without legal recourse to an Insured; and (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

16.     The 2013-2014 AIG Primary Policy provides, at Clause 9.D., in relevant portion:

> the **Insurer** has no obligation under this policy for defence or other costs incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** except as respects coverage for a **Securities Claim** . . . or any obligation to pay loss arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim**.

17.     Clause 9.D. of the 2013-2014 AIG Primary Policy further provides that:

> With respect to:  (i) **Defence Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured Person** in connection with any **Claim** other than a **Securities Claim** . . ., such **Organization** and such **Insured Person** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between such **Organization**, such **Insured Person** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by such Insured person and such Organization.

## **2013-2014 UNDERLYING CLAIMS**

18.     On or about August 1, 2014, certain of the Valeant Parties were named as defendants in an action captioned <u>Allergan, Inc. et al. v. Valeant Pharmaceuticals International, Inc. et al.</u>, Case No. 8:14-cv-01214 (C.D. Cal.) (the "First Allergan Action").

19.     On or about December 16, 2014, certain of the Valeant Parties were named as defendants in an action originally captioned <u>Anthony Basile, et al. v. Valeant Pharmaceuticals, Inc. et al.</u>, Case No. 2:14-cv-02004 (C.D. Cal. 2014), and later modified to <u>In re Allergan, Inc.</u>

Proxy Violation Securities Litigation, Case No. 8:14-cv-2004 (C.D. Cal. 2014) (the "Allergan Action").

20.     On or about June 28, 2017, certain of the Valeant Parties were named as defendants in a case related to the Allergan Action, captioned Timber Hill LLC v. Pershing Square Capital Management, LP, et al., Case No. 2:17-cv-04776 (C.D. Cal. 2017) (the "Timber Hill Action").

21.     The First Allergan Action, the Allergan Action, and the Timber Hill Action (collectively, the "2013-2014 Underlying Claims") each arise out of a proposed transaction involving Allergan, Inc. ("Allergan"), the Valeant Parties, and Pershing Square Capital Management, LP.

22.     The plaintiffs in the 2013-2014 Underlying Claims are Allergan shareholders (the "2013-2014 Underlying Plaintiffs") seeking recovery based on alleged insider trading of Allergan securities.

23.     Specifically, the 2013-2014 Underlying Plaintiffs alleged that Valeant (and its former CEO Michael Pearson), together with various co-defendant entities affiliated with Pershing Square Capital Management, L.P. ("Pershing," and together with Valeant, the "2013-2014 Underlying Defendants"), violated federal securities laws through an unlawful scheme by which Valeant provided inside information to Pershing about Valeant's plan to attempt a hostile takeover and tender offer of Allergan in exchange for Pershing's agreement to commit the shares it acquired with that inside information to support Valeant's bid.

24.     The 2013-2014 Underlying Plaintiffs further alleged that, in furtherance of that scheme, Pershing invested approximately $3.2 billion in Allergan.

25.     According to the 2013-2014 Underlying Plaintiffs, the 2013-2014 Underlying Defendants allegedly had an agreement that, if Valeant's efforts were unsuccessful, "Pershing would kick back 15 percent of its insider trading profits to Valeant."

26.     Valeant was outbid by another company and Valeant did not acquire Allergan.

27.     Nonetheless, the 2013-2014 Underlying Plaintiffs alleged that "the unlawful gains reaped from [the 2013-2014 Underlying Defendants'] insider trading scheme enabled Pershing to reap virtually risk-free profits of over $1 billion when Valeant first announced its bid for Allergan, which ultimately grew to more than $2.5 billion on Pershing's $3.2 billion investment."

28.     The 2013-2014 Underlying Plaintiffs allege that Valeant received the agreed-to 15 percent cut of the profits off of the Allergan transaction, which consisted of $400 million of the nearly $2.5 billion in Pershing's profits.  As the 2013-2014 Underlying Plaintiffs put it, Valeant "reaped hundreds of millions of dollars in virtually risk-free profits through [the 2013-2014 Underlying Defendants'] insider-trading scheme."

29.     As a result, the 2013-2014 Underlying Plaintiffs sought an "award of damages and an order requiring Defendants to return their unjust profits to the innocent Allergan stockholders harmed by their misconduct."

30.     Notably, the 2013-2014 Underlying Plaintiffs did not assert any allegations related to the purchase or sale, or offer or solicitation of an offer, to purchase or sell securities of Valeant.

31.     The Valeant Parties tendered the 2013-2014 Underlying Claims for coverage under the 2013-2014 Temple Excess Policy.

32.     On or about December 27, 2017, the Valeant Parties agreed to a settlement in principle of the 2013-2014 Underlying Claims.  The settlement calls for a total payment of $290 million by the 2013-2014 Underlying Defendants in connection with the 2013-2014 Underlying Claims.  The Valeant Parties agreed to pay $96.25 million as part of that settlement (the "Allergan Settlement").

33.     On January 12, 2018, at the court's request, the Valeant Parties submitted briefing preliminarily discussing the adequacy of the settlement.  They appeared for a hearing before the court on January 16, 2018, at which, upon information and belief, the court stated that the settlement "should probably be approved."

34.     Upon information and belief, on January 26, 2018, the parties to the 2013-2014 Underlying Claims executed a stipulation setting forth the full terms and conditions of the Allergan Settlement.  On that same date, the plaintiffs in the Allergan Action filed an unopposed motion for preliminary approval of the Allergan Settlement.  Upon information and belief, a court hearing on the unopposed motion is scheduled for March 5, 2018.

## 2015-2016 PROGRAM INSURANCE POLICIES

35.     Temple issued Policy No. B0509FINMW1500627 to Valeant for the policy period September 28, 2015, to September 28, 2016, providing a $15 million aggregate limit of liability in excess of $125 million in underlying insurance and a $5 million self-insured retention (the "2015-2016 Temple Excess Policy").

36.     As excess insurance, the 2015-2016 Temple Excess Policy states as follows:

> This policy provides excess coverage only.  It is a condition of this policy that the Underlying Insurance shall be maintained in full effect during the term of this policy, except for any reduction or exhaustion of the aggregate limits contained therein by reason of payment of loss . . . .

[Temple] shall be liable hereunder only after the Insurers of the Underlying Insurance . . . shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance . . . .

37.   Upon information and belief, Valeant's insurance tower for the 2015-2016 policy year includes the following policies (the "2015-2016 Program"):

| Layer | Insurer | Policy No. | Coverage Limits |
|---|---|---|---|
| Primary | AIG Insurance Company of Canada | 01-714-68-05 | $10 Million |
| 1st Excess | Lloyd's Syndicate AWH 2232 | B0509FINMW1500609 | $10 Million x/s $10 Million |
| 2nd Excess | Allianz Global Risks US Insurance Company | FPL 7228579 | $10 Million x/s $20 Million |
| 3rd Excess | Policy No. B0509FINMW 1500612 Underwriters | B0509FINMW1500612 | $10 Million x/s $30 Million |
| 4th Excess | Policy No.B0509FINMW1500642 Underwriters (50% share) RSA (50% share) | B0509FINMW1500642 9501712 | $10 Million x/s $40 Million |
| 5th Excess | Everest Insurance Company of Canada | E3DO000I0I | $10 Million x/s $50 Million |
| 6th Excess | Liberty (50% share) Policy No. B0509FINMW1500626 Underwriters (50% share) | DOTOAAGHNZ005 B0509FINMW1500626 | $10 Million x/s $60 Million |
| 7th Excess | Lloyd's Syndicate SJC 2003 | B0509FINMW1500938 | $10 Million x/s $70 Million |
| 8th Excess | Allianz Global Risks US Insurance Company (12.5% share)<br><br>Certain Policy No. B0509FINMW1500618 Underwriters (75% share)<br><br>Lloyd's Syndicate NAV 1221 (12.5% share) | FPL 7228580<br><br>B0509FINMW1500618<br><br>B0509FINMW1500618 | $20 Million x/s $80 Million |
| 9th Excess | XL Insurance Company SE | B0509FINMW1501095 | $10 Million x/s $100 Million |
| 10th Excess | AIG Insurance Company of Canada | FINMW1501096/0033025 183 | $15 Million x/s $110 Million |
| 11th Excess | Temple Insurance Company | B0509FINMW1500627 | $15 Million x/s $125 Million |
| 12th Excess | Policy No. B0509FINMW1500629 Underwriters | B0509FINMW1500629 | $10 Million x/s $140 Million |

| 13th Excess | Chubb (20% share) | DOX027335 | $25 Million x/s $150 Million |
|---|---|---|---|
| | Lloyd's Syndicate HCC 4141 (20% share) | 150142820113 | |
| | Ironshore Canada Ltd. (20% share) | C444803015 | |
| | RSA (20% share) | 9501713 | |
| | Lloyd's Syndicate BRT 2987 (10% share) | B0509FINMWl500630 | |
| | Lloyd's Syndicate NAV 1221 (10% share) | B0509FINMW l500630 | |

38.     The 2015-2016 Temple Excess Policy "follows-form" to policy number 01-714-68-05, by AIG Insurance Company of Canada issued to Valeant for the claims made policy period of September 28, 2015, to September 28, 2016 (the "2015-2016 AIG Primary Policy"), except where the 2015-2016 Temple Excess Policy provides otherwise.  In particular, the 2015-2016  Temple Excess Policy provides:

> Except as otherwise provided in the Declarations or by any endorsement attached hereto, this policy is subject to the same insuring clauses, definitions, terms and conditions, exclusions, cancellation provisions and all other provisions of the Underlying Insurance.  This policy shall not provide coverage broader than that provided by any Underlying Insurance . . . .

39.     The threshold for coverage pursuant to Insuring Agreement 1.C. of the 2015-016 AIG Primary Policy is "**Loss** of any **Organization** . . . arising from any **Securities Claim** . . . made against such **Organization** for any **Wrongful Act** of such **Organization**."[3]

40.     The 2015-2016 AIG Primary Policy defines **Organization** to include Valeant and any Subsidiary, as separately defined.

---

[3]   Bold capitalize terms referenced in connection with the 2015-2016 AIG Primary Policy and not otherwise defined herein are intended to retain the definitions found in the 2015-2016 AIG Primary Policy.

41.     Clause 9.D. of the 2015-2016 AIG Primary Policy further provides, in relevant part, that:

> With respect to:  (i) **Defence Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured Person** in connection with any Claim other than a **Securities Claim** . . . such **Organization** and such **Insured Person** and the Insurer agree to use their best efforts to determine a fair and proper allocation of the amounts as between such **Organization**, such **Insured Person** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by such Insured person and such Organization.

## 2015-2016 UNDERLYING CLAIMS

42.     Between September 28, 2015, and June 7, 2016, Valeant and Valeant USA experienced a significant decline in the price of their stock.  Following that stock drop, Valeant, Valeant USA, and officers and directors thereof were sued in numerous lawsuits in the United States and Canada.  These lawsuits, which were reported to Temple under the 2015-2016 Temple Excess Policy, are referred to herein as the "2015-2016 Underlying Claims."  Upon information and belief, the 2015-2016 Underlying Claims include:

(1) Securities class action lawsuits brought by Valeant's U.S. security holders which have now been consolidated in In re Valeant Pharmaceuticals International, Inc. Securities Litigation, Master No. 15-cv-07658-MAS-LHG (D.N.J.); Potter v. Valeant Pharmaceuticals International, Inc., et al., Case No. 3:15-cv-7658 (D.N.J.); Chen v. Valeant Pharmaceuticals International, Inc., et al., Case No. 3:15-cv-7679 (D.N.J.); Yang v. Valeant Pharmaceuticals International, Inc., et al., Case No. 2:33-Cv-00001 (D.N.J.); Fein v. Valeant Pharmaceuticals International, Inc., et al., Case No. 3:15-cv-7809 (D.N.J.).

(2) Securities class action lawsuits brought by Valeant's Canadian and other non-U.S. security holders in Canada, including but not limited to:  Catucci v. Valeant Pharmaceuticals International, Inc., et al., Case No. 540-17-11743-159 (Quebec); Rosseau-Godbout v. Valeant Pharmaceuticals International, Inc., et al., Case No. 500-06-770-152 (Quebec); Kowalyshyn v. Valeant Pharmaceuticals International, Inc., et al., Case No. CV-15-540593-00CP (Ontario); Kowalyshyn v. Valeant Pharmaceuticals International, Inc., et al., Case No. CV-15-5410823-00CP (Ontario); Alladina v. Valeant Pharmaceuticals International, Inc., et al., Case No. S-159486 (British

Columbia); O'Brien v. Valeant Pharmaceuticals International, Inc., et al., Case No. CV-15-543678-00CP (Ontario); Okeley v. Valeant Pharmaceuticals International, Inc., et al., Case No. S-159991 (British Columbia).

(3) Lawsuits filed by Valeant security holders who are not proceeding as part of the class actions, including but not limited to:  T Rowe Price Growth Stock Fund, Inc., et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 16-cv-05034-MAS-LHG (D.N.J.); Equity Trustees Limited as Responsible Entity for T Rowe Price Global Equity Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 16-cv-06127-MAS-LHG (D.N.J.); Principal Funds, et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. l6-cv-06128-MAS-LHG (D.N.J.); Bloombergsen Partners Fund, LP, et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 16-cv-07212-MAS-LHG (D.N.J.); Pentwater Equity Opportunities Master Fund Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 17-cv-07552-MAS-LHG (D.N.J.); The Boeing Company Employee Retirement Plans Master Trust and The Boeing Company Employee Savings Plans Master Trust v. Valeant Pharmaceuticals International, Inc., et al., Case No. l7-cv-07636-MAS-LHG (D.N.J.); Public Employees Retirement System of Mississippi v. Valeant Pharmaceuticals International, Inc., et al., Case No. l7-cv-07625-MAS-LHG (D.N.J.); Valic Company I, et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. l6-cv-07496-MAS- LHG (D.N.J.); Janus Aspen Series, et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 16-cv-07497-MAS-LHG (D.N.J.); MSD Torchlight Partners, L.P. v. Valeant Pharmaceuticals International, Inc., et al., Case No. l6-cv-07324-MAS- LHG (D.N.J.); BlueMountain Foinaven Master Fund L.P. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 16-cv-07328-MAS-LHG (D.N.J.); Incline Global Master LP, et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 16-cv-07494-MAS-LHG (D.N.J.); LordAbbett Investment Trust - Lord Abbett Short Duration Income Fund, et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 17-cv-06365-MAS-LHG (D.N.J.); Discovery Global Citizens Master Fund, Ltd., et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 16-cv-07321-MAS-LHG (D.N.J.); Okumus Opportunistic Value Fund, Ltd. v. Valeant Pharmaceuticals International, Inc., et al., Case No. l7-cv-06513-MAS-LHG (D.N.J.); Forsta Ap-Fonden, et al. v. Valeant Pharmaceuticals International, Inc., et al., Case No. 3:17- cv-12088 (D.N.J.).

(4) A lawsuit filed by third party payors to Valeant titled In re Valeant Pharmaceuticals International, Inc. Third Party Payor Litigation, Case No. l6-cv- 03087-MAS-LHG (D.N.J.).

(5) Various regulatory investigations of various former or current officers, directors, and employees of Valeant, including but not limited to investigations by the United States Securities and Exchange Commission, the United States Department of Justice, and the United States Congress.

43.     Valeant and Valeant USA tendered the 2015-2016 Underlying Claims for coverage under the 2015-2016 Temple Excess Policy.

## FIRST CAUSE OF ACTION

### Declaration that the 2013-2014 Underlying Claims Fail to Satisfy the Insuring Agreement of the 2013-2014 AIG Primary Policy

44.     Temple re-alleges and restates the relevant preceding paragraphs as if fully set forth herein.

45.     A condition precedent to any possibility of coverage under the 2013-2014 AIG Primary Policy and/or the 2013-2014 Temple Excess Policy is satisfaction of the Insuring Agreement of the 2013-2014 AIG Primary Policy.

46.     Excepting potential indemnification obligations with respect to Mr. Pearson, the relevant Insuring Agreement of the 2013-2014 AIG Primary Policy with respect to the request for coverage by the Valeant Parties for the 2013-2014 Underlying Claims is solely Insuring Agreement 1.C.(1) of the 2013-2014 AIG Primary Policy.

47.     Insuring Agreement 1.C.(1) of the 2013-2014 AIG Primary Policy requires a **Securities Claim** against the Valeant Parties.

48.     The 2013-2014 Underlying Claims do not meet the definition of **Securities Claim**, as defined in the 2013-2014 AIG Primary Policy.

49.     Accordingly, Temple seeks a declaration that Temple does not owe any obligations under the 2013-2014 Temple Excess Policy for the 2013-2014 Underlying Claims because the 2013-2014 Underlying Claims do not meet the definition of **Securities Claim** and, therefore, do not satisfy Insuring Agreement 1.C.(1) of the 2013-2014 AIG Primary Policy.

## SECOND CAUSE OF ACTION

**Declaration that the 2013-2014 Underlying Claims Do Not Seek the Payment of Loss**

50.     Temple re-alleges and restates each of the relevant preceding paragraphs as if fully set forth herein.

51.     Insuring Agreements 1.B. (Indemnification of Insured Persons) and 1.C. (Organization Coverage) of the 2013-2014 AIG Primary Policy are limited to the obligation to pay **Loss**, a defined term.

> **Loss** is defined in the 2013-2014 AIG Primary Policy to expressly exclude:
>
> (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; . . . (6) any amount for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

52.     Plaintiffs in the 2013-2014 Underlying Claims seek to recover damages because the Valeant Parties allegedly withheld information and improperly traded on that information. Plaintiffs in the 2013-2014 Underlying Claims seek disgorgement of amounts wrongfully realized by the Valeant Parties and restitution of losses realized by those Plaintiffs as a result of the Valeant Parties withholding information.

53.     The amounts sought by Plaintiffs in the 2013-2014 Underlying Claims constitute disgorgement and/or restitution and are uninsurable.

54.     Accordingly, Temple seeks a declaration that amounts sought as damages in the 2013-2014 Underlying Claims do not constitute **Loss**, as defined in the 2013-2014 AIG Primary Policy.

## THIRD CAUSE OF ACTION

**In the Alternative, Allocation Between the Valeant Parties and Pershing Square Capital Management, LP (and Their Related Non-Insured Parties) of Uncovered Loss and Covered Loss Arising From the 2013-2014 Underlying Claims**

55.     Temple re-alleges and restates each of the relevant preceding paragraphs as if fully set forth herein.

56.     Certain of the 2013-2014 Underlying Claims (in particular, the Allergan Action and the Timber Hill Action) are brought against **Insureds**, such as the Valeant Parties, and non-insureds, such as Pershing Square Capital Management, LP.

57.     The 2013-2014 AIG Primary Policy, at Clause 9.D., requires an allocation of any amounts jointly incurred between covered **Loss** and non-covered loss, "taking into account the relative legal and financial exposures, and the relative benefits obtained."

58.     To the extent it is determined that coverage under the 2013-2014 Temple Excess Policy is available to the Valeant Parties for the 2013-2014 Underlying Claims, a proper allocation must be determined between **Loss** incurred by **Insureds**, and loss incurred by non-insureds.

59.     Accordingly, Temple seeks, in the alternative event that there is a determination of coverage, an allocation of amounts jointly incurred by **Insureds** and non-insureds.

## FOURTH CAUSE OF ACTION

**In the Alternative, Allocation Between the Valeant Parties and Mr. Pearson of Uncovered Loss and Covered Loss Arising from the 2013-2014 Underlying Claims**

60.     Temple re-alleges and restates each of the relevant preceding paragraphs as if fully set forth herein.

61.     Certain of the 2013-2014 Underlying Claims (in particular, the Allergan Action and the Timber Hill Action) are brought against the Valeant Parties and Mr. Pearson.

62.     To the extent the Valeant Parties are indemnifying Mr. Pearson, coverage for **Loss** solely associated with the Valeant Parties' indemnification of Mr. Pearson would exist, if at all, pursuant to Insuring Agreement 1.B. of the 2013-2014 AIG Primary Policy.

63.     Insuring Agreement 1.B. of the 2013-2014 AIG Primary Policy, unlike Insuring Agreement 1.C., extends to other **Claims**, not only a **Securities Claim**.

64.     The 2013-2014 AIG Primary Policy, at Clause 9.D., requires an allocation of any amounts jointly incurred between covered **Loss** and non-covered loss, "taking into account the relative legal and financial exposures, and the relative benefits obtained."

65.     To the extent it is determined that coverage under the 2013-2014 Temple Excess Policy is available to the Valeant Parties pursuant to Insuring Agreement 1.B. by virtue of indemnification of Mr. Pearson, and to the extent such amounts are in excess of the underlying insurance, a proper allocation must be determined between **Loss** incurred by virtue of the Valeant Parties' indemnification of Mr. Pearson and loss not attributable to such indemnification.

66.     Accordingly, Temple seeks, in the alternative event that there is a determination of coverage, an allocation of amounts directly incurred by the Valeant Parties and indirectly through the Valeant Parties' indemnification of Mr. Pearson.

## FIFTH CAUSE OF ACTION

### In the Alternative, Declaration That Temple Has No Obligation to Pay the Valeant Parties' Loss on the 2013-2014 Underlying Claims as the Underlying Insurance Has Not Been Exhausted

67.     Temple re-alleges and restates the relevant preceding paragraphs as if fully set forth herein.

68.     Pursuant to the 2013-2014 Temple Excess Policy, Temple has no payment obligations unless and until the Insurers of the Underlying Insurance, the Insured, or any other insurer providing coverage for loss on a difference in conditions basis, if applicable, "shall have

paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance."

69.     To date, there have been no payments, nor any finding of liability, in any amount in response to the 2013-2014 Underlying Claims or, upon information and belief, in response to any claim under the 2013-2014 Program.  Thus, the full amount of the limits of liability of the Underlying Insurance remain in force and have not been exhausted.

70.     Moreover, the Allergan Settlement makes clear that any payment by the Valeant Parties to settle the 2013-2014 Underlying Claims will not exhaust the full amount of the limits of liability of the Underlying Insurance.

71.     To the extent it is determined that coverage under the 2013-2014 Temple Excess Policy is available to the Valeant Parties, which Temple denies, Temple does not owe any current obligation to make any payments under the 2013-2014 Temple Excess Policy and will have no such obligation in the future unless and until each policy of Underlying Insurance below the 2013-2014 Temple Excess Policy has been exhausted through payment of Loss.

72.     Accordingly, Temple seeks, in the alternative event that there is a determination of coverage, a declaration that Temple owes no payment obligations under the 2013-2014 Temple Excess Policy because the Underlying Insurance has not been exhausted.

## SIXTH CAUSE OF ACTION

**In the Alternative, Declaration that Temple Has No Obligation to Pay the Valeant Parties'
Defense Costs Outside Policy Limits on the 2013-2014 Underlying Claims**

73.     Temple re-alleges and restates the relevant preceding paragraphs as if fully set forth herein.

74. The Valeant Parties have demanded that their **Defence Costs** associated with the defense of the 2013-2014 Underlying Claims be paid outside of the limits of the 2013-2014 Program.

75. However, pursuant to the 2013-2014 Temple Excess Policy, Temple has no payment obligations unless and until the Insurers of the Underlying Insurance, the Insured, or any other insurer providing coverage for loss on a difference in conditions basis, if applicable, "shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance."

76. As a result of the Allergan Settlement, the full amount of the limits of liability of the Underlying Insurance remain in force and have not been exhausted. Accordingly, because the full amount of the limits of liability of the Underlying Insurance are not and will not be exhausted as a result of the Allergan Settlement, and because Temple therefore has no obligation to pay the Valeant Parties' **Loss**, Temple also has no obligation to pay the Valeant Parties' **Defence Costs**.

77. In addition, because there is no coverage for the 2013-2014 Underlying Claims, because they are not **Securities Claims**, and because they seek disgorgement of amounts wrongfully realized by the Valeant Parties and restitution of losses realized by those Plaintiffs, Temple therefore has no obligation to pay the Valeant Parties' **Defence Costs** in connection with the defense of the 2013-2014 Underlying Claims.

78. To the extent it is determined that coverage under the 2013-2014 Temple Excess Policy is available to the Valeant Parties, which Temple denies, Temple asserts that its payment obligations would be subject to, and not in addition to or outside, the limits of liability provided under the 2013-2014 Temple Excess Policy. The 2013-2014 Temple Excess Policy specifically

states that the "Limit of Liability, as set forth in Item 3 of the Declarations, shall be the maximum Limit of Liability of [Temple] under this policy."

79.     Accordingly, Temple seeks, in the alternative event that there is a determination of coverage, a declaration that any obligation Temple owes to pay any of the Valeant Parties' **Defence Costs** shall be subject to, and not in addition to or outside, the limits of liability of the 2013-2014 Temple Excess Policy.

## SEVENTH CAUSE OF ACTION

### Declaration That Temple Has No Obligation to Pay Loss on the 2015-2016 Underlying Claims as the Underlying Insurance Has Not Been Exhausted

80.     Temple re-alleges and restates the relevant preceding paragraphs as if fully set forth herein.

81.     Pursuant to the 2015-2016 Temple Excess Policy, Temple has no payment obligations unless and until the Insurers of the Underlying Insurance, the Insured, or any other insurer providing coverage for loss on a difference in conditions basis, if applicable, "shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance."

82.     To date, there have been no payments, nor any finding of liability, in any amount in response to the 2015-2016 Underlying Claims or, upon information and belief, in response to any claim under the 2015-2016 Program.  Thus, the full amount of the limits of liability of the Underlying Insurance remain in force and have not been exhausted.

83.     Therefore, Temple does not owe any current obligation to make any payments under the 2015-2016 Temple Excess Policy, and will have no such obligation in the future unless and until each policy of Underlying Insurance below the 2015-2016 Temple Excess Policy has been exhausted through payment of Loss.

84.     Accordingly, Temple seeks a declaration that it does not have any payment obligation under the 2015-2016 Temple Excess Policy because the Underlying Insurance has not been exhausted.

### EIGHTH CAUSE OF ACTION

**In the Alternative, Declaration That Temple Has No Obligation to Pay the Insured's Defence Costs Outside of Policy Limits on the 2015-2016 Underlying Claims**

85.     Temple re-alleges and restates the relevant preceding paragraphs as if fully set forth herein.

86.     The Valeant Parties have demanded that their **Defence Costs** associated with the defense of the 2015-2016 Underlying Claims be paid outside of the limits of the 2015-2016 Program.

87.     However, because any potential for coverage under the 2015-2016 Temple Excess Policies has not been triggered for the 2015-2016 Underlying Claims, Temple has no obligation to pay the Valeant Parties' **Defence Costs** in connection with the defense of the 2015-2016 Underlying Claims.

88.     To the extent that it is determined that coverage under the 2015-2016 Temple Excess Policy is available to the Valeant Parties, which Temple denies, Temple asserts that its payment obligations would be subject to, and not in addition to or outside, the limits of liability of the 2015-2016 Temple Excess Policy.  The 2015-2016 Temple Excess Policy specifically states that the "Limit of Liability, as set forth in Item 3 of the Declarations, shall be the maximum Limit of Liability of [Temple] under this policy."

89.     Accordingly, Temple seeks, in the alternative event that there is a determination of coverage, a declaration that any obligation it may owe to pay any of the Valeant Parties'

**Defence Costs** shall be subject to, and not in addition to or outside, the limits of liability of the 2015-2016 Temple Excess Policy.

**PRAYER FOR RELIEF**

WHEREFORE, Temple requests that this Court enter a declaration and final judgment in its favor:

A.      Declaring that, for the reasons set forth in the First Cause of Action, the 2013-2014 Temple Excess Policy does not provide coverage for the 2013-2014 Underlying Claims;

B.      Declaring that, for the reasons set forth in the Second Cause of Action, the 2013-2014 Temple Excess Policy does not provide coverage for the 2013-2014 Underlying Claims;

C.      In the alternative, for the reasons set forth in the Third Cause of Action, determining an allocation of **Loss** between the Valeant Parties and non-insured parties under the 2013-2014 Temple Excess Policy;

D.      In the alternative, for the reasons set forth in the Fourth Cause of Action, determining an allocation of amounts directly incurred by the Valeant Parties and indirectly incurred by the Valeant Parties through indemnification of Mr. Pearson under the 2013-2014 Temple Excess Policy;

E.      In the alternative, declaring that, for the reasons set forth in the Fifth Cause of Action, Temple owes no payment obligations under the 2013-2014 Temple Excess Policy because the Underlying Insurance has not been exhausted;

F.      In the alternative, declaring that, for the reasons set forth in the Sixth Cause of Action, that any obligation Temple may have to pay any of the Valeant Parties' **Defence Costs** shall be subject to, and not in addition to or outside, the limits of liability of the 2013-2014 Temple Excess Policy;

G.      Declaring that, for the reasons set forth in the Seventh Cause of Action, Temple owes no payment obligations under the 2015-2016 Temple Excess Policy because the Underlying Insurance has not been exhausted;

H.      In the alternative, declaring that, for the reasons set forth in the Eighth Cause of Action, that any obligation that Temple may have to pay any of the Valeant Parties' **Defence Costs** shall be subject to, and not in addition to or outside, the limits of liability of the 2015-2016 Temple Excess Policy;

I.      Awarding Temple such other and additional relief as shall be found to be reasonable; and

J.      Awarding Temple its fees and costs incurred in prosecuting this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Temple respectfully request that Plaintiffs' Complaint be dismissed with prejudice; that the Court enter judgment in favor of Temple; that Temple be awarded costs and attorneys' fees; and that Temple be granted such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Temple hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## CERTIFICATION PURSUANT TO L.R. 11.2

The matter in controversy in the present action is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. The undersigned, as counsel for Temple, hereby certifies under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        March 2, 2018

Respectfully submitted,

DLA PIPER LLP (US)

Of Counsel:

Joseph G. Finnerty III (*pro hac vice*)
joseph.finnerty@dlapiper.com
John Vukelj (*pro hac vice*)
john.vukelj@dlapiper.com

DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
Tel.: 212.335.4500
Fax: 212.335.4501

By:   /s/ Steven M. Rosato
        Steven M. Rosato
        steven.rosato@dlapiper.com

1251 Avenue of the Americas
New York, NY  10020-1104
Tel.: 212.335.4500
Fax: 212.335.4501

Attorneys for Defendant
  Temple Insurance Company

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on March 2, 2018, the foregoing document was filed with the Clerk of the U.S. District Court, District of New Jersey, via CM/ECF, which will cause copies to be served upon all counsel of record.  In addition, copies have been served upon counsel for Plaintiffs via electronic mail.


By: <u>/s/ Steven M. Rosato    </u>