**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AIG INSURANCE COMPANY OF CANADA, et al.,<br><br>Defendants. | Civil Action No. 3:18-cv-00493-MAS-LHG<br><br>**Motion Day: January 7, 2019**<br><br>**Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF TEMPLE INSURANCE COMPANY'S PARTIAL MOTION TO DISMISS THE COMPLAINT**

DLA PIPER LLP (US)

Joseph G. Finnerty III (*pro hac vice*)
joseph.finnerty@dlapiper.com
John Vukelj (*pro hac vice*)
john.vukelj@dlapiper.com
Steven M. Rosato
steven.rosato@dlapiper.com

1251 Avenue of the Americas
New York, NY 10020-1104
Tel.: 212.335.4500
Fax: 212.335.4501

Attorneys for Defendant
  Temple Insurance Company

Table of Contents

                                                                                       Page

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

       A.       The Parties. ....................................................................................................... 2

       B.       The Relevant Terms of The 2013-14 Temple Policy............................................. 3

       C.       Valeant Tenders Claims for Coverage Under
                 the 2013-14 Program............................................................................................ 4

       D.       Plaintiffs Institute This Coverage Action,
                 and the Allergan Litigation Is Settled. ................................................................. 5

       E.       Plaintiffs Refuse Temple's Repeated Requests to
                 Voluntarily Dismiss the 2013-14 Claims.............................................................. 6

ARGUMENT................................................................................................................................ 7

    THE 2013-14 CLAIMS SHOULD BE DISMISSED FOR LACK
    OF SUBJECT MATTER JURISDICTION. ............................................................................. 7

       A.       The Standard of Review Under Rule 12(b)(1) and the
                 Constitution's "Case" or "Controversy" Requirement. ......................................... 8

       B.       The 2013-14 Claims Do Not Present a Justiciable
                 Case or Controversy............................................................................................. 9

CONCLUSION............................................................................................................................ 13

Table of Authorities

Page(s)

Cases

A.S. v. Harrison Twp. Bd. of Educ.,
   66 F. Supp. 3d 539 (D.N.J. 2014) ............................................................................................8

Armstrong World Indus., Inc. by Wolfson v. Adams,
   961 F.2d 405 (3d Cir. 1992)......................................................................................................8

Certain Underwriters at Lloyd's, London v. St Joe Minerals Corp.,
   90 F.3d 671 (2d Cir. 1996)........................................................................................................9

Constitution Party of Pa. v. Aichele,
   757 F.3d 347 (3d Cir. 2014)......................................................................................................8

Davis v. Wells Fargo,
   824 F.3d 333 (3d Cir. 2016)......................................................................................................8

Flast v. Cohen,
   392 U.S. 83, 88 S. Ct. 1942 (1968) ..........................................................................................9

Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co. of Pittsburgh,
   No. 5:08CV1789, 2009 WL 3518070 (N.D. Ohio Oct. 23, 2009)..........................................10

Gruntal & Co. v. Steinberg,
   854 F. Supp. 324 (D.N.J. 1994) ................................................................................................9

Hahn v. GEICO Choice Ins. Co.,
   420 P.3d 1160 (Alaska 2018)..................................................................................................10

Int'l Bhd. of Boilermakers v. Kelly,
   815 F.2d 912 (3d Cir. 1987)......................................................................................................9

Iolab Corp. v. Seaboard Sur. Co.,
   15 F.3d 1500 (9th Cir. 1994) ..................................................................................................11

Ironshore Indem., Inc. v. Banyon 1030-32, LLC,
   No. 10-60285-CIV, 2010 WL 11601098 (S.D. Fla. May 28, 2010)........................................10

Lincoln Benefit Life Co. v. AEI Life, LLC,
   800 F.3d 99 (3d Cir. 2015)........................................................................................................8

Mortensen v. First Fed. Sav. & Loan Ass'n,
   549 F.2d 884 (3d Cir. 1977)......................................................................................................8

NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.,
   979 F. Supp. 2d 513 (D.N.J. 2013) ...........................................................................................8

Page(s)

Rendell v. Rumsfeld,
    484 F.3d 236 (3d Cir. 2007)..................................................................................................9

Step-Saver Data Systems, Inc. v. Wyse Technology,
    912 F.2d 643 (3d Cir. 1990)................................................................................................12

Taliaferro v. Darby Twp. Zoning Bd.,
    458 F.3d 181 (3d Cir. 2006)..................................................................................................9

UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co.,
    276 N.J. Super. 52, 647 A.2d 182 (Law Div. 1994) ...........................................................10

Zimmerman v. HBO Affiliate Grp.,
    834 F.2d 1163 (3d Cir. 1987)................................................................................................9

## Constitutional Provisions, Statutes, and Rules

28 U.S.C. § 1332....................................................................................................................5

28 U.S.C. § 2107....................................................................................................................6

Fed. R. Civ. P. 11...................................................................................................................7

Fed. R. Civ. P. 12...............................................................................................................1, 8

U.S. Const., art. III, § 2 ..................................................................................................2, 8, 9

Defendant Temple Insurance Company ("Temple") respectfully submits this memorandum of law in support of its motion to dismiss Counts One, Five, and Seven of the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

PRELIMINARY STATEMENT

In this multifaceted insurance coverage litigation, plaintiffs Valeant Pharmaceuticals International, Inc. and two subsidiaries ("Valeant") seek broad declarations of insurance coverage against every insurer who participated in its directors and officers insurance program for both the 2013-14 and 2015-16 policy years – with no regard for the role of each insurer in those insurance programs. These programs respectively total $150 million and $175 million in insurance policy limits provided by two dozen insurers. While plaintiffs' claims for insurance under each program are, of course, factually and legally dependent upon the nature and size of the underlying exposure in each year, plaintiffs have indiscriminately sued every insurer for all liability. With this strategy, plaintiffs have effectively dropped a dragnet and ensnared insurers with no possible coverage obligation.

This motion seeks dismissal of plaintiffs' claims under the 2013-14 insurance program (the "2013-14 Claims") as against Temple for lack of subject-matter jurisdiction because plaintiffs have <u>no possible</u> insurance coverage under the implicated Temple policy. Plaintiffs have no possible claim for insurance coverage, and dismissal is warranted, for one straightforward reason: Temple is the 11th-excess insurer on Valeant's 2013-14 insurance program, and the litigation underlying 2013-14 Claims has been settled for an amount more than <u>$30 million</u> below Temple's excess policy layer. That settlement fully and finally resolved Valeant's liability with respect to the 2013-14 Claims. These undisputed facts mean that there is no possibility that Temple's coverage obligations could ever be triggered as to those claims;

thus, there simply is no live issue for plaintiffs and Temple to litigate.  Stated alternatively in the words of Article III, section 2 of the Constitution, the 2013-14 Claims do not present a "case" or "controversy" vis-à-vis Temple—a bedrock requirement of federal subject matter jurisdiction.  Nothing that plaintiffs might say in opposing this motion can alter that conclusion.

This is a motion that Temple never should have had to file.  Temple notified plaintiffs of its position regarding the 2013-14 Claims in August 2018, just as the court presiding over the underlying litigation had entered its order finally approving the settlement.  Plaintiffs have not responded with any credible basis for requiring Temple to defend against the 2013-14 Claims.  Temple repeatedly asked plaintiffs to reconsider their position and voluntarily dismiss the 2013-14 Claims to the extent asserted against Temple.  But Plaintiffs have refused, without even attempting to offer a legal justification for their position.  That is because there is none.  Counts One, Five, and Seven of the Complaint should be dismissed with prejudice for lack of subject matter jurisdiction.

FACTUAL BACKGROUND

A.    <u>The Parties.</u>

Valeant Pharmaceuticals International, Inc. is a Canadian multinational pharmaceuticals corporation that maintains its global headquarters in Canada and its U.S. headquarters in Bridgewater, New Jersey.  Dkt. No. 1-1, Compl. ¶¶ 2-3, 15.  Plaintiff Valeant Pharmaceuticals International is a Valeant subsidiary incorporated in Delaware that maintains its principal place of business in Bridgewater, New Jersey.  Id. ¶ 16.  Plaintiff AGMS, Inc. is also a Valeant subsidiary that was formed in connection with Valeant's attempted hostile takeover of Allergan, Inc., as discussed more fully below.  Id. ¶ 17.  Valeant purchased directors and officers liability insurance policies totaling $150 million from various defendants for the period between September 28, 2013, and September 28, 2014 (the "2013-14 Program").  Id. ¶ 4.  Those policies,

as plaintiffs put it, "provide[d] coverage for all 'Securities Claims' against Valeant and its subsidiaries and all 'Claims' against directors and officers of Valeant and its subsidiaries." Id.

Temple is a Canadian insurance company with its principal place of business in Canada. Dkt. No. 87, Temple Ans. ¶ 27. Temple served as the 11th excess insurer in the 2013-14 Program, with coverage attaching under its $15 million policy for covered losses exceeding $130 million (the "2013-14 Temple Policy"), inclusive of Valeant's $5 million self-insured retention under the primary policy issued by AIG Insurance Company of Canada (the "2013-14 AIG Primary Policy"). See id. ¶¶ 37- 38; Declaration of John Vukelj dated December 14, 2018, Exh. A, 2013-14 Temple Policy at 1-3.[1]

B.    The Relevant Terms of The 2013-14 Temple Policy.

The 2013-14 Temple Policy is an excess follow-form policy that generally follows the provisions of the 2013-14 AIG Primary Policy, with certain exceptions. Exh. A, 2013-14 Temple Policy § I.B.; Exh. B, 2013-14 AIG Primary Policy.[2] The 2013-14 Temple Policy generally provides excess insurance coverage to Valeant and its subsidiaries for "Loss" arising out of various types of claims asserted against those entities or their directors, officers, or employees. 2013-14 Temple Policy § I.B.; 2013-14 AIG Primary Policy § 1.A.-C. In particular, the 2013-14 policies cover Loss arising out of any "Securities Claim" (a defined term in the policies) asserted against Valeant or its subsidiaries. 2013-14 AIG Primary Policy § 1.C.(1).

The 2013-14 Temple Policy explicitly states that it "provides excess coverage only," 2013-14 Temple Policy § I.C., and sets out the 11 primary and excess layers of "Underlying

---

[1] The Complaint's Second, Sixth, and Eighth Counts seek relief as against Temple as a result of Temple's status as the 11th excess insurer in the 2015-16 insurance program. Compl. ¶¶ 49, 96-101, 121-25, 130-33. The Third Count relates to the 2013-14 insurance program but is asserted only against defendant Lloyd's Syndicate AWH 2232. Id. ¶¶ 102-08. This motion does not seek dismissal of those counts.

[2] Citations to "Exh." or "Exhs." refer to the exhibits attached to the Vukelj Declaration.

3

Insurance" preceding Temple's 11th excess layer, id., Declarations at Item 6. The 2013-14 Temple Policy also provides that coverage may be available "only after the Insurers of the Underlying Insurance, the Insured and/or any insurer providing coverage for loss on a difference in conditions basis, if applicable, <u>shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance</u>." Id. § II.B (emphasis added). The policy further states that Temple "shall only pay excess of any applicable retention or deductible amount(s) under the Primary Policy which shall be applied to any subsequent loss in the same manner as specified in the Primary Policy." Id. § II.C.(b). Taken together, these provisions establish that Temple's coverage obligations under the 2013-14 Temple Policy are not triggered unless and until the $130 million in Underlying Insurance has been fully exhausted.

  C. <u>Valeant Tenders Claims for Coverage Under the 2013-14 Program.</u>

On or about August 1, 2014, the first of several lawsuits was filed against Valeant, its former CEO Michael Pearson, and various entities affiliated with Pershing Square Capital Management, L.P. (the "Pershing Defendants") in connection with an insider-trading scheme hatched as part of Valeant's failed attempt to complete a hostile takeover of one of its chief competitors, Allergan, Inc. (collectively, the "Allergan Litigation"). Dkt. No. 87, Temple Counterclaim ¶¶ 18-26. In the Allergan Litigation, the plaintiffs sought, on behalf of all Allergan shareholders, the return of approximately $2.5 billion in profits allegedly reaped by the Pershing Defendants as a result of the scheme, including the approximately $400 million of those profits that were allegedly "kick[ed] back . . . to Valeant." Id. ¶¶ 25, 27-29.[3] Valeant ultimately tendered a claim for coverage to AIG under the 2013-14 Program for the Allergan Litigation (the

---

[3] Holders of certain Allergan derivative securities also brought an action against Valeant and others captioned Timber Hill LLC v. Pershing Square Capital Management, LP, et al., Case No. 2:17-cv-04776 (C.D. Cal. 2017). Temple Counterclaim ¶ 20.

4

"2013-14 Claims"). See id. ¶ 31. Neither AIG nor any of the other Underlying Insurers agreed to provide insurance coverage for the 2013-14 Claims because they do not constitute a covered Loss under the 2013-14 AIG Primary Policy and respective excess policies. See Compl. ¶ 12.

### D. Plaintiffs Institute This Coverage Action, and the Allergan Litigation Is Settled.

Plaintiffs originally filed this lawsuit in Somerset County Superior Court on December 7, 2017. See Compl. at p. 40. After the defendants were served with the complaint in the weeks that followed, defendant Hartford Fire Insurance Company filed a Notice of Removal on January 12, 2018 in this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. See generally Dkt. No. 1, Notice of Removal. Temple filed a consent to removal of the case and filed an answer with counterclaims on March 2, 2018. See Dkt. Nos. 10, 87.[4]

In the intervening months, however, the Allergan Litigation was hurtling towards settlement. Indeed, a mere three weeks after the Complaint was filed—and before Temple had even been served with the Complaint—plaintiffs informed the insurers that the parties had reached a settlement-in-principle for a total of $290 million in cash, of which Valeant would be responsible for $96.25 million. Exh. C, 12/29/17 E-mail From J. Failla; see also Exh. D, Pls.' Proposed Discovery Plan Dated April 25, 2018. The parties subsequently submitted the settlement to the district court for preliminary approval on January 26, 2018, and the court entered an order preliminarily approving the settlement on March 19, 2018. Exhs. E-F, Notice of Motion and Order Preliminarily Approving Settlement. The plaintiffs then moved for final approval of the settlement on April 25, 2018. Exh. G, Notice of Motion for Final Settlement

---

[4] The First, Second, Third, Fourth, Fifth, and Sixth Causes of Action asserted in Temple's Counterclaim all relate to the 2013-14 Claims. *See* Dkt. No. 87. To the extent the Court grants this motion dismissing Counts One, Five, and Seven of the Complaint as against Temple, then Temple intends voluntarily to dismiss its First, Second, Third, Fourth, Fifth, and Sixth counterclaims.

5

Approval.

In this litigation, meanwhile, plaintiffs served discovery requests on all defendants on June 5, 2018. Exhs. H-I. Those requests sought voluminous documents and information related to the 2013-14 Claims. In response to the requests, Temple specifically objected to discovery relating to the 2013-14 Claims on the ground that the relevant counts asserted in the Complaint against Temple were not justiciable in light of the Allergan Litigation's anticipated final settlement for an amount significantly below Temple's $130 million attachment point on the 2013-14 tower. See, e.g., Exh. J, Responses & Objections to Doc. Req. at 7.

At essentially the same time that Temple served its responses and objections, the court presiding over the Allergan Litigation entered an order finally approving the settlement on August 14, 2018. Exh. K, Final Settlement Order. Under the terms of the settlement, all defendants were granted a global release of any claims arising out of or relating to the claims asserted in the Allergan Litigation. Exh. L, Notice of Class Action Settlement ¶¶ 35-37. No class member or other interested party appealed the court's final order during the 30-day time period allotted for filing a notice of appeal under 28 U.S.C. § 2107(a). The Allergan Litigation accordingly is now fully and finally resolved.

### E. Plaintiffs Refuse Temple's Repeated Requests to Voluntarily Dismiss the 2013-14 Claims.

Following up on its objections to discovery concerning the 2013-14 Claims, Temple sent a letter to plaintiffs' counsel dated October 18, 2018, reiterating its objection to discovery and proposing a voluntary dismissal of the counts of the Complaint relating to the 2013-14 Claims. Exh. M, 10/18/18 Letter From J. Vukelj to J. Failla. Though plaintiffs never formally responded to Temple's proposal, Temple again raised the issue on a November 1, 2018 telephonic meet-and-confer with plaintiffs' counsel. Vukelj Decl. ¶ 14. Plaintiffs were non-committal but agreed

to discuss the matter further and provide a formal response. Id. After more than two weeks without a response, Temple served a more detailed letter on plaintiffs setting forth clear legal authority favoring dismissal of the 2013-14 Claims for lack of subject matter jurisdiction and warning plaintiffs that their continued pursuit of those claims could potentially constitute a violation of Rule 11. See generally Exh. N, 11/19/18 Letter from J. Vukelj to J. Failla. The letter emphasized the waste of time, expense, and judicial resources that would result if plaintiffs were to force Temple to file a formal motion to dismiss the 2013-14 Claims. Id. at 3. Once again, Temple's proposal was met with silence. In light of plaintiffs' recalcitrance, Temple was left with no other choice than to file this motion.

## ARGUMENT

### THE 2013-14 CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

In Counts One and Five of the Complaint, plaintiffs assert that "an actual case or controversy exists between Plaintiffs and the 2013-14 Insurers regarding the obligations owed to Plaintiffs under the 2013-14 Policies." Compl. ¶¶ 95, 120. Plaintiffs further assert in Count Seven that "[t]he 2013-14 Insurers have breached their contractual obligations to Plaintiffs under the 2013-14 Policies by wrongfully denying coverage for the 2013-14 Claims . . . ." Id. ¶ 129. The settlement of the Allergan Litigation for an amount far below Temple's coverage layer on the 2013-14 Tower renders each of these statements false as to Temple. Because Temple could never be responsible for coverage of the 2013-14 Claims, there is no "case" or "controversy" between plaintiffs and Temple as to those claims, and Temple could not have breached a non-existent obligation to provide coverage for those claims. For the reasons discussed below, this Court lacks subject matter jurisdiction over Counts One, Five, and Seven to the extent asserted against Temple, and those claims should be dismissed with prejudice.

7

## A. The Standard of Review Under Rule 12(b)(1) and the Constitution's "Case" or "Controversy" Requirement.

"Motions pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction may be raised at any time." NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc., 979 F. Supp. 2d 513, 517 (D.N.J. 2013). Such a motion may take the form of either a facial or factual challenge to the court's jurisdiction. See, e.g., Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015). A factual challenge, like the one Temple advances here, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or otherwise presenting competing facts." Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotation marks and alterations omitted). On such a challenge, the court does not afford the complaint's allegations a presumption of truth, and "the plaintiff bears the burden of pro[ving] that jurisdiction exists." A.S. v. Harrison Twp. Bd. of Educ., 66 F. Supp. 3d 539, 544 (D.N.J. 2014) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). The court may also "weigh and consider evidence outside the pleadings" in considering a factual challenge to its subject matter jurisdiction. Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (internal quotation marks omitted).

Article III, section 2 of the Constitution limits the federal courts' subject matter jurisdiction to "cases" and "controversies." See, e.g., Armstrong World Indus., Inc. by Wolfson v. Adams, 961 F.2d 405, 410 (3d Cir. 1992). This constitutional command "stands as a direct prohibition on the issuance of advisory opinions." Id. (citing Flast v. Cohen, 392 U.S. 83, 96, 88 S. Ct. 1942, 1950 (1968)). An action qualifies as a case or controversy only if it presents: "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication,

8

and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." Rendell v. Rumsfeld, 484 F.3d 236, 240 (3d Cir. 2007) (quoting Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987)). In the context of a declaratory judgment action, "[t]he fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination." Gruntal & Co. v. Steinberg, 854 F. Supp. 324, 332-33 (D.N.J. 1994) (quoting Zimmerman v. HBO Affiliate Grp., 834 F.2d 1163, 1170 (3d Cir. 1987)). Where these constitutional requirements are not met, "a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).

   B. The 2013-14 Claims Do Not Present a Justiciable Case or Controversy.

Under well-settled law, the 2013-14 Claims do not satisfy Article III, section 2's case or controversy requirement because there is no possibility that coverage under the Temple 2013-14 Policy for the 2013-14 Claims will ever be triggered. Simply put, any decision by this Court concerning coverage under the Temple 2013-14 Policy would be nothing more than a constitutionally-forbidden advisory opinion.

Indeed, federal courts across the country agree that claims asserted by or against an excess insurer do not present an actual case or controversy where there is no reasonable possibility that the excess insurer's policy layer will be reached. In Certain Underwriters at Lloyd's, London v. St Joe Minerals Corp., for example, the Second Circuit affirmed the district court's dismissal of claims asserted by excess insurers on the basis that "there was no practical likelihood that [the insured's] liability would reach the layers of its excess insurance . . . ." 90 F.3d 671, 675, 676 (2d Cir. 1996). Similarly, a Florida district court dismissed a declaratory judgment action where the complaint did not allege "that the underlying coverage has been exhausted or even that [the underlying] claims are sufficient to create more than $30 million in

9

exposure," as required to reach the excess insurer's policy layer. Ironshore Indem., Inc. v. Banyon 1030-32, LLC, No. 10-60285-CIV-UNGARO, 2010 WL 11601098, at *2 (S.D. Fla. May 28, 2010). The court reasoned that "[t]here can be no actual case or controversy without any indication that these claims are likely to exhaust the underlying coverage of $30 million." Id. Other courts have reached the same conclusion under similar circumstances. See, e.g., Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co. of Pittsburgh, No. 5:08CV1789, 2009 WL 3518070, at *3-4 (N.D. Ohio Oct. 23, 2009) (dismissing declaratory judgment action against excess insurer where underlying policy limits had not been exhausted, even though complaint sought reimbursement of amounts that would reach excess policy layer).

State courts—including the New Jersey Superior Court—have also followed this reasoning in dismissing claims concerning coverage under excess insurance policies on justiciability grounds. The Superior Court's decision in UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co., 276 N.J. Super. 52, 647 A.2d 182 (Law Div. 1994), is instructive and directly on point. There, the plaintiff-insured alleged damages of $25 million, but coverage under the defendant-excess insurer's policy was available only for losses exceeding $50 million. Id. at 66-67, 647 A.2d at 189. Given the gap between the plaintiff's alleged damages and the excess policy's attachment point, the excess insurer contended that "it is likely that its policy will never be reached; thus, there is no real controversy." Id. at 67, 647 A.2d at 189. Applying U.S. Supreme Court precedent barring courts from "render[ing] what is essentially an advisory opinion," id. at 66, 647 A.2d at 189, the court dismissed the insured's claims to the extent asserted against the excess insurer. See id. at 67, 647 A.2d at 190; see also Hahn v. GEICO Choice Ins. Co., 420 P.3d 1160, 1167 & n.21 (Alaska 2018) (claim against excess insurer may be maintained only when "it becomes reasonably likely that a claim for excess coverage will

10

mature"); Iolab Corp. v. Seaboard Sur. Co., 15 F.3d 1500, 1504-05 (9th Cir. 1994) (dismissing claims against excess insurers where insured failed to "establish[] that the [] loss will ever trigger excess coverage," since "requiring the excess insurers to defend against Iolab's claim would impose on the excess insurers the unnecessary cost of litigating a claim that may never trigger excess coverage").

The facts presented here compel the same result. Temple is the 11th excess insurer in Valeant's 2013-14 insurance program, with coverage attaching only for Loss in excess of $130 million. See Exh. A, 2013-14 Temple Policy at 1-3 (primary and excess insurance totaling $130 million). Section II.B. of the 2013-14 Temple Policy explicitly makes coverage available "only after the Insurers of the Underlying Insurance, the Insured and/or any insurer providing coverage for loss on a difference in conditions basis, if applicable, shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance." Id. § II.B. (emphasis added); see also id. §§ I.B. & I.C. (coverage under policy no broader than coverage under underlying policies; insured deemed self-insured for any amount of Underlying Insurance not paid by an insurer by virtue of insurer's insolvency, bankruptcy, or liquidation). Without exhaustion of the $130 million limits in Underlying Insurance—whether paid by the underlying insurers or by the insured—Temple simply has no obligation to provide coverage under its policy under any circumstances.

As detailed above, Valeant has fully and finally settled the Allergan Litigation with a cash payment of $96.25 million.[5] Dkt. No. 87, Temple Counterclaim ¶ 32; see also Exhs. C-D.

---

[5] The total value of the settlement is $290 million. This figure comprises a $250 million cash payment to settle claims related to trading in Allergan common stock, and a $40 million cash payment to settle the claims arising out of transactions in Allergan derivative securities. $96.25 million represents the portion of the $290 million for which Valeant is responsible, with the Pershing Square Defendants responsible for the balance.

Its liability arising out of the 2013-14 Claims thus is definitively capped at that amount.

As a result, Valeant's total liability in connection with the 2013-14 Claims falls a full $33.75 million short of Temple's attachment point on the 2013-14 tower. That figure is not subject to change, and the coverage provisions of the 2013-14 Temple Policy expressly preclude coverage before $130 million in losses have been incurred and paid. Any determination by this Court of Temple's coverage obligations for the 2013-14 Claims thus would be an impermissible "opinion advising what the law would be upon a hypothetical state of facts," Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 649 (3d Cir. 1990) (internal quotation marks omitted), since the Court would have to assume the impossible: that at least $130 million has been, or is reasonably likely to be, incurred and paid as liability for those claims. As a matter of constitutional law, therefore, Counts One, Five, and Seven should be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Temple respectfully requests that the Court dismiss Counts One, Five, and Seven of the Complaint with prejudice for lack of subject matter jurisdiction.

Dated: New York, New York
December 14, 2018

Of Counsel:

Joseph G. Finnerty III (*pro hac vice*)
joseph.finnerty@dlapiper.com
John Vukelj (*pro hac vice*)
john.vukelj@dlapiper.com

DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
Tel.: 212.335.4500
Fax: 212.335.4501

DLA PIPER LLP (US)

By: */s/ Steven M. Rosato*
Steven M. Rosato
steven.rosato@dlapiper.com

1251 Avenue of the Americas
New York, NY 10020-1104
Tel.: 212.335.4500
Fax: 212.335.4501

Attorneys for Defendant
Temple Insurance Company

13