**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

VALEANT PHARMACEUTICALS
INTERNATIONAL, INC., et al.,

    Plaintiffs,

v.

AIG INSURANCE COMPANY OF
CANADA, et al.,

    Defendants.

Civil Action No. 18-493 (MAS) (LHG)

**MEMORANDUM OPINION**

**<u>SHIPP</u>, District Judge**

    This matter comes before the Court upon Defendant Temple Insurance Company's ("Temple") Partial Motion to Dismiss Counts One, Five, and Seven of Plaintiffs Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International, and AGMS, Inc.'s (collectively, "Valeant") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1)[1] (the "Motion"). (ECF No. 155.) Defendant Certain Underwriters Lloyd's, London subscribing to Policy No. QB146013 ("MS Amlin")[2] also moved for dismissal of Counts One, Five, and Seven on the same grounds Temple asserted. (ECF No. 161.) Valeant opposed the motions (ECF No. 164), and Temple replied (ECF No. 166). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Temple's motion is granted in part and denied in part, and MS Amlin's motion is granted in part and denied in part.

---

[1] All subsequent references to a Rule is a reference to a Federal Rule of Civil Procedure.

[2] MS Amlin, was improperly pled as Lloyd's Syndicate Mitsui 3210.

I.  **BACKGROUND**

This action arises out of Valeant's purchase of liability insurance policies from Defendants.[3] (*See generally* Ex. A ("Compl."), ECF No 1-1.) Valeant obtained a series of insurance policies providing $150 million in coverage for the period September 28, 2013 to September 28, 2014 for claims made against Valeant and its officers and directors (the "2013-2014 Program").[4] (*Id.* ¶¶ 3-4.) Valeant also obtained a similar series of policies providing $175 million in coverage for the period September 28, 2015 to September 28, 2016 (the "2015-2016 Program"). (*Id.*) AIG Insurance Company of Canada ("AIG") issued the primary policy under the 2013-2014 Program, providing a coverage limit of $10 million with a $5 million deductible (the "AIG Policy"). (*Id.* ¶ 37.) Only the 2013-2014 Program is at issue in the instant motions.

As part of the 2013-2014 Program, pursuant to Policy No. LIA105678, as the eleventh-tier insurer, Temple is to provide Valeant $15 million in coverage after Valeant has exhausted $130 million in coverage under the primary AIG policy (the "Temple Policy"). (*Id.* ¶ 38.) MS Amlin, as the twelfth-tier insurer, pursuant to Policy No. QB146013, is to provide Valeant $10 million in coverage after Valeant has exhausted $145 million in coverage under the primary AIG policy and the first eleven tiers (the "MS Amlin Policy"). (*Id.*) The excess policies in the 2013-2014 Program

---

[3] Defendants are the tiered insurers, the first being the primary policy insurer: AIG Insurance Company of Canada ("AIG"); ACE INA Insurance Company; Allianz Global Risks US Insurance Company; Arch Insurance Canada Ltd.; Everest Insurance Company of Canada; Hartford Fire Insurance Company; Ironshore Canada Ltd.; Liberty International Underwriters, a division of Liberty Mutual Insurance Company; Liberty Mutual Insurance Company; Lloyd's Underwriters; Lloyd's Consortium 9885 (a/k/a Starr Financial Lines Consortium 9885); Lloyd's Syndicate ANV 1861; Lloyd's Syndicate AMA 1200; Lloyd's Syndicate ARGO 1200; Lloyd's Syndicate AWH 2232; Lloyd's Syndicate BRT 2987; Lloyd's Syndicate CVS 1919; Lloyd's Syndicate HCC 4141; Lloyd's Syndicate Mitsui 3210; Lloyd's Syndicate MIT 3210; Lloyd's Syndicate NAV 1221; Lloyd's Syndicate QBE 1886; Lloyd's Syndicate SJC 2003; Royal & Sun Alliance Insurance Company of Canada; Temple; and XL Insurance Company Se (collectively, "Defendants"). (*See generally* Compl. at 1.)

[4] The Court refers to the insurers whose policies are included in the 2013-2014 Program as the "2013-2014 Insurers."

2

provide that, except where they provide otherwise, the excess insurers were bound to the "same insuring clauses, definitions, terms and conditions, exclusions, cancellation provisions and all other provisions of the" AIG Policy. (*Id.* ¶ 39.) The primary policy issued by AIG contains a "Conformance to Law" clause declaring that the policy would conform to the governing laws in the Canadian province of Quebec. (*Id.* ¶ 42.) The MS Amlin Policy, the Temple Policy, and the other excess policies each contain a choice of law clause that provides:

> It is understood and agreed by both the Insured and Underwriter(s) that the governing law and any dispute concerning the interpretation of the policy shall be governed by the law of the province in Canada in which this policy is issued.

(*Id.* ¶ 43.) The policies comprising the 2013-2014 Program were issued in Quebec. (*Id.*)

The AIG Policy, *inter alia*, obligates AIG to "pay the **Loss** of any **Organization**: . . . arising from any **Securities Claim** . . . made against any such **Organization** for any wrongful act of such **Organization**."[5] (Ex. B at 1 ("AIG Policy"), ECF No 155-4.) A "loss" includes "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs, Crisis Loss, Derivative Investigation Costs, Liberty Protection Costs** and **Pre-Claim Inquiry Costs** . . . ." (*Id.* at 22.) Valeant and certain subsidiaries are included in the definition of an "Organization." (*Id.* at 23.) The AIG Policy defines "Defense Costs" as "reasonable and necessary fees, costs and expenses consented to by the **Insurer** . . . resulting solely from: . . . the investigation, adjustment, defence and/or appeal of a **Claim** against an **Insured** . . . ." (*Id.* at 18.) Pursuant to the AIG Policy, Valeant "shall defend and contest any claim made against [it,]" and AIG "does not assume any duty to defend or investigate." (*Id.* at 8.) The AIG Policy contains a "Conformance to Law" clause that provides:

> Coverage under this policy shall not be provided to the extent prohibited by any law. Where this policy is legally required to be interpreted in accordance with the law of the Province of Quebec: . . . The policy provision shall be deemed to be

---

[5] The AIG Policy identifies defined terms in bold.

3

amended to comply with the applicable mandatory provision of the Quebec Civil Code, but only to the extent necessary to comply with such mandatory provisions of the Quebec Civil Code and only to the extent that such mandatory provisions are contrary to the existing terms of the policy.

(*Id.* at 16.)

On December 16, 2014, "[Valeant] and Valeant's former CEO Michael Pearson [("Pearson")] were named as defendants in a class action lawsuit brought by former shareholders of Allergan[, Inc.]" (the "Allergan Action"). (Compl. ¶ 72.) Originally filed in the United States District Court Central District of California as *Anthony Basile, et al. v. Valeant Pharmaceuticals, International Inc., et al.*, No. 2:14-cv-02004 (C.D. Ca.), the class action was consolidated after appointment of representative plaintiffs in *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 8:14-cv-2004 (C.D. Ca.). (*Id.*) On June 28, 2017, a related class action, *Timber Hill LLC individually and on behalf of others similarly situated v. Pershing Square Capital Management, LP, et al.*, No. 17-4776 (C.D. Cal.), was filed against Valeant and Pearson. (*Id.*) Collectively, these suits comprise the "2013-2014 Claims". (*Id.*)

Valeant timely provided the 2013-2014 Insurers notice of the 2013-2014 Claims. (*Id.* ¶ 78.) Valeant has incurred substantial defense costs associated with defending the 2013-2014 Claims. (*Id.* ¶ 79.) The 2013-2014 Insurers denied Valeant coverage for the 2013-2014 Claims and associated defense costs. (*Id.* ¶¶ 81, 84.)

On December 7, 2017, Valeant filed the instant action in the Superior Court of New Jersey, Somerset County, Law Division. (Not. of Removal ¶ 1, ECF No. 1.) In Count One, Valeant seeks a declaratory judgment that:

> (1) The [2013-2014] Insurers are required to pay the costs Plaintiffs have incurred, and continue to incur, in defending against the [2013-2014 Claims] and (2) either AIG as the Primary Insurer or all of the [2013-2014 Insurers] on a several basis are required to pay the costs Plaintiffs have incurred and continue to incur, in defending against the [2013-2014 Claims] without reducing the limits available under the

[2013-2014 Program], together with whatever further relief the Court deems just and proper.

(Compl. ¶ 95.) In Count Five, Valeant seeks a declaratory judgment that the 2013-2014 Claims are covered under the 2013-2014 Program. (*Id.* ¶ 120.) Count Seven is a breach of contract claim against all insurers in the 2013-2014 Program. (*Id.* ¶¶ 126-29.)

On January 12, 2018, Defendant Hartford Fire Insurance Company removed the matter to this Court. (Not. of Removal ¶¶ 5-6.) On December 14, 2018, Temple filed the instant motion seeking dismissal of Counts One, Five, and Seven for lack of subject matter jurisdiction under Rule 12(b)(1). (Temple's Mot. to Dismiss 1, ECF No. 155.) On December 28, 2018, MS Amlin joined Temple's Motion to Dismiss arguing that "[t]he arguments and legal authority set forth in the Argument Section of Temple's Memorandum . . . apply with equal force with respect to MS Amlin[,]" and requested that the Court dismiss Counts One, Five, and Seven as to MS Amlin.[6] (MS Amlin's Mot. to Dismiss 5, ECF No. 161.) Valeant opposed Temple and MS Amlin's motions (Valeant's Opp'n Br., ECF No. 164), and Temple replied (Temple's Reply Br., ECF No. 166).

Subsequent to Valeant filing the complaint initiating this action, Valeant settled the 2013-2014 Claims for $96.25 million (the "Allergan Settlement Payment"). (Valeant's Opp'n Br. 8.) Valeant avers that it "incurred more than $20 million in defense costs for the" 2013-2014 Claims. (*Id.* at 2.) Valeant and Temple agree that Valeant cannot recover from Temple for the Allergan Settlement Payment because the amount of the settlement falls below Temple's coverage limit. (See Temple's Mov. Br. 11, ECF No. 155-1 ("Without exhaustion of the $130 million limits in Underlying Insurance—whether paid by the underlying insurers or by the insured—Temple simply has no obligation to provide coverage under its policy under any circumstances.");

---

[6] Because MS Amlin relies on Temple's arguments, the Court finds that the same conclusions it reaches as to Temple apply with equal force to MS Amlin. The Court, accordingly, does not conduct a separate analysis regarding MS Amlin.

5

Valeant's Opp'n Br. 14 ("Plaintiffs concede (and are happy to so stipulate) that they cannot recover for the Allergan Settlement Payment from [Temple and MS Amlin].").) The Court, accordingly, dismisses Count Five with prejudice as to Temple and MS Amlin.

## II. THE PARTIES' POSITIONS

The parties' primary dispute is whether there is a case or controversy within the meaning of Article III of the U.S. Constitution such that the Court has subject matter jurisdiction over Counts One and Seven. Temple's position is essentially: because it would be impossible to impose liability in Temple's tier of coverage for the Allergan Settlement Payment there is no case or controversy between Temple and Valeant and any decision by the Court relating to Temple's liability under the 2013-2014 Program would be advisory and unconstitutional. (Temple's Mov. Br. at 7-9, 11.) Temple insists that "federal courts across the country agree that claims asserted by or against an excess insurer do not present an actual case or controversy where there is no reasonable possibility that the excess insurer's policy layer will be reached." (*Id.* at 9 (citing *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 676 (2d Cir. 1996); *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500 (9th Cir. 1994); *UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co.*, 647 A.2d 182 (N.J. Super. Ct. Law Div. 1994)).)

In opposition, Valeant argues that "[w]hether [Temple and MS Amlin] are obligated to pay a pro rata portion of Valeant's defense costs for the Allergan Actions is plainly a justiciable case or controversy[,]" and Temple has "ignore[d] the actual case or controversy that [Valeant] pled with respect to coverage for *the defense costs* [Valeant] incurred" related to the 2013-2014 Claims. (Valeant's Opp'n Br. 4, 11 (emphasis in original).) Valeant insists that if Quebec law applies, Valeant is "entitled to payment of all of its defense costs outside of and without reducing the limits of its insurance policies." (*Id.* at 11 (citing Civil Code of Québec, S.Q. 1991, c 64, art 2500 (Can.).)

6

Specifically, Valeant argues that Articles 2500 and 2503 of Quebec's Civil Code[7] "override[] any conflicting contractual provision[,]" and "although Quebec law is crystal clear that insureds are entitled to payment of their defense costs without reducing the limits of their policies, it has not been finally decided which insurers are responsible for covering those defense costs." (*Id.* at 11-12.)

Valeant argues that it sufficiently pled that the policies in the 2013-2014 Program are governed by Quebec law and that it pled in the alternative in recognition of undecided Quebec law. (*Id.*) Without citation, Valeant argues that "[s]ome Quebec courts have held that the primary insurer . . . is responsible for covering all of the insured's defense costs unless and until the primary insurer has exhausted its limits paying covered settlement or judgment[.]" (*Id.* at 12.) Valeant insists that "other Canadian courts have held that, particularly where the underlying claim seeks damages in excess of both the primary and excess insurer's policy limits . . . equity requires that the excess carriers should share in covering the costs of defending the insured on a pro rata basis." (*Id.* (citing *Broadhurst & Ball v. Amer. Home Assurance Co.* (1990), 1 O.R. 3d 225 (Can. Ont. C.A.); *Am. Home Assurance Co. v. Temple Ins. Co.* (2009), 94 O.R. 3d 534 (Can. Ont. Sup. Ct. J.)).)

Valeant asserts that to resolve the controversy regarding defense costs, the Court will have to "(1) make a substantive, legal and factual determination regarding whether the [policies in the 2013-2014 Program] are governed by Quebec law; and (2) make a substantive legal determination as to whether Quebec law (or a different law) requires AIG Canada to pay all of [Valeant's] defense

---

[7] Article 2500 provides, "The proceeds of the insurance are applied exclusively to the payment of injured third persons." Civil Code of Québec, S.Q. 1991, c 64, art 2500 (Can.). Article 2503 provides, "Legal costs and expenses resulting from actions against the insured, including those of the defence, and interest on the proceeds of the insurance are borne by the insurer over and above the proceeds of the insurance." Civil Code of Québec, S.Q. 1991, c 64, art 2503 (Can.).

7

costs or instead requires [Temple and MS Amlin] to share in making such payments pro rata." (*Id.* at 13.) Valeant cautions that making such determinations at the motion to dismiss stage is "wholly inappropriate." (*Id.*)

In reply, Temple argues that regardless of whether New Jersey, Ontario, or Quebec law is applied, "Temple has no obligation to pay *any* portion of [Valeant's] defense costs in connection with the [2013-2014 claims] in the absence of any potential coverage obligation." (Temple's Reply Br. 4, ECF No. 166 (emphasis in original).) Temple discusses a number of American and Canadian opinions in support of this proposition. (*See id.* at 4-6, (citing *Firemen's Ins. Co. of Newark v. Nat'l Union Fire Ins. Co.*, 904 A.2d 754, 763 (N.J. Super. Ct. App. Div. 2006); *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 443 (5th Cir. 2003); *P.L. Kanter Agency, Inc. v. Cont'l Cas. Co.*, 541 F.2d 519, 523 (6th Cir. 1976); *Metzger v. Country Mut. Ins. Co.*, 986 N.E.2d 756, 761 (Ill. App. Ct. 2013); *Olympic Ins. Co. v. Emp'rs Surplus Lines Ins. Co.*, 178 Cal. Rptr. 908, 912 (1981); *Broadhurst & Ball v. Amer. Home Assurance Co.* (1990), 1 O.R. 3d 225 (Can. Ont. C.A.); *Am. Home Assurance Co. v. Temple Ins. Co.* (2009), 94 O.R. 3d 534 (Can. Ont. Sup. Ct. J.); *Allstate du Canada c. Assurance Royale du Canada* (1994) R.J.Q. 2045, aff'd (1999) R.J.Q. 2827 (QCCA).) Temple avers that the only relevant issue is whether Valeant "may maintain a coverage action against an excess insurer when the underlying litigation has been definitively settled for an amount far below the excess insurer's policy layer[,]" and the answer to this question is that Valeant "may not" maintain such a suit." (*Id.* at 8.)

### III. LEGAL STANDARD

Because federal courts are courts of limited jurisdiction, the party seeking to invoke the Court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim)

8

or factually (based on the sufficiency of a jurisdictional fact). *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). On a facial attack, the Court considers only the allegations of the complaint and documents referenced therein, construing them in the light most favorable to the plaintiff. *Pearson v. Chugach Gvt. Svcs. Inc.*, 669 F. Supp. 2d 467, 469-70 (D. Del. 2009). On a factual attack, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Article III of the United States Constitution confines the scope of federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. art. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citations and alterations omitted)).

> The existence of a case or controversy, . . . requires (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.

*Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007) (quotation marks and citations omitted). Federal courts, as courts of limited jurisdiction, presume a lack of jurisdiction. *Kokkonen*, 511 U.S. at 377. "Under [Rule] 12(h)(3), '[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'" *Chin v. Xerox Corp.*, No. 11-3069, 2012 WL 6027169, at *4 (D.N.J. Dec. 4, 2012) (second alteration in original) (quoting Fed. R. Civ. P. 12(h)(3)).

The federal Declaratory Judgment Act[8] (the "DJA") provides:

> In a case of *actual controversy* within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added). When considering whether there is an actual controversy under the DJA, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 622 F. App'x 169, 174 (3d Cir. 2015) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "This is not a bright-line test." *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 609 (D. Del. 2009). "The difference between an abstract question and a 'controversy' contemplated by the [DJA] is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Md. Cas. Co.*, 312 U.S. at 273. The party seeking the declaratory judgment bears the burden of proving, "by a preponderance of the evidence, that there is an actual controversy between the parties." *Benihana of Tokyo, Inc.*, 622 F. App'x at 174. "[W]hen the merits and jurisdiction are closely related, a court may determine subject matter jurisdiction

---

[8] "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The federal Declaratory Judgment Act ("DJA") and the New Jersey Declaratory Judgment Act are procedural in nature. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) ("The operation of the [DJA] is procedural only."). Accordingly, when a plaintiff seeks a declaratory judgment under state law and the action is removed to federal court, as occurred in the instant mater, the matter "is treated as though it had been filed under the [DJA]." *BCB Bancorp, Inc. v. Progressive Cas. Ins. Co.*, No. 13 1261, 2013 WL 8559731, at *3 (D.N.J. Oct. 8, 2013) (citation omitted); *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 n.4 (3d Cir. 2017) ("[W]e agree with the District Court that because federal courts apply federal procedural law in federal actions, the DJA and not state declaratory judgment law supplies the procedural law that governs this case. This is notwithstanding the fact that the relief sought in the removed Declaratory Action was requested under the Pennsylvania Declaratory Judgments Act . . . .").

without reaching the merits, so long as the court 'demand[s] less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Gould Elecs. Inc.*, 220 F.3d at 178 (second alteration in original) (quoting *Mortensen*, 549 F.2d at 891).

IV. **ANALYSIS**

The core proposition of Temple's motion is that there are no facts or legal theories from which the Court could conclude that Temple has an obligation to pay Valeant's defense costs related to the 2013-2014 Claims. The Court, accordingly, construes Temple's motion as a factual challenge. Because Temple advances a factual challenge, no presumption of truth attaches to Valeant's factual allegations and Valeant bears the burden of establishing that there is a case or controversy. *See Mortensen*, 549 F.2d at 891. Moreover, the Court may consider evidence outside of the pleadings.[9] *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008), as amended (Sept. 29, 2008) ("The District Court [is] permitted to make factual findings, beyond the pleadings, that [are] decisive to determining jurisdiction.").

The Court finds that, pursuant to the DJA, Valeant has established that there is an "actual controversy" between it and Temple regarding Temple's liability, if any, for defense costs.[10] The Court, similarly, finds that there is a controversy between the parties regarding Valeant's breach of contract claim. The Court addresses each issue in turn.

---

[9] The Court has reviewed and considered the Declarations of John Vukelj and Christopher T. Conrad and the exhibits attached thereto. (Decl. of John Vukelj, ECF Nos. 155-2 to 155-16; Decl. of Christopher T. Conrad, ECF Nos. 161-1 to 161-3.)

[10] There can be no reasonable dispute over whether Valeant and Temple have "adverse legal interests" as Valeant is seeking coverage under the Temple Policy for defense costs and Temple is denying it has any liability for said costs. Moreover, the evidence before the Court establishes that the 2013-2014 claims have been resolved between Valeant and the plaintiffs in those actions and the Court infers that the defense costs for the 2013-2014 claims have been paid by Valeant or are owed by Valeant. Thus, the issues are immediate and real.

11

In the Complaint, Valeant averred that the policies in the 2013-2014 Program are governed by Quebec law and that Articles 2500 and 2503 require the 2013-2014 Insurers to pay Valeant's defense costs without a reduction in the coverage limits of the 2013-2014 Program. (Compl. ¶¶ 91-95.) Temple has not provided the Court binding or persuasive authority refuting Valeant's argument that Articles 2500 and 2503 could be interpreted to require that Temple pay certain defense costs. For purposes of considering the instant motion, a reading of both provisions lends credence to Valeant's interpretation. Valeant's interpretation of Articles 2500 and 2503, however, leads to a curious result. Specifically, Articles 2500 and 2503 may be in conflict with the definition of "Loss" in the AIG Policy because the definition of loss includes defense costs. Put another way, by treating Valeant's defense costs for the 2013-2014 Claims as a Loss under the 2013-2014 Program, the 2013-2014 Program may run afoul of Articles 2500 and 2503 by reducing the amount of available coverage under the 2013-2014 Program. Given the fact that the AIG Policy contains a conformance clause requiring the policy to be interpreted in conformance with Quebec law, and the other policies in the 2013-2014 Program ostensibly incorporate the conformance clause, the impact, if any, of Articles 2500 and 2503 is a significant issue in controversy between the parties and at the heart of Valeant's claims.

Both parties cite Canadian cases that the Court finds inapposite. Valeant cites *Broadhurst & Ball* (1990) 1 O.R. 3d 225 (Can. Ont. C.A.) and *American Home Assurance Co.*, (2009) 94 O.R. 3d 534 (Can. Ont. Sup. Ct. J.), in support of the proposition that an excess insurer can be liable for a pro rata share of defense costs. (Valeant's Opp'n Br. 12.) Temple opposes this statement of the law, claiming that the same cases stand for the "principle that an excess insurer has no obligation to share in defense costs where there is no possibility that the underlying insurance layers will be exhausted. (Temple's Reply Br. 5-6.) Temple also cites to *Allstate du Canada c. Assurance Royale du Canada* (1994) R.J.Q. 2045, *aff'd* (1999) R.J.Q. 2827 (QCCA), as "decisional law [that

is] even worse for [Valeant]." (*Id.* at 6 n.4.) In each of these cases, the insurer had a duty to defend the insured party. Here, in contrast, the duty to defend is expressly excluded from the policies in the 2013-2014 Program. Neither Valeant nor Temple has addressed how an insurance policy that expressly excludes the duty to defend would be interpreted in light of the Canadian precedent proffered to the Court. At best, the cases the parties cite reveal that the Canadian courts employ a highly fact-specific approach that this Court finds more appropriately applied at summary judgment.

Ultimately, Temple's arguments reduce to the proposition that there is a legal certainty that Temple will never be required to pay for the defense costs associated with the 2013-2014 Claims. While this position may ultimately prove to be true, the Court finds that Valeant has sufficiently pled a controversy requiring a declaratory judgment on the issue.

Turning to Count Seven, breach of contract, Temple's argument in support of dismissal fails. Temple's argument that "[b]ecause [it] could never be responsible for coverage of the [2013-2014 Claims], there is no 'case' or 'controversy' between [Valeant] and Temple as to those claims, and Temple could not have breached a non-existent obligation to provide coverage for those claims[,]" ignores the actual claim Valeant brings and the factual timeline of the matter. (Temple's Moving Br. 7.) Valeant avers that it provided Temple, and the other insurers, timely notice of the 2013-2014 Claims and that the insurers denied coverage of those claims. (Compl. ¶ 78.) Valeant asserts that 2013-2014 Insurers breached their respective contracts by (1) "wrongfully denying coverage for the [2013-2014 Claims]," (2) "failing to pay Defense Costs for the [2013-2014 Claims]," and (3) "refusing to pay defense costs outside of the limits of the" 2013-2014 Program. (*Id.* ¶ 129.) Thus, Valeant seeks damages for an alleged breach of the Temple Policy for Temple's initial denial of coverage for the 2013-2014 Claims. The fact that the Allergan Settlement Payment does not trigger Temple's tier of coverage does not moot the controversies

13

over whether Temple's initial denial of coverage was wrongful and whether Temple is liable for any damages flowing from that initial denial of coverage. The cases Temple cites do not suggest a different result because in each there is no indication that the plaintiff asserted a breach of contract claim or that the Court was dismissing the breach of contract claim on the basis that there was no case or controversy as to the same claim. (Temple's Moving Br. 9.) The Court, accordingly, finds that there is a real controversy between Valeant and Temple, two adverse parties, regarding whether Temple breached the Temple Policy in the manner Valeant identified in the Complaint.

V.  **CONCLUSION**

For the foregoing reasons, Temple's Partial Motion to Dismiss Counts One and Seven of Valeant's Complaint, joined by MS Amlin, is denied. Temple's Partial Motion to Dismiss Count Five is granted. Count Five is dismissed with prejudice as to Temple and MS Amlin. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated:** April 12, 2019