HON. DOUGLAS K. WOLFSON, J.S.C. (RETIRED)
SPECIAL MASTER
C/O EMILY A. KALLER, ESQ.
GREENBAUM, ROWE, SMITH & DAVIS LLP
99 Wood Avenue South
Iselin, New Jersey 08830
(732) 476-3352

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> AIG INSURANCE COMPANY OF CANADA, et al., <br><br> Defendants. | CIV. ACTION NO. 3:18-cv-493 (MAS)(LHG) <br><br> **CIVIL ACTION** |

## OPINION OF THE SPECIAL MASTER
## ON THE MOTION TO COMPEL DRAFTING HISTORIES

Wolfson, D., (J.S.C., Ret'd.), Special Discovery Master:

### <u>Background</u>

This opinion addresses certain discovery disputes that have arisen between Plaintiffs, Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International and

AGMS, Inc. (collectively "Valeant"), and Defendants,[1] a number of primary and excess insurance carriers alleging claims for breach of contract and declaratory judgment under two towers of Directors & Officers insurance policies issued for periods 2013-2014 and 2015-2016.

Valeant's Complaint alleges it sustained covered losses under the 2013-2014 policies in connection with litigation related to Valeant's attempted takeover of Allergan, Inc. through an exchange of Valeant stock for Allergan, Inc. stock (the "Allergan Actions") and under the 2015-2016 policies in connection with litigation and government investigations relating to a drop in Valeant's stock price in 2015 (the "Stock Drop Actions"). A material issue in dispute is the law that governs these disputes.

---

[1] Defendants are AIG Insurance Company of Canada, ACE INA Insurance Company, Allianz Global Risks US Insurance Company, Arch Insurance Canada Ltd., Everest Insurance Company of Canada, Hartford Fire Insurance Company, Ironshore Canada Ltd., Liberty International Underwriters, a division of Liberty Mutual Insurance Company, Liberty Mutual Insurance Company, Lloyd's Underwriters, Lloyd's Consortium 9885 (a/k/a Starr Financial Lines Consortium 9885), Lloyd's Syndicate ANV 1861, Lloyd's Syndicate AMA 1200; Lloyd's Syndicate Argo 1200; Lloyd's Syndicate CVS 1919; Lloyd's Syndicate Mitsui 3210; Lloyd's Syndicate MIT 3210; Lloyd's Syndicate QBE 1886; Royal & Sun Alliance Insurance Company of Canada; Lloyd's Syndicate AWH 2232; Lloyd's Syndicate SJC 2003; Temple Insurance Company; Lloyd's Syndicate BRT 2987; Lloyd's Syndicate HCC 4141; Lloyd's Syndicate NAV 1221; XL Insurance Company SE.

1. **Defendants' Production of Drafting History for Key Provisions of the Insurance Policies**

Plaintiffs seek production from Defendants of the drafting history of specific policy provisions, including:

(1) the history of the relevant standardized insurance policy form language used in those provisions of the 2013-2014 and 2015-2016 Policies;

(2) documents and communications relating to that drafting history for both the primary and excess insurance policies; and

(3) identification of relevant custodians (the "Drafting History Documents"). (See Docket Entry No. 159 at 2).

Plaintiffs assert that these documents are responsive to their original document requests,[2] and that they have significantly narrowed their requests, seeking only those Drafting History Documents relating to specific policy provisions that are essential to the full and fair consideration of the issues in dispute. (See Docket Entry No. 159 at 2). The specific policy provisions for which Plaintiffs seek Drafting History Documents are:

---

[2] Plaintiffs assert the Drafting History Documents are responsive to their First Set of Requests for Production of Documents to AIG Insurance Company of Canada ("AIG Requests") Nos. 3, 4, 15, 17, 18, 19, 20, 21, 22, 23. (See Docket Entry No. 159 at 2; Docket Entry No. 159-1).

a) The definition of the term "Securities Claim" used in the

13-14 Policies which provides as follows:

(1) [A]lleging a violation of any law, rule or regulation whether statutory or common law, (including but not limited to the purchase or sale or offer of solicitation of an offer to purchase or sell securities) which is:

(a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer to purchase or sell any securities of an Organization; or

(b) brought by a security holder or purchaser or seller of securities of an Organization with respect to such security holder's, purchaser's or seller's interest in securities of such Organization . . .

[Complaint at ¶67, Policy at Endorsement 21] (the

"Securities Claim Provisions")

and

b) Policy provisions identified by Plaintiffs as relevant to

the choice of law determination, including:

1) The selection of Valeant's address on the Policies' declaration page:

2) The "Conformance to Law" provision;

3) The "Privacy Principles" provision:

4) The "Service of Suit" provision of the AIF Defendants issued excess policy: and

5) The "Intent for AIF to Bind" provision of the AIF Defendants issued excess policy. (the "Choice-of-Law Provisions")

Plaintiffs assert that the Drafting History Documents are relevant to the determination of two of the most critical issues to be decided in this matter:

a) Whether the litigation related to Valeant's attempted takeover of Allergan, Inc. falls within the definition of a covered "Securities Claim" under the 2013-2014 Policies; and

b) Whether Quebec law controls the 2013-2014 and 2015-2016 Policies, thereby triggering an obligation on the part of Defendants under Quebec Civil Code to pay Valeant's defense costs in connection with litigation and government investigations relating to the "Stock Drop Actions.

To facilitate collection of these documents, Plaintiffs have proposed specific search terms designed to capture the Drafting History Documents in a letter from John E. Failla to Frank P. Arleo dated October 16, 2018 at 5-7, Subsections A-C. (See Attachment B at Docket Entry No. 159-2, dated December 12, 2018)

*Plaintiffs' Position:*

Plaintiffs seek production of the Drafting History Documents asserting they are entitled to explore the circumstances of the agreement related to the provisions that are central to the issues in dispute. Plaintiffs maintain that these documents are relevant and admissible to assist the Court in determining the parties' intent and to aid the Court in the interpretation of the integrated agreement. For example, Plaintiffs assert that it is a matter of public record that Defendant AIG Insurance Company of Canada ("AIG Canada") has repeatedly broadened its definition of "Securities Claim" and that the Drafting History Documents related to those revisions will shed light on the intended scope of coverage.[3] Similarly, Plaintiffs assert that Drafting History Documents for the Conformity to Law provision will likewise provide needed clarity on the hotly disputed choice of law issues, and note that courts routinely consider the surrounding circumstances of a contract when engaging in contract interpretation.

---

[3] Plaintiffs note that the Securities Claim provision in Defendant AIG Canada's policy has only been analyzed at length by one court which found that AIG Canada's revisions to that provision over time indicative of AIG Canada's intent to broaden coverage. *Verizon Communications Inc. v. Illinois National Insurance Co.*, 2017 WL 1149118, at *11 (Del. Super. Ct. March 2, 2017).

Plaintiffs refute Defendants' assertion that drafting histories are inadmissible extrinsic evidence and that a different standard is applicable when construing insurance contracts. Plaintiffs point out that drafting histories have often been held either admissible or discoverable in the insurance context, and note further that even if the Drafting History Documents are ultimately deemed inadmissible, admissibility is not the standard for determining whether documents are discoverable.

While Plaintiffs and Defendants both currently contend that the Policy language is not ambiguous, each side has, ironically, ascribed a different meaning to this supposedly 'unambiguous' language. Nonetheless, Plaintiffs argue that even if such documents are only admissible <u>after</u> finding that the contract language is ambiguous,[4] no court has yet reached such a conclusion as to these policies, nor will such an adjudication likely be made in this case in advance of the

---

[4] Defendants make much of the fact that Plaintiffs have not expressly asserted that the key policy provisions are ambiguous. However, while Plaintiffs agree that neither party <u>currently</u> asserts the provisions are ambiguous, they have also noted that this position may well change following the discovery of the requested documents. (Docket Entry No. 159, at 6).

District Court's decision on summary judgment.[5]   Not only do plaintiffs posit that such a delay is both unnecessary and inefficient, but, in this case, they surmise that the drafting history itself may arguably bear upon whether an ambiguity is, in fact, determined to exist.

Plaintiffs also assert that under either New Jersey or Quebec law, extrinsic evidence is regularly considered by courts attempting to glean the meaning of an agreement, (Docket Entry No. 159, at 3-4), and that the process proposed by Defendants is not only contrary to law, but it is unworkable in practice as well.

And, finally, Plaintiffs maintain that the excess insurer Defendants should not be excused from producing Drafting

---

[5] Defendants argued at length during the hearing and again in their supplemental submission of October 15, 2019, that before compelling the production of extrinsic evidence, (such as the Drafting History Documents sought by Plaintiffs), I <u>must</u> find that the contract provisions in question are ambiguous.   I disagree.   The controlling case law does not require an adjudication of "ambiguity" before discovery of Drafting History Documents can be obtained.   Despite Defendants' assertions to the contrary, such documents will be deemed **not relevant** only if the language at issue has previously been **adjudicated** to be **unambiguous**.   As previously indicated, Defendants' contention that I must decide that issue at this stage of the proceedings is both flawed and premature and is, in any event, within the exclusive province of the District Court.   *See, e.g., Nestle Foods Corporation v. Aetna Casualty and Surety Co.*, 135 *F.R.D.* 101, 105 (D.N.J. 1990).   At the appropriate time following the completion of discovery, the District Court will either decide that the language is ambiguous or not.   *See, Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 *F.*2d 132, 135 (3d Cir. 199)); *Chubb Customs Insurance Co. v. Prudential Insurance Co. of America*, 195 *N.J.* 231, 238 (2008).

History Documents simply because they adopted a policy of following the primary form,[6] since it is highly improbable that the excess insurers would have issued millions of dollars in policies without first undertaking, themselves, a full analysis of the scope of the coverage.[7]

### Defendants' Position:

Defendants assert that "unambiguous" polices should be interpreted by their plain language, without resort to extrinsic evidence, which should only be admissible in exceptional circumstances, and as such, the Drafting History Documents must be deemed inadmissible pursuant to the parol evidence rule. As the Defendants point out, since Plaintiffs do not themselves claim that the policy provisions are ambiguous, (Docket Entry No. 159 at 9), production of Drafting History Documents should be disallowed.

Nor will the Drafting History Documents assist in the interpretation of the policies, since, Defendants argue, their meanings will be determined by the "objective intent" as gleaned from the contract, and not from the "subjective"

---

[6] In their written submissions, Plaintiffs indicated that one excess insurer had already investigated the existence of Drafting History Documents and made an affirmative representation that no such documents exist. Similar representations were made by six additional excess insurers during oral argument.

[7] Plaintiffs have offered to work with each Defendant individually with respect to the scope of Drafting History Documents to be produced. (Docket Entry No. 159 at 9)

intent of one party.   Inasmuch as Plaintiffs could not have been aware of the Drafting History Documents when their policies were issued, their position is that such documents can have no relevance to the parties' mutual intent.

Defendants also criticize Plaintiffs' remaining grounds for obtaining the Drafting History Documents, and assert that such documents may not be used to alter the interpretation of the unambiguous choice of law provision.   As the policy unequivocally states, "interpretation of this policy shall be governed by the law of the province in Canada in which this policy is issued," and the meaning of *where* a "policy is issued" cannot hinge on one party's subjective or unilateral understanding of a choice of law provision at a particular point in time.   (See Docket Entry No. 159 at 13.)

Nor is there a need for the excess insurer Defendants to produce Drafting History Documents for the excess policies, where, as here, most of them simply followed a policy "form" prepared by Valeant's insurance broker, Marsh Canada Limited. Others, such as Everest Insurance Company of Canada, have previously informed Valeant that they have searched for such documents and have reported that they do not have a repository of historical documents relating to the drafting of Marsh's excess policy form or AIG Canada's policy.   (See Docket Entry No. 159 at 13.)

Finally, as to the drafting history of the policies' "Conformance to Law" provisions, Plaintiffs contend generally, that it will shed light on the choice-of-law determination. Predictably, the defendants disagree. The Conformance to Law provision provides as follows:

> Coverage under this policy shall not be provided to the extent prohibited by any law. Where this policy is legally required to be interpreted in accordance with the law of the Province of Quebec: . . .The policy provision shall be deemed to be amended to comply with the applicable mandatory provision of the Quebec Civil Code, but only to the extent necessary to comply with such mandatory provisions of the Quebec Civil Code and only to the extent that such mandatory provisions are contrary to the existing terms of the policy.

This provision of AIG Canada's Executive Edge policy (which according to Defendants) is offered throughout Canada and the world, is by its express terms, operative only _after_ a Court has determined that Quebec law controls law in a given case.

For the reasons that follow, this contention, as well as the others raised by the parties, shall be addressed below.

## DISPOSITION

I have carefully reviewed the submissions of the parties, conducted oral argument on October 11, 2019 and reviewed, post-argument, the Memoranda Opinions of the Hon. Michael A. Shipp, U.S.D.J. and related materials submitted by the parties

as they relate to the Conformance With Law provision of the Policies.[8]   While both Plaintiffs and Defendants have put forth serious and cogent arguments, I am satisfied that the relevant case law compels the production of all but one of the Drafting History Documents being sought.

The conduct of discovery is governed by Federal Rule of Civil Procedure 26(b)(1)-(2) which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

While discovery is not limitless, Rule 26(b)(1) has been construed liberally. *Tele-Radio Systems Ltd. v. DeForest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981).   When a dispute involves the interpretation of an integrated agreement, such as the Policies at the heart of the instant matter,

---

[8] In addition to the pre-argument submissions of the parties, I received, in violation of the Local Rules, a letter brief (dated October 15, 2019) from Paul R. Koepff, Esq. on behalf of Defendants.   Following leave granted by me, a responsive letter brief (dated October 17, 2019) was served by John E. Failla, Esq. on behalf of Plaintiffs.   As I had not expressly advised the parties that our proceedings would be conducted under the Federal Rules of Civil Procedure and the New Jersey Local Civil Rules, I reviewed and considered both submissions.   Going forward, absent leave being granted, additional briefing filed in violation of these Rules will not be considered.

-12-

evidence of the evolution of the parties' agreement and the circumstances under which it was negotiated or consummated is always admissible to aid in its interpretation, even when the agreement is unambiguous on its face. *Atlantic Northern Airlines v. Schwimmer*, 12 *N.J.* 293, 301 (1953). The New Jersey Supreme Court's guidance on contract interpretation is also instructive:

> [i]nterpretation is the process of giving meaning to the symbols of expression used by another. It is not the judicial interpretive province to give effect to some supposed unexpressed intention of the parties. The courts do not make contracts for the parties. *Temple v. Clinton Trust Co.*, 1 *N.J.* 219, 62 A.2d 690 (1948). **But the surrounding circumstances may make a 'meaning plain and clear when in the absence of such proof some other meaning may also have seemed plain and clear.'** Corbin on Contracts, section 542. . . . The construction of a written instrument 'to be adopted is the one which appears to be in accord with justice and common sense and the probable intention of the parties.

*Krosnowski v. Krosnowski*, 22 *N.J.* 376, 386-87 (1956)(emphasis added); *see also, Verizon Communications Inc. v. Illinois National Insurance Co.*, 2017 *WL* 1149118, at *11 (Del. Super. Ct. March 2, 2017)("Before making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation."). The law recognizes that the meaning of words will often depend on context, and what may appear unambiguous in the context that a

-13-

third-party may hypothesize, may be ambiguous when understood from the reference point of the parties themselves. *Heffron v. Adamar of New Jersey, Inc.*, 270 F. Supp. 2d 562, 571 (D.N.J. 2003).

"Before making a finding of whether a contract term is clear or ambiguous, the court must consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." *Armkel, LLC v. Pfizer Inc.*, Civil Action No. 02-4206, 2005 *WL* 2415982 at *8 (D.N.J. Sept. 29, 2005)(citing *Heffron v. Adamar of New Jersey, Inc.*, 270 F.Supp. 2d 562, 571 (D.N.J. 2003)). Such extrinsic evidence may include the structure of the contract, the bargaining history, and the parties' conduct that reflects their understanding of the contract's meaning. *Id.; see also, Nestle Foods Corporation v. Aetna Casualty and Surety Company*, 135 F.R.D. 101, 105 (D.N.J. November 13, 1990)(despite declining to determine issue of ambiguity during discovery of a coverage dispute, drafting histories ordered to be produced where issues of ambiguity, choice of law and applicability of *contra proferentum* had yet to be determined); *Dix v. Total Petrochemicals USA, Inc.*, No. CIV. 10-3196, 2011 *WL* 5513185, at *5 (D.N.J. Nov. 10, 2011)(holding drafting history of ERISA forms to be produced).

In *Nestle*, plaintiff sought production of, *inter alia*, drafting histories in connection with an "exclusion" of an insurance contract.   As in this case, Defendants resisted producing the drafting histories, asserting that such extrinsic evidence would be inadmissible unless the policies were held to be ambiguous.   Rejecting that reasoning, the Court ordered the drafting histories produced, explaining that:

> [i]n determining the relevancy of these documents, the Court need not rule on their admissibility for purposes of trial. Defendants' position that such extrinsic evidence would be inadmissible at trial is not the standard by which relevancy for discovery purposes is measured. There has been no ruling, nor will this Court now determine, if the policies in question are ambiguous. Consequently the admissibility of extrinsic evidence, and whether *contra proferentum* will apply, remain open issues, as does the decision on the applicable choice of law. These questions are premature and remain to be decided by the trial court. Nonetheless, defendants would preclude plaintiff from exploring materials relating to these issues. (Emphasis added).

*Id.* at 105.

Further clarifying its decision, the Court noted:

> "[i]n order for plaintiff to determine whether there is a claim for ambiguity, plaintiff must be allowed to explore the creation of the language and whether the intent of the drafter(s) is inconsistent with its application. Defendants' opposition begs the relevancy question; how can plaintiff be denied documents on grounds of inadmissibility before a court has ruled on the underlying issues?" (Emphasis added).

*Id.*

While the party resisting discovery – in this case, the defendants -- has the initial burden of going forward to explain and support its objections, *Tele-Radio Systems Ltd. v. De Forest Electronics*, 92 *F.R.D.* 371, 375 (D.N.J.1981), I am persuaded that they have satisfied this initial burden by asserting that drafting history constitutes extrinsic evidence, and, therefore, is inadmissible to vary the plain terms of a contract that neither party asserts is ambiguous. Consequently, the ultimate burden shifts back to the plaintiffs in this case to demonstrate that the information being sought is relevant. *Id.* In this regard, plaintiffs' contention that the drafting histories of policy provisions are both relevant and central to interpreting the term "Securities Claim" (as used in the 2013-2014 policy) or the choice of law determination, seem self-evident and certainly sufficient to meet the threshold showing required to justify their production.

Parties are routinely entitled to examine the full circumstances surrounding the parties' contract for purposes of contract interpretation. "Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement, . . . even when the contract on its face is free from ambiguity." *Atlantic Northern Airlines v. Schwimmer*, 12 *N.J.* 293, 301 (1953); *see also, Capparelli v. Lopatin*, 459 *N.J.*

*Super.* 584, 604, 608 (App. Div 2019)(extrinsic evidence admissible for contract interpretation, even if contract is unambiguous; *Matter of Trust of Nelson*, 454 N.J. Super. 151, 161 (App. Div. 2018)(same). "Even in the interpretation of an unambiguous contract, we may consider all of the relevant evidence that will assist in determining its intent and meaning." *Manahawkin Convalescent v. O'Neill*, 217 *N.J.* 99, 118 (2014); *see also, Seaport Inlet Marina, LLC v. Connell*, Civ. Action No. 17-cv-1908, 2017 *WL* 3981128 (D.N.J. September 11, 2017)(citing *Mylan Inc. v. SmithKline Beecham Corp.*, 723 *F.3d* 413, 419 (3d Cir. 2013))("Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. . . . even when the contract on its face is free from ambiguity."); *Black Mountain Equities, Inc. v. Pacific Gold Corp.*, Civ Action No. 12-cv-1285, 2012 *WL* 5986488, at 6-7 (D.N.J. Nov. 27, 2012)(citing *Conway v. 287 Corporate Ctr. Assocs.*, 187 *N.J.* 259 (2006))("Indeed, even when an agreement is integrated and seemingly clear, evidence of the circumstances is admissible in aid of interpretation.").[9]

---

[9] The law of Quebec is consistent in holding that extrinsic evidence is relevant to the interpretation of contract provisions. *See Sattva Capital Corp. v. Creston Moly Corp.*, [2014] 2 *S.C.R.* 633 at ¶¶47-50 (Can.); *but see, Ledco Consruction Ltd. v. Northbridge Indemnity Insurance Co.*, [2016] 2 *S.C.R.* 23 at ¶¶26-46 (Can.)(noting surrounding circumstances of standard form insurance contracts play less of a role in contract interpretation).

The bulk of the cases cited by defendants are not to the contrary, or are distinguishable inasmuch as they address:

(1) whether extrinsic evidence is admissible to vary the plain language of an unambiguous contract. *See, e.g.,* *Freightmaster USA, LLC v. Fedex Freight, Inc.,* 2016 WL 7476353 at *3 (D.N.J. 2016)(parol evidence cannot alter the plain terms of a factoring contract terms); *Teleki v. Talk Marketing Enterprises, Inc.,* 2012 WL 2283044 (N.J. Super. Ct. App. Div. 2012)(extrinsic evidence may not alter the terms of an unambiguous employment contract); *National Union Fire Ins. Co. of Pittsburgh, PA v. Zurich Insurance Co.,* 2011 WL 1103475 at *10 (N.J. Super. Ct. App. Div. 2011)(noting resort to extrinsic evidence was inappropriate to interpret an unambiguous insurance policy); or

(2) that drafting history is not admissible to vary the plain language of an endorsement that relieved an insurer from its obligation to cover claims. *Westchester Fire Ins. Co. v. Household Intern., Inc.,* 167 Fed. Appx. 895, 899 (3d Cir. 2006); *see also, Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Company,* 817 F. Supp. 1136, 1144 (D.N.J. 1993) (policy's drafting *history irrelevant where policy language is clear and unambiguous*); *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016)(when the language of a contract*

is plain, the language alone must determine the agreement's interpretation).

By way of contrast, very few cases actually hold that drafting histories are not "*discoverable*." Compare, e.g., *Arena v. RiverSource Life Insurance Company*, Civ. Action No. 2:16-cv-5063, 2017 *WL* 6513056, (D.N.J. December 19, 2017)(where the Magistrate Judge did reject plaintiffs' request for production of drafting history – but did so only in the context of an exclusion clause that had been previously litigated and adjudicated unambiguous by numerous courts--including the Third Circuit and the United States Supreme Court).[10]  *Id.* at *5.  In the matter *sub judice*, whether or not the terms and provisions in issue will ultimately be deemed ambiguous has not previously been resolved through prior judicial adjudications.

Nor did *Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Company*, 817 *F. Supp.* 1136 (D.N.J. 1993), also relied upon by Defendants, deal with the *discoverability* of drafting histories.  That opinion merely addressed which party had the

---

[10] The Magistrate Judge in the Arena case also concluded that the cost and time burden of production of such documents was "disproportional" to the claims in the case. Id. at *6.  While the Court did not specify the amounts in controversy that led him to that conclusion, the number of parties involved in the instant matter and their respective resources (when compared to the damage claims being asserted in this case), lead to the inexorable conclusion that the production of the drafting history is not so disproportional that production should be denied on that basis.

burden of proof in a coverage dispute as to whether the policy in issue covered occurrences that were "expected or intended" by the insured.   *Id.* at 1144. In rejecting plaintiff's claim that the drafting history established that the "expected/intended" clause was historically treated as an exclusion, (thereby placing the burden of proof on the insurer), the Court deemed the policy's drafting history irrelevant in light of the prior judicial determination that the policy language was unambiguous. *Id.*   Thus, not only is this case distinguishable on this basis, but it is also evident that the plaintiff was already in possession of the drafting history of the expected/intended provision, thereby supporting, at least inferentially, the proposition that drafting histories are discoverable.

*Morton International, Inc. v. General Accident Insurance Co. of America*, 266 *N.J. Super.* 300, 346 (App. Div. 1991), also relied upon by Defendants, discussed whether it was error for a trial court to have denied plaintiff's request for drafting histories where:

> a number of these provisions were standard policy provisions drafted by the Insurance Service Office (ISO) which, the judge asserted, was information plaintiff had already received from another source. Furthermore there had been an indication that an individual from the ISO would be subpoenaed. As to those insurers who did not use the ISO policy form, the judge determined that he saw no relevance of this information to any of the issues in the case

and that obtaining that information, at least as to Liberty Mutual, would require an inordinate amount of time, "an onerous burden which outweighs whatever possible relevance there might be if any."

*Id.*

By way of contrast, there has been no indication that plaintiffs in this case can obtain the drafting histories from an alternative source. Nor do I agree that the burden of producing the drafting histories will outweigh whatever possible relevance there might be to any of the issues in this case.

Likewise, in *BOC Group, Inc. v. Federal Insurance Company*, 2007 *WL* 2162437, *12 (N.J. Super. Ct. App. Div. 2007), an unpublished case in which the trial court had determined that the exclusion provision in issue (coverage for allegations that ERISA claims were being systematically underpaid), was unambiguous, the Appellate Division declined to interfere with the trial court's refusal to order discovery of policy drafting history, but it did so only because it concurred with the trial judge's determination that the liability policy there in issue unambiguously excluded coverage. Consequently, that opinion is hardly dispositive, and provides little or no insight or assistance in resolving the question of whether discovery of the Drafting History Documents is appropriate especially where, as here, there has been no judicial decision regarding the ambiguity of the choice of law provisions, and where the parties

have themselves offered diametrically opposed interpretations of the same policy terms.

Nor does *Westchester Fire Insurance Co. v. Household Intern., Inc.*, 167 Fed. Appx. 895, 899 (3d Cir. 2006), compel a contrary result. Although Defendants here correctly assert that the "parol evidence rule" may ultimately preclude the Court from relying on drafting histories in its ultimate interpretation of a policy, it does not prohibit the "discovery" of such documents in the first instance.[11]

Defendants also oppose production of the Drafting History Documents because, they argue, the interpretation of a contract must be based on the mutual intent of the parties, and not the subjective intent of a single party. *See, e.g., Jay Dad Associates, LCC v. C&G Management Corp.*, 2009 WL 17940, *8 (N.J. Super. Ct. App. Div. 2009)("Contract construction also requires a court to give effect to the mutual intent of the parties"); *Illinois National Ins. Co., v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011)(citing *Pacifico v. Pacifico*, 190 N.J. 258 (2007))("a court must discern and implement the common intention of the parties"); *In re Nickels*

---

[11] Moreover, the context of *Westchester Fire* is also distinctly different, as the claims asserted there were for fraud and unjust enrichment, and the party seeking drafting histories had failed to establish the elements of its fraud claim, nor even alleged that it had made a specific request to purchase coverage of a particular scope or type at the time the policy was secured. *Id.* at 898-99.

*Midway Pier, LLC*, 2010 WL 2034542, *10 (B.N.J. 2010)(effectuating mutual intent of the parties by enforcing contract terms); *Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 448 (3d Cir. 2005)(district court erred in failing to give adequate consideration to the parties' mutual intent).

"Drafting History Documents," in contrast, reflect only the unilateral and subjective intent of the insurer, and, unless disclosed to the insured (prior to the execution of the contract for insurance), can have no relevance either to insured's understanding of policy terms or to the issues of justifiable reliance or estoppel. *See e.g.*, *Dome Petroleum Ltd. v. Employer's Mutual Liability Insurance Company of Wisconsin*, 767 F.2d 43, 47 (3d Cir. 1985)("courts look to the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction"); *Nevets C.M., Inc. v. Nissho Iwai American Corp.*, 726 F. Supp. 525, 534 (D.N.J. 1989)(a party's outward intent that a settlement agreement is binding cannot be undone by a subjective intent not to be bound).

Nevertheless, in this case the drafting history of these policies' provisions may well demonstrate that the Defendants' earlier interpretation of the meaning of a particular policy provision or term was different from that which is presently being asserted, and might, instead, be consistent with

-23-

Plaintiffs' understanding and interpretation. Because the Drafting History Documents for the Securities Claim and choice-of-law provisions are both key issues in dispute in this matter, they may well shed light on, and aid in the interpretation of, the Policies.

Accordingly, I am satisfied that the burden and expense of the proposed discovery is justified by the potential benefits of production for certain of the requested provisions.

I am not, however, persuaded that the drafting history of the "Conformance to Law" provision will aid in the choice of law determination for these Policies. While this provision does mention Quebec, it merely notes that once the applicable choice of law has been determined, (whatever it may be) the Policies will be conformed so as to be in compliance with that law. Thus, unlike any of the other terms for which Plaintiffs seek Drafting History Documents, this provision is not triggered until *after* the choice of law determination has been judicially resolved. Where the parties do not agree on which jurisdiction's law controls, this clause, by definition, can have no relevance, and does not come into play at all until after the choice-of-law determination is judicially determined. Once that decision is made, then, and only then, will the Policies be deemed amended to conform to the law of that jurisdiction. Accordingly, production of the Drafting History

of this provision cannot shed any light on the choice of law determination and as such, Drafting History Documents with respect to the Conformance to Law provision need not be produced.

## CONCLUSION AND ORDER

Based upon the foregoing, it is ORDERED that Defendants produce the Drafting History Documents, for the Specified Contract Terms sought by Plaintiffs as follows:

(1) Defendants shall produce non-privileged responsive Drafting History Documents, including the history of the relevant standardized policy form language used in the relevant 2013-2014 and 2015-2016 Policies for the Securities Claims Provision and the Choice-of-Law Provisions, with the exception of the Conformance to Law provision, and all non-privileged documents and communications relating to that drafting history, in their possession, custody or control and identify to Plaintiffs the relevant document custodian(s) of such documents within forty-five (45) days.

(2) To the extent that Defendants conduct a reasonable search and conclude they do not have responsive documents, they shall detail the steps and procedures undertaken to search for such documents and certify same to Plaintiffs within thirty (30) days.

-25-

(3) With respect to electronically stored information ("ESI"), Defendants shall either confirm that they will conduct a search pursuant to Plaintiffs' proposed search terms set forth in a letter from John E. Failla to Frank P. Arleo dated October 16, 2018 at 5-7, Subsections A-C. (See Attachment B at Docket Entry No. 159-2, dated December 12, 2018) or, advise Plaintiffs and the Special Master of specific objections to those search terms and submit, in writing, to plaintiffs and the Special Master their proposed alternate search terms within seven (7) days.

4) Any documents withheld on the basis of privilege shall be identified in a privilege log with sufficient detail to ascertain the basis for the claim of privilege, which log will be served within thirty (30) days of the production of the non-privileged documents.

Pursuant to the Order Appointing Special Master entered April 12, 2019 (Docket Entry No. 197) at ¶7, and Fed. R. Civ. P. 53(f)(1), (2), the parties may object to, or move to modify this decision within twenty-one (21) days of the day this order is entered on CM/ECF. Any party opposing such an application shall file a responsive brief within fourteen (14) days thereafter. The objecting or moving party may file a reply to any opposition brief within seven (7) days of the day such opposition was filed. The Honorable Lois H. Goodman, U.S.M.J., has been

designated by the District Judge to resolve any objections or motions filed pursuant to this paragraph.

So ordered,

By: _____
Hon. Douglas K. Wolfson, J.S.C. (Ret'd.)
Special Master