# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

VALEANT PHARMACEUTICALS
INTERNATIONAL, INC.; VALEANT
PHARMACEUTICALS INTERNATIONAL; and
AGMS, INC.,

                  Plaintiffs,

           v.

AIG INSURANCE COMPANY OF CANADA;
ACE INA INSURANCE COMPANY; ALLIANZ
GLOBAL RISKS US INSURANCE COMPANY;
ARCH INSURANCE CANADA LTD; EVEREST
INSURANCE COMPANY OF CANADA;
HARTFORD FIRE INSURANCE COMPANY;
IRONSHORE CANADA LTD.; LIBERTY
INTERNATIONAL UNDERWRITERS, a division
of LIBERTY MUTUAL INSURANCE
COMPANY; and LIBERTY MUTUAL
INSURANCE COMPANY; LLOYD'S
UNDERWRITERS; LLOYD'S CONSORTIUM
9885 (a/k/a STARR FINANCIAL LINES
CONSORTIUM 9885); LLOYD'S SYNDICATE
ANV 1861; LLOYD'S SYNDICATE AMA 1200;
LLOYD'S SYNDICATE ARGO 1200; LLOYD'S
SYNDICATE AWH 2232; LLOYD'S
SYNDICATE BRT 2987; LLOYD'S SYNDICATE
CVS 1919; LLOYD'S SYNDICATE HCC 4141;
LLOYD'S SYNDICATE MITSUI 3210; LLOYD'S
SYNDICATE MIT 3210; LLOYD'S SYNDICATE
NAV 1221; LLOYD'S SYNDICATE QBE 1886;
LLOYD'S SYNDICATE SJC 2003; ROYAL &
SUN ALLIANCE INSURANCE COMPANY OF
CANADA; TEMPLE INSURANCE COMPANY;
and XL INSURANCE COMPANY SE.,

                  Defendants.

Civil Action No.: 3:18-cv-00493-
MAS-LHG

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PARTIAL APPEAL OF THE DECEMBER 5, 2019 OPINION AND ORDER BY SPECIAL MASTER

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................. 3

    A.    The Insurers Issued Policies to Valeant that Severely Restrict Their Ability to Deny Coverage Based on Application Misstatements, Including Requiring that Such Misstatements Be Material ................................................................................. 3

    B.    The Underlying Claims For Which Plaintiffs Seek Coverage ........................... 5

    C.    The Discovery Sought in Plaintiffs' Motion to Compel .................................... 7

    D.    Special Master Wolfson's December 5, 2019 Order ......................................... 8

ARGUMENT ........................................................................................................................ 9

    A.    Standard of Review ............................................................................................ 9

    B.    The Order Incorrectly Held That The Exclusion Does Not Require Proof of Materiality ........................................................................................................ 10

    C.    The Order Incorrectly Held That Defendants' Procedures Are Irrelevant to the Required Materiality Determination ............................................................... 12

    D.    The Order Improperly Speculates About Facts That Will Need to be Proved Through Discovery and Later Briefing ............................................................ 15

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3Com Corp. v. D-Link Sys., Inc.*,
  No. C 03-2177 VRW, 2006 WL 8457955 (N.D. Cal. Jan. 24, 2006).....................................15

*Broadwood Inv. Fund, LLC v. United States*,
  No. SA CV 08-0295-DOC, 2016 WL 11517595 (C.D. Cal. Aug. 19, 2016) .........................10

*Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*,
  No. 14-CV-4717 (FB), 2016 WL 2858815 (E.D.N.Y. May 16, 2016)...................................14

*Crowley v. Chait*,
  No. CV 85-2441 (HAA), 2005 WL 8165115 (D.N.J. Feb. 22, 2005) .....................................9

*Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*,
  No. CV 12-787 (FLW) (LHG), 2017 WL 6539242 (D.N.J. Dec. 21, 2017) ...........................9

*First Am. Title Ins. Co. v. Lawson*,
  827 A.2d 230 (N.J. 2003)........................................................................................................4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. C-07-5944-SC, 2014 WL 5462496 (N.D. Cal. Oct. 23, 2014) .......................................10

*In re WorldCom, Inc. Sec. Litig.*,
  354 F. Supp. 2d 455 (S.D.N.Y. 2005)....................................................................................14

*Jefferson v. Webber*,
  777 F. App'x 11 (2d Cir. 2019) .............................................................................................15

*Mass. Mut. Life Ins. Co. v. Beeharilal*,
  No. Civ. 14-85-JWD-RLB, 2015 WL 1346242 (M.D. La. Mar. 24, 2015)...........................14

*Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*,
  999 F. Supp. 2d 690 (D.N.J. 2014), *aff'd*, 601 F. App'x 122 (3d Cir. 2015)2, 3, 10, 12, 13, 14, 15, 16

*Nestle Foods Corp . v. Aetna Cas. & Sur. Co.*,
  135 F. R.D. 101 (D.N.J. 1990)...............................................................................................12

*Shapiro v. Am. Home Assurance Co.*,
  584 F. Supp. 1245 (D. Mass. 1984) ..................................................................................11, 12

*Weaver v. Lexington Ins. Co.*,
  No. 8:05-cv-1913-T-27TBM, 2007 WL 570018 (M.D. Fla. Feb. 20, 2007)..........................14

STATUTES

FED. R. CIV. P. 53 ...................................................................................................................9

Plaintiffs Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International, and AGMS, Inc. ("Plaintiffs" or "Valeant") submit this brief in support of their partial appeal of the December 5, 2019 Opinion and Order by Special Master Hon. Douglas K. Wolfson, granting in part and denying in part Plaintiffs' motion to compel the production of Defendants'[1] policies and procedures (the "Order") (ECF No. 212).

## **INTRODUCTION**

In this insurance coverage action, Valeant is seeking coverage from Defendants for, among other things, its costs in defending and settling significant securities class action and other lawsuits pending before this Court and in Quebec, Canada. Some of the Defendants have denied coverage to Valeant based on an alleged misrepresentation in Valeant's financial statements (some of which are deemed to be part of the insurance application). Those Defendants contend that they are entitled to deny coverage based on a narrow exclusion contained in the insurance policies that permits coverage to be denied for Claims that arise out of material misrepresentations in the insurance application as to Insureds that were aware of the misrepresented information (the "Exclusion").

In their motion to compel, in order to test Defendants' assertion that material misrepresentations were made, Plaintiffs sought an order requiring Defendants to produce their underwriting policies, procedures, and manuals (the "Procedures") governing their risk analysis in deciding to issue and price Directors and Officers insurance policies.[2] Under well-settled law, such Procedures are relevant to assessing insurers' defenses that material misrepresentations were made.

The Order correctly recognized that Defendants' Procedures would be relevant to a

---

[1] The term "Defendants" describes all Defendants named in Plaintiffs' Complaint and described at ¶¶ 18-29 therein.

[2] The motion, and Order, also addressed other discovery disputes that are not relevant to this appeal.

common law "misrepresentation defense" – a defense that is barred under the policies – and therefore ordered any Defendants asserting such a defense to produce their Procedures. However, the Order held that those Defendants instead denying coverage based on the Exclusion did *not* have to produce their Procedures.  That partial denial was incorrect, and should be reversed for several reasons.

First, the Order erroneously held that Defendants' Procedures are only relevant if a Defendant is asserting a "misrepresentation defense" – but not if a Defendant is instead asserting a similar defense based on the Exclusion.  This ruling is based on the erroneous proposition that the Exclusion does not require a showing by an insurer that a misrepresentation is material to deny coverage.  This holding is plain error because it ignores the express language of the Exclusion which *explicitly requires* the Insurers prove that a misrepresentation was material to deny coverage.  Rather than looking to the unambiguous language of the Exclusion involved here – which explicitly requires materiality – the Order instead held that the Exclusion does not require materiality based on a 35-year old Massachusetts case that addressed an *entirely different exclusion* that, unlike the Exclusion here, did not contain a materiality requirement.  This fundamental error alone requires reversal.

Second, the Order also erroneously holds that Defendants' Procedures are irrelevant to a materiality determination, because such determination must be based on "objective" criteria. This ruling, based on *Munich Reinsurance America, Inc. v. American National Insurance Co.*, 999 F. Supp. 2d 690, 737-38 (D.N.J. 2014), *aff'd*, 601 F. App'x 122 (3d Cir. 2015), misreads the very opinion on which it purports to rely.  Although *Munich Re* held that materiality is governed by an objective standard, the very next part of the opinion held that an insurer's policies and procedures are *highly relevant* to the determination, because they provide context against which

materiality can be judged.  As the *Munich Re* Court explained, evidence of what factors the insurer typically considers and how much weight they are given is crucial evidence to understanding whether an alleged misstatement would in fact be objectively material to a reasonable underwriter.  *Id.* at 744-45, n.83.  The Order thus erred by finding totally irrelevant the very evidence that the *Munich Re* Court held was *most relevant* to assessing materiality.

Finally, the Order improperly speculates about the outcome of important factual disputes that should not be considered or addressed until summary judgment or trial.  Although the factual questions of whether any misstatement was made and whether such misstatement was material were obviously not before the Special Master on a discovery motion, the Order nevertheless included certain unnecessary and premature comments (addressed below) on these critical factual disputes.  The Order's conclusory and speculative comments on important ultimate factual disputes should be stricken.

Because the Order's partial denial of Plaintiffs' motion was grounded in legal and factual errors, it should be reversed, and this Court should require that any Defendant relying on an alleged misstatement, whether based on the Exclusion or some other affirmative defense titled "misrepresentation," be ordered to produce its Procedures.

## RELEVANT BACKGROUND

A.    The Insurers Issued Policies to Valeant that Severely Restrict Their Ability to Deny Coverage Based on Application Misstatements, Including Requiring that Such Misstatements Be Material

Plaintiffs are seeking insurance coverage from Defendants under a tower of directors & officers insurance policies that Defendants issued to Valeant for the 2015-16 policy period (the "Policies").[3]  One of the important features of the Policies – for which Valeant paid substantial

---

[3] Plaintiffs are also seeking coverage for different claims under a different tower that is not relevant to this appeal.

premiums – is that they significantly curtail the Insurers' ability to avoid coverage based on purported misrepresentations in the application for the Policies (which, under the Policies' definition of "Application," includes Valeant's financial statements from the prior 12 months).

Specifically, the primary policy issued by Defendant AIG Insurance Company of Canada (to which the other Defendants follow form) includes as Endorsement 18 a provision entitled "Severability of the Application Amended (Non-Rescindable; Advancement)."  Endorsement 18 begins by explicitly providing that the Insurers *cannot* rescind their Policies based on misrepresentations under any circumstances.  It provides: "Under no circumstances shall the coverage provided by this policy be deemed void, whether by rescission or otherwise, once the premium has been paid."  *See* AIG Primary Policy, Endorsement 18 (attached hereto as Exhibit A).  Thus, by its plain terms, Endorsement 18 bars the Insurers from asserting common law or statutory rescission "misrepresentation defenses."  *First Am. Title Ins. Co. v. Lawson*, 827 A.2d 230, 237 (N.J. 2003) (discussing the elements required for the assertion of a misrepresentation defense by an insurer).

Endorsement 18 then sets forth the very specific and limited circumstances in which the Insurers can deny coverage for a Claim based on an Application misrepresentation:

> [I]n the event that any of the statements, warranties or representations are not accurately and completely disclosed in the Application and such inaccurate or incomplete disclosure *materially affects* either the acceptance of the risk or the hazard assumed by the Insurer under the policy, no coverage shall be afforded for any Claim alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or inaccurate statements. . . . [for coverage of an individual] with respect to the indemnification of any Insured Person who knew, as of the inception date of the Policy Period, the facts that were not accurately and completely disclosed; and [with respect to organizational coverage] if any past or present chief executive officer or chief financial officer of the Named Entity

knew, as of the inception date of the Policy Period, the facts that
were not accurately and completely disclosed.

*See* Ex. A at Endorsement 18 (emphasis added).

By its plain terms, the Endorsement significantly limits the instances in which coverage

may be denied based on an application misstatement.  The Insurers' ability to avoid coverage

under the Exclusion is limited by at least four elements the Insurers *must* prove in order to avoid

coverage for a Claim.

First, the Insured must make an actual misrepresentation.  *Id.* (statements "are not

accurately and completely disclosed").  Second, the misrepresentation must also be one that

*materially* affects the insurer's decision to accept the risk of issuing the policy.  *Id.* ("[A]nd such

inaccurate or incomplete disclosure materially affects either the acceptance of the risk or the

hazard assumed by the Insurer under the policy.").  Third, the Claim for which the Insured is

seeking coverage must have specifically arisen out of the misrepresentation made.  *Id.* ("for any

Claim alleging, arising out of, based upon, attributable to or in consequence of the subject matter

of any incomplete or inaccurate statements").  And fourth, the relevant individual seeking

coverage or the company's CEO or CFO (for organizational coverage) must have *known* about

the misrepresented information.  *Id.*

Thus, to avoid coverage for Claims based on the Exclusion – as several Defendants seek

to do – the Insurers must prove each of these four elements, including materiality.

B.     The Underlying Claims For Which Plaintiffs Seek Coverage

Plaintiffs seek coverage under the Policies for a series of litigations related to activities

between January 4, 2013 and March 15, 2016, which allegedly caused a drop in Valeant's stock

price (the "Stock Drop actions").  The Stock Drop actions assert securities law violations based

on allegations of wide-ranging business issues which the underlying plaintiffs claim contributed

to a significant decline in Valeant's stock price.  *See, e.g.*, Consolidated Complaint ¶¶ 6 ("As a result of the misconduct alleged herein [….] stock price fell[….]"), 26 (chart allegedly correlating various misconduct with stock drop), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, Civ. No. 3:15-cv-07658-MAS-LHG (D.N.J. June 24, 2016), ECF No. 80 ("Consol. Compl.").

The Stock Drop actions for which Plaintiffs seek coverage assert numerous alleged improprieties dating back as early as January 2013 (two and a half years before the Policies at issue here went into effect on September 28, 2015) and as late as March 2016 (nearly six months after the Policies went into effect).  They assert a broad range of allegations – the vast majority of which are outside of the Application time period and have nothing to do with the small financial restatement the Special Master referenced in the Order and which is discussed below.

One group of allegations relates to Valeant's decision to raise prices on certain drugs (which were the subject of many news reports and several congressional investigations).  *See, e.g.*, Consol. Compl. ¶¶ 62-63, 65, 190(i), 192(c), 202(j), 232-238.  This practice is alleged to have artificially inflated Valeant's stock prices.  The Stock Drop actions also broadly attack Valeant's overall business practices, including its acquisition-based strategy of development (as opposed to traditional pharmaceutical R&D), and allegedly deceptive use of Patient Assistance Programs.  *See, e.g.*, *id.* ¶¶ 55-57, 68-81.  In addition to these broad categories of allegations, the Stock Drop plaintiffs have alleged that Valeant engaged in improper dealings with a pharmaceutical company, Philidor, which the underlying plaintiffs claim led to misrepresentations in Valeant's stock filings.  Those plaintiffs' allegations relate to conduct and public filings over several years, both before and after the period of the Application.

In September and October 2015, amidst ongoing investigations and media reports by activist short-sellers intent on undermining the company, Valeant's stock price fell more than

6

60% over a period of six weeks. *See id.* ¶¶ 232, 235, 246-47; *see also* Valeant's Motion to Dismiss, Ex. 2 at p. 4, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, Case No. 3:15-cv-07658-MAS-LHG (D.N.J. Sept. 13, 2016), ECF No. 167-6 (attached hereto as Exhibit B).

      Valeant has vigorously disputed the allegations against it in the Stock Drop actions and has never admitted that it, or any of its directors or officers, ever made a material misrepresentation in its financial statements, to the market, to the Insurers, or otherwise. After the issues discussed above began to emerge, Valeant engaged independent board members in a wide-ranging internal review of numerous issues, including the company's relationship with Philidor. On March 21, 2016, well after the drop in Valeant's stock price (and after the class period alleged in the Stock Drop actions and even after the filing of many of those suits), Valeant made a small restatement in its financials. This restatement did not add or eliminate company earnings, it merely shifted $58 million of revenue—only .7% of 2014 revenue and 1% of Q1 2015 revenue—from the fourth quarter of 2014 into the first quarter of 2015. Consol. Compl. ¶ 289. Valeant's stock price increased immediately after the announcement. Ex. B at 8 (from $28.73 to $29.60).

      C.    <u>The Discovery Sought in Plaintiffs' Motion to Compel</u>

      All of the Defendants have denied coverage under the Policies. Some have done so based on the Exclusion, including asserting that the minor restatement of Valeant's financials constituted an admission of a material misstatement permitting denial of coverage. *See, e.g.*, Letter from Jeffrey S. Leonard to John E. Failla, at 7 (Mar. 18, 2019) (attached hereto as Exhibit C). Because Defendants are required to prove, among other things, that *material* misrepresentations were made to avoid coverage, Plaintiffs moved to compel Defendants' Procedures to test Defendants' claims of materiality. *See* Valeant's Joint Discovery Dispute Letter at 15 (Dec. 20, 2018) (attached hereto as Exhibit D).

The crux of Defendants' opposition (other than theories since rejected by the Special Master and not appealed) was that discovery was unnecessary because materiality is an "objective" standard and Valeant's restatement was material as a matter of law, and therefore Defendants' Procedures would necessarily be irrelevant. *Id.* at 20-21. In response, Plaintiffs relied on the settled authority that an insurer's underwriting materials and procedures constitute objective evidence relevant to the materiality determination, regardless of whether it is viewed as an objective standard. *Id.* at 15-16.

      D.    <u>Special Master Wolfson's December 5, 2019 Order</u>

Following oral argument, on December 5, 2016, Judge Wolfson issued his Order partially granting Plaintiffs' motion for Defendants' Procedures. The Order held that the Procedures would be relevant as to Defendants asserting an "affirmative defense of misrepresentation," because they would be required to establish materiality. Order at 17-19, 21. But, the Order found that Insurers asserting a defense based on the Policy's misrepresentation Exclusion were *not* also required to produce their Procedures because, according to the Order, (1) the Exclusion does not require a showing of materiality and (2) materiality is an objective test, rendering the Procedures irrelevant. *Id.* at 17-20. As shown below in the Argument section, both of these findings were clear legal error. The Order then went on to speculate that Valeant's minor 2016 restatement was likely to be material because the restatement supposedly prompted filings of "federal investigative actions as well as a multitude of claims." *Id.* at 21 n.6. As discussed below, this comment was unwarranted and incorrect.

## **ARGUMENT**

The Special Master's Order holding that Defendants seeking to deny coverage based on the Exclusion need not produce their applicable Procedures was erroneous and must be reversed due to three distinct and fundamental errors.  First, the Order incorrectly held that the Exclusion does not require proof of materiality, even though the plain language of the Exclusion explicitly requires materiality.  Second, the Order incorrectly held that Defendants' Procedures would, in any event, be irrelevant to a materiality determination, even though the case the Order relies on for that proposition held precisely the opposite.  Third, the Order was improper because it prematurely speculated about and commented on the materiality of Valeant's alleged misstatement, without consideration of any evidence on this critical issue that will not be ripe for decision until the summary judgment stage.  As a result of these errors, this aspect of the Order should be reversed, and any Defendant seeking to preclude coverage based on an alleged misstatement (whether based on the Exclusion or otherwise) should be ordered to produce its Procedures.

A.     Standard of Review

This Court, in reviewing a Special Master's Order, "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."  Fed. R. Civ. P. 53(f)(1).  Reviews of the Special Master's legal conclusions and factual findings are *de novo*, while purely procedural matters are governed by the abuse of discretion standard.  *Id.* at (f)(3)-(5); *see also* Order Appointing Special Master, ECF No. 197 at 3 (noting the applicable standard).  While decisions on motions to compel are often considered procedural, *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. CV 12-787 (FLW) (LHG), 2017 WL 6539242, at *2 n.1 (D.N.J. Dec. 21, 2017), *de novo* review is appropriate as to this Objection, *see, e.g., Crowley v. Chait*,

No. CV 85-2441 (HAA), 2005 WL 8165115, at *4 (D.N.J. Feb. 22, 2005) (standard of review depends on contents of the order).

Here, in the portion of the Order at issue, the Special Master did not merely rule regarding the discoverability of certain evidence.  Rather, the Special Master made legal rulings regarding the elements the Defendants must ultimately prove (and, conversely, need not prove) in denying coverage based on the Exclusion.  Those are critical legal conclusions that are subject to *de novo* review.  *See Munich Re*, 999 F. Supp. 2d at 707 ("[M]ateriality is a question of fact . . . guided by legal principles."); *Broadwood Inv. Fund, LLC v. United States*, No. SA CV 08-0295-DOC (ANx), 2016 WL 11517595, at *2 (C.D. Cal. Aug. 19, 2016) (applying *de novo* review to alleged factual and legal misstatement in a Special Master's order regarding the scope of discovery); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 5462496, at *3-4 (N.D. Cal. Oct. 23, 2014) (applying *de novo* review to Special Master's alleged misreading of law).  Further, as demonstrated below, the errors in the Order require reversal under either standard.

   B.   The Order Incorrectly Held That The Exclusion Does Not Require Proof of Materiality

The Order first erred by holding that the Exclusion does not require the Insurers to prove that a misrepresentation was material, thus rendering their Procedures irrelevant to a defense based on the Exclusion.  *See, e.g.*, Order at 21 (stating that only Insurers relying on a "misrepresentation" defense must prove materiality, while those relying on the Exclusion do not).  This holding was error because the Exclusion's plain language *explicitly requires* a showing of materiality (among other things) in order for the Insurers to deny coverage.  *See* Ex. A at Endorsement 18 (providing that the misrepresentation must be one that "*materially affects*

either the acceptance of the risk or the hazard assumed by the Insurer under the policy" (emphasis added)).

In holding that Insurers relying on a common law "misrepresentation" defense must prove materiality but those relying on the Exclusion do not, the Order not only ignored the plain language of the Exclusion but also fundamentally misunderstood its purpose. The Exclusion, by its plain terms, is designed to significantly *limit* the Insurers' ability to deny coverage based on an alleged misrepresentation – not make it easier for them to do so. The Exclusion unambiguously bars the Insurers from seeking to rescind the Policy (in other words, bars a common law misrepresentation defense). *See* Ex. A at Endorsement 18 ("Under no circumstances shall the coverage by this policy be deemed void, whether by rescission or otherwise, once the premium has been paid."). Instead, under the strict requirements of the Exclusion, the Insurers may *only* deny coverage to a particular Insured based on a misrepresentation if the Insurers prove four critical elements: a misstatement, materiality of the misstatement, the Claim in question arose from the misstatement, and the relevant Insured seeking coverage had knowledge of the misstated information. *Id.* Most relevant here, the Exclusion *cannot* apply unless the Insurers prove *materiality* of the misstatement, just as they would if asserting a (contractually-barred) rescission claim based on misrepresentations.

Rather than applying the actual language of *this Exclusion* – which explicitly requires materiality – the Order held that the Exclusion does not require materiality based on *Shapiro v. American Home Assurance Co.*, a 35-year old case from a different jurisdiction, which dealt with an *entirely different* exclusion. *See* 584 F. Supp. 1245 (D. Mass. 1984). In *Shapiro*, the court first held that the insurer was entitled to rescind the policy for misrepresentations under Massachusetts' rescission statute based on "grossly overstated" financials. *See id.* at 1249-51.

11

As noted above, here, unlike in *Shapiro*, the Insurers are contractually-barred from rescinding the Policy.

Next, the *Shapiro* court held that the insurer was also entitled to deny coverage because the policy included an exclusion barring coverage for "any claim arising from facts known by any director or officer at the time of the application," which did not require the insurer to prove materiality or any other "elements of a misrepresentation defense." *Id.* at 1252. The policies at issue here do *not*, however, contain an exclusion like the one at issue in *Shapiro,* which excludes coverage for Claims based on facts known by Valeant's directors and officers at the time of the application and does not require any showing of materiality. Instead, the Exclusion here limits the Insurers' potential "misrepresentation defenses" and only permits coverage to be denied when (among other requirements) there has been a misrepresentation that "*materially affects* either the acceptance of the risk or the hazard assumed by the Insurer under the policy." *See* Ex. A at Endorsement 18 (emphasis added).[4] Because the Exclusion at issue here expressly requires a showing of materiality, it was error for the Order to find that it does not and that Insurers relying on the Exclusion therefore do not have to produce their Procedures (and that only Insurers relying on a "misrepresentation defense" must produce their Procedures).

C.   The Order Incorrectly Held That Defendants' Procedures Are Irrelevant to the Required Materiality Determination

The Order's second legal error was holding that because materiality is governed by an objective standard, the Procedures are irrelevant because they only speak to an insurer's

---

[4] Beyond the vastly different exclusions themselves, which alone are enough to render *Shapiro* inapposite, the factual circumstances at issue were completely different, and underscored the lack of need for an in-depth materiality analysis in a way not present here. *Shapiro* was decided on summary judgment and had therefore considered all relevant evidence, as opposed to the early stages of discovery in this case, where the question of relevance is viewed in a very different—and far more expansive—light. *See Nestle Foods Corp . v. Aetna Cas. & Sur. Co.,* 135 F. R.D. 101, 105 (D.N.J. 1990) (noting that discoverability is a much lower standard than admissibility). Finally, the misstatement in *Shapiro* was self-evident because it was an affirmative misrepresentation (with evidence of knowledge) about a significant portion of financial statements, far more than the less than 1 percent of revenue at issue in Valeant's restatement.

subjective view of any potential misstatement.  This holding was error and is directly contrary to the case on which the Order relies, which specifically held that an insurer's underwriting materials *are relevant* to objectively determining whether an alleged misstatement was material.

The Order's holding that applying an objective standard to the materiality determination eliminates the need for discovery of the Procedures was based on the decision in *Munich Re*, 999 F. Supp. 2d at 737-38.  However, the Order significantly misconstrues *Munich Re*'s holding.  In *Munich Re*, the Court analyzed whether an insurer had improperly failed to disclose material facts in purchasing its reinsurance policy.  Like this case, the materiality analysis depended on whether the insurer (there a reinsurer)[5] would have issued the policy had the undisclosed fact been revealed.  While that case held that the materiality standard is an objective rather than subjective standard, it did *not* hold that an insurer's own underwriting guidelines and procedures are irrelevant to that standard as the Order does; in fact, it held the opposite.

Indeed*, immediately after* holding that the materiality standard is objective, the *Munich Re* Court held that an insurer cannot satisfy that standard merely by relying on self-serving statements "that it would not have issued the policy but for the representation."  *See* 999 F. Supp. 2d at 738; *see also id.* at 744.  Instead, as the *Munich Re* Court explained, under the objective standard, insurers have been "consistently required" to "submit evidence of [their] underwriting practices with respect to other similar applicants to meet the burden of proof on materiality."  *Id.* at 745.  Under this standard, materiality is assessed by looking at the factors an insurer considers in making its risk assessments, and determining how those standards would have been applied by a reasonable insurer had the misstated information been known.  That is what the *Munich Re* Court did.  Far from finding an insurer's procedures irrelevant under the objective standard for

---

[5] For ease of reading, we refer to the reinsurer in that case as an "insurer."

determining materiality (as the Order here did), it discussed at length how critical such evidence is and found that an insurer failed to meet its burden of proving materiality based on such evidence. *Id.* at 743-45.

The *Munich Re* Court explained that the insurer's assertion that failures to disclose certain information was material was based primarily on the testimony of its underwriters that they would not have issued the policy or would have issued the policy on different terms had the facts been accurately disclosed. *Id.* at 743. But that was not enough to prove materiality. As the Court explained, "Materiality is an objective standard; I cannot rely merely on statements from [an underwriter] . . ." *Id.* Thus, instead of deciding materiality based upon self-serving underwriter testimony, the Court evaluated the insurer's underwriting materials, including a "Treaty Underwriting Work Sheet" and "'Basic Underwriting Information' document" and how the information required by such underwriting procedures were applied in the insurer's "proprietary model." *Id.* at 744. Considering the actual underwriting procedures and guidelines, the Court found that the underwriter's testimony regarding materiality was "belied by the actual procedures [the underwriter] followed." *Id.* at 745. The Court summarized the insurer's failure to meet its burden of proof on materiality as follows:

> [I] find that [the underwriter's] testimony that the undisclosed information was material to her underwriting process is not credible. In sum, it is [the insurer's] burden to show that an underwriter would reasonably find such undisclosed information to be material to the underwriting process; here, [the insurer] has failed to show that even its own underwriter considered such information material at the time the Retrocession Agreements were being formed.

*Id.* at 745.

The holding in the Order would permit insurance companies to claim that a misrepresentation was material without any evidence beyond the insurer's bare assertion, which

is exactly what the *Munich Re* Court and numerous other courts have held an insurer cannot do.[6]

Applying an objective standard does not require ignoring relevant evidence about how an insurer

assesses risk.  Rather, it requires that once those criteria are established, they are assessed

objectively without regard to the subjective beliefs of the insurer's employees.  Without

information on what standards Defendants applied in evaluating Valeant's risk, it is exceedingly

difficult for the parties or the Court to properly assess whether the alleged misstatements would

have "materially affect[ed]" the acceptance of the risk.  Because, as the *Munich R*e Court held,

the Insurers' Procedures are relevant to assessing materiality under an objective standard, it was

error for the Order to hold that the Procedures do not need to be produced.

      D.      <u>The Order Improperly Speculates About Facts That Will Need to be Proved Through Discovery and Later Briefing</u>

In addition to its two legal errors, the Order also prematurely and inappropriately

comments on key factual disputes that will need to be resolved on summary judgment or at trial

in determining whether the Insurers can avoid coverage based on the Exclusion.  *See* Order at 20,

21 n.6; *see Jefferson v. Webber*, 777 F. App'x 11, 16 (2d Cir. 2019) (vacating Magistrate's

decision ruling on issue never briefed); *3Com Corp. v. D-Link Sys., Inc.*, No. C 03-2177 VRW,

2006 WL 8457955, at *1 (N.D. Cal. Jan. 24, 2006) (same).  These unnecessary comments –

which prematurely speculate on issues that, at a minimum, require discovery and full briefing

---

[6] *See also Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, No. 14-CV-4717 (FB), 2016 WL 2858815, at *10 (E.D.N.Y. May 16, 2016) (collecting cases standing for the proposition that underwriting and claims manuals and procedures are discoverable to test claim of "material misrepresentation"); *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) ("[T]o meet the burden of proof on materiality, an insurer must submit evidence of its underwriting practices with respect to similar applicants. A court may not rely merely on statements by representatives of the insurer that it would not have issued the policy but for the representation.") (citations omitted); *Mass. Mut. Life Ins. Co. v. Beeharilal*, No. Civ. 14-85-JWD-RLB, 2015 WL 1346242, at *9 (M.D. La. Mar. 24, 2015) (finding claims guidelines relevant to determine an insurer's procedures for gathering information in assessing whether a misrepresentation was made during the underwriting process); *Weaver v. Lexington Ins. Co.*, No. 8:05-cv-1913-T-27TBM, 2007 WL 570018, at *2 (M.D. Fla. Feb. 20, 2007) (finding underwriting guidelines discoverable as they may contain information to support the contention that there were no material misrepresentations).

before being resolved – were a direct result of the legal errors discussed above, because they ignore the causal requirement embedded in the Exclusion, and because they effectively presume that any misstatement is material regardless of what the evidence may show.

The Order first states, without *any* analysis, that the mere act of Valeant's minor restatement "conclusively establishes a financial misrepresentation," and that the Procedures would therefore be "irrelevant as to any defendant who intends to rely solely upon an exclusion of coverage defense."  Order at 20-21.  The parties have not briefed the question of whether a small financial restatement constitutes a misrepresentation, let alone one so significant as to render irrelevant the materiality analysis required by the Exclusion.  As discussed above, this statement is also legally unsupportable, because the materiality question necessarily depends on what an objective insurer would have done.  As *Munich Re* makes clear, that determination can *only* be made upon a full analysis of the evidence, which requires production of the materials sought in this motion.  Plaintiffs are confident the evidence will ultimately show that the small financial misstatement would have been utterly immaterial to a reasonable insurer, but now is not the time for that issue to be resolved.

The Order then compounds the error by stating in a footnote that "[w]hile the ultimate impact of that filing [the restatement] on the outcome of the litigation is presently unknown, it is beyond dispute that the filings prompted both federal investigative actions as well as a multitude of claims."  Order at 21 n.6.  This statement is premature, gratuitous, and simply incorrect. Whether the Stock Drop actions "aris[e] out of, [are] based upon, [are] attributable to or [are] in consequence [of]" (Ex. A at Endorsement 18) Plaintiffs' financial restatement is not at issue in this motion, and has nothing to do with the question of whether Defendants' Procedures are relevant to the materiality determination required by the Policies.  Further, as noted above,

Valeant's restatement was just one of a multitude of alleged actions, over a period of several years, included in the underlying plaintiffs' complaints.  Indeed, many of the lawsuits consolidated into the Stock Drop actions were filed *before* the restatement even took place – *see, e.g.*, *Potter v. Valeant Pharms. Int'l Inc.*, No. 15-cv-7658 (D.N.J.) (filed Oct. 22, 2015); *Chen v. Valeant Pharms. Int'l, Inc.*, No. 15-cv-7679 (D.N.J.) (filed Oct. 23, 2015); *Yang v. Valeant Pharms. Int'l, Inc.*, No. 15-cv-7746 (D.N.J.) (filed Oct. 27, 2015) – belying any notion that the Stock Drop actions were prompted by the small restatement.  Plaintiffs are confident that the evidence will ultimately establish that the Stock Drop actions were not caused by the restatement, but the cause of Plaintiffs' alleged losses is again a question for another day.

At this stage of the litigation, and on this motion to compel, it was improper for the Order to speculate on the answers to key factual disputes without evidence or having the issues before the Special Master.  Thus, the Order's comments discussed in this Section should be stricken and revisited at the proper time.

## CONCLUSION

For the foregoing reasons, the December 5, 2019 Order of the Special Master should be reversed in part, and any Defendant asserting a defense based on the misstatement Exclusion (Endorsement 18) should be required to produce their Procedures, as Defendants asserting the affirmative defense of misrepresentation have been ordered to do.  Further, the Order's references to the materiality or legal sufficiency of any alleged misstatement by Valeant should be stricken and removed from a final Opinion and Order issued by the Court or the Special Master.

Dated: December 20, 2019

McCARTER & ENGLISH, LLP

By: */s/ Sherilyn Pastor*
    Sherilyn Pastor (Bar I.D. # 026031988)
    Four Gateway Center
    100 Mulberry Street
    Newark, NJ 07102
    (973) 622-4444

    -and-

    John E. Failla (admitted *pro hac vice*)
    Nathan Lander (admitted *pro hac vice*)
    Seth D. Fiur (admitted *pro hac vice*)
    Om V. Alladi (admitted *pro hac vice*)
    PROSKAUER ROSE LLP
    11 Times Square
    New York, NY 10036
    (212) 969-3000

*Attorneys for Plaintiffs,*
*Valeant Pharmaceuticals International, Inc.,*
*Valeant Pharmaceuticals International, and*
*AGMS, Inc.*

18