```
SPECIAL MASTER
HON. DOUGLAS K. WOLFSON, J.S.C. (RETIRED)
C/O EMILY A. KALLER, ESQ.
GREENBAUM, ROWE, SMITH & DAVIS LLP
99 Wood Avenue South
Iselin, New Jersey 08830
(732) 476-3352
```

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>AIG INSURANCE COMPANY OF CANADA, et al.,<br><br>        Defendants. | CIV. ACTION NO. 3:18-cv-493 (MAS)(LHG)<br><br>**CIVIL ACTION** |

**OPINION OF THE SPECIAL MASTER**
**ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM CANADIAN ATTORNEY-IN-FACT**

Wolfson, D. K., J.S.C. (Ret'd.)
Special Master:

## Background

This is the third opinion addressing discovery disputes raised by Plaintiffs, Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International and AGMS, Inc.

(collectively "Valeant") in this matter.   Valeant's Complaint against Defendants,[1] a number of primary and excess insurance carriers asserting claims for breach of contract and declaratory judgment under two towers of Directors & Officers insurance policies issued for periods 2013-2014 and 2015-2016 (the "Policies"), alleges it sustained covered losses under the 2013-2014 policies in connection with litigation related to Valeant's attempted takeover of Allergan, Inc. through an exchange of Valeant stock for Allergan, Inc. stock (the "Allergan Actions") and under the 2015-2016 policies in connection with litigation and government investigations relating to a drop in Valeant's stock price in 2015 (the "Stock Drop Actions").   A material

---

[1] The Defendants in this matter are:   AIG Insurance Company of Canada, ACE INA Insurance Company, Allianz Global Risks US Insurance Company, Arch Insurance Canada Ltd., Everest Insurance Company of Canada, Hartford Fire Insurance Company, Ironshore Canada Ltd., Liberty International Underwriters, a division of Liberty Mutual Insurance Company, Liberty Mutual Insurance Company, Lloyd's Underwriters, Lloyd's Consortium 9885 (a/k/a Starr Financial Lines Consortium 9885), Lloyd's Syndicate ANV 1861, Lloyd's Syndicate AMA 1200; Lloyd's Syndicate Argo 1200; Lloyd's Syndicate CVS 1919; Lloyd's Syndicate Mitsui 3210; Lloyd's Syndicate MIT 3210; Lloyd's Syndicate QBE 1886; Royal & Sun Alliance Insurance Company of Canada; Lloyd's Syndicate AWH 2232; Lloyd's Syndicate SJC 2003; Temple Insurance Company; Lloyd's Syndicate BRT 2987; Lloyd's Syndicate HCC 4141; Lloyd's Syndicate NAV 1221; XL Insurance Company SE.

issue in dispute is the law that governs these claims.[2]

    This opinion addresses discovery disputes that have arisen between Valeant and those Defendants who utilized a Canadian Attorney-In-Fact to issue a policy to Valeant (the "AIF Defendants").[3]

---

[2] Plaintiffs assert that the Policies were issued in Quebec and are governed by Quebec law. Article 2500 of the Quebec Civil Code provides: "The proceeds of insurance are applied exclusively to the payment of injured third persons." Article 2503 provides: "Legal costs and expenses resulting from actions against the insured, including those of defence, and interest on the proceeds of insurance are born by the insurer over and above the proceeds of the insurance." See Plaintiffs' Brief at 4, n.2. Thus, the applicable law is of critical importance to the parties.

[3] Plaintiffs' motion identified the AIF Defendants as: Lloyd's Syndicate SJC 2003, and Certain Underwriters at Lloyd's subscribing to: (a) Policy Nos. QB 078613 and B0509FINMW1500612, named in the complaint as "Lloyd's Syndicate CVS 1919" and "Lloyd's Consortium 9885 (a/k/a Starr Financial Lines Consortium 9885)"; (b) Policy Nos. QB078913, B0509FINMW1500612, and B0509FINMW1500618, named in the complaint as "Lloyd's Syndicate QBE 1886"; (c) Policy Nos. QB146013, B0509FINMW1500626, and B0509FINMW1500629, named in the complaint as "Lloyd's Syndicate Mitsui 3210" and "Lloyd's Syndicate MIT 3210"; (d) Policy Nos. QB078913 and B0509FINMW1500618, named in the complaint as "Lloyd's Syndicate ANV 1861"; (e) Policy Nos. B0509FINMW1500642, named in the complaint as "Lloyd's Syndicate Argo 1200" and "Lloyd's Syndicate AMA 1200"; (f) Policy No. B0509FINMW1500630, named in the complaint as "Lloyd's Syndicate BRT 2987"; (g) Policy Nos. B0509FINMW1500618 and B0509FINMW1500630, named in the complaint as "Lloyd's Syndicate NAV 1221"; and (h) Policy Nos. QB078513 and B0509FINMW1500609, named in the complaint as "Lloyd's Syndicate AWH 2232" ("Allied World").

**Plaintiffs Seek to Compel Defendants' Production of Documents Relating to the Canadian Attorney-In-Fact.**

Plaintiffs seek production of documents relating to the role of the Canadian Attorney-In-Fact and the clauses in the relevant Valeant insurance policies that relate to the Canadian Attorney-In-Fact. Specifically, Plaintiffs request:

1) Information about "(a) all person(s) who performed any functions as the AIF; (2) what actions such person(s) took with respect to the [each] Policy; and (3) where the person(s) took each respective action" (AWH Interrog. No. 20);

2) Identification of "(a) all person(s) who executed, initialed or bound the [each Policy] and/or line slip on behalf of [Defendants] and/or the AIF and (b) identify with specificity the actions taken by such person(s)" (AWH Interrog. No. 22);

3) "All documents concerning the 'Service of Suit' provision in [each Policy], including but not limited to [Defendant's] review, analysis, consideration and approval of the provision and the inclusion of 1155, rue Metcalfe, Suite 2220, Montreal, Quebec, H3B 2V6 as the address for the AIF in the provision" (AWH RFP No. 20);

4) "All documents concerning the 'Intention for AIF to Bind Clause' in [in each Policy], including but not limited to [Defendants'] review, analysis, consideration and approval of the clause," (AWH RFP No. 21)

5) "All documents, including but not limited to appointment and registration documents, and guidelines, policies, practices,

-4-

> procedures, and training manuals, concerning the role, or function of the AIF in connection with [Defendants'] issuance of Policies in Quebec or to Quebec policyholders" (AWH RFP No. 51); and
>
> 6) "All documents concerning the AIF (including but not limited to actions taken by or services performed by the AIF) in connection with [each Policy]" (AWAC RFP No. 52).[4]

*See* Plaintiffs' Brief dated February 19, 2019 ("Plaintiffs' Brief") at 7.

### Plaintiffs' Position

Plaintiffs' assert that the AIF Defendants are responsible for producing responsive documents held by the Canadian Attorney-in-Fact because the AIF Defendants have control over documents in his possession as their agent. The Canadian Attorney-in-Fact acted as the AIF Defendants' agent in issuing the D&O insurance Policies in dispute in this matter: 1) the policy for the September 28, 2013 to September 28, 2014 period ("2013-2014 Policies"); and, 2) the September 28, 2015 to September 28, 2016 period ("2015-2016 Policies"). Additionally, the Canadian Attorney-in-Fact is designated in the Policies as the AIF Defendants' agent to bind coverage and accept service of process. As such, Plaintiffs' contend the documents in the Canadian Attorney-in-Fact's possession relating to the Policies

---

[4] Plaintiffs assert that substantively identical discovery requests were made to each of the AIF Defendants.

are within the AIF Defendants possession, custody or control. Plaintiffs' Brief at 1-3.

Plaintiffs assert that as these documents are in the AIF Defendants' control, Plaintiffs should not be forced to engage in the complicated, lengthy and costly process of seeking documents directly from the Canadian AIF through the Letters Rogatory process.

<u>Defendants' Position</u>

The AIF Defendants oppose Plaintiffs' motion, asserting that Plaintiffs' position is based upon Plaintiffs' basic misunderstanding of the Canadian Attorney-In-Fact and his relationship to the AIF Defendants. The AIF Defendants assert that the Canadian Attorney-in-Fact is a creation of statutory law and is not an agent of the AIF Defendants. The AIF Defendants maintain that Plaintiffs' attempt to ascribe to the relationship between the Canadian Attorney-in-Fact and the AIF Defendants that of a traditional attorney-in-fact and its principal is flawed. *See* AIF Defendants Brief dated July 12, 2019 at 1.

The AIF Defendants further assert that the Hon. Lois H. Goodman, U.S.M.J., has already authorized Letters Rogatory directed to Lloyd's Canada Inc. and Sean Murphy,[5] the Canadian Attorney-in-Fact, with the consent of all parties. *See* AIF Defendants Brief at 4; Declaration of Paul R. Koepff dated July 12, 2019 ("Koepff Decl.") at Exh. B.   Thus, the AIF Defendants assert that Plaintiffs will not be prejudiced if Plaintiffs' motion is denied as Plaintiffs have the ability through Letters Rogatory to obtain documents in the control of the Canadian Attorney-in-Fact. *See* AIF Defendants Brief dated July 12, 2019 at 13-15.

<u>Relevant Facts</u>

Each Policy issued by the AIF Defendants states: "Lloyd's Syndicates hereon confirm that they have mandated the Lloyd's Attorney-in-fact for Canada to bind on their behalf."   Each such Policy also provides:

> Whereas Lloyd's Underwriters have been granted an order to Insure in Canada risks under the Insurance Companies Act (Canada) and are registered in all provinces and territories in Canada to carry on Insurance business under the laws of these

---

[5] Subsequent to the oral argument on this motion, the Special Master was advised that Sean Murphy had resigned as the Canadian Attorney-in-Fact and was replaced by Ms. Lisa Duval.   For purposes of this opinion, the identity of the Attorney-in-Fact is of no moment and does not affect the analysis herein.

jurisdictions or to transact insurance in these jurisdictions

And whereas applicants for insurance coverage in respect of risks located in Canada and Canadian Cedants wish that Lloyd's insurance and reinsurance coverage be provided in a manner that requires Lloyd's Underwriters to vest assets in trust in respect of their risks pursuant to the Insurance Companies Act (Canada);

a)   This contract shall be in force and shall be the governing contract pending the decision by Lloyd's Underwriters' attorney and chief agent in Canada (the "AIF") to confirm coverage in accordance with both the terms and conditions set out in this contract and applicable Canadian law;

b)   The AIF shall confirm Lloyd's Underwriters' coverage by signing in Canada a policy that will contain the terms and conditions set out in this contract (the "Canadian Policy"), and by communicating from Canada the insurance of that policy to the policyholder or his broker;

*See* Declaration of John E. Failla dated February 19, 2019 ("Failla Decl.") at Exh. A at 2-3; Exh. B at 2; Exh. C at 2-3; Exh. D at 3; Exh. E at 4; Exh. F at 4; Exh. G at 4; Exh. H at 3; Exh. I at 3; Exh. J at 4; Exh. K at 4; and Exh. L at 4.

Plaintiffs assert that the AIF Defendants have control over the documents in possession of the Canadian Attorney-in-Fact, noting that the AIF Defendants' websites contain guidelines outlining how their employees may access and monitor the AIF signing process. *See* Failla Decl., Exh. N, Attorney-in-Fact

Signing Systems (ASPS) User Manual – Submitting Broker, Lloyd's (Dec. 1, 2017).

The Canadian Office of the Superintendent of Financial Institutions ("OSFI"), which oversees foreign insurers authorized to operate in Canada, issued a ruling to Lloyd's Canada dated December 23, 2010, pursuant to which it established that if Lloyd's Syndicates were to issue policies through the Canadian Attorney-in-Fact process described therein, those policies would be deemed "insured in Canada for purposes of Part XIII of the ICA." *See* Failla Decl. at Exh. O.

In support of their assertion that they are unable to assert control over the Canadian Attorney-in-Fact, the AIF Defendants submitted copies of letters dated in or around March 13, 2019 addressed to the Canadian Attorney-in-Fact, requesting to be provided with certain documents sought by Plaintiffs. *See* Correspondence attached to Koepff Decl. at Exh. D.

Additionally, the AIF Defendants submitted a copy of a letter from Mark R. Frederick, Esq., counsel for the Canadian Attorney-in-Fact Sean Murphy, President of Lloyd's Canada and designated Attorney-in-Fact for Lloyd's Syndicates in Canada dated April 17, 2019. *See* Koepff Decl. at Exh. E. In that letter, counsel for the Canadian Attorney-in-Fact advised:

> The main role of the Attorney-in-Fact are mandated in Canadian Law and include: the acceptance of service of process on behalf

of Lloyd's Underwriters in Canada; answering of enquiries of appropriate regulatory bodies; and, binding Canadian business on behalf of Lloyd's Syndicates.

*See* Letter dated April 17, 2019 attached to Koepff Decl. at Exh. E at 1.

Our client does not participate in any syndicate underwriting processes and has no documents relating to such processes or those involving consideration of the risk assumed in this matter.

Your letters request various details concerning the Lloyd's Canada policy issuing processes in Canada. The detail of those processes and any documents in which these processes are reflected are matters confidential to the Attorney-in-Fact and to Lloyd's Canada and are not documents to which Lloyd's Syndicates (or indeed any other party) have any access or entitlement, and to this end, our client will not provide them.

The bulk of the requests made in your letter relating to the role of the Attorney-in-Fact appear rather broad and unrelated to what appears to be in dispute in the underlying litigation. These documents will not be produced as again they are confidential to Lloyd's Canada and are not documents to which Lloyd's Syndicates would be entitled.

The limited aspect of the role of the Attorney-in-Fact means he would only have had involvement with these actions if he: a) bound the business in question (which does not include underwriting); and b) received notice of the claims initially.

Even if the Attorney-in-Fact received notice of a claim, in his role he would simply provide such notice to the Syndicate(s) named so that they may take whatever steps they wished to defend or resolve the claim presented. Again, he would have no

> substantial documents that pertain to
> underwriting of that risk nor would he
> become involved in claim direction, etc.

*See* Koepff Decl. at Exh. E at 2.

Plaintiffs contend that the letters to the Canadian Attorney-in-Fact and the Canadian Attorney-in-Fact's response are contrived and, therefore, insufficient to establish that the AIF Defendants cannot comply with their discovery obligations. Moreover, Plaintiffs criticize the Canadian Attorney-in-Fact's response, noting that his assertion that certain documents contain confidential information is not a basis for withholding that information, but rather for producing that information subject to a protective order.[6] *See* Plaintiffs' Reply Brief dated July 30, 2019 ("Plaintiff's Reply") at 2-3; 12.

Plaintiffs further maintain that the AIF Defendants' assertion that they lack control over the Canadian Attorney-in-Fact is inconsistent with the language of the Policies and that the AIF Defendants' assertion that Plaintiffs had previously

---

[6] Plaintiffs' allegation that the Canadian Attorney-in-Fact's refusal to produce documents is contrived, is without any evidentiary support and constitutes speculation at best. Indeed, the purported confidentiality seems more likely to relate to protecting the source and quantum of the insurers' financial security and the AIF's process of verification; items routinely entitled to confidentiality. Nonetheless, even if the Canadian Attorney-in-Fact's refusal to produce documents was ill advised, the U.S. Courts have no jurisdiction over the AIF leaving the Letters Rogatory process as the only means available to compel the Canadian Attorney-in-Fact to produce the requested documents.

agreed to seek these documents only directly from the Canadian Attorneys-in-Fact via Letters Rogatory is simply incorrect. *See* Plaintiffs' Reply at 2-4. Moreover, Plaintiffs' point out that the requests in the AIF Defendants' requests to the Canadian Attorney-in-Fact seek only one-tenth of the information encompassed by Plaintiffs' discovery demands. *See* Plaintiffs' Reply Brief dated July 30, 2019 ("Plaintiff's Reply") at 2-3.

## Creation of the Canadian Attorney-in-Fact

An issue central to this dispute is whether the Canadian Attorney-in-Fact is an agent of the AIF Defendants such that the documents in the Canadian Attorney-in-Fact's possession are properly deemed to be within the "possession, custody, or control" of the AIF Defendants. To that end, it is necessary to examine the creation of the Canadian Attorney-in-Fact and his relation to the AIF Defendants.

The AIF Defendants are all syndicates associated with Lloyds of London. As explained by the AIF Defendants, Lloyd's of London is not an insurance company, but rather a marketplace in which insurance policies are underwritten by various members of Lloyd's. "Members of Lloyd's underwrite insurance contracts through syndicates operating as an annual venture." Defendants' Brief at 5. Each syndicate operates in the Lloyd's marketplace

as a separate entity, and is overseen by the Corporation of Lloyd's. *Id.*

In 2010, Canada amended Part XIII of the Insurance Companies Act, its insurance regulatory scheme, to provide that "A foreign entity shall not insure in Canada a risk unless it is authorized by order made under subsection 574(1)." *Alberta Motor Association Insurance Company v. Aspen Insurance UK Limited*, 2018 ABQB 207 (CanLII) at ¶¶86, 94. As the result of the amendment, risks underwritten and bound by Lloyd's Syndicates in London would not satisfy the requirements of Canada's insurance regulatory scheme "because all of the related insurance activities are carried out in London, England." *Id.* at ¶¶98-99. Lloyd's worked with the Canadian Office of the Superintendent of Financial Institutions ("OSFI") to develop the Canadian Attorney-in-Fact process in order to satisfy the Canadian insurance regulatory scheme. *Id.* at ¶99.

The Canadian Attorney-in-Fact process has been described as follows:

1) The Lloyd's Syndicate(s) that placed the insurance policy must have a letter of authorization or mandate on file which requests and authorizes the Canadian Attorney-in-Fact to confirm coverage where the parties have agreed that Lloyd's coverage would be provided in a manner that

> requires Lloyd's to vest assets as required pursuant to Canada's Insurance Companies Act;
>
> 2) The Lloyd's broker, upon delivery of the signed insurance contract from the Lloyd's Syndicate(s), shall upload the London contract to the Attorney-in-Fact signing system;
>
> 3) The Lloyd's Syndicate(s) shall set forth in its premium notices, applications and policies a statement that the document was issued or made in the course of its insurance business in Canada;
>
> 4) The AIF shall issue a Canadian policy with the terms and conditions set out in the London contract; the Canadian Attorney-in-Fact is not authorized to amend, alter or change its terms and conditions.

*Alberta Motor Association*, 2918 *ABQB* 207 (CanLII), at ¶¶100-03.

As noted by the Court of Queen's Bench of Alberta after reviewing the Canadian Attorney-in-Fact process:

> The administrative functions of the AIF lack . . . independence. The AIF receives a fully negotiated and executed insurance contract . . . and is directed to accept that coverage, insert the "made in Canada" wording, sign the contract electronically and send the contract back to . . . [the London insurance company] or its broker. Once that communication takes place, the Canadian Policy replaces and supercedes the [policy] executed in London. The AIF has no authority to renegotiate the coverage or change or amend any terms.

*Alberta Motor Association*, 2918 *ABQB* 207 (CanLII), at ¶¶116.

-14-

At oral argument, John Failla, Esq., on behalf of Plaintiffs reiterated that the facts establish that the Canadian Attorney-in-Fact is the AIF Defendants' agent. The Canadian Attorney-in-Fact has the duty and discretion to discharge his obligations, including: 1) determining whether the coverage complies with the laws of Canada and should be confirmed; 2) inserting the required "made in Canada" wording into the policy; and 3) binding the Canadian policy. This authority is set forth in the exemplar mandate attached to the Affidavit of Sean Murphy dated October 30, 2017 and submitted by the AIF Defendants in advance of oral argument.

During oral argument, Roderic McLaughlan, Esq., on behalf of the AIF Defendants, emphasized the lack of control that the AIF Defendants have over the Canadian Attorney-in-Fact given his limited duties. He pointed out that the AIF Defendants are further insulated from the Canadian Attorney-in-Fact due to the existence of a broker who acts as liaison between the AIF Defendants and the Canadian Attorney-in-Fact. According to Mr. McLaughlan it is generally the broker, and not the AIF Defendant, who uploads the "slip" policies to and retrieves the Canadian policies from the AIF Signing System. *See* "FAQ: Attorney-In-Fact Signing (ASPS) User Manual – Submitting Broker" attached to Pastor Decl. as Exhibit M at 1, 4, 7 and 9.

Nonetheless, Plaintiffs' counsel pointed to two Fifth Circuit cases that found an agency relationship existed under purportedly similar circumstances: *Royal Insurance Co. v. Quinn-L Capital Corp.*, 3 F.3d 877, 883 n.4 (5th Cir. 1993)(finding Texas statute requiring hiring of an attorney-in-fact within the state does not make the agent "any more or less of an agent"); and *Martinez v. State Farm Lloyds*, 204 F.Appx. 435, 436 2006 WL 3147505 (5th Cir. Nov. 3, 2006)(under Texas law, statutorily required attorney-in-fact has no contractual relationship with the insured but acts as an agent for the Lloyd's group).

Paul Koepff, Esq., on behalf of the AIF Defendants responded that these two Texas cases dealt with a distinct statutory scheme in Texas and were distinguishable from the instant case. Neither case, in my view, addresses the issue of "control" over documents as contemplated by *Fed. R. Civ. P.* 34.

## ANALYSIS & DISPOSITION

Here, the critical issue for adjudication is whether documents in the possession of the Canadian Attorney-in-Fact are sufficiently under the control of the AIF Defendants such that the AIF Defendants in this case can be compelled to produce them. As noted by Judge Simandle, the starting point in this

analysis is the language of *Rule 34*.   *Camden Iron & Metal v. Marubeni Am Corp.*, 138 *F.R.D.* 438, 441 (D.N.J. 1991).

Rule 34 provides in pertinent part:

> (a) In General. A party may serve on any other party a request within the scope of Rule 26(b):
>
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following **items in the responding party's possession, custody, or control**:
>
> > (A) any designated documents or electronically stored information . . .
>
> (c) Nonparties. As provided in *Rule 45*, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.

*Fed. R. Civ. P.* 34 (emphasis added).

Under Rule 34 a party is required to produce relevant documents within its possession, custody or control.   *Fed. R. Civ. P.* 34(a).   "The Rule makes clear that production need not be confined to what is in the responding party's possession, but may include what is under the responding party's 'control' including 'information reasonably available to the responding party from his employees, agents, or others subject to his control.'   *In re Global Power Equipment Group Inc.*, 418 *B.R.* 833, 841 (Bankr. D. Del. 2009).   The party seeking production of documents bears the burden of establishing that the responding party has control, defined as the legal right, authority or

-17-

ability to obtain documents upon demand, over those documents. *Camden Iron & Metal*, 138 *F.R.D.* at 441.

Control over documents possessed by a nonparty may be established based upon the relationship between the nonparty and the party. *See Gerling Intern. Ins. Co. v. C.I.R.*, 839 *F.2d* 131, 140 (3d Cir. 1988); *see also In re: Benicar (Olmesartan) Prod. Liab. Litig.*, No. 15-2606, 2016 *WL* 5817262, at *4 (D.N.J. Oct. 4, 2016) (although denying request as overbroad, court found that it could direct defendants to produce documents from affiliated entity as defendant obtained documents from that entity on a routine basis); *Campbell v. Sedgwick Detert,* No. 11-642, 2013 *WL* 1314429, at *14 (D.N.J. Mar 28, 2013) (requiring law firm managing partner to appear for deposition and produce documents in New Jersey based on his interests being aligned with defendant regardless of whether he qualified as managing agent under *Fed. R. Civ. P.* 30); *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 *F.R.D.* 127, 129 (D. Del. 1986) (finding control does not require party to have managerial power over the nonparty, but does depend on demonstrating a close coordination between them); *Microsoft Corp. v. Softicle.com*, Docket No. 216CV02762 MCASCM, 2017 *WL* 4387376, at *7 (D.N.J. Oct. 2, 2017)("a party must produce documents that have been turned over to his agent, such as his insurer or attorney").

The Third Circuit has likewise, recognized that when an affiliated nonparty-corporation works closely with a party-corporation in carrying out a transaction at issue in litigation, the nonparty's documents may be deemed within the party-corporation's control.  *See Gerling*, 839 F.2d at 141; *Camden Iron & Metal*, 138 F.R.D. at 443 (compelling party to produce documents of nonparty that played a "significant role" in the transaction in dispute).

Courts have construed "control" broadly, holding that when the party is a parent corporation, it has control over documents in the possession of its wholly-owned subsidiary. *Gerling*, 839 *F.2d* at 140.  However, even where the party is a subsidiary and the nonparty parent company possesses the documents, courts have found control to exist *only when*:

> (1) the alter ego doctrine warranted piercing the corporate veil;

> (2) the subsidiary was an agent of the party in the transaction that is the subject of the lawsuit;

> (3) the relationship is such that the agent-party is able to secure documents of the principal-parent to meet its business needs and for use in the litigation;

> (4) the subsidiary can access documents when needed in the ordinary course of business; or

(5) the subsidiary was marketer and servicer of parent's product in the United States.

*Camden Iron & Metal*, 138 F.R.D. at at 441-42. As cogently explained by Judge Simandle:

> in parent/subsidiary situations, the determination of control turns upon whether the intracorporate relationship establishes some legal right, authority *or* ability to obtain the requested documents on demand. Evidence considered by the courts includes the degree of ownership and control exercised by the parent over the subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship.

*Id.* at 441.

Consequently, many courts have held that parties must produce documents held by their attorneys-in-fact, agents, and other entities with whom they closely coordinated in connection with particular transactions. *See, e.g., In re Global Power Equip. Grp.*, 418 B.R. 833 (Bankr. D. Del. 2009)(documents of nonparty sister-corporation in France were in control of the litigating party); *Camden Iron,* 138 F.R.D. at 443 (documents of nonparty parent corporation with continuing participation in the transaction were in the control of the litigating party); *Alimenta (U.S.A.), Inc. v. Anheuser-Busch Cos., Inc.*, 99 F.R.D. 309, 313 (N.D. Ga. 1983)(discovery request for documents on nonparty was upheld as to sister corporation that participated

in the transaction); *Advance Labor Serv., Inc. v. Hartford Accident & Indem. Co.*, 60 *F.R.D.* 632, 634 (N.D. Ill. 1973)(nonparty corporation with identical board of directors compelled to produce its books and records).

On the other hand, parties cannot be compelled to produce documents that are not within their possession, custody, or control *See Bumgarner v. Hart*, Civ. No. 05-3900, 2007 *WL* 38700, at *5 (D.N.J.2007) (holding Court cannot order production of documents that are not in the possession or control of the responding party); *see also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 *U.S.* 197, 204, 78 *S.Ct.* 1087, 2 *L.Ed.2d* 1255 (1958) (recognizing that a court must inquire whether a party has control over the subject documents).

In *Afros S.P.A. v. Krauss-Maffei Corporation*, 113 *F.R.D.* 127, 130-32 (D. Del. 1986), the District Court for the District of Delaware directed an alleged corporate patent-infringer to produce documents in the possession of its nonparty parent corporation. But it did so only after concluding that the "nature of the relationship" between these entities was such that the party had the ability to obtain the requested documents. *Id.* at 132. The three key factors used to determine the "nature of relationship" between the party and the nonparty that has possession of the documents sought are:

1) the corporate structure of the two entities,

2) the nonparty's connection to the transaction at issue, and

3) the benefit the nonparty will receive from any award in the case.

*Afros SPA v. Krauss-Maffei Corp.*, 113 at 129-31.

First, as distinct from *Afros*, the corporate structure of the two entities here contributes little to the thrust of plaintiffs' arguments.   In this case, the AIF Defendants are Lloyds Syndicates that, according to the AIF Defendants, (and consistent with the finding of the Canadian Court in *Alberta Motors*), simply "participate" in the Lloyd's "marketplace."   Nor does the Canadian Attorney-in-Fact (Lloyd's Canada, Inc.) appear to be an "affiliated" company.   Moreover, even if I were to view the Attorney-in-Fact to be an affiliate of Lloyd's of London or of the Lloyd's Syndicates, no facts were proffered to support the conclusion (or a reasonable inference) that the entities overlap in either ownership or governance.   To the contrary, it appears likely that the AIF Defendants are independent investors that operate from London, while the Canadian Attorney-in-Fact's participation was required only because of the Canadian Statutory scheme.   *See Alberta Motors*, at ¶¶90-93.

Second, while the Canadian Attorney-in-Fact was minimally "involved" in the underlying transaction by issuing the Canadian policy, his participation was strictly limited in scope,

-22-

essentially amounting to no more than a mere compulsory ministerial function mandated by Canadian insurance regulations. *See Alberta Motors*, at ¶¶116. Indeed, despite repeated requests for a factual basis demonstrating the type of "control" required by the *Gerling*, *Afros*, *Camden Iron*, and *Global Power* line of cases, Plaintiffs instead relied upon a rather mechanical position, maintaining that because the Attorney-in-Fact was an acknowledged "agent" of the AIF Defendants, the principals had legal authority over it, and therefor, an order compelling the AIF Defendants to produce documents in the possession of the Canadian Attorney-in-Fact was both appropriate and within the authority of the New Jersey courts. After careful reflection I am satisfied that such a mechanical approach is inconsistent with the factual analysis demanded by the greater weight of authority which, significantly, focuses on the actual relationship between the two entities and not their legal status alone.[7]

---

[7] Practical problems with Plaintiffs' approach can readily be envisioned as well. If, despite being ordered to produce the requested documents, the Attorney-in-Fact remained steadfast in its rejection of the AIF Defendants' prior request (see counsel's letters of March 2019 attached to Koepff Decl. at Exhs. D & E), the only recourse would be the less than optimal step of holding the AIF Defendants in contempt--plainly an unduly punitive and untenable result absent some showing of the type of working interrelationship or historic control demanded by the cases.

Finally, the record is devoid of any proof that the Canadian Attorney-in-Fact will benefit from a litigation result in favor of the AIF Defendants, especially since the Lloyd's Syndicates are all completely separate and independent entities.

Although there certainly are cases compelling the production of documents possessed by a nonparty, no cases have done so under the circumstances and framework within which the AIF Defendants and the Canadian Attorney-in-Fact operate. While the Canadian Attorney-in-Fact did issue the AIF Defendants' Policies in Canada, Plaintiffs proffered no facts or anecdotal evidence demonstrating that the Canadian Attorney-in-Facts' responsibilities include underwriting or claims processing. The sharply circumscribed role of the Canadian Attorney-in-Fact, as detailed by the Canadian Court in *Alberta Motor*, (and corroborated by counsel for the Canadian Attorney-in-Fact in his letter dated April 17, 2019), unquestionably establishes that the Canadian Attorney-in-Fact is completely without power to negotiate or alter any of the terms and conditions of the Policies. Rather, the Canadian Attorney-in-Fact simply accepts the terms and conditions negotiated by the AIF Defendants and transforms them into a Canadian policy. *Alberta Motor Association*, 2918 *ABQB* 207 (CanLII), at ¶¶116 (noting the AIF has no authority to renegotiate the coverage or change or amend any terms).

In point of fact, the relationship between the AIF Defendants and the Canadian Attorney-in-Fact is entirely distinct from, and does not resemble the parent/subsidiary or sister/affiliates relationships previously adjudicated to have control over the nonparty. Indeed, the AIF Defendants/Lloyd's Syndicates do not fit neatly into either the corporate parent, subsidiary, or even sister company column. Instead, the Lloyd's syndicates are entities that simply invest in insurance policies on a yearly basis pursuant to governing rules established in a "marketplace" overseen by Lloyds of London. *See, Alberta Motor Association*, 2918 *ABQB* 207 (CanLII), at ¶¶100-03; *see also* Defendants Brief at 5.

While the syndicates individually underwrite and negotiate the policy terms, they do so without the assistance of, or any input from the Canadian Attorney-in-Fact. Only after the policies have been fully negotiated and executed, are the policies then uploaded to the AIF system, where they are confirmed as Canadian Policies by the Canadian Attorney-in-Fact. *Alberta Motor Association*, 2918 *ABQB* 207 (CanLII), at ¶¶100-03; *See also* Koepff Decl. at Exh. E at 2 (Canadian Attorney-in-Fact noting that his procedure for binding business does not include underwriting).

Moreover, the existing record fails to persuade me that the AIF Defendants control the Canadian Attorney-in-Fact, such that

-25-

a finding that the AIF's documents are within the "possession, custody or control" of the AIF Defendants would be warranted. As recounted by the Canadian Court in *Alberta Motor Association*, the Canadian Attorney-in-Fact has a very limited, but defined role, *Alberta Motor Association*, 2918 *ABQB* 207 (CanLII), at ¶¶116, and was created in consultation with the Canadian OSFI in order to comply with the Canadian insurance regulatory scheme. *Alberta Motor Association Insurance Company*, 2018 *ABQB* 207 (CanLII), at ¶99.

I am, therefore, entirely satisfied that Plaintiffs have not established that any documents within the possession of the Canadian Attorney-in-Fact are within the AIF Defendants' control. Accordingly, having failed to carry their burden, Plaintiffs' motion to compel the AIF Defendants to produce Canadian Attorney-in-Fact documents is denied.

### CONCLUSION AND ORDER

Based upon the foregoing, it is on this 31st day of December, 2019, ORDERED that Plaintiffs' motion to compel the production of documents within the possession of the Canadian Attorney-in-Fact is DENIED.

Further ORDERED pursuant to the parties' agreement that:

> The Letters Rogatory can be filed in the foreign courts, and
>
> that Discovery rulings will apply equally to the same discovery sought in a Letters Rogatory (i.e., the parties will not seek to enforce broader discovery in the foreign courts than permitted with respect to party discovery in this case). However, a ruling that discovery is not within the possession, custody or control of a party will not have any impact on whether such discovery can be obtained from the recipient of a Letters Rogatory.

Pursuant to the Order Appointing Special Master entered April 12, 2019 (Docket Entry No. 197) at ¶7, and Fed. R. Civ. P. 53(f)(1), (2), the parties may object to, or move to modify this decision within twenty-one (21) days from the date this order is entered on CM/ECF. Any party opposing the objection or requested modification shall file a responsive brief within fourteen (14) days thereafter. The objecting or moving party

may file a reply to any opposition brief within seven (7) days from the date such opposition was filed.  The Honorable Lois H. Goodman, U.S.M.J., shall resolve any objections or motions pursuant to this paragraph.

So ordered,

By: _____
Hon. Douglas K. Wolfson, J.S.C. (Ret'd.)
Special Master