## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VALEANT PHARMACEUTICALS INTERNATIONAL, INC.**, *et al.*, | **Civil Action No. 18-493 (MAS)(LHG)** |
| Plaintiffs, | |
| v. | |
| **AIG INSURANCE COMPANY OF CANADA**, *et al.*, | **ORDER ON APPEAL** <br> **FROM SPECIAL MASTER** |
| Defendants. | |

### I.      INTRODUCTION

This matter comes before the Court by way of a partial appeal filed by Plaintiffs Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International, and AGMS, Inc. (collectively, "Plaintiffs") of an Order entered by the Special Master appointed to assist with this case. [Docket Entry No. 213].  AIG Insurance Company of Canada, Allianz Global Risks US Insurance Company, Everest Insurance Company of Canada, Ironshore Canada Ltd., Lloyd's Syndicate SJC 2003 and Temple Insurance Company (collectively, "Defendants" or "the insurers") filed a Brief in Opposition ("Opposition").  [Docket Entry Nos. 219, 221].  Plaintiffs filed a Brief in Further Support of their partial appeal ("Reply").  [Docket Entry No. 226].  At the Court's request, the parties supplemented the record on this appeal with a later-filed Joint Appendix.  [Docket Entry No. 248].

The Court has considered the parties' submissions without oral argument, pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1(b).

## II.      BACKGROUND

This is a complex breach of contract and declaratory judgment action in which Plaintiffs allege defendant insurance companies have improperly refused to provide coverage for the defense and settlement of a number of securities suits.  Complaint at ¶1 [Docket Entry 1-1].[1]  The specific policies at issue on this appeal contain a provision, referred to as Endorsement 18, which provides in pertinent part:

> [I]n the event that any of the statements, warranties or representations are not accurately and completely disclosed in the Application and such inaccurate or incomplete disclosure **materially affects either the acceptance of the risk or the hazard assumed by the Insurer** under the policy, no coverage shall be afforded for any Claim alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or inaccurate statements . . . .

Endorsement 18 ("Endorsement 18"), paragraph D excerpted from the Broad Form Management Liability Insurance Policy No. 01-714-68-05 that AIG Insurance Company of Canada issued to Valeant for the period from September 28, 2015 to September 28, 2016, attached as Exhibit A to the December 20, 2019 Certification of Sherilyn Pastor, Esq., in Support of Plaintiffs' Partial Appeal  [Docket Entry No. 213-3 at 60] (emphasis added).   In this case, some of the insurers have relied upon Endorsement 18 to deny coverage, in light of what they claim was a material misrepresentation in the Application.  Plaintiffs' Memorandum of Law in Support of Plaintiffs' Partial Appeal of the December 5, 2019 Opinion and Order of Special Master [Docket Entry No. 213-1] ("Appeal Brief") at 1; Opposition at 1.  The question on this appeal is whether Defendants must prove

---

[1] A more detailed summary of the nature of this case has already been provided by the Court in its opinion deciding various Defendants' Motions to Dismiss.  Memorandum Opinion of the Honorable Michael A. Shipp, U.S.D.J., issued April 12, 2019 at pp. 2–6.  [Docket Entry No. 195]. For purposes of this appeal, the Court only sets forth those facts necessary to an understanding of the decision.

materiality under the contractual provision, and if so, whether Plaintiffs are entitled to certain underwriting materials in order to evaluate and challenge the insurers' claim of materiality.

On April 12, 2019, the Court appointed the Honorable Douglas K. Wolfson, J.S.C. (retired) (the "Special Master") as Special Master in this matter ("Appointment Order") [Docket Entry No. 197]. The Appointment Order empowered the Special Master to, *inter alia*, decide all pending and future discovery disputes. *Id.* ¶2a. It also provided that the undersigned would resolve any objections to the Special Master's non-dispositive decisions. *Id.* ¶7. Pursuant to Paragraph 9 of the Appointment Order, appeals of findings of fact and conclusions of law are to be reviewed *de novo*, whereas non-dispositive issues are to be reviewed under an abuse of discretion standard. *Id.*

On December 5, 2019, the Special Master issued the "Opinion of the Special Master on Production of Underwriting and Claims Manuals and Related Information" that decided a multitude of discovery disputes between the parties (the "Appealed Order" or the "Order") [Docket Entry No. 212]. The issue on this appeal is only one of the many issues decided by the Special Master, namely whether Plaintiffs are entitled to discovery pertaining to procedures that "explain and demonstrate the information Defendants themselves treat as material in assessing risk thresholds, setting the premium pricing, and issuing the policies (the 'Procedures')." Appealed Order at 3.

In the Order, the Special Master distinguished between Plaintiffs' attempts to seek Procedures documents from Defendants asserting a common law affirmative defense of misrepresentation from Plaintiffs' attempts as to those asserting a defense based on an exclusion of coverage contained in Endorsement 18. *Id.* at 17–21. He concluded that the underwriting practices and policies constituted evidence of Defendants' subjective beliefs, which are not material to the merits of the Exclusion 18 defense. *Id.* at 20. He also found that because "Valeant's

own restated public filing conclusively establishes a financial misrepresentation," the Procedures documents would be irrelevant to the Endorsement 18 defense. *Id.* Ultimately, the Special Master granted Plaintiffs' request to compel production of Procedures documents from Defendants asserting an affirmative defense of misrepresentation, *id.* at 25–26, but denied the request as to Defendants asserting a contractual exclusion, *id.* at 20–21. Plaintiffs appeal the Order only insofar as it denied that portion of their motion.

### III.   ARGUMENTS OF THE PARTIES

#### A.   Plaintiffs' Appeal

Plaintiffs argue that the denial of the discovery regarding materiality was erroneous in several respects. Appeal Brief at 9. First, they contend the Order erred by holding that a defense pursuant to Endorsement 18 does not require proof of materiality. *Id.* In this regard, Plaintiffs take issue with the distinction the Order drew between materiality as an element of a common law affirmative defense, and materiality in the context of a specific contractual undertaking, as in the case before the Court. Appeal Brief at 10–11.

Plaintiffs also challenge the Appealed Order's reliance on *Shapiro v. American Home Assurance Co.*, 584 F. Supp. 1245 (D. Mass. 1984) ("*Shapiro*"), which they distinguish on numerous grounds. Specifically, in *Shapiro*, the court considered the applicable Massachusetts rescission statute and the particular exclusion in that case rather than Endorsement 18, which contractually requires Defendants to establish materiality before denying coverage. *Id.* at 12. Plaintiffs argue that this language must be read narrowly in light of the parties' intent to curtail the insurers' ability to disclaim coverage. *Id.* at 11–12. In the motion and on appeal, Plaintiffs deny that they made any material misrepresentation at all, and dispute the facts asserted by Defendants.

They acknowledge that Valeant made what they characterize as a "small restatement" to its financials but in no way concede the materiality of that restatement. *Id*. at 7.

Next, Plaintiffs contend the Appealed Order improperly held that because materiality must be determined pursuant to an objective standard, the Procedures documents are irrelevant to a materiality determination and are therefore not discoverable. *Id*. at 12–13. In this regard, Plaintiffs argue that the Appealed Order misconstrued the decision in *Munich Reinsurance America, Inc. v. American National Insurance Co.*, 999 F. Supp. 2d 690, 737–38 (D.N.J. 2014) ("*Munich Re*"), *aff'd*, 601 F. App'x 122 (3d Cir. 2015). According to Plaintiffs, evidence of materiality is relevant, regardless of whether the standard applied is an objective one. Appeal Brief at 13–14.

Finally, Plaintiffs seek to strike a portion of the Order which they say improperly speculated that Valeant's alleged financial misstatement led to federal investigations as well as the filing of numerous civil actions. *Id*. at 15. These issues should not have been decided in a discovery motion but rather, should be reserved for summary judgment or trial. *Id*. at 15–17

Plaintiffs assert that the appeal should be decided under a *de novo* review standard, given that the Special Master made legal rulings as to what the parties must ultimately prove in the case. Appeal Brief at 10.

## B.   Defendants' Opposition

Unsurprisingly, Defendants argue that the portion of the Appealed Order being challenged is correct. They start with the standard governing this appeal. In contrast with Plaintiffs, Defendants assert that the Order should be reviewed under the abuse of discretion standard because it disposes of a discovery dispute. Opposition at 6–8. Even if it were reviewed under a *de novo* standard, however, they assert the result would still be an affirmance.

Defendants further maintain that the discovery sought with regard to underwriting practices is irrelevant to the question at issue, *i.e.*, whether Defendants can disclaim coverage under Endorsement 18 in light of the misrepresentation made by Valeant in the Application materials. *Id*. at 9.  They argue that such underwriting practices represent evidence of the subjective belief of Defendants and are not relevant to showing materiality under an objective standard.

In their Opposition, Defendants rely heavily on *Shapiro*, which they read as holding that a misrepresentation in a financial statement, such as the one at issue here, increases the risk of loss and is therefore material as a matter of law.  *Id*. at 10.   They also differentiate their view of the holding in *Munich Re* from that of Plaintiffs, and maintain that the Special Master's construction of and reliance on both of those cases was appropriate.

Ultimately, Defendants contend that the proof of materiality comes not from their own underwriting practices but rather, from the actual results of the misrepresentations they accuse Valeant of making:

> Indeed, and as noted by Special Master Wolfson, after Valeant filed its financial restatement on March 21, 2016 admitting that its public filings in the 12 months prior were inaccurate, over 40 claims were asserted against Valeant, for which Valeant currently seeks coverage from the Insurers in this Action.

Opposition at 13.  Thus, Defendants urge the Court to find that the issue is "not whether the inaccurate financial disclosures publicly filed by Valeant were material facts, but rather, whether an inaccurate financial disclosure filed in the 12 months leading up to the policy period materially affects the hazard assumed by the insurers under these policies."  Opposition at 16.

### C.    Plaintiffs' Reply

On reply, Plaintiffs reiterate that, unlike the statute and the exclusion construed in *Shapiro*, the contractual provision at issue here expressly includes a materiality term.  Defendants bear the

burden of proving that materiality under Endorsement 18; the Appealed Order therefore erred in holding that the alleged misrepresentation is material without any actual showing.  Reply at 5–7. Plaintiffs also reject Defendants' reading of *Munich Re*, arguing that in fact *Munich Re.* supports the notion that objective indicia of materiality, such as the underwriting policies, rather than subjective evidence, such as the self-serving testimony of underwriters, are critical to the assessment.  *Id*. at 8–9.

Once again, Plaintiffs ask that conclusions made by the Special Master as to issues that were not properly before him on the underlying discovery dispute be stricken.  *Id.* at 10.

Finally, Plaintiffs reiterate that the Order should be reviewed *de novo* because of the nature of the findings made by the Special Master.  *Id.* at 3–4.

## IV.    LEGAL STANDARD

Under Rule 53, the Court may appoint a Special Master to "address pretrial and posttrial matters." Fed. R. Civ. P. 53(a)(1)(C).  Pursuant to the Appointment Order, the Special Master in this matter is authorized to "decide all discovery disputes and non-dispositive issues and issue appropriate written orders regarding same."  Appointment Order ¶7.  The parties may object to, move to adopt, or move to modify the Special Master's orders.  *Id.*  Appeals of the Special Master's rulings as to procedural matters and nondispositive issues are reviewed for abuse of discretion. Appointment Order ¶9.  Appeals of the Special Master's findings of fact and conclusions of law are reviewed *de novo*.  *Id*.  "The phrase 'de novo determination' . . . means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy."  *Net2Phone v. eBay*, Civ. No. 06-2469, 2008 WL 8183187, at *4 (D.N.J. June 26, 2008) (quoting *United States v. Raddatz*, 447 U.S. 667, 690 (1980) (Stewart, J., dissenting)).

## V.    ANALYSIS

As a preliminary matter, the undersigned expresses great appreciation for the ongoing efforts of the Special Master in managing this large and unwieldy case.  The Order under appeal was a detailed opinion, stretching nearly thirty pages.  It is clear from the record that it necessitated the review of over seventy submissions from the parties, accompanied by a nearly three-hour hearing that further entertained counsels' arguments.  This Partial Appeal thus casts the Court in the unenviable role of a Monday morning quarterback, charged with second guessing a single aspect of the host of decisions set forth in the Appealed Order.  Nevertheless, the undersigned turns now to that task, beginning with the standard of review.

### A.    Standard of Review

The parties dispute the appropriate standard of review.  Plaintiffs contend that because the Appealed Order "made legal rulings regarding the elements the Defendants must ultimately prove (and conversely, need not prove) in denying coverage based on [Endorsement 18]," the Order is subject to *de novo* review.  Appeal Brief at 10.  Defendants argue that because the Order is "non-dispositive" and pertains to discovery disputes between the parties, it should be reviewed only for an abuse of discretion.  Opposition at 7.

"To determine whether an abuse of discretion or *de novo* standard is appropriate," "a district court must look to the type of conclusion or decision made by a special master, as opposed to the circumstances surrounding the decision."  *Crowley v. Chait*, Civ. No. 85-2441, 2005 WL 8165115, at *4 (D.N.J. Feb. 22, 2005).  Here, the Appealed Order determined that certain documents were not relevant to Defendants' assertion of a defense based on Endorsement 18 because Plaintiffs had already made certain admissions by virtue of their public financial statements as a matter of law and because the sought documents were not germane to an objective

assessment of materiality.  In so doing, the Order relied upon *Shapiro* and *Munich Re*.[2]  Given that the Appealed Order interpreted these cases and applied them to find that Defendants' Procedures documents were not relevant and to hold that the Procedures documents therefore need not be produced, the Court finds that these were legal determinations that are subject to *de novo* review on appeal.[3]  Rulings in the Appealed Order as to procedural and non-dispositive issues will be reviewed for abuse of discretion in accordance with the Appointment Order.  Appointment Order ¶9.

### B.   Discoverability of the Procedures Documents

Plaintiffs' appeal first contests the holding that Endorsement 18 does not require the insurers to prove that a misrepresentation was material, thereby rendering irrelevant the insurer's Procedures documents.  Appeal Brief at 10.  Plaintiffs contend this was error, given the plain language of Endorsement 18.

---

[2] Choice of law in this suit continues to be disputed by the parties.  In fact, the appropriate scope of discovery into that issue was addressed in another portion of the Appealed Order.  *See* Appealed Order at 21–23.  *Shapiro* is a Massachusetts District Court decision that applied Massachusetts law and *Munich Re* is a New Jersey District Court decision that applied New York law.  Despite the parties' lack of agreement as to the applicable jurisdictional law, the parties and the Special Master have all looked for guidance to these cases.  The Court will therefore consider the reasoning that they embody.

[3] The Court is aware that the Appointment Order varies from Fed. R. Civ. P. 53 insofar as it expands the default scope of decisions subject to review for abuse of discretion to encompass decisions on "procedural matters and non-dispositive issues."  *Compare* Fed. R. Civ. P. 53(f) to Appointment Order ¶9.  To the extent that the Appealed Order resolves a "non-dispositive issue," and is consequently subject to review only for abuse of discretion, the Court would nevertheless reach the same conclusion even under that more deferential standard because it concludes the Appealed Order's treatment of *Shapiro* and *Munich* constitute "an errant conclusion of law or an improper application of law to fact."  *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 445 n.18 (3d Cir. 2005).

The Court has studied Endorsement 18 closely.  It sets forth circumstances under which certain insurers can deny coverage for a claim, based on a misrepresentation in the insured's insurance application:

> [I]n the event that any of the statements, warranties or representations are not accurately and completely disclosed in the Application and such inaccurate or incomplete disclosure **materially affects** either the acceptance of the risk or the hazard assumed by the Insurer under the policy, no coverage shall be afforded for any Claim alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or inaccurate statements . . . .

Endorsement 18 (emphasis added).

As Plaintiffs contend, the text of Endorsement 18 thus requires that any misstatement in the Application must be one that "materially affects" the insurer's acceptance of the risk or the hazard it assumes, to serve as a proper basis to deny coverage.  To successfully assert Endorsement 18 as a defense, Defendants would therefore need to show that a misstatement in the Application rises to this level of materiality.  The Appealed Order found that the Procedures documents were not relevant to an assessment of that materiality.  In so doing, the Order relied upon *Shapiro* and *Munich Re*.  The Court reviews those decisions, and the Appealed Order's reliance upon them, in turn.

### 1.      *Shapiro*

The Court has reviewed *Shapiro* and recognizes that there are indeed some common factual and legal issues between that case and this one.  *Shapiro* also involved a challenge to an insurer's denial of coverage under a directors and officers' liability policy ("D&O").  As part of the application for that policy, Shapiro, the company president, responded to a question that would later prove portentous:

> Question No. 14:  Does any Director or Officer have knowledge or information of any act, error or omission which might give rise to a

claim under the proposed policy?   To this question, Shapiro
answered "No."

*Shapiro*, 584 F. Supp. at 1247.  The application further provided that "[i]t is agreed that if such

knowledge or information exists any claim or action arising therefrom is excluded from this

proposed coverage." *Id*.  As part of his application, Shapiro also supplied a financial statement for

his company that grossly overstated its earnings.  *Id*. at 1247, 1249.

Shapiro was later convicted of securities fraud.  *Id*. at 1249.  The D&O insurer denied

coverage, prompting Shapiro, among others, to file suit.  *Id*. at 1245.  After discovery was

conducted, the insurer moved for summary judgment as to whether Shapiro's false statements

invalidated the policy from the start.  *Id*. at 1248.

The *Shapiro* court began by quoting a Massachusetts statute that prohibited insurers from

later asserting that a misrepresentation made by an insured is material unless the misrepresentation

was made with intent to deceive or "increased the risk of loss."  *Id*. at 1249.  The court observed

that Massachusetts cases ordinarily required a jury to assess questions as to whether a false

statement increased an insurer's risk of loss.  *Id*.  The court also acknowledged, however, a narrow

line of cases in Massachusetts that held certain misrepresentations, such as falsely saying in a life

insurance application that the applicant does not have cancer, "increase risk of loss as a matter of

law." *Id*.  Applying the law to the facts before it, the court cited both Shapiro's false financial

statement and his false response to Question 14 and concluded that "[t]hese are the very risks

against which [the insured company] was seeking insurance." *Id*.  Ultimately, the court held that

Shapiro's misrepresentation was material because it increased the risk of loss under the insurance

policy and granted summary judgment for the insurer.  *Id*. at 1250.

As Plaintiffs point out, however, the posture of *Shapiro* and the current case are markedly

different.  Here, the Court considers whether Plaintiffs are entitled to discovery, whereas *Shapiro*

decided a summary judgment motion.  Even more to the point, by its own terms the decision in *Shapiro* hinged largely on the defendants' uncontradicted evidence.  In fact, the decision itself is replete with references to the evidence presented on the summary judgment motion, and the lack of factual dispute as to key issues.  *See, e.g.*, *Shapiro* at 1250 ("Parties opposing summary judgement point to no evidence" contradicting the materiality of Shapiro's misrepresentations); *id.* at 1249 ("there is no dispute of fact over whether Shapiro's misrepresentation concerned matters that increased the risk of loss under the D&O policy"); *id.* at 1248 *(*"no evidence has been called to the court's attention by any party that would support a contention that there is a genuine dispute over this factual issue.  Thus, on this issue, this case is within that very exceptional group in which summary judgment for the party with the burden of proof is appropriate."); *id.* at 1250–51 ("I determine that there are no disputes as to the facts that Shapiro made material misrepresentations on the insurance application that increased the [insurer's] risk of loss.").

*Shapiro* does not explain how or why its plaintiffs failed to provide evidence to dispute the materiality of the misrepresentations at issue on summary judgment.  Clearly, however, that evidence—or lack thereof—was not just relevant to the issue but dispositive of it.  Read with an eye to its posture and the basis for its ruling, *Shapiro* therefore cautions insured plaintiffs against reaching the summary judgment stage without evidence to rebut their insurer's claims that an alleged misrepresentation in the application was material.

*Shapiro* did not hold that "misrepresentations in public filings and financial statements are material to a D&O insurer *as a matter of law*," as advocated by Defendants in their briefing and during the hearing before the Special Master.  *See* Joint Letter at 21; Transcript of the Hearing before Special Master Wolfson, Joint Appendix, Vol. A-2, Doc. No. 2 at page 74, line 21 to page 75, line 1 ("the [Shapiro] Court held that misrepresentations in a public filing or financial

statements are material to a [D&O] insurer as a matter of law."). Rather, the *Shapiro* court held, *as a matter of law*, that the misrepresentations were material. Innocuous as it may seem, the position of the prepositional phrase "as a matter of law" in the sentence matters. *Shapiro* was a decision on a motion for summary judgment. The Massachusetts cases it relied upon were analogous insofar as they were appeals from denials of motions for a directed verdict, *i.e.*, they were also requests for judgment as a matter of law. *See Pahigian v. Manufacturer's Life Ins. Co.*, 206 N.E.2d 660, 665 (1965); *Lennon v. John Hancock Mutual Life Insurance*, 157 N.E.2d 518, 519 (1959). The Massachusetts supreme court in both cases reversed the underlying jury verdicts because there were no factual disputes. *See Pahigian*, 206 N.E.2d at 665 (finding no evidence to dispute that plaintiff died of Hodgkin's disease that he had failed to disclose to the insurer, and that the record was "replete with uncontested evidence of the seriousness of Hodgkin's disease."); *Lennon*, 157 N.E.2d at 520 (finding no question of fact as to whether the plaintiff had previously undergone surgery for cancer and had failed to disclose it to the insurer as part of his application). In short, neither *Shapiro* nor the cases it relied upon created black letter law that automatically requires a finding of materiality for insurers who were the victims of certain kinds of misrepresentations in an application. Those cases stand only for the uncontroversial idea that an insurer, like any party, is entitled to judgement as a matter of law when there is no genuine issue of material fact.

In short, *Shapiro* counsels in favor of granting Plaintiffs access to the information they need to test Defendants' assertions with respect to the materiality of the misrepresentations alleged in this case. To the extent the Appealed Order interpreted *Shapiro* differently, the Court concludes this was error.

2.      *Munich Re*

The other case that the parties both interpret as supporting their positions is *Munich Re*. That case was decided in this District and, like this one, was an insurance suit, but it involved retrocessional agreements between two insurance companies, plaintiff Munich Re and defendant ANICO.  *Munich Re*, 999 F. Supp. 2d at 690.  In short, ANICO agreed to reinsure Munich Re against a portion of the liability Munich Re had taken on with respect to an Everest Program. ANICO later refused to pay a claim under the policy, and Munich Re sued.  ANICO asserted various defenses and counterclaims, including a counterclaim for rescission based on Munich Re's failure to meet its burden of utmost good faith to ANICO during the underwriting process.  *Id*. at 736–37.  As the Court in *Munich Re* observed, the applicable case law in New York required, per the utmost good faith standard, that the reinsured disclose "all 'material facts' regarding the original risk of loss" during the underwriting process.  *Id.* at 737.  In the Second Circuit, a fact is deemed material "only if a reasonable insured should have believed the fact was something the insurer would consider material . . . as of the time the contract was entered into."  *Id*.  "[T]he standard for determining materiality is an objective one; a court may not rely merely on statements by representatives of the insurer that it would not have issued the policy but for the representation." *Id*. at 738.

The Court in *Munich Re* conducted a nine-day bench trial.  *Id*. at 690.  In support of its rescission counterclaim, ANICO introduced factual evidence and expert testimony to support its assertion that the information Munich Re did not share with ANICO met the materiality requirement.  The factual evidence included documents and testimony from both Munich Re's underwriter and from ANICO's own underwriter.  *Id*. at 743.  Specifically, ANICO entered testimony from Munich Re's underwriter and internal Munich Re documents as to its assessment

of the risk posed by underwriting a portion of the Everest Program liability.  The court held that

the internal Munich Re underwriting evidence did not show materiality of that information to

ANICO because the considerations and the analyses for their respective layers of insurance were

different:

> Similarly, [the Munich underwriter's] testimony does not show that Munich considered this information material to the underwriting of ANICO's retrocessional cover. Rather, Munich's internal documents reflect what was important with respect to the entire liability that Munich had assumed from Everest . . . *Although the retrocessional coverage that Munich sought and obtained through [ANICO's underwriter] was a carve-out of Munich's layer[,] . . . **the facts show that the expectations for the performance of the carve-out were significantly different than those for the portion of cover that Munich would retain under the Retrocession Agreements*** . . . [The Munich underwriter's] testimony fails to support ANICO's argument that, under an objective standard, Munich's undisclosed internal knowledge was material to [the ANICO underwriter's] underwriting of the retrocessional coverage. [4]

*Id*. at 744 (emphasis added).

ANICO's underwriter testified that if she had been provided with internal information and

analyses that Munich withheld regarding the risks of the underlying programs being insured, she

might not have chosen to offer coverage on behalf of ANICO, or she might have required a

different rate.  *Id*.  *Munich Re* held that this was insufficient for two different reasons.  The reason

applicable to this case is that materiality must be determined by an objective standard; as a result,

---

[4] Read in its full context, this sentence is not holding that Munich Re's information could not have informed an objective assessment of materiality because it was undisclosed and internal.  Rather, the sentence is summarizing the whole paragraph, which distinguishes between the parties' analyses for the two levels of insurance involved.  *Munich Re* also implies this point in a later footnote.  *See Munich Re*, 999 F. Supp. 2d at 744 n.1 ("For the same reason, I find that ANICO has not shown it was material that Munich was expecting an underwriting loss . . . .  Munich's underwriting calculations concerned a different amount of coverage and a different premium than that of ANICO.").

the *Munich Re* court refused to rely solely on statements made by ANICO in support of its own claim:

> I cannot rely merely on statements from [the ANICO underwriter] that [it] might not have underwritten retrocessional coverage of the Everest program had it known what Munich knew. *First Fin. Ins. Co.*, 193 F.3d at 119 ("A court may not rely merely on statements by representatives of the insurer that it would not have issued the policy but for the representation.") (Emphasis added; citing *Feldman v. Friedman*, 241 A.D.2d 433, 433, 661 N.Y.S.2d 9 (N.Y. 1st Dep't 1997)). In any event, [the ANICO underwriter] did not even testify that knowledge of the undisclosed information would have actually affected her underwriting decision, only that there was a possibility that it could. Such testimony is insufficient to show that, under an objective standard, the undisclosed information was material.

*Id.* at 744.[5]

Notably, the objective standard did not cause the Court to disregard the self-serving fact testimony from an insurer; it merely cautioned against relying exclusively upon it. *Id.* More important, the objective standard espoused by *Munich Re* also did *not* lead the Court to ignore internal evidence regarding ANICO's underwriter's procedures that contradicted its self-serving testimony. In fact, *Munich Re* explicitly weighed evidence as to the applicable internal standard operating procedure used by ANICO's underwriter, together with the parties' course of dealing, against ANICO's testimony. *Id.* at 744–45 ("Moreover, the evidence ANICO presented concerning [its underwriter's] underwriting procedures also militates against a finding of materiality with respect to Munich's undisclosed internal reviews.").

Ultimately, the Court held the underwriter's testimony:

> that the undisclosed information was material to her underwriting process is not credible. In sum, it is ANICO's burden to show that an underwriter would reasonably find such undisclosed information

---

[5] The second reason, less relevant here, was that ANICO's underwriter testified only that the undisclosed information *might have* affected her decision to underwrite, rather than that it *would have* affected her decision. *Id.* at 744.

> to be material to the underwriting process; here ANICO has failed
> to show that even its own underwriter considered such information
> material . . . .

*Id.* at 745.  Thus, the *Munich Re* Court actually considered evidence of ANICO's underwriting procedures but then rejected it.

The *Munich Re* decision is relatively complex, but its application to the case presently before the Court is straightforward.   Given *Munich Re*'s articulation and application of the objective standard for materiality—in particular its consideration of the insurer's own procedures—*Munich Re*'s reasoning cannot support the bar of discovery related to Defendants' Procedures documents based on lack of relevance.  In fact, it requires the opposite conclusion.  To the extent the Appealed Order relies upon *Munich Re* to find that the Procedures documents are not relevant to an assertion of a defense under Endorsement 18, the Court hereby concludes this was reversible error.

### 3.     After Relevance

Based on the language of Endorsement 18, together with the Court's reading of both *Shapiro* and *Munich Re*, the undersigned finds that: (1) Defendants asserting the Endorsement as an affirmative defense are required to make a showing of materiality, and (2) the Procedures documents sought by Plaintiffs are relevant to that issue and are therefore discoverable.  The Court therefore reverses the Appealed Order in this regard.

The scope of the documents to be produced by Defendants requires at least one additional step:  an assessment of the proportionality of that discovery to the needs of this case under Rule 26(b)(1).  The record suggests that Defendants have only vaguely raised the burden of producing the Procedures documents.  The parties did not put that issue before the Court on this appeal, nor would it have been appropriate to raise it on appeal in the first instance.  Defendants should now

be afforded an opportunity to make a showing as to burden if they so choose. The Court will therefore remand the consideration of proportionality, and any other appropriate considerations, to the Special Master and commit to his care the ultimate decision as to the scope of the discovery to be compelled on this issue.

### C.    Request to Strike

Finally, Plaintiffs also seek to strike related comments in the Appealed Order at pages 20 through 21 and footnote 6 because Plaintiffs deem them premature. Defendants do not defend these comments on the merits, but instead fault Plaintiffs for failing to cite to any rule or authority for seeking that relief. Neither of the parties assert that these portions of the Appealed Order constitute binding findings of fact. The Court has reviewed the statements, and while it recognizes Plaintiffs' concerns that they touch on dispositive issues in dispute between the parties, it is clear that these were comments rather than binding factual findings that could be deemed law of the case. With that clarification, the Court will deny Plaintiffs' request.

### VI.    CONCLUSION

For the foregoing reasons, and for good cause shown,

**IT IS** on this **30th** day of **December, 2020**,

**ORDERED** that Plaintiffs' Partial Appeal is **GRANTED IN PART and DENIED IN PART** as set forth below; and it is further

**ORDERED** that the Appealed Order is **REVERSED** insofar as it denied Plaintiffs' request for discovery pertaining to procedures that "explain and demonstrate the information Defendants themselves treat as material in assessing risk thresholds, setting the premium pricing, and issuing the policies"; and it is further

**ORDERED** that the issue of proportionality and other considerations regarding the scope of the discovery to be permitted is **REMANDED** to the Special Master; and it is further

**ORDERED** that Plaintiffs' request to strike certain non-binding comments from the Appealed Order is **DENIED**; and it is further

**ORDERED** that the parties are to contact the Special Master within one week of the entry of this Order to address how to next proceed.


_____
LOIS H. GOODMAN
United States Magistrate Judge