# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

```
-------------------------------------------------------------x
```

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC.; VALEANT PHARMACEUTICALS INTERNATIONAL; and AGMS, INC., | : : : : |
| Plaintiffs, | : : |
| v. | : : |
| AIG INSURANCE COMPANY OF CANADA; ACE INA INSURANCE COMPANY; ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; ARCH INSURANCE CANADA LTD; EVEREST INSURANCE COMPANY OF CANADA; HARTFORD FIRE INSURANCE COMPANY; IRONSHORE CANADA LTD; LIBERTY INTERNATIONAL UNDERWRITERS, a division of LIBERTY MUTUAL INSURANCE COMPANY; and LIBERTY MUTUAL INSURANCE COMPANY; LLOYD'S UNDERWRITERS; LLOYD'S CONSORTIUM 9885 (a/k/a STARR FINANCIAL LINES CONSORTIUM 9885); LLOYD'S SYNDICATE ANV 1861; LLOYD'S SYNDICATE AMA 1200; LLOYD'S SYNDICATE ARGO 1200; LLOYD'S SYNDICATE AWH 2232; LLOYD'S SYNDICATE BRT 2987; LLOYD'S SYNDICATE CVS 1919; LLOYD'S SYNDICATE HCC 4141; LLOYD'S SYNDICATE MITSUI 3210; LLOYD'S SYNDICATE MIT 3210; LLOYD'S SYNDICATE NAV 1221; LLOYD'S SYNDICATE QBE 1886; LLOYD'S SYNDICATE SJC 2003; ROYAL & SUN ALLIANCE INSURANCE COMPANY OF CANADA; TEMPLE INSURANCE COMPANY and XL INSURANCE COMPANY SE., | Civil Action. No: 3:18-CV-00493 (MAS) (LHG) **DEFENDANT ALLIANZ GLOBAL RISKS US INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF SETTLEMENT AGREEMENT(S)** **ORAL ARGUMENT REQUESTED** |
| Defendants. | : |

```
-------------------------------------------------------------x
```

#2127311

# TABLE OF CONTENTS

**Page**

INTRODUCTION…………………………………………………………  1

STATEMENT OF FACTS……………………………………………...  4

ARGUMENT

    I.    STANDARD OF REVIEW…………………………………. 12

    II.    DEFENDANTS' SUPPLEMENTAL REQUESTS ARE
          NOT OVERBROAD………………………………………… 14

    III.    THE REQUESTED DOCUMENT(S) ARE HIGHLY
          RELEVANT TO VALEANT'S BURDEN OF PROVING
          EXHAUSTION OF THE AIG AND AWAC POLICIES'
          LIMITS OF LIABILITY AND RETENTION, AND
          VALEANT'S CLAIM FOR DECLARATORY RELIEF
          AND REMAINING DEFENDANT-INSURERS'
          DEFENSES IN THIS
          ACTION…………………………………………………. 14

    IV.    PRODUCTION OF THE REQUESTED DOCUMENT(S)
          WOULD NOT VIOLATE ANY THIRD-PARTY
          RIGHTS BECAUSE SUCH PRODUCTION WOULD
          BE SUBJECT TO THE DISCOVERY
          CONFIDENTIALITY ORDER IN EFFECT IN THIS
          ACTION………………………………………………….. 17

    V.    IF THE INSTANT MOTION TO COMPEL IS
          GRANTED, ALLIANZ SHOULD BE AWARDED
          REASONABLE EXPENSES, INCLUDING
          ATTORNEY'S FEES………………………………………. 19

    VI.    CONCLUSION………………………………………….. 21

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Continental Cas. Co. v. Peerless Indus.*,
   No. 06-4621, 2008 U.S. Dist. LEXIS 66910
   (E.D. Pa. Aug. 29, 2008)…………………………………………… 13-14

*DIRECTV, Inc., v. Puccinelli*,
   224 F.R.D. 677 (D. Kan. 2004)…………………………………….. 18

*Hammock v. Hoffman-LaRoche, Inc.*,
   142 N.J. 356 (1995)…………………………………………………… 19

*Hickman v. Taylor*,
   329 U.S. 495 (1947)……………………………………………… 12

*In re Cendant Corp. Sec. Litig.*,
   343 F.3d 658 (3d Cir. 2003)………………………………………… 13

*Koch Indus., Inc. v. Columbia Gas Transmission Corp.*,
   No. 89-2156, 1990 WL 72789 (E.D. La. May 29, 1990)……………19

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)……………………………………………… 12

*Pfizer v. Mylan*,
   No. 10-3246 (DMC) (JAD), 2012 U.S. Dist. LEXIS 199589
   (D.N.J. Jan. 4, 2012)……………………………………………..13

*Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*,
   254 F.R.D. 568 (N.D. Cal. 2008)…………………………………….. 13

*Sippel Dev. Co., Inc. v. Western Sur. Co.*,
   No. 05-46, 2007 U.S. Dist. LEXIS 27644
   (W.D. Pa. Apr. 13, 2007)………………………………………….. 17-18

# TABLE OF AUTHORITIES
## (Cont'd.)

**Cases**                                                                  **Page(s)**

*Sonnino v. Univ. of Kan. Hosp. Auth.*,
  No. 02-2576 (KHV-DJW), 2004 U.S. Dist. LEXIS 6220
  (D. Kan. April 8, 2004)…………………………………………… 18

*Thomas & Marker Constr. Co. v. Wal-Mart Stores, Inc.*,
  No. 3:06-cv-406 (TMR), 2008 U.S. Dist. LEXIS 93717
  (S.D. Ohio Aug. 6, 2008)…………………………………………...18

*Wyeth v. Orgenus Pharma*,
  No. 09-3235 (FLW), 2010 U.S. Dist. LEXIS 111004,
  (D.N.J. Oct. 19, 2010)………………………………………… 12, 13

**Federal Rules of Civil Procedure**

FED. R. CIV. P. 26…………………………………………………  1

FED. R. CIV. P. 26(b)(1)………………………………………… 12, 20

FED. R. CIV. P. 34………………………………………………… 13

FED. R. CIV. P. 37…………………………………………………  1

FED. R. CIV. P. 37(a)……………………………………………… 13

FED. R. CIV. P. 37(a)(3)(A)……………………………………………13.20

FED. R. CIV. P. 37(a)(5)(A)………………………………………  3

## <u>INTRODUCTION</u>

Pursuant to the March 7, 2022 Scheduling Order entered by Special Master Hon. Douglas K. Wolfson, J.S.C. (Ret'd.) (as amended on consent of the parties), Rule 37 and Rule 26 of the Federal Rules of Civil Procedure, and following from a meet and confer with counsel for Plaintiffs Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International and AGMS, Inc. (collectively, "Plaintiffs" or "Valeant"), Defendant Allianz Global Risks US Insurance Company ("Allianz") submits this Memorandum of Law in support of its Motion to Compel the production of the settlement agreement(s)[1] Plaintiffs entered into with Defendant AIG Insurance Company of Canada ("AIG") and Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy Number QB078513 and/or Allied World Assurance Company (collectively, "AWAC") relative to the issues in controversy between them involving the claims arising from the underlying Allergan Actions (collectively, the "Subject Settlement Agreement(s)").[2]

---

[1] Allianz understands that AIG and AWAC each executed one settlement agreement with Plaintiffs governing both the underlying Allergan Actions (implicating the 2013-2014 Valeant insurance program) and the separate resolved Stock Drop Litigation (implicating the 2015-2016 Valeant insurance program). Because Allianz has not yet received any requested settlement agreement, it refers to the documents it seeks by way of the instant motion as agreement(s) and Subject Settlement Agreement(s).

[2] Allianz understands that the remaining insurer-defendants all join in the filing of the instant Motion to Compel.

AIG issued a primary directors and officers ("D&O") liability policy to Valeant for its 2013-2014 insurance program and AWAC issued a first-tier excess D&O liability policy to Valeant directly above AIG's primary policy. The AIG and AWAC policies are the policies directly underlying the excess D&O liability policies issued by the remaining defendant-insurers in this action. After AIG and AWAC settled with Plaintiffs and were dismissed from this action, Allianz, on behalf of all remaining defendant-insurers, requested production of the Subject Settlement Agreement(s) as they contain provisions that are relevant to: (i) Plaintiffs' claims for coverage and declaratory relief (including Plaintiffs' burden of proving proper exhaustion of underlying policy limits); (ii) amounts paid by AIG and AWAC for indemnity and defense of the Allergan Actions ; and (iii) remaining defendant-insurers' defenses to Plaintiffs' claims for coverage and declaratory relief.

Plaintiffs steadfastly refuse to produce the Subject Settlement Agreement(s) and inaccurately claim that Defendants' requests for the agreement(s) are "overbroad" and "seek irrelevant information." There can be no genuine dispute that the Subject Settlement Agreement(s) are highly relevant to whether the AIG and AWAC underlying policy limits and retention were properly exhausted, and what amounts of the settlement were made for indemnity or defense.

Plaintiffs also persist in refusing to produce the Subject Settlement Agreement(s), objecting on the grounds that Defendants "seek confidential

information protected under the law and public policy," as well as "information subject to confidentiality provisions" in the settlement agreement(s) themselves. The Third Circuit, however, does not recognize any "settlement privilege" automatically shielding settlement agreements from disclosure, and private parties cannot limit a Court's authority to compel the production of relevant documents through a mutual accord. Further, given the Discovery Confidentiality Order already in place in this action, it is unclear what potential harm or prejudice would befall AIG or AWAC as a result of Plaintiffs' production of the Subject Settlement Agreement(s) pursuant to the Order's terms. Indeed, it is Allianz's understanding that the Settlement Agreements were filed under seal in the Canadian stock drop action and that certain defendant insurers' Canadian counterparts are able to access the agreements. As such, none of Plaintiffs' stated objections are sustainable to overcome Allianz's particularized need for the highly relevant discovery it seeks.

Lastly, if this Motion to Compel is granted, Allianz respectfully requests that it be granted its reasonable expenses incurred in bringing the motion, including attorneys' fees, pursuant to FED. R. CIV. P. 37(a)(5)(A).

## STATEMENT OF FACTS[3]

Valeant seeks to recover from the remaining defendant-insurers in this action amounts it paid for the defense and settlement of two underlying class actions consolidated under the caption *In re Allergan, Inc. Proxy Violation Sec. Litig.*, Case No. 8:14-cv-02004 (DOC) (KES) (the "Allergan Actions") brought by former shareholders of Allergan, Inc. who alleged that Valeant orchestrated an illegal insider trading and front-running scheme in Allergan securities. [ECF 1-1]. In June of 2021, AIG and AWAC reached settlements with Plaintiffs as to all issues in controversy between them regarding all claims arising from the Allergan Actions as well as the various stock drop suits and claims filed against Plaintiffs referenced in their Complaint at pages 25-28. [ECF 263, ECF 264, ECF 1-1].

AIG issued Executive Edge Management Liability Insurance Policy No. 01-421-57-69 (the "AIG Primary Policy") to Valeant Pharmaceuticals International, Inc. for the policy period September 28, 2013 to September 28, 2014. The AIG Primary Policy has a **Limit of Liability** of USD $10 million for all **Loss** in the aggregate and an applicable Retention of USD $5 million. Allied World Assurance

---

[3] As the Special Master is well-acquainted with the factual background of this litigation, this section of Allianz's Memorandum of Law is limited to those facts pertinent to the resolution of the subject Motion to Compel.

Company, through Lloyd's Syndicate 2232, issued the First Excess Insurance

Contract No. QB078513 (the "AWAC Excess Policy").

The AWAC Excess Policy is a "follow form" excess Directors & Officers'

Liability Insurance, incorporating the terms and conditions of the AIG Primary

Policy to the extent they are not expressly different (or subject to applicable law).

The AWAC Excess Policy sits excess the "underlying insurance", which is the AIG

Primary Policy of USD $10 million and Valeant's self-insured retention of USD $5

million, and has a limit of liability of USD $10 million. The AWAC Excess Policy

is only triggered upon the exhaustion "by reason of payment of loss" of "underlying

insurance". Relevant provisions of the AWAC Excess Policy are:

> A. *Underwriters shall provide the Insured with Insurance during the Policy Period, as set forth in Item 2 of the Declarations, which is excess of the total limits of liability and any retention or deductible amounts under the Underlying Insurance, as set forth in Item 6 of the Declarations.*
>
> B. *Except as otherwise provided in the Declarations or by an endorsement attached hereto, this policy is subject to the same insuring clause, definitions, terms and conditions, exclusions, cancellation provisions and all other provisions of the Underlying Insurance. This policy shall not provide coverage broader than that provided by the Underlying Insurance (…)*
>
> C. *This policy provides excess coverage only. It is a condition of this policy that the Underlying Insurance shall be maintained in full effect during the term of this policy, except by any reduction or exhaustion of the*

> *aggregate limits contained therein by reason of payment*
> *of loss…*

By way of this Motion to Compel, Allianz seeks the production, subject to the Discovery Confidentiality Order, of the written settlement agreement(s) memorializing the AIG and AWAC settlements of the Allergan Actions with Plaintiffs.

Allianz issued Excess Directors and Officers and Company Reimbursement Insurance policy number FLP 7223891 to Valeant Pharmaceuticals International, Inc. for the policy period September 28, 2013 to September 28, 2014 (the "Allianz Excess Policy"). The Allianz Excess Policy's limits are USD $10 million aggregate excess of USD $20 million and the $5 million self-insured retention. The Allianz Excess Policy contains the following insuring agreement:

**I. INSURING         AGREEMENT         AND MAINTENANCE         OF         UNDERLYING INSURANCE**

In consideration or the premium paid Underwriters and the Insured agree as follows:

**A.** Underwriters shall provide the Insured with insurance during the Policy Period, as set forth in Item 2 of the Declarations, which is excess of the total limits of liability and any retention or deductible amounts under the Underlying Insurance, as set forth in Item 6 of the Declarations.

**B.** Except as otherwise provided in the Declarations or by any endorsement attached hereto, this policy is subject to the same insuring clauses, definitions,

6

> terms and conditions, exclusions, cancellation provisions and all other provisions of the Underlying Insurance. This policy shall not provide coverage broader than that provided by any Underlying Insurance …
>
> **C.** This policy provides excess coverage only. It is a condition of this policy that the Underlying Insurance shall be maintained in full effect during the term of this policy, except by any reduction or exhaustion of the aggregate limits contained therein by reason of payment of loss. …

*See* Allianz Policy Number FPL 7223891, Ex. A, Declaration of Suzanne C. Midlige, Esq. submitted herewith (hereinafter the "Midlige Dec."). Section **II.B**. of the Allianz Excess Policy states:

> **B.** Underwriters shall be liable hereunder only after the Insurers of the Underlying Insurance, the Insured and/or any insurer providing coverage for loss on a difference in conditions basis, if applicable, shall have paid or have been held liable to pay the full amount of the limits of liability of the Underlying Insurance.

*See id.* As the Allianz Excess Policy requires exhaustion of all underlying insurance policy limits prior to responding to any given loss, and as questions exist as to the amounts paid by AIG and AWAC for settlement of the Allergan Actions, Allianz, on behalf of all remaining defendant-insurers, served discovery on Plaintiffs requesting copies of the Subject Settlement Agreement(s). *See* Defendants' Supplemental Request for Production of Documents ("Defendants' Supplemental Requests"), Ex. B, Midlige Dec. Defendants' Supplemental Request seeks:

1.    [a] complete copy of any and all settlement agreements entered between or on behalf of Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International, AGMS, Inc. and/or AIG Insurance Company of Canada as to the issues in controversy between them in this matter involving the claims arising from the Allergan Actions [and]

2.    [a] complete copy of any and all settlement agreements entered between or on behalf of Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International, AGMS, Inc. and/or Certain Underwriters at Lloyd's, London Subscribing to Policy Number QB078513 as to the issues in controversy between them in this matter involving the claims arising from the Allergan Actions.

*See id*.  It was understood by all that the production of the requested settlement agreement(s) would be protected by the Discovery Confidentiality Order already in place in this action. [ECF 140].

On October 28, 2021, Plaintiffs categorically objected to Defendants' Supplemental Requests:

as overbroad, seeking information that is irrelevant to any issue in this case, and seeking information that is subject to confidentiality protections under the law and public policy and subject to confidentiality restrictions in Valeant's settlement agreement with [AIG and AWAC].

*See* Plaintiffs' Responses and Objections to Defendants' Supplemental Requests for Production of Documents, Ex. C, Midlige Dec.

8

Counsel for the parties subsequently met and conferred on various occasions to discuss Plaintiffs' production of redacted version(s) of the Subject Settlement Agreement(s) because the agreement(s) apparently contain provisions related not only to Plaintiffs' claims for coverage regarding the Allergan Actions, but also Plaintiffs' claims for coverage regarding the separate Stock Drop Litigation involving Valeant's 2015-2016 insurance program. On April 14, 2022, Valeant proposed:

> to produce a redacted version of the AIG/AWAC Confidential Settlement Agreement and Mutual Release which redacts all provisions and sections other than the following (which will confirm full exhaustion of the 2013-14 AIG and AWAC policies):  Recitals, Defined Terms which relate to the Allergan Claims (with Stock Drop terms redacted), Settlement Payments only for the 2013 Policies and/or the Allergan Claims, Mutual Releases, Dismissal with Prejudice, Exhaustion of 2013 Policies, Confidentiality, and Covenant Not to Sue.  This document shall be subject to the full protection of the Confidentiality Order in this case.

*See* April 14, 2022 email from John E. Failla, Esq., Ex. D, Midlige Dec. As Plaintiffs' counsel had previously indicated he would need to secure the consent of AIG and AWAC to any production of the Subject Settlement Agreement(s), counsel for Allianz requested a joint call with counsel for AIG and AWAC to determine, in the interests of efficiency, whether AIG and AWAC would consent in the first instance to the production of the Subject Settlement Agreement(s) in full or in some redacted form subject to the terms of the Discovery Confidentiality Order. *See* April

15, 2022 email from Luciana Lalande, Esq., Ex. E, Midlige Dec. On that same day,

Plaintiffs' counsel refused, writing:

> [t]he approach you propose on the settlement agreement is
> not acceptable. We must first determine if the parties can
> reach agreement on the redacted document, *i.e.*, whether
> Defendants accept our proposal. If we cannot reach
> agreement, then it is irrelevant whether or not AIG/AWAC
> has any objection. If we reach agreement, then we would
> determine jointly whether we are free to proceed or
> whether notice is required to AIG/AWAC, in which case
> we would jointly seek an answer as to whether or not either
> has an objection to production of the redacted document.
>
> The ball is in your court – please tell us whether or not we
> have an agreement on the proposal we made.

*See* April 15, 2022 email from John E. Failla, Esq., Ex. F, Midlige Dec. On April

15, 2022, counsel for Allianz again requested a joint call with counsel for AIG and

AWAC in the interests of efficiency and to avoid motion practice, questioning the

harm in contacting counsel to resolve the discovery dispute:

> [w]ith all respect, I disagree. It will be a waste of all our
> time and resources, and we will all incur needless expense
> on behalf of our clients, if we spend a significant amount
> of time negotiating an agreement only to be told
> afterwards that Plaintiffs are forbidden to produce
> anything because AIG and/or AWAC refuse to consent to
> any production. What is the harm of having a joint call
> with counsel in advance to prevent this?

*See* April 15, 2022 email from Luciana Lalande, Esq., Ex. G, Midlige Dec. Plaintiffs'

counsel continued to refuse to a joint call with counsel for AIG and AWAC:

> [u]nless we have an agreement, then you need to file your
> motion.  We object to producing the unredacted document,
> regardless of AIG/AWAC objections. If we have an
> agreement, then we can approach [AIG]/AWAC and the
> Court as a group and maximize the likelihood that this will
> be resolved without significant expense.  As for your point
> of incurring time to negotiate an agreement, that makes no
> sense, as there is not much more to discuss in light of our
> proposal, and we would need to (*sic*) that anyway to
> resolve your motion. None of this proceeds (*sic*) unless we
> reach an agreement.

*See* April 15, 2022 email from John E. Failla, Esq., Ex. H, Midlige Dec. Again, on

April 18, 2022, counsel for Allianz reached out to Valeant's counsel with the hopes

of resolving this discovery dispute:

> I still don't see the harm with a joint call to counsel for
> AIG/[AWAC] and I don't view this as a game. I'm
> working towards resolving this discovery dispute as
> efficiently as possible for all involved and with the hopes
> of not bothering Judge Wolfson with a motion that could
> just have easily been resolved amongst the parties and
> their attorneys. Your proposal will be considered by
> Defendants and I will revert back as soon as I can.

*See* April 18, 2022 email from Luciana Lalande, Esq., Ex. I, Midlige Dec.

On April 19, 2022, Defendants advised Plaintiffs that they could not accept a

redacted version of the Subject Settlement Agreement(s). *See* April 19, 2022 email

from Luciana Lalande, Esq., Ex. J, Midlige Dec. As such, despite its best efforts to

meet and confer in good faith to resolve this discovery dispute, Allianz is constrained

to file this Motion to Compel.

# **ARGUMENT**

## I.   **STANDARD OF REVIEW**

The scope of discovery under the Federal Rules of Civil Procedure is unquestionably broad. As stated in *Wyeth v. Orgenus Pharma*:

> [p]ursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence".

*See* No. 09-3235 (FLW), 2010 U.S. Dist. LEXIS 111004, at *9-10 (D.N.J. Oct. 19, 2010) (citing FED. R. CIV. P. 26(b)(1)). Since Rule 26 is to be construed liberally, it undoubtedly favors the exchange of relevant discovery between parties involved in litigation. The broad scope of discovery rules and the liberal interpretation given them by the courts demonstrates that Congress realized that a "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947). Speaking on the meaning of "relevancy" in the discovery context, the Supreme Court held that "'relevant to the subject matter involved in the pending action' – has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citations omitted).

Consistent with the above-cited principles, Rule 37(a) allows a party to file a motion to compel where the opposing party fails to respond adequately to a document request propounded pursuant to Rule 34. *See* FED. R. CIV. P. 37(a)(3)(A). In deciding such motions, courts draw a sharp distinction between the relevance standard applicable to discovery "with the standard for admissibility of evidence at trial" – with the former's far lower threshold reflecting a desire for robust discovery. *See, e.g., Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 583 (N.D. Cal. 2008). Ultimately, it is within the discretion of the district court to grant a motion to compel disclosure for good cause shown. *See Wyeth*, *supra*, 2010 U.S. Dist. LEXIS 111004 at *10 (citing *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661 (3d Cir. 2003)).

The relief Allianz seeks by way of this Motion to Compel is by no means novel – neither in this district, *see Pfizer v. Mylan* (*In re Pfizer*), No. 10-3246 (DMC) (JAD), 2012 U.S. Dist. LEXIS 199589, at *4-5 (D.N.J. Jan. 4, 2012) (ordering production of confidential settlement agreement under confidentiality order entered in that case after balancing admissibility of confidential settlement negotiations under Federal Rule of Evidence 408 with Rule 26's mandate for open and broad discovery of relevant information and the "burgeoning case law regarding the production of settlement agreements") (citing *Wyeth*, *supra*, 2010 U.S. Dist. LEXIS 111004 and the cases cited therein), nor in this circuit. *See e.g.*, *Continental Cas. Co.*

*v. Peerless Indus.*, No. 06-4621, 2008 U.S. Dist. LEXIS 66910, at *8-9 (E.D. Pa. Aug. 29, 2008) (finding confidential settlement agreements between insured and primary insurer were relevant or may lead to potentially relevant evidence in insurance coverage dispute involving underlying asbestos liabilities and ordering the production of same marked "For Counsels' Eyes Only").

## II.   DEFENDANTS' SUPPLEMENTAL REQUESTS ARE NOT OVERBROAD

Plaintiffs' objection that remaining defendant-insurers' requests for the Subject Settlement Agreement(s) are "overbroad" is simply without merit. The requests were specifically tailored to the settlement agreements Plaintiffs reached with AIG and AWAC regarding the underlying Allergan Actions and this coverage action. *See* Defendants' Supplemental Discovery Requests, Ex. B, Midlige Dec. (requesting settlement agreements "involving the claims arising from the Allergan Actions").

## III.   THE REQUESTED DOCUMENT(S) ARE HIGHLY RELEVANT TO VALEANT'S BURDEN OF PROVING EXHAUSTION OF THE AIG AND AWAC POLICIES' LIMITS OF LIABILITY, AND RETENTION, AND VALEANT'S CLAIM FOR DECLARATORY RELIEF AND REMAINING DEFENDANT-INSURERS' DEFENSES IN THIS ACTION

The Subject Settlement Agreement(s) are directly relevant to and are reasonably calculated to lead to the discovery of admissible evidence in this case, concerning a critical component of Valeant's claim for insurance coverage against

the remaining defendant-insurers upon which Valeant bears the burden of proof –
the exhaustion of underlying policy limits and retention. Indeed, the exhaustion of
underlying policy limits is also a main component of remaining defendant-insurers'
defenses in this action. Allianz can only be liable under the Allianz Excess Policy
"after the Insurers of the Underlying Insurance, the Insured and/or any insurer
providing coverage for loss on a difference in conditions basis, if applicable, shall
have paid or have been held liable to pay the full amount of the limits of liability of
the Underlying Insurance." Without the Subject Settlement Agreement(s), neither
Plaintiffs nor Allianz can establish whether AIG or AWAC paid their respective
limits for the alleged loss at issue in this case. The issue of exhaustion of underlying
policy limits is a critical coverage issue both as to Plaintiffs' affirmative claim
seeking to establish coverage under the remaining defendants-insurers' policies in
this declaratory judgment action and many of Allianz's defenses in this matter. [ECF
80 (First Defense (failure to state a claim); Eighteenth Defense (conditions
precedent); Twentieth Defense ("because the Insurers of the Underlying Insurance
have not paid or been held liable to pay the full amount of the Limits of Liability of
the Underlying Insurance")]. Accordingly, the Subject Settlement Agreement(s) are
highly relevant and discoverable.

   In addition, the Subject Settlement Agreement(s) may contain provisions
delineating the method in which the AIG and AWAC settlement proceeds were to

be allocated – *i.e.*, between indemnity payments and defense payments, between the settling parties, and/or as related to the claims made against the underlying parties involved, such as the claims against Michael Pearson (Valeant's former Chairman and CEO and Valeant USA's former President) and the claims against Valeant. Such information is highly relevant to remaining defendant-insurers' claims and defenses in this action, including but not limited to Allianz's defenses concerning the issue of allocation. [ECF 80 (Seventh, Eighth, and Twenty-Fourth Defenses)].

Lastly, the Subject Settlement Agreement(s) may contain admissions against interest by Plaintiffs that may bear on the exhaustion of underlying policy limits, allocation of settlement payments and/or any other issue relevant to resolution of the matters in dispute in this litigation. Remaining defendant-insurers could therefore be entitled to use the Subject Settlement Agreement(s) as affirmative evidence to show, *inter alia*, that the underlying policy limits have not been properly exhausted or that there was some agreement of treatment of settlement proceeds which would ultimately affect the remaining defendant-insurers' coverage obligations concerning the alleged loss at issue. The Subject Settlement Agreement(s) are therefore highly relevant and discoverable. Because Plaintiffs, AIG and AWAC elected to enter into a single settlement agreement resolving all claims related to the underlying Allergan Actions and the Stock Drop Litigation, Defendants are entitled to a full disclosure of the agreement to ascertain the method of allocation of settlement payments under

16

the agreement and any delineation between claims asserted against the underlying parties or specific treatment of indemnity payments versus defense payments.

**IV.  PRODUCTION OF THE REQUESTED DOCUMENT(S) WOULD NOT VIOLATE ANY THIRD-PARTY RIGHTS BECAUSE SUCH PRODUCTION WOULD BE SUBJECT TO THE DISCOVERY CONFIDENTIALITY ORDER IN EFFECT IN THIS ACTION**

Plaintiffs also object to production of the Subject Settlement Agreement(s) on the ground that production of the requested document(s) would implicate the rights of third-parties – *i.e.*, AIG and AWAC. Remarkably, Plaintiffs have refused to even engage with counsel for AIG and AWAC to discuss the possibility of production of the Subject Settlement Agreement(s) pursuant to the terms of the Discovery Confidentiality Order.

Settlement agreements are not automatically shielded from discovery due to confidentiality provisions that may be contained therein. The Third Circuit does not recognize a "settlement privilege." *See Sippel Dev. Co., Inc. v. Western Sur. Co.*, No. 05-46, 2007 U.S. Dist. LEXIS 27644, at *2 (W.D. Pa. Apr. 13, 2007) (rejecting surety company's argument that a "settlement privilege" protected a settlement agreement from disclosure). As succinctly stated by the Court in *Sippel*, "[t]he mere fact that settling parties have agreed to maintain the confidentiality of their agreement does not automatically serve to shield the agreement from

discovery." *Id.* at *6 (citing *DIRECTV, Inc., v. Puccinelli*, 224 F.R.D. 677, 685 (D. Kan. 2004)).

Further, confidentiality agreements between private parties cannot affect the discoverability of agreements, and private parties cannot limit the Court's authority to compel the production of relevant documents. *See, e.g., Thomas & Marker Constr. Co. v. Wal-Mart Stores, Inc.*, No. 3:06-cv-406 (TMR), 2008 U.S. Dist. LEXIS 93717, at *10 (S.D. Ohio Aug. 6, 2008) (compelling production of confidential settlement agreement over, among others, the confidentiality objection of the plaintiff); and *Sonnino v. Univ. of Kan. Hosp. Auth.*, No. 02-2576 (KHV-DJW), 2004 U.S. Dist. LEXIS 6220, at *12-13 (D. Kan. April 8, 2004) ("Although a settlement agreement contains a confidentiality provision, litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement.") (further citations omitted).

Here, a Discovery Confidentiality Order is already in place in this action. It limits the remaining defendant-insurers from disclosing any documents marked "Highly Confidential" to persons not specifically named in the Discovery Confidentiality Order. [ECF 140 at 4]. Thus, the Discovery Confidentiality Order provides sufficient protection to render moot any objections from Valeant as to confidentiality. Limited disclosure of the Subject Settlement Agreement(s), subject

to the Discovery Confidentiality Order is not contrary to any public policy,[4] and it will not prejudice the settling parties in any way. Therefore, Valeant has no genuine basis to object to immediate production of the requested document(s) based on confidentiality concerns. *See, e.g., Wal-Mart, supra*, 2008 WL 3200642 at *3 (disclosure of plaintiff's confidential settlement agreement with third party would be subject to protective order already in place); *Koch Indus., Inc. v. Columbia Gas Transmission Corp.*, No. 89-2156, 1990 WL 72789 (E.D. La. May 29, 1990) (compelling discovery of prior settlement agreement between plaintiff and third parties subject to protective order). As AIG and AWAC were dismissed from the action upon their settlements, there can be no fear that disclosure of the Subject Settlement Agreement(s) under the terms of the Discovery Confidentiality Order would somehow harm those parties or Plaintiffs. *See, e.g., Hammock v. Hoffman-LaRoche, Inc.*, 142 N.J. 356, 381-82 (1995) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient.").

## V.  IF THIS MOTION TO COMPEL IS GRANTED, ALLIANZ SHOULD BE AWARDED ITS REASONABLE EXPENSES, INCLUDING ATTORNEY'S FEES

---

[4] While there is a strong public policy in New Jersey to endorse settlement of litigation, there is no evidence that the public policy favoring settlement would somehow be compromised in this case by the production of the Subject Settlement Agreement(s) under the terms of the Discovery Confidentiality Order.

If this Motion to Compel is granted, then, pursuant to FED. R. CIV. P. 37(a)(3)(A) and 37(a)(5)(A), Allianz respectfully requests that it be awarded its reasonable expenses, including attorneys' fees incurred in the making and filing of the motion. Motions to compel disclosure and discovery under FED. R. CIV. P. 37 are controlled by Rule 26(b)(1), which sets forth the standard against which the inquires are to be measured:   discovery is generally allowed if the information sought is "relevant to the subject matter involved in the action." *See* FED. R. CIV. P. 26(b)(1). As discussed above, the Subject Settlement Agreement(s) are relevant to the subject matter of Plaintiffs' insurance coverage action against the remaining defendant-insurers.

FED. R. CIV. P. 37(a)(5)(A) provides that, if a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *See* FED. R. CIV. P. 37(a)(5)(A). Here, Plaintiffs failed to produce the requested and clearly relevant document(s) in a timely manner constraining Allianz to file this Motion to Compel. As such, if the Motion to Compel is granted, Allianz should be awarded its reasonable expenses, including attorney's fees.

## <u>CONCLUSION</u>

For all the reasons discussed above, Allianz respectfully requests that its Motion to Compel be granted in its entirety and that an Order issue: (i) compelling production (subject to the terms of the Discovery Confidentiality Order) of the Subject Settlement Agreement(s); and (ii) finding that Allianz should be awarded its reasonable expenses in bringing this Motion to Compel.

Dated: April 19, 2022             Respectfully submitted,

**COUGHLIN MIDLIGE & GARLAND LLP**

By:  */s/ Suzanne C. Midlige*
        Suzanne C. Midlige, Esq.
        350 Mount Kemble Avenue
        P.O. Box 1917
        Morristown, New Jersey 07962
        Tel: (973) 267-0058
        smidlige@cmg.law
        *Attorneys for Defendant*
        *Allianz Global Risks US Insurance Company*