**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VALEANT PHARMACEUTICALS
INTERNATIONAL, INC., *et al.*,

          Plaintiffs,

v.

AIG INSURANCE COMPANY OF
CANADA *et al.*,

          Defendants.

Civil Action No. 18-493 (MAS) (RLS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendant Allianz Global Risks US Insurance Company's ("Allianz") Motion to Certify the Court's September 6, 2022, Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), to which a group of insurer Defendants joined. (ECF No. 315.)[1] Plaintiffs Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International, and AGMS, Inc. (collectively, the "Valeant Entities") opposed (ECF No. 324), and Allianz replied (ECF No. 325).[2] The Court has carefully considered the parties' submissions and

---

[1] Specifically, the following Defendants joined Allianz's Motion: (1) Hartford Fire Insurance Company; (2) Arch Insurance Canada Ltd.; (3) Everest Insurance Company of Canada; (4) Liberty International Underwriters, a division of Liberty Mutual Insurance Company, Royal & Sun Alliance Insurance Company of Canada, Certain Underwriters at Lloyd's, London subscribing to Policy No. QBN078613, and Certain Underwriters at Lloyd's, London subscribing to policy No. QB078913; and (5) Temple Insurance Company, and Certain Underwriters at Lloyd's, London subscribing to Policy No. QB146013.

[2] The same Defendants that joined Allianz's Motion joined Allianz's Reply. (ECF No. 325.)

decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies Allianz's Motion.

**I.  BACKGROUND**

The Court provided a comprehensive overview of the factual allegations giving rise to this action in its Memorandum Opinion accompanying the September 6, 2022 Order (the "September Order," ECF No. 314) and incorporates that background herein. (*See* Mem. Op. 2-26, ECF No. 313.) The Valeant Entities stand accused of manipulating the securities of Allergan, Inc., ("Allergan") by conspiring with a third party to withhold news of a pending exchange offer by the Valeant Entities, thus damaging Allergan's shareholders. (*See id.* at 21.) Originally at issue, prior to the September Order, was whether claims asserted in the underlying insider trading suit brought pursuant to the Williams Act against the Valeant Entities constitute "Securities Claims" under provisions of the Valeant Entities' 2013-2014 insurance policy (the "Policy") and excessive coverage policies.[3] (*See id.* at 2, 17.) In relevant part, the Policy defines a "Securities Claim" as:

> a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:
>
> (1) alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:
>
> > (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or
> >
> > (b) brought by a security holder or purchaser or seller of securities of an **Organization** with respect to such

---

[3] Accordingly, references throughout this Memorandum Opinion to the Policy are coextensive with the 2013-2014 excess coverage policies.

> security holder's, purchaser's or seller's interest in securities of such **Organization**; or
>
> (2) which is a **Derivative Suit**.

(Policy *11, *68, ECF No. 233-3.)[4] In dispute was whether the underlying insider trading claims against the Valeant Entities "allege, arise out of, are based upon, or are attributable to an offer to sell Valeant securities" triggering coverage under section 1(a) of the Policy. (Mem. Op. 18.) Notably, this case differs from typical insider trading cases because, here, the Valeant Entities are accused of manipulating a different company's—Allergan's—securities, so the connection to the Valeant Entities' securities is "somewhat murky." (*Id.* at 21.)

The Court, utilizing standardized insurance contract interpretation, opined that the claims against the Valeant Entities constituted Securities Claims under the Policy. (*Id.* at 27.) The Court afforded each word in the Policy its plain and ordinary meaning, strived to adopt interpretations consistent with the reasonable expectations of the parties, and considered the preference given to the insured when the Policy's language was ambiguous. (*Id.* at 27-28.)

Allianz now moves to certify the September Order for interlocutory appeal contending that the Policy does not cover the claims against the Valeant Entities. Allianz argues that the issue in the September Order meets the three criteria for certification under 28 U.S.C. § 1292(b). (Allianz's Moving Br. 3-4, ECF No. 315-1.) Allianz further asserts that this issue is a matter of "significant public importance" to insurance companies and their insured. (*Id.* at 3-5.) According to the Valeant Entities, this is not an "exceptional" case that warrants interlocutory appeal, and it does not meet any of the required criteria. (Valent Entities' Opp'n Br. 2-4, ECF No. 324.)

---

[4] Although the Policy is separately paginated, the Court pin-cites it through the pagination atop the CM/ECF header for ease of reference. Pin-cites prefaced by asterisks refer to the CM/ECF pagination.

## II. LEGAL STANDARD

Generally, a matter may not be appealed to the Third Circuit until a final judgment has been rendered. *Kaplan v. Saint Peter's Healthcare Sys.*, No. 13-2941, 2014 WL 4678059, at *2 (D.N.J. Sept. 19, 2014). An interlocutory appeal, however, may be proper in "exceptional cases" where forgoing the normal procedure of appealing after final judgment is appropriate. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). Thus, under § 1292(b), the Court may exercise its discretion in certifying an order for interlocutory appeal if the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *F.T.C. v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 633 (D.N.J. 2014). But even if all three criteria are met, certification is not mandatory, rather, it is "wholly discretionary." *Juice Ent., LLC v. Live Nation Ent., Inc.*, 353 F. Supp. 3d 309, 312 (D.N.J. 2018) (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 358 (D.N.J. 2001)). The burden to demonstrate that certification is proper lies with the moving party. *Kapossy v. McGraw-Hill Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996). And, importantly, "[i]n evaluating these factors, '[a] motion [for certification] should not be granted merely because a party disagrees with the ruling of the district judge.'" *Id.* (quoting *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 282 (E.D. Pa. 1983)).

## III. DISCUSSION

Allianz moves to certify the September Order for interlocutory appeal. The Court addresses each factor required for certification below.

### A.     Controlling Question of Law

"A question is controlling if 'an incorrect disposition would constitute reversible error and . . . it is serious to the conduct of the litigation, either practically or legal[ly].'" *Kaplan*, 2014 WL 4678059, at *2 (alteration in original) (quoting *Eisenberger v. Chesapeake Appalachia, LLC*, No. 09-1415, 2010 WL 1816646, at *3 (M.D. Pa. May 5, 2010)). "Courts in this district have held that although a question appears to be a controlling question of law, questions about a district court's application of facts of the case to established legal standards are not controlling questions of law for purposes of section 1292(b)." *Juice Ent.*, 353 F. Supp. 3d at 312-13 (quoting *Morgan v. Ford Motor Co.*, No. 06-1080, 2007 WL 269806, at *2 (D.N.J. Jan. 25, 2007)). Legal questions in which "the district court's discretion is necessarily intertwined with its understanding of the facts" do not fall within the purview of § 1292(b). *Kapossy*, 942 F. Supp. at 1002.

Here, the Court finds that the question of whether the Policy covers the claims against the Valeant Entities is not a controlling question of law. Allianz argues to the contrary citing the Court's characterization of the issue as "legal in nature" and not an issue surrounding "contested facts." (Allianz's Moving Br. 14; Mem. Op. 4.) When the Court, however, applies facts to established legal principles, the conclusion is not a controlling question of law for purposes of § 1292(b). *See Juice Ent.*, 353 F. Supp. at 312-13. Here, the Court applied the facts of the case, albeit undisputed facts, to "unambiguous contract terms." (Mem. Op. 61.) Even if the Court applied these facts in error, "[m]isapplication of the law to the facts is not a question of law." *In re Barsan Contractors*, No. 10-3081, 2010 WL 3907116, at *5 (D.N.J. Sep. 30, 2010) (citation omitted); *see also Glover v. Udren*, No. 08-990, 2013 WL 3072377, at *2 (W.D. Pa. June 18, 2013) (when the Court exercises its discretion in applying facts to legal principles, the outcome is not a controlling

question of law). Allianz, therefore, has not provided a controlling question of law for § 1292(b) purposes.

### B. Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion is not created merely because a party has a differing opinion from that of the district judge. *Kapossy*, 942 F. Supp. at 1001 (citation omitted). Instead, substantial ground for difference of opinion lies where "there is genuine doubt or conflicting precedent as to the correct legal standard." *Korrow v. Aaron's, Inc.*, No. 10-6317, 2016 WL 4083219, at *2 (D.N.J. July 29, 2016) (citation omitted). Notably, a "question of first impression is not, of itself, sufficient to show that the question is one on which there is a substantial ground for difference of opinion." *Cosimano v. Township of Union*, No. 10-5710, 2017 WL 4790381, at *2 (D.N.J. Oct. 23, 2017) (citation omitted).

The crux of Allianz's argument here is that the issue of whether the Valeant Entities' claims are covered under the Policy is one of first impression. (Allianz's Moving Br. 16.) Allianz outlines the Court's reasoning in its Memorandum Opinion, cherry-picking language such as "this is not a typical case" to suggest that the Court's decision was a difficult one. (*Id.* at 16-17; Mem. Op. 21.) Allianz seems to rely on the fact that the Court itself recognized that this is a "novel matter" and not your "garden-variety" securities case. (Allianz's Moving Br. 16, 19; Mem. Op. 1, 49.) Allianz, however, utterly ignores other language in the Court's September Order that demonstrates that even though the issue is new, it is still without question: "[a]lthough this case is one of first impression, it is not a close call: it is a straightforward application of unambiguous contract terms." (Mem. Op. 61.) The Court made it clear that this was not a difficult decision, but even if it were, interlocutory appeal is not a mechanism for its early review. *Hulmes v. Honda Motor Co.*, 936 F.

Supp. 195, 210 (D.N.J. 1996) ("[Section] 1292(b) is not intended as a vehicle to provide early review of difficult rulings in hard cases." (internal quotation omitted).)

In any event, the standard for certification is not whether a particular issue is novel or complex, but rather whether there is "conflicting precedent as to the correct legal standard." *Korrow*, 2016 WL 4083219, at *2. The fact that an issue is one of first impression "is not . . . sufficient to show that the question is one on which there is a substantial ground for difference of opinion." *Cosimano*, 2017 WL 4790381, at *2. Allianz, indeed, acknowledges that "[t]he absence of controlling law on the issue . . . is clear" (Allianz's Moving Br. 16), and "the parties agree that no prior court has clearly answered this question" (*id.*). Without *prior* precedent, there is no possibility for *conflicting* precedent.

Allianz, further, has not demonstrated that there is "genuine doubt" as to the correct legal standard. Although the Court acknowledged the lack of instructing precedent on the terms "alleging," "based upon," and "attributable to," it nevertheless found that—after applying their plain and ordinary meaning— "common sense leads to the same conclusion: the underlying violations of law allege, are based upon, and are attributable to Valeant shares." (Mem. Op. 33.) The Court additionally relied on "abundant New Jersey caselaw . . . on the meaning of 'arising out of'" to conclude that the claims "arise out of" the Policy. (*Id.* 34-44.)

The Court found that the Policy covers the claims against the Valeant Entities under each predicate phrase ("alleging," "based upon," "attributable to," and "arising under"). (Mem. Op. 29-44.) Importantly, the Policy lists these phrases disjunctively. (Mem. Op. 30.) Thus, for Allianz to cast genuine doubt on the Court's legal conclusions, and therefore raise a substantial ground for difference of opinion, it must do so for each of the four phrases. (*Id.*) Allianz has not done so.

The Court, therefore, finds that Allianz has failed to meet its burden in showing the existence of substantial grounds for difference of opinion.

### C. Potential to Materially Advance the Ultimate Termination of Litigation

An interlocutory appeal materially advances litigation if it (1) eliminates the need for trial, (2) eliminates complex issues so as to simplify the trial, or (3) eliminates issues to make discovery easier and less costly. *Juice Ent.*, 353 F. Supp. 3d at 314 (quotation marks and citations omitted). "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law," as an interlocutory appeal could save litigants' money and the Court's time by potentially speeding up litigation. *Pub. Interest Rsch. Grp. of N.J., Inc. v. Hercules, Inc.*, 830 F. Supp. 1549, 1557 (D.N.J. 1993) (citation and internal quotations omitted).

Allianz argues that a reversal from the Third Circuit in this interlocutory appeal would materially further the litigation because it would "end the case as to the Valeant Entities." (Allianz's Moving Br. 21.) The Valeant Entities argue that the interlocutory appeal is inappropriate because the matter is not "early in the litigation" and has been active for "almost five years." (Valeant Entities' Opp'n Br. 19.) The Valeant Entities further argue that an interlocutory appeal would result in impermissible "piecemeal litigation[,]" and there is no reason that the appeal of the Memorandum Opinion "should not wait until the conclusion of the trial court proceedings as is the practice in all but the most exceptional cases." (*Id.* 18-19.)

While the Court finds that an interlocutory appeal may advance certain aspects of the litigation, it will not materially advance the termination of the litigation as there are still claims and defenses that would survive. (Valeant Entities' Opp'n Br. 18; Allianz's Moving Br. 14 n.4.) An appeal to the Third Circuit is possible—if not probable—at the end of the proceedings

irrespective of any ruling on the interlocutory appeal. (Valeant Entities' Opp'n Br. 19; *see also Lighthouse Inst. for Evangelism v. City of Long Branch*, No. 00-3366, 2012 WL 13034284, at *2 (D.N.J. Nov. 27, 2012) (holding that appeal should wait until the end of trial because "whoever loses at trial will likely appeal, making an appeal inevitable either way.").) And importantly, given the procedural history of the case, the Court is interested in moving the case forward—not expending additional resources, judicial or otherwise, in delay. The Court, accordingly, finds that an interlocutory appeal does not have the potential to materially advance the ultimate termination of litigation.

## IV.   CONCLUSION

For the reasons set forth above, Allianz's Motion to Certify the September Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) is denied. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE